## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re:<br><br>Vanity Shop of Grand Forks, Inc.,<br><br>          Debtor. | Case No.: 17-30112<br><br>Chapter 11 |

### DEBTOR'S MOTION FOR ENTRY OF ORDER AUTHORIZING AND APPROVING THE STORE CLOSING INCENTIVE PLAN

The above-captioned debtor-in-possession (the "**Debtor**") hereby files this motion (this "**Motion**") for entry of an order, pursuant to sections 105(a), 363(b), and 503 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), (i) authorizing it to implement a store closing incentive plan for certain employees, as more fully described herein, (ii) granting administrative expense priority status to all such payments, and (iii) granting such other relief as the Court deems just and proper. In support of this Motion, the Debtor respectfully states as follows:

### JURISDICTION AND VENUE

1.    The United State Bankruptcy Court for the District of North Dakota (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are sections 105(a), 363, and 503 of the Bankruptcy Code.

**BACKGROUND**

2. On the date hereof (the "**Petition Date**"), the Debtor commenced a voluntary case under Chapter 11 of the Bankruptcy Code. The Debtor is authorized to continue to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. To date, no trustee, examiner or statutory committee has been appointed in this Chapter 11 case.

3. Additional factual background relating to the Debtor's business, capital structure and the commencement of this Chapter 11 Case is set forth in detail in the *Declaration of Jill Motschenbacher in Support of Chapter 11 Petition and First Day Motions* (the "**First Day Declaration**") concurrently filed herewith.

**RELIEF REQUESTED**

4. It is imperative that store closing incentives be approved to maintain the full dedication of certain employees of the Debtor in connection with the Debtor's Chapter 11 case to maximize value for its estate and stakeholders.

5. Accordingly, the Debtor seeks the Court's authorization, under sections 105(a), 363(b) and 503 of the Bankruptcy Code, to (i) adopt and implement a store closing incentive plan for certain employees in accordance with the terms described below (the "**SCIP**"), and (ii) grant all such payments as administrative expenses of the Debtors' estates.

*Description of the SCIP*

6. A summary of the SCIP is as follows:

2

| | |
|---|---|
| **Purpose** | Provide incentives and rewards to certain employees of the Debtor in order to maximize recovery for the benefit of the Debtor's estate and creditor constituencies. |
| **Eligibility** | All full-time employees of Debtor that remain employed and regularly and consistently work all scheduled hours, with no unexcused absences, through the entirety of the Store Closing Sales, or so long as the employee's assigned store remains open (collectively, the "**SCIP Participants**"). |
| **Incentive** | Payment to eligible SCIP Participants will be an additional 10% of the employee's regular hourly wage for all hours worked after the Petition Date and will be made only after the conclusion of the Store Closing Sales. |
| **Total Estimated Amount Through End of Store Closing Sales** | $175,000 inclusive of payroll taxes. |

## BASIS FOR RELIEF

7.  The Debtor submits that approval of the SCIP fully aligns the interests of the SCIP Participants with the interests of the Debtor's constituencies, while simultaneously maintaining the Debtor's operations. The SCIP is necessary to appropriately incentivize the Debtor's employees to not only operate the Debtor's businesses effectively during the Store Closing Sales, but to consummate sale transactions that maximizes the recovery to each of the Debtor's many stakeholders.

### I. APPROVAL OF THE SCIP PURSUANT TO SECTION 363(B) OF THE BANKRUPTCY CODE IS A VALID EXERCISE OF THE DEBTOR'S BUSINESS JUDGMENT.

8.  The Court may authorize the Debtor to adopt and implement the SCIP under section 363(b)(1) of the Bankruptcy Code. Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The use, sale, or lease of property of the estate, other than in the ordinary course of business, is authorized when a "sound

3

business purpose" justifies such action. *See, e.g., In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (affirming bankruptcy court approval of key employee retention program and stating that "in determining whether to authorize the use, sale, or lease of property of the estate under [section 363(b)], courts require the debtors to show that a sound business purpose justifies such actions"); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under §363(b) when there is a legitimate business justification); *see also Stephen Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); *Titusville County Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa 1991) (same).

9. Courts have found that a debtor's use of reasonable bonuses and other incentives to motivate employees is a valid exercise of a debtor's business judgment. *See, e.g., In re America West Airlines, Inc.*, 171 B.R. 674, 678 (Bankr. D. Ariz. 1994) (it is the proper use of a debtors' business judgment to propose bonuses for employees who helped propel the debtor successfully through the bankruptcy process); *In re Interco Inc.*, 128 B.R. 229, 234 (Bankr. E.D. Mo. 1991) ("[D]ebtors' business judgment was controlling in the approval of a performance/retention program"). Since the 2005 amendments to the Bankruptcy Code, courts have approved employee bonus programs tied to performance targets as valid exercises of business judgment. *See, e.g., In re Trident Microsystems, Inc.*, Case No. 12-10069 (CSS) (Bankr. D. Del. Feb. 24, 2012) (approving a key employee retention plan based upon certain sale thresholds and other wind-down milestones).

4

10. The Debtor submits that authorizing it to provide incentive compensation to the SCIP Participants will accomplish a similarly sound business purpose. The Debtor has determined in its reasonable judgment that the costs associated with such additional postpetition compensation are more than justified by the benefits the Debtor will realize by creating appropriate incentives for the SCIP Participants, whose experience, skill, diligent work and knowledge and understanding of the Debtor's operations, customer relationships and infrastructure are critical for the Debtor to operate its business during the Store Closing Sales.

11. The SCIP proposed in this Motion will provide the SCIP Participants with the appropriate incentives to enable the Debtor to maximize the value of its assets for the benefit of its estate and its stakeholders.

## II.   APPROVAL OF THE SCIP DOES NOT RUN AFOUL OF SECTION 503(C) OF THE BANKRUPTCY CODE.

12. Section 503(c) of the Bankruptcy Code imposes certain restrictions on the compensation that a debtor can pay to its executives and other employees in bankruptcy. Section 503(c)(1) applies to payments that are meant to induce insiders to "remain with the [debtor's] business" by requiring, among other things, that a debtor demonstrate that the insider (a) has a bona fide job offer from another business and (b) is "essential to the survival of the business." 11 U.S.C. §503(c)(1)(A) and (B). Section 503(c)(1) also limits the amount of retention payments that can be made to "insiders." *See id*. Likewise, section 503(c)(2) permits severance payments to "insiders" only if they are part of a program applicable to all employees and are less than ten times the mean of severance payments made to nonmanagement employees during that calendar year. 11 U.S.C. § 503(c)(2). These

5

sections, however, are limited in their application to "insiders" and neither applies to plans primarily implemented to incentivize personnel or that are not in the nature of a severance. *See In re Global Home Products, LLC*, 369 B.R. 778, 785 (Bankr. D. Del. 2007).

13. Debtor does not believe that any of the SCIP Participants may be deemed "insiders" within the meaning of Section 101(31) the Bankruptcy Code, nevertheless, the SCIP has been crafted to ensure that it directly incentivizes all SCIP Participants. Even if the SCIP has the indirect effect of reducing the Debtor's attrition rate among the SCIP Participants, such reduction in attrition does not convert the SCIP into a "retention" plan. The Debtor's proposed SCIP is designed to provide an incentive to the SCIP Participants to assist the Debtor in achieving its goal of maximizing the value of its estate. Accordingly, the Debtor believes that section 503(c)(3) of the Bankruptcy Code is the applicable section for this Court to evaluate the requested relief.

14. Section 503(c)(3) of the Bankruptcy Code limits the payment of obligations outside of the ordinary course of business that are not covered by sections 503(c)(1) or (2). Specifically, section 503(c)(3) provides as follows:

> [there shall neither be allowed, nor paid-] (3) other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition.

11 U.S.C. § 503(c)(3). Accordingly, section 503(c)(3) only limits payments that are "outside the ordinary course of business." *Id*.

15. The relevant inquiry under section 503(c)(3) is whether the SCIP is "justified by the facts and circumstances" of the case. 11 U.S.C. § 503(c)(3). Some courts have used a form of the "business judgment" standard to determine whether incentive programs and the

6

payments thereunder meet the section 503(c)(3) "facts and circumstances" standard. *See, e.g., In re Dana Corp.*, 358 B.R. 567, 576 (Bankr. S.D.N.Y. 2006) (applying to section 503(c)(3) transfers the same business judgment test as applied under section 363). Other courts have applied a slightly higher bar for payments under section 503(c)(3). *See, e.g., In re Pilgrim's Pride Corp.*, 401 B.R. 229, 236-37 (Bankr. N.D. Tex. 2009) (section 503(c)(3) requires that the proposed transfer be in the best interests of creditors and the debtor's estate in addition to the business judgment standard); *In re Dura Automotive Systems, Inc.*, Case No. 06-11202, Hr'g Tr. 40:17-41:2 (Bankr. D. Del. Apr. 25, 2007); (noting that section 503(c)(3) "mean[s] something above the business judgment standard but maybe not much farther above it").

16.  In applying section 503(c)(3), the Court in *Dana* noted that the "test in section 503(c)(3) appears to be no more stringent a test than the one courts must apply in approving an administrative expense under section 503(b)(1)(A) . . . [a]n expense must be an actual, necessary cost or expense of preserving the estate." *Dana*, 358 B.R. at 576. The Court then went on to consider the following factors in determining whether the debtor had satisfied the "sound business judgment" test: (i) whether a reasonable relationship existed between the proposed plan and the desired results; (ii) whether the cost of the plan was reasonable in light of the overall facts of the case; (iii) whether the scope of the plan was fair and reasonable; (iv) whether the plan was consistent with industry standards; (v) whether the debtor had put forth sufficient due diligence efforts in formulating the plan; and (vi) whether the debtor received sufficient independent counsel in performing any due diligence and formulating the plan. *See id*. at 576-77.

7

17. In *Pilgrim's Pride*, the Court concluded that section 503(c)(3) contemplates greater involvement by the court and that "even if a good business reason can be articulated for a transaction….the court must make its own determination that the transaction will serve the interests of creditors and the debtor's estate." *Pilgrim's Pride*, 401 B.R. at 237. In assessing whether the proposed transaction is in the best interests of creditors and the debtor's estate, the Court "need only determine that Debtors have provided a sound business reason for the [transaction] and that, even at [its] projected cost, the benefit to creditors and Debtors' estates is of commensurate value." *Id*.

18. As set forth above, the primary motivation of the Debtor in creating the SCIP was not to retain the SCIP Participants and, furthermore, the SCIP is not in the nature of severance. Instead, the SCIP is intended to create incentives for the SCIP Participants to continue working during the Store Closing Sales in order to facilitate maximum recovery for the benefit of the Debtor's constituencies. Accordingly, sections 503(c)(1) and (2) of the Bankruptcy Code are not triggered by the SCIP. *See Global Home Products*, 369 B.R. at 785.

### III. THE SCIP SHOULD BE AUTHORIZED PURSUANT TO SECTION 503(C)(3) AS A SOUND EXERCISE OF THE DEBTOR'S BUSINESS JUDGMENT.

19. The Debtor submits that the SCIP satisfies the requirements of section 503(c)(3) of the Bankruptcy Code. As discussed above, courts have applied the "sound business judgment" and "best interests" tests to determine whether incentive programs and the payments thereunder meet the section 503(c)(3) "facts and circumstances" standard. The Debtor's approval of the SCIP satisfies the "sound business judgment" test as articulated by the Court in *Dana*, 38 B.R. at 576, as well as the "best interests" test discussed in *Pilgrim's*

8

*Pride*, 401 B.R. at 237. The Debtor's overall goal with respect to the SCIP is to maximize the value of the Debtor's assets, which is in the best interest of creditors and the Debtor's estate. Accordingly, the SCIP is predicated on the SCIP Participants remaining through the duration of the Store Closing Sales. Specifically, the Debtor is seeking to pay a 10% wage increase for regularly scheduled hours worked after the Petition Date. The Debtor submits that the cost and scope of the SCIP is reasonable and necessary in light of the overall facts of this Chapter 11 case.

**IV. THE PAYMENTS CONTEMPLATED UNDER THE SCIP CONSTITUTE ACTUAL AND NECESSARY COSTS OF PRESERVING THE DEBTOR'S ESTATE.**

20. The payments contemplated under the SCIP constitute actual and necessary costs and expenses of preserving, and potentially enhancing, the Debtor's estate. The SCIP is a performance-based plan intended to motivate participants to achieve certain targeted sale results. As discussed above, a reasonable relationship exists between the payments contemplated under the SCIP and the Debtor's targeted financial goals. Accordingly, the payments contemplated thereunder constitute actual and necessary costs of the Debtor's estate under section 503(b) of the Bankruptcy Code.

**V. THE SCIP MAY ADDITIONALLY BE AUTHORIZED PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE.**

21. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(1).

22. As stated, the Debtor strongly and reasonably believes that the SCIP is critical to its Chapter 11 efforts. With respect to the SCIP, such payments are essential to

9

appropriately reward the SCIP Participants for all of their efforts throughout this bankruptcy case, to maintain the morale of the SCIP Participants and to ensure the SCIP Participants' continued focus during the bankruptcy case. The Debtor submits that such payments are necessary to maximize value of their estates for the benefit of its stakeholders.

23. The Debtor respectfully submits that the post-petition compensation described herein for the SCIP Participants is an appropriate exercise of the Debtor's business judgment, is necessary and in the best interest of the Debtor, its creditors, and its estate and should be approved under sections 105(a) and 363(b) of the Bankruptcy Code and allowed as administrative expenses under 503(b) of the Bankruptcy Code.

## NOTICE

24. Notice of this Motion has been given to: (i) the Office of the United States Trustee for the District of North Dakota; (ii) counsel to Wells Fargo Bank, National Association; (iii) holders of the twenty (20) largest unsecured claims on a consolidated basis against Debtor; (iv) counsel to any committee appointed in this case, and (v) any party that has requested notice pursuant to Bankruptcy Rule 2002. Debtor submits, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

25. No prior motion for the relief requested herein has been made to this or any other Court.

26. WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (i) granting the relief requested herein, and (ii) granting such other and further relief as the Court may deem proper.

Dated this 1st day of March, 2017.

**VOGEL LAW FIRM**

BY: */s/ Jon R. Brakke*
Jon R. Brakke (#03554)
jbrakke@vogellaw.com
Caren W. Stanley (#06100)
cstanley@vogellaw.com
218 NP Avenue
PO Box 1389
Fargo, ND 58107-1389
Telephone: 701.237.6983
*PROPOSED COUNSEL TO DEBTOR IN POSSESSION*

11

# **EXHIBIT A**

**(Proposed Final Order)**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In Re: | Case No.: 17-30112 |
| Vanity Shop of Grand Forks, Inc., | Chapter 11 |
| Debtor. | |

**ORDER GRANTING THE DEBTOR'S MOTION FOR ENTRY OF ORDER AUTHORIZING AND APPROVING THE STORE CLOSING INCENTIVE PLAN**

This matter coming before the Court on the Debtor-in-Possession's Motion For an Order Authorizing and Approving the Store Closing Incentive Plan (the "**Motion**"),[1] filed by the above-captioned debtor-in-possession (the "**Debtor**"); the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b), (iii) venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409, and (iv) notice of the Motion was appropriate given the circumstances and no other or further notice being required, and (v) the relief requested in the Motion is in the best interests of the Debtor and its estate and creditors and the legal and factual bases set forth in the Motion establish just cause for the relief granted herein;

IT IS HEREBY ORDERED:

1. The Motion is GRANTED, as set forth herein.

2. Any and all objections not otherwise resolved herein are hereby overruled.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

2813121.1

3. The Store Closing Incentive Plan ("**SCIP**"), as described in the Motion, is hereby approved, and the Debtor is authorized to implement it in its discretion.

4. The Debtor is further authorized to take any and all actions as may be necessary, desirable or appropriate to effect, implement, and/or consummate the SCIP, including, without limitation, making the payments that may become due thereunder, without further application or order of this Court.

5. All payments under the SCIP shall be deemed allowed administrative expenses of the Debtor's estate under section 503(b) of the Bankruptcy Code.

6. Notwithstanding anything to the contrary contained in the Motion or this Order, the Debtor shall submit and file a written certification that, prior to final payment of the SCIP amounts to the SCIP Participants, each SCIP Participant worked each regularly scheduled day, with no unexcused absences, from the Petition Date until the scheduled termination of such respective participant's employment.

7. This Court shall retain jurisdiction over all matters set forth in the Motion, including the entitlement of any party to any payment pursuant to the SCIP.

Dated this ____ day of _____, 2017.

_____
UNITED STATES BANKRUPTCY JUDGE