# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re: | Case No.: 17-30112 |
| Vanity Shop of Grand Forks, Inc., | Chapter 11 |
| Debtor. | |

## APPLICATION FOR AN ORDER APPOINTING KURTZMAN CARSON CONSULTANTS, LLC AS CLAIMS, NOTICING AND BALLOT AGENT FOR THE DEBTOR-IN-POSSESSION PURSUANT TO 28 U.S.C. § 156(C), NUNC PRO TUNC TO THE PETITION DATE

Vanity Shop of Grand Forks, Inc. (the "**Debtor**") in the above-captioned chapter 11 case hereby files this application (this "**Application**"), pursuant to section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), section 156(c) of title 28 of the United State Code, and Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking entry of an order, in substantially the form attached hereto as **Exhibit A** (the "**Retention Order**"): (i) authorizing and approving the retention and appointment of Kurtzman Carson Consultants, LLC ("**KCC**") as claims, noticing and ballot agent for the Debtor in lieu of the Clerk of the United States Bankruptcy Court for the District of North Dakota (the "**Clerk**") effective as of the Petition Date (as defined herein); and (ii) providing any additional relief required in order to effectuate the foregoing. In support of this Application, the Debtor relies on the *Declaration of Jill Motschenbacher in Support of Chapter 11 Petition and First Day Motions* (the "**First Day Declaration**") concurrently filed herewith and the declaration of Robert Jordan (the "**Jordan Declaration**"), attached hereto

as **Exhibit B** and incorporated by reference herein.  In further support of this Application, the Debtor respectfully represents as follows:

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this Chapter 11 case and this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and may be determined by this Court.  Venue of this Chapter 11 case and this Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are 28 U.S.C. § 156(c), and Bankruptcy Rule 2002.

**BACKGROUND**

3.      On the date hereof (the "**Petition Date**"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtor is authorized to continue to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  To date, no trustee, examiner or statutory committee has been appointed in this Chapter 11 case.  Additional factual background relating to the Debtor's business, capital structure and the commencement of this Chapter 11 case is set forth in detail in the First Day Declaration.

4.      Although the Debtor has not yet filed its schedules of assets and liabilities, Debtor anticipates that there will be in excess of two thousand individuals and entities to be noticed. In view of the number of anticipated claimants and the complexity of the Debtor's business, the Debtor submits that the appointment of a claims, noticing and balloting agent is both necessary and in the best interests of both the Debtor's estate and its creditors.

2

## RELIEF REQUESTED

5.      This Application is made pursuant to 28 U.S.C. § 156(c) and Bankruptcy Rule 2002, for an order appointing KCC to act as the claims, noticing and ballot agent in order to assume full responsibility for the distribution of notices and the maintenance, processing and docketing of proofs of claim filed in this Chapter 11 case, *nunc pro tunc* to the Petition Date.

6.      By appointing KCC as the claims, noticing and balloting agent in this Chapter 11 case, the distribution of notices and the processing of claims will be expedited, and the Clerk's Office will be relieved of the administrative burden of processing what is anticipated to be an overwhelming number of claims.

7.      The terms of retention are set forth in the KCC Agreement for Services (the "**Engagement Agreement**") annexed hereto as **Exhibit C**.  The Debtor is seeking approval of the Engagement Agreement subject to the Court's Retention Order.

## KCC'S QUALIFICATIONS

8.      Although the Debtor has not yet filed its schedules of assets and liabilities, it knows there will be thousands of individuals and entities to be noticed.  In view of the number of anticipated claimants and the complexity of the Debtor's business, the Debtor submits that the appointment of a claims, noticing and ballot agent is both necessary and in the best interests of both the Debtor's estate and its creditors.

9.      KCC is a bankruptcy administrator that specializes in providing comprehensive Chapter 11 administrative services including noticing, claims processing, balloting and other related services critical to the effective administration of Chapter 11 cases.  KCC is comprised of leading industry professionals with significant experience in

3

both the legal and administrative aspects of large, complex Chapter 11 cases.  KCC has developed efficient and cost-effective methods to properly handle the voluminous mailings associated with the noticing, claims processing, and balloting portions of Chapter 11 cases to ensure the orderly and fair treatment of creditors, equity security holders and all parties in interest.  Further, KCC will work with the Clerk's Office to ensure that such methodology conforms to all of the Court's procedures, the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of North Dakota (the "**Local Bankruptcy Rules**") and the provisions of any orders entered by this Court.

10.    KCC has substantial experience in matters of this size and complexity and has acted as the official claims, noticing and ballot agent in many large bankruptcy cases in the Eighth Circuit and other districts nationwide.  *See, e.g., In re Peabody Energy Corporation, et al.*, No. 16-42529 (Bankr. E.D. Mo. Apr. 13, 2016); *In re Falcon Prods., Inc.*, No. 05-41108 (Bankr. E.D. Mo. March 10, 2005) (Docket No. 255); *see also In re Alpha Natural Res., Inc.*, No. 15-33896 (Bankr. E.D. Va. Aug. 5, 2015) (Docket No. 93); *In re Walter Energy, Inc.*, No. 15-02741 (Bankr. N.D. Ala. July 15, 2015) (Docket No. 55); *Azure Midstream Partners, LP, et al.*, Case No. 17-30461 (Bankr. S.D. Tex. Jan. 30, 2017); *Forbes Energy Services, Ltd., et al.*, Case No. 17-20023 (Bankr. S.D. Tex. Jan. 22, 2017); *Erickson Incorporated, et al.*, No. 16-34393 (Bankr. N.D. Tex. Nov. 11, 2016); *AstroTurf, LLC*, No. 16-41504 (Bankr. N.D. Ga. June 28, 2016) *In re AMF Bowling Worldwide, Inc.*, No. 12-36495 (Bankr. E.D. Va. Nov. 14, 2012) (Docket No. 61); *In re Old HB (f/k/a Hostess Brands, Inc.)*, No. 12-22052 (Bankr. S.D.N.Y. Jan. 27, 2012 (Docket No. 201); *In re Eastman Kodak Co.*, No. 12-10202 (Bankr. S.D.N.Y. Jan. 19, 2012) (Docket No. 47); *In re*

2821558.1

*Movie Gallery, Inc.*, No. 10-30696 (Bankr. E.D. Va. Feb. 3, 2010) (Docket No. 73); *In re*

*Circuit City Stores, Inc.*, No. 08-35653 (Bankr. E.D. Va. Nov. 12, 2008) (Docket No. 108).

## <u>SERVICES TO BE RENDERED</u>

11.    The services of KCC are appropriate and necessary to enable to Debtor to

execute its duties as a debtor in possession faithfully.  The terms of KCC's retention are set

forth in the Engagement Agreement; provided, however, that, by this Application, KCC is

seeking approval of the Engagement Agreement as set forth in this Application and subject to

the proposed Retention Order.  As it relates to this Application, KCC will perform the

following tasks, among others, in its role as claims, noticing and ballot agent, as well as all

quality control relating thereto:

    a.    Prepare and serve required notices and documents in this Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtor and/or the Court including:  (i) notice of the commencement of this Chapter 11 Case and the initial meeting of creditors under section 341(a) of the Bankruptcy Code; (ii) notice of any claims bar date; (iii) notices of transfers of claims; (iv) notices of objections to claims and objections to transfers of claims; (v) notices of any hearings on a disclosure statement and confirmation of the Debtor's plan or plans of reorganization, including under Bankruptcy Rule 3017(d); (vi) notice of the effective date of any plan; (vii) notice of hearing on motions filed by the Office of the United State Trustee for the District of North Dakota (the "**U.S. Trustee**"); (viii) any motion to convert, dismiss, appoint a trustee, or appoint an examiner filed by the U.S. Trustee's office; and (ix) all other notices, orders, pleadings, publications, and other documents as the Debtor or Court may deem necessary or appropriate for an orderly administration of this Chapter 11 case;

    b.    Maintain an official copy of the Debtor's schedules of assets and liabilities and statement of financial affairs (collectively, the "**Schedules**"), listing the Debtor's known creditors and the amounts owed thereto;

    c.    Maintain (i) a list of all potential creditors, equity holders, and other parties-in-interest; and (ii) a "core" mailing list consisting of all parties

2821558.1

described in Bankruptcy Rule 2002 and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party-in-interest or the Clerk;

d.      Update addresses on the claims registers and creditor matrix to reflect address updates requested by creditors, provided by the USPS or otherwise;

e.      Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by the Court, and notify potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

f.      Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

g.      For all notices, motions, orders, or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes:  (i) either a copy of the notice served or docket number(s) and title(s) of the pleading(s) served; (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses; (iii) the manner of service; and (iv) the date served;

h.      Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

i.      Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form);

j.      Maintain the official claims register for the Debtor (the "**Claims Register**") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with a certified, duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed:  (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, etc.); and (vi) any disposition of the claim;

2821558.1

k.      Implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

l.      Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

m.      Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of KCC, not less than weekly;

n.      Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Register for the Clerk's review (upon the Clerk's request);

o.      Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the Claims Register;

p.      Assist in the dissemination of information to the public and respond to requests for administrative information regarding the case as directed by the Debtor or the Court, including through the use of a case website and/or call center;

q.      If this Chapter 11 case is converted to a case under chapter 7, contact the Clerk within three (3) days of the notice to KCC of entry of the order converting this case;

r.      Thirty (30) days prior to the close of this Chapter 11 case, to the extent practicable, request that the Debtor submit to the Court a proposed order dismissing KCC and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of this Chapter 11 Case;

s.      Within seven (7) days of notice to KCC of entry of an order closing this Chapter 11 case, provide to the Court the final version of the Claims Register as of the date immediately before the close of this Chapter 11 case; and

t.      At this close of this Chapter 11 case, box and transport all original documents in proper format, as provided by the Clerk's Office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064, or (ii) any other location requested by the Clerk.

2821558.1

12.     The Claims Register shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by KCC.

13.     KCC shall not employ any past or present employee of the Debtor for work that involves the Chapter 11 case.

14.     KCC will follow the notice, claims, solicitation and balloting procedures that conform to the guidelines promulgated by the Clerk, the Judicial Conference of the United States and as may be entered by the Court's order.

## **COMPENSATION**

15.     The fees to be charged by KCC in connection with this Chapter 11 case are set forth in the Engagement Agreement.  KCC's rates for its services are competitive and comparable to the rates charged by their competitors for similar services.

16.     The Debtor respectfully requests that the undisputed fees and expenses incurred by KCC in the performance of the above services be treated as administrative expenses of the Debtor's chapter 11 estate pursuant to 28 U.S.C. § 156(c) and and 503(b)(1)(A) and be paid in the ordinary course of business and without further application to or order of the Court.

17.     KCC agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtor, the U.S. Trustee, counsel for the Debtor, counsel for Wells Fargo, N.A., counsel for any official committee, if any, monitoring the expenses of the Debtor, and any party-in-interest who specifically requests service of the monthly invoices.  If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an

2821558.1

attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

18. Prior to the Petition Date, the Debtor provided KCC a retainer in the amount of $30,000.00 in connection with prepetition services and has paid prepetition fees and expenses in the amount of $7,000 out of said retainer funds. KCC seeks to hold the remaining retainer under the Engagement Agreement during this Chapter 11 case as security for the payment of fees and expenses under the Engagement Agreement.

## DISINTERESTEDNESS

19. In connection with its retention as claims, noticing and ballot agent, KCC represents in the Jordan Declaration, among other things, that:

a. KCC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the claims, noticing and ballot agent in this Chapter 11 case;

b. By accepting employment in this Chapter 11 case, KCC waives any right to receive compensation from the United States government in its capacity as the claims, noticing and ballot agent in this Chapter 11 case;

c. In its capacity as the claims, noticing and ballot agent in this Chapter 11 case, KCC will not be an agent of the United States and will not act on behalf of the United States;

d. KCC will not employ any past or present employees of the Debtor in connection with its work as the claims, noticing and ballot agent in this Chapter 11 case; and

e. KCC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged.

20. To the extent that there is any inconsistency between this Application, the Retention Order, and the Engagement Agreement, the Retention Order shall govern.

2821558.1

## BASIS FOR RELIEF

21.     This Application is made pursuant to 11 U.S.C. § 105(a), 28 U.S.C. § 156(c), and Bankruptcy Rule 2002 for an order appointing KCC as the claims, noticing and ballot agent for the Debtor in this Chapter 11 case so that KCC may assume full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in this Chapter 11 case, *nunc pro tunc* to the Petition Date.

22.     Section 156(c) of title 28 of the United States Code, in relevant part, provides:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

23.     As previously mentioned, Debtor knows that there will be in excess of two thousand individuals and entities to be noticed in this Chapter 11 case. In view of the number of claimants and the complexity of the Debtor's business, the Debtor submits that the appointment of KCC as the claims, noticing and balloting agent is both necessary and in the best interests of both the Debtor's estate and its creditors because the Debtor and the Clerk will be relieved of the burdens associated with claims and noticing services.  Accordingly, the Debtor will be able to devote its full attention and resources to the administration of this Chapter 11 case.

## INDEMNIFICATION

24.     The Debtor shall indemnify KCC under the terms of the Engagement Agreement subject to the following modifications:

10

a.   KCC shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Agreement for services other than the services provided under the Engagement Agreement, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Court.

b.   Notwithstanding anything to the contrary in the Engagement Agreement, the Debtor shall have no obligation to indemnify KCC, or provide contribution or reimbursement to KCC, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from KCC's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtor alleges the breach of KCC's contractual obligations if the Court determines that indemnification, contribution or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co., et al.*, 315 F.3d 217 (3d Cir. 2003), or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which KCC should not receive indemnity, contribution or reimbursement under the terms of the Engagement Agreement as modified by the Retention Order.

c.   If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), or (ii) the entry of an order closing this chapter 11 case, KCC believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution and/or reimbursement obligations under the Engagement Agreement (as modified by the Retention Order), including without limitation the advancement of defense costs, KCC must file an application therefore in this Court, and the Debtor may not pay any such amounts to KCC before the entry of an order by this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by KCC for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify KCC. All parties in interest shall retain the right to object to any demand by KCC for indemnification, contribution or reimbursement.

## **RELIEF AS OF THE PETITION DATE IS APPROPRIATE**

25.   Pursuant to the Debtor's request, KCC has acted as the claims, noticing and

ballot agent since the Petition Date with assurances that the Debtor would seek approval of

2821558.1

its employment and retention, effective as of the Petition Date, so that KCC may be compensated for its services prior to entry of an order approving KCC's retention. The Debtor believes that no party in interest will be prejudiced by granting KCC's employment as of the Petition Date, because KCC has provided and continues to provide valuable services to the Debtor's estate in the interim period. Courts have approved similar relief in other chapter 11 cases in the Eighth Circuit and other districts. *See, e.g.*, *In re Noranda Aluminum, Inc.*, No. 16-10083 (Bankr. E.D. Mo. Feb. 12, 2016) (Docket No. 116); *In re Arch Coal, Inc.*, No. 16-40120 (Bankr. E.D. Mo. Jan. 15, 2016) (Docket No. 102); *In re Bakers Footwear Grp., Inc.*, No. 12-49658 (Bankr. E.D. Mo. Oct. 9, 2012) (Docket No. 74); *In re Falcon Prods., Inc.*, No. 05-41108 (Bankr. E.D. Mo. Mar. 10, 2012) (Docket No. 255) (granting order to retain and employ KCC as claims and noticing agent); *see also In re Alpha Natural Res., Inc.*, No. 15-33896 (Bankr. E.D. Va. Aug. 5, 2015) (Docket No. 93) (granting order to retain and employee KCC as claims and noticing agent); *In re Walter Energy, Inc.*, No. 15-02741 (Bankr. N.D. Ala. July 15, 2015) (Docket No. 55) (same); *In re Patriot Coal Corp.*, No. 15-32450 (Bankr. E.D. Va. May 14, 2015) (Docket No. 83); *In re James River Coal Co.*, No. 14-31848 (Bankr. E.D. Va. Apr. 10, 2014) (Docket No. 76); *In re Patriot Coal Corp.*, No. 12-12900 (Bankr. S.D.N.Y. July 11, 2012) (Docket No. 45).[1]

## **REQUEST FOR EXPEDITED RELIEF**

26.     The Debtor is requesting expedited relief on this Application. The Debtor has scheduled and served a number of First Day Motions designed to facilitate an orderly

---

[1] Unreported orders cited herein are not attached to this Application. Copies of these orders will be made available to the Court or other parties upon request made to the Debtor's counsel.

2821558.1

transition to Chapter 11. The granting of this Application on an expedited basis will enable the Debtor to efficiently transition into its role as debtor in possession, and provide the Debtor, the Clerk's Office, and KCC with clarity and certainty regarding each party's respective role and responsibility with respect to claims, noticing, and balloting in this case. If expedited relief is not granted, there will likely be confusion regarding which documents are being served and mailed by which entity, which could result in delays in notice to parties in interest.

## NOTICE

27.     Notice of this Motion has been given to: (i) the Office of the United States Trustee for the District of North Dakota; (ii) counsel to Wells Fargo Bank, National Association; (iii) holders of the twenty (20) largest unsecured claims on a consolidated basis against Debtor; and (iv) any party that has requested notice pursuant to Bankruptcy Rule 2002. Debtor submits, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

28.     WHEREFORE, the Debtor requests entry of an order, in the form annexed hereto as **Exhibit A**, authorizing KCC to act as claims, noticing and ballot agent for the maintenance and processing of claims and the distribution of notices.

Dated this ___ day of March, 2017.

By: Jill Motschenbacher
Its: Chief Financial Officer

13

2821558.1

**VOGEL LAW FIRM**

BY:  */s/ Caren W. Stanley*
       Jon R. Brakke (#03554)
       jbrakke@vogellaw.com
       Caren W. Stanley (#06100)
       cstanley@vogellaw.com
       218 NP Avenue
       PO Box 1389
       Fargo, ND  58107-1389
       Telephone:  701.237.6983
       *PROPOSED COUNSEL TO  DEBTOR IN*
       *POSSESSION*

## EXHIBIT A

**(Proposed Retention Order)**

2821558.1

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| In Re: | Case No.: 17-30112 |
| --- | --- |
| Vanity Shop of Grand Forks, Inc., | Chapter 11 |
| Debtor. | |

## ORDER AUTHORIZING RETENTION AND APPOINTMENT OF KURTZMAN CARSON CONSULTANTS, LLC AS CLAIMS, NOTICING AND BALLOT AGENT FOR THE DEBTOR-IN-POSSESSION PURSUANT TO 28 U.S.C. 156(C), *NUNC PRO TUNC* TO THE PETITION DATE

Upon consideration of the *Application for an Order Appointing Kurtzman Carson Consultants, LLC as Claims, Noticing and Ballot Agent for the Debtor-In-Possession Pursuant to 28 U.S.C. § 156(c),* Nunc Pro Tunc *to the Petition Date* (the "**Application**")[1] of the Debtor for an order authorizing the retention and appointment of KCC as claims, noticing and ballot agent under 28 U.S.C. § 156(c), and Bankruptcy Rule 2002, pursuant to the terms set forth in the Application; and upon the declaration of Robert Jordan submitted in support of the Application; and upon consideration of the First Day Declaration; and the Court being satisfied, based on the representations made in the Application and the Jordan Declaration, that KCC and its professionals are "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code, neither hold nor represent any interest adverse to the Debtor and its estate; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 1334 and 157; and consideration of the Application and the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application or First Day Declaration, as applicable.

2821558.1

requested relief being a core proceeding under 28 U.S.C. § 157(b); and venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided; and it appearing that no other or further notice need be provided; and the relief requested in the Application being in the best interests of the Debtor, its estate, its creditors and other parties in interest; and the Court having reviewed the Application; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The relief requested in the Application is hereby GRANTED.

2.      The Debtor is hereby authorized to employ and retain KCC as its claims, noticing and ballot agent *nunc pro tunc* to the Petition Date in the Debtor's Chapter 11 case under the terms of the Engagement Agreement and KCC is authorized and directed to perform noticing and balloting services, and to receive, maintain, record, and otherwise administer the proofs of claim filed in this Chapter 11 case, and all related tasks, all as described in the Application (the "**Claims, Noticing, and Balloting Services**").

3.      KCC shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in this Chapter 11 case and is authorized and directed to maintain an official claims register for the Debtor and to provide a certified duplicate thereof upon the request of the Clerk.

4.      Notwithstanding KCC's service as a custodian pro tempore, the Clerk shall at all times remain the permanent custodian of the proofs of claim filed in this Chapter 11 case

2

and of the Court's proofs of claim registers in this Chapter 11 case, even as those records and those registers are held and maintained by KCC.  KCC shall forthwith provide the Clerk's Office with any original Court document or any certified duplicate of a Court document that it may have, upon the request of the Clerk's Office for such original document or such certified duplicate.  Nothing herein limits the authority of the Clerk's Office in managing the records of the Court.

5.      The Clerk's Office shall provide KCC with Electronic Case Filing ("**ECF**") credentials that allow KCC to receive ECF notifications and file certificates of service.

6.      KCC is authorized and directed to obtain a post office box or address for the receipt of proofs of claim.

7.      KCC is authorized to take such other action to comply with all duties set forth in the Application.

8.      The Debtor is authorized to compensate KCC in accordance with the terms  of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by KCC and the rates charged for each, and to reimburse KCC for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for KCC to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

9.      KCC shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on the Debtor, the office of the U.S. Trustee, counsel for the Debtor, counsel for Wells Fargo, N.A.,

2821558.1

counsel for any official committee, if any, monitoring the expenses of the Debtor and any party-in-interest who specifically requests service of the monthly invoices.

10.     The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices, and that the parties may seek resolution from the Court if resolution is not achieved.

11.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of KCC under this Order shall be an administrative expense of the Debtor's estate.

12.     KCC may apply its retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount, and thereafter, KCC may hold its retainer under the Engagement Agreement during this Chapter 11 case as security for the payment of fees and expenses under the Engagement Agreement.

13.     The Debtor shall indemnify KCC under the terms of the Engagement Agreement, provided that KCC shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Agreement for services other than the services provided under the Engagement Agreement, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Court.

14.     KCC shall serve notice of the commencement of this Chapter 11 Case and the initial 11 U.S.C. § 341 meeting (the "**341 Meeting**") of creditors.  KCC shall obtain the necessary form notice from the Clerk's Office and shall not modify the form notice without the Court's consent.  Any claims bar date notice must be approved by the Court prior to being issued by KCC.  KCC is directed to coordinate the service of the notice of

2821558.1

commencement of this Chapter 11 case and the initial 341 Meeting with the Clerk's Office, to ensure that service is in compliance with the Local Bankruptcy Rules.

15.   Pursuant to section 105(a) of the Bankruptcy Code, the Court may set a status conference at any time to discuss or review the operations of KCC in connection with this Order and to address any matters regarding the Court's records and the proofs of claim register.   The Court may issue additional or supplemental orders as necessary and appropriate.

16.   Notwithstanding anything to the contrary in the Engagement Agreement, the Debtor shall have no obligation to indemnify KCC, or provide contribution or reimbursement to KCC, for any claim or expense that is either:  (i) judicially determined (the determination having become final) to have arisen from KCC's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtor alleges the breach of KCC's contractual obligations if the Court determines that indemnification, contribution or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co., et al.,* 315 F.3d 217 (3d Cir. 2003), or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which KCC should not receive indemnity, contribution or reimbursement under the terms of the Engagement Agreement as modified by this Order.

17.   If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this Chapter 11 case (that order having become a final order no longer subject to appeal), or (ii) the entry of an order closing this Chapter 11 case, KCC believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification,

5

contribution and/or reimbursement obligations under the Engagement Agreement (as modified by this Order), including without limitation the advancement of defense costs, KCC must file an application therefore in this Court, and the Debtor may not pay any such amounts to KCC before the entry of an order by this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by KCC for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify KCC. All parties in interest shall retain the right to object to any demand by KCC for indemnification, contribution or reimbursement.

18.     KCC shall comply with all relevant statutory provisions and rules of procedure, including Local Rules, general orders, and applicable guidelines.

19.     In the event KCC is unable to provide the services set out in this order, KCC will immediately notify the Clerk and Debtor's attorneys and cause to have all original proofs of claim and computer  information turned over to another claims, noticing and ballot agent with the advice and consent of the Clerk and Debtor's attorneys.

20.     Debtor's counsel shall notify both the Clerk and KCC within seven (7) days of an order of dismissal or conversion of this Chapter 11 case.

21.     At the conclusion of this Chapter 11 case or upon termination of KCC's services, the Debtor must obtain a termination order to terminate the services of KCC. KCC is responsible for archiving the claims with the Federal Archives Record Administration, if applicable.

2821558.1

22.     The Debtor may submit a separate retention application, pursuant to section 327 of the Bankruptcy Code and/or any applicable law, for work that is to be performed by KCC that is not specifically authorized by this Order.

23.     The Debtor and KCC are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

24.     Notwithstanding any term in the Engagement Agreement to the contrary, the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

25.     KCC shall not cease providing claims processing services during this Chapter 11 case for any reason, including nonpayment, without an order of the Court.

26.     In the event of any inconsistency between the Engagement Agreement, the Application and this Order, this Order shall govern.

27.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or other Bankruptcy Rules, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

Dated this ____ day of _____, 2017.


_____
United States Bankruptcy Judge

2821558.1

## **EXHIBIT B**

**(Declaration of Robert Jordan)**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re: | Case No.:  17-30112 |
| Vanity Shop of Grand Forks, Inc., | Chapter 11 |
| Debtor. | |

## DECLARATION OF ROBERT JORDAN IN SUPPORT OF DEBTOR'S APPLICATION FOR AN ORDER APPOINTING KURTZMAN CARSON CONSULTANTS, LLC AS CLAIMS, NOTICING AND BALLOT AGENT FOR THE DEBTOR-IN-POSSESSION PURSUANT TO 28 U.S.C. § 156(C), NUNC PRO TUNC TO THE PETITION DATE

I, Robert Jordan, under penalty of perjury, declare as follows:

1.      I am the Managing Director of Corporate Restructuring Services of Kurtzman Carson Consultants, LLC ("**KCC**")[1], a company specializing in the administration of large bankruptcy cases.  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.      This declaration (the "**Declaration**") is made in support of the Debtor's *Application for an Order Appointing Kurtzman Carson Consultants, LLC as Claims, Noticing and Ballot Agent for the Debtor-In-Possession Pursuant to 28 U.S.C. § 156(c),* Nunc Pro Tunc *to the Petition Date* (the "**Application**").

3.      As custodian of the Court's records pursuant to 28 U.S.C. § 156(c), KCC will perform, at the request of the Clerk, the claims, noticing and ballot related services specified

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application or First Day Declaration, as applicable.

in the Application and the Engagement Agreement.  In addition, at the Debtor's request, KCC will perform such other noticing, claims, balloting, administrative, technical, and support services specified in the Application and the Engagement Agreement.

4.      KCC is a bankruptcy administrator that specializes in providing comprehensive Chapter 11 administrative services including noticing, claims processing, balloting and other related services critical to the effective administration of Chapter 11 cases.  KCC is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex Chapter 11 cases.  KCC has developed efficient and cost-effective methods to handle properly the voluminous mailings associated with the noticing, claims processing and balloting portions of chapter 11 cases to ensure the orderly and fair treatment of creditors, equity security holders and all parties in interest.  Further, KCC will work with the Clerk's Office to ensure that such methodology conforms to all of the Court's procedures, the Local Rules and the provisions of any orders entered by this Court.

5.      KCC has substantial experience in matters of this size and complexity and has acted as the official notice, claims and solicitation agent in many large bankruptcy cases in other districts nationwide.  *See, e.g.*, *In re Peabody Energy Corporation, et al.*, No. 16-42529 (Bankr. E.D. Mo. Apr. 13, 2016); *In re Falcon Prods., Inc.*, No. 05-41108 (Bankr. E.D. Mo. March 10, 2005) (Docket No. 255); *see also In re Alpha Natural Res., Inc.*, No. 15 33896 (Bankr. E.D. Va. Aug. 5, 2015) (Docket No. 93); *In re Walter Energy, Inc.*, No. 15 02741 (Bankr. N.D. Ala. July 15, 2015) (Docket No. 55); *Azure Midstream Partners, LP, et al.*, Case No. 17-30461 (Bankr. S.D. Tex. Jan. 30, 2017); *Forbes Energy Services, Ltd., et al.*,

2821558.1

Case No. 17-20023 (Bankr. S.D. Tex. Jan. 22, 2017); *Erickson Incorporated, et al.*, No. 16-34393 (Bankr. N.D. Tex. Nov. 11, 2016); *AstroTurf, LLC*, No. 16-41504 (Bankr. N.D. Ga. June 28, 2016) *In re AMF Bowling Worldwide, Inc.*, No. 12 36495 (Bankr. E.D. Va. Nov. 14, 2012) (Docket No. 61); *In re Old HB (f/k/a Hostess Brands, Inc.)*, No. 12-22052 (Bankr. S.D.N.Y. Jan. 27, 2012 (Docket No. 201); *In re Eastman Kodak Co.*, No. 12-10202 (Bankr. S.D.N.Y. Jan. 19, 2012) (Docket No. 47); *In re Movie Gallery, Inc.*, No. 10 30696 (Bankr. E.D. Va. Feb. 3, 2010) (Docket No. 73); *In re Circuit City Stores, Inc.*, No. 08 35653 (Bankr. E.D. Va. Nov. 12, 2008) (Docket No. 108).

6.   I represent, among other things, that:

a.   KCC neither holds nor represents any interest adverse to the Debtor's estate in connection with any matters for which KCC will be employed;

b.   I am not related or connected to and, to the best of my knowledge, no other professional of KCC is related to or connected to any United States Bankruptcy Judge for the District of North Dakota or the U.S. Trustee or to any employee in the offices thereof;

c.   KCC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims, Noticing and Ballot Agent in this Chapter 11 case.

d.   By accepting employment in this Chapter 11 case, KCC waives any right to receive compensation from the United States government in its capacity as the Claims, Noticing and Ballot Agent in this Chapter 11 case;

e.   In KCC's capacity as the Claims, Noticing and Ballot Agent in this Chapter 11 case, KCC is not an agent of the United States and is not acting on behalf of the United States;

f.   KCC will not employ any past or present employees of the Debtor in connection with its work as the Claims, Noticing and Ballot Agent in this Chapter 11 case;

3

g.  In its capacity as Claims, Noticing and Ballot Agent in this Chapter 11 case, KCC will not intentionally misrepresent any fact to any person;

h.  KCC shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers; and

i.  None of the services provided by KCC as Claims, Noticing and Ballot Agent shall be at the expense of the Clerk.

7.  To the best of my knowledge and belief, and based solely upon information provided to me by the Debtor, and except as provided herein, neither KCC, nor any employee of KCC, holds or represents any interest materially adverse to the Debtor, its estate or its creditors with respect to matters upon which KCC is to be engaged.

8.  To the best of my knowledge and belief, and based solely upon information provided to me by the Debtor and except as provided herein, neither KCC, nor any employee of KCC, has any materially adverse connections to the Debtor, its creditors or equity interest holders, or other relevant parties, their respective attorneys and accountants that would conflict with the scope of KCC's retention or would create any interest adverse to the Debtor's estate or any other party-in-interest.

9.  The Engagement Agreement, which is attached as **Exhibit C** to the Application, sets forth the fees KCC charges for the services it will provide to the Debtor. The proposed compensation arrangement is consistent with, and typical of, arrangements of KCC and its competitor firms to provide claims, noticing and ballot agent services in chapter 11 cases.

10.  KCC requests that the undisputed fees and expenses incurred by KCC in the performance of the above services be treated as administrative expenses of the Debtor's

2821558.1

chapter 11 estate pursuant to 28 U.S.C. § 156(c) and and 503(b)(1)(A) and be paid in the ordinary course of business and without further application to or order of the Court.

11.    I caused to be submitted for review by our conflicts system the names of certain material creditors and parties in interest in this Chapter 11 case identified by the Debtor.  The results of the conflict check were compiled and reviewed by KCC professionals under my supervision.  At this time, and as set forth in further detail herein, KCC is not aware of any relationship that would present a disqualifying conflict of interest.  Should KCC discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, KCC will use reasonable efforts to file promptly a supplemental declaration.

12.    KCC is an indirect subsidiary of Computershare Limited.  Computershare Limited is a financial services and technologies provider for the global securities industry. Within the Computershare corporate structure, KCC operates as a separate, segregated business unit.  As such, any relationships that Computershare Limited and its affiliates maintain do not create an interest of KCC that would be materially adverse to the Debtor's estate or any class of creditors or equity security holders.

13.    To the best of my knowledge, and based solely upon information provided to me by the Debtor, and except as provided herein, neither KCC nor any of its professionals, has any materially adverse connection to the Debtor, its creditors or other relevant parties. KCC may have relationships with certain of the Debtor's creditors as vendors or in connection with cases in which KCC serves or has served in a neutral capacity as Claims, Noticing and Ballot Agent for another Chapter 11 debtor.

2821558.1

14.    KCC has and will continue to represent clients in matters unrelated to this Chapter 11 case.  In addition, KCC has and will continue to have relationships in the ordinary course of its business with certain vendors, professionals and other parties in interest that may be involved in the Debtor's Chapter 11 case in matters unrelated to this case.  KCC may also provide administrative services to entities or persons that may be creditors or parties in interest in this Chapter 11 case, which services do not directly relate to, or have any direct connection with, this Chapter 11 case or the Debtor.

15.    KCC and its personnel in their individual capacities regularly utilize the services of law firms, accounting firms and financial advisors.  Such firms engaged by KCC or its personnel may appear in Chapter 11 cases representing the Debtor or parties in interest.  All engagements where such firms represent KCC or its personnel in their individual capacities are unrelated to this Chapter 11 case.

16.    To the best of my knowledge, neither KCC nor any of its partners or employees represents any interest materially adverse to the Debtor's estate with respect to any matter upon which KCC is to be engaged.  Based on the foregoing, I believe that KCC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code. Prior to the Petition Date, the Debtor provided KCC a retainer in the amount of $30,000.00 in connection with prepetition services and has paid prepetition fees and expenses in the amount of $7,000.  KCC seeks to hold the remainder of the retainer under the Engagement Agreement during this Chapter 11 case as security for the payment of fees and expenses under the Engagement Agreement.

6

2821558.1

17.     KCC will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

18.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Dated this <u>26th</u> day of February, 2017.

_____
Robert Jordan, Managing Director of Corporate Restructuring Services

7

# **EXHIBIT C**

**(Engagement Agreement)**

2821558.1



# KCC AGREEMENT FOR SERVICES

This Agreement is entered into as of the 6th day of February 2017, between Vanity Shop of Grand Forks Inc. (together with its affiliates and subsidiaries, the "Company"),[1] and Kurtzman Carson Consultants LLC (together with its affiliates and subcontractors, "KCC"). In consideration of the premises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**Terms and Conditions**

I.      SERVICES

A.      KCC agrees to provide the Company with consulting services regarding noticing, claims management and reconciliation, plan solicitation, balloting, disbursements and any other services agreed upon by the parties or otherwise required by applicable law, government regulations or court rules or orders.

B.      KCC further agrees to provide (i) computer software support and training in the use of the support software, (ii) KCC's standard reports as well as consulting and programming support for the Company requested reports, (iii) program modifications, (iv) data base modifications, and/or (v) other features and services in accordance with the fees outlined in a pricing schedule provided to the Company (the "KCC Fee Structure").

C.      Without limiting the generality of the foregoing, KCC may, upon request by the Company, (i) provide a communications plan including, but not limited to, preparation of communications materials, dissemination of information and a call center staffed by KCC and/or (ii) provide confidential on-line workspaces or virtual data rooms and publish documents to such workspaces or data rooms (which publication shall not be deemed to violate the confidentiality provisions of this Agreement).

D.      The price listed for each service in the KCC Fee Structure represents a bona fide proposal for such services, which may be accepted in whole or in part.  Services will be provided when requested by the Company or required by applicable law, government regulations or court rules or orders.  Services are mutually exclusive and are deemed delivered and accepted by the Company when provided by KCC.

E.      The Company acknowledges and agrees that KCC will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "Company Parties") with respect to the services being provided under this Agreement.  The parties agree that KCC may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.  The Company agrees and understands that KCC shall not provide the Company or any other party with any legal advice.

---

[1] The term Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in its chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



# KCC AGREEMENT FOR SERVICES

II.    PRICES, CHARGES AND PAYMENT

A.    KCC agrees to charge and the Company agrees to pay KCC for its services at the rates and prices set by KCC that are in effect as of the date of this Agreement and in accordance with the KCC Fee Structure.  KCC's prices are generally adjusted periodically to reflect changes in the business and economic environment and are inclusive of all charges.  KCC reserves the right to reasonably increase its prices, charges and rates annually.  If any price increases exceed 10%, KCC will give thirty (30) days written notice to the Company.

B.    In addition to fees and charges for services, the Company agrees to pay KCC's reasonable transportation, lodging, and meal expenses incurred in connection with services provided under this Agreement.

C.    In addition to all fees for services and expenses hereunder, the Company shall pay to KCC (i) any fees and charges related to, arising out of, or as a result of any error or omission made by the Company or the Company Parties, as mutually determined by KCC and the Company, and (ii) all taxes that are applicable to this Agreement or that are measured by payments made under this Agreement and are required to be collected by KCC or paid by KCC to a taxing authority.

D.    Where the Company requires services that are unusual or beyond the normal business practices of KCC, or are otherwise not provided for in the KCC Fee Structure, the cost of such services shall be charged to the Company at a competitive rate.

E.    KCC agrees to submit its invoices to the Company monthly and the Company agrees that the amount invoiced is due and payable upon the Company's receipt of the invoice. KCC's invoices will contain reasonably detailed descriptions of charges for both hourly (fees) and non-hourly (expenses) case specific charges. Where total invoice amounts are expected to exceed $10,000 in any single month and KCC reasonably believes it will not be paid, KCC may require advance payment from the Company due and payable upon demand and prior to the performance of services hereunder.  If any amount is unpaid as of thirty (30) days from the receipt of the invoice, the Company further agrees to pay a late charge, calculated as one and one-half percent (1-1/2%) of the total amount unpaid every thirty (30) days.  In the case of a dispute in the invoice amount, the Company shall give written notice to KCC within ten (10) days of receipt of the invoice by the Company.  The undisputed portion of the invoice will remain due and payable immediately upon receipt of the invoice.  Late charges shall not accrue on any amounts in dispute or any amounts unable to be paid due to Court order or applicable law.  Unless otherwise agreed to in writing, the fees for print notice and media publication (including commissions) must be paid at least three (3) days in advance of those fees and expenses being incurred.

F.    In the event that the Company files for protection pursuant to chapter 11 of the United States Bankruptcy Code (a "Chapter 11 Filing"), the parties intend that KCC shall be employed pursuant to 28 U.S.C. § 156(c) to the extent possible and otherwise in accordance with applicable Bankruptcy law and that all amounts due under this Agreement shall, to the extent possible, be paid as administrative expenses of the Company's chapter 11 estate.  As soon as practicable following a Chapter 11 Filing (and otherwise in accordance with applicable law and rules and orders of the Bankruptcy Court), the Company shall cause pleadings to be filed with the Bankruptcy Court seeking entry of an order or orders approving this Agreement (the "Retention

2



# KCC AGREEMENT FOR SERVICES

Order"). The form and substance of the pleadings and the Retention Order shall be reasonably acceptable to KCC. If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, KCC will continue to be paid for its services in accordance with the terms of this Agreement. The parties recognize and agree that if there is a conflict between the terms of this Agreement and the terms of the Retention Order, the terms of the Retention Order shall govern during the chapter 11 or other proceeding.

G.      To the extent permitted by applicable law, KCC shall receive a retainer in the amount of $20,000 (the "Retainer") that may be held by KCC as security for the Company's payment obligations under the Agreement. The Retainer is due upon execution of this Agreement. KCC shall be entitled to hold the Retainer until the termination of the Agreement. Following termination of the Agreement, KCC shall return to the Company any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

III.    RIGHTS OF OWNERSHIP

A.      The parties understand that the software programs and other materials furnished by KCC pursuant to this Agreement and/or developed during the course of this Agreement by KCC are the sole property of KCC. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. The Company agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B.      The Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or KCC's performance of its services developed or utilized during the term of this Agreement by KCC shall be the exclusive property of KCC. Fees and expenses paid by the Company do not vest in the Company any rights in such property, it being understood that such property is only being made available for the Company's use during and in connection with the services provided by KCC under this Agreement.

IV.     NON-SOLICITATION

The Company agrees that neither it nor its subsidiaries or other affiliated companies shall directly or indirectly solicit for employment, employ or otherwise retain employees of KCC during the term of this Agreement and for a period of twelve (12) months after termination of this Agreement unless KCC provides prior written consent to such solicitation or retention.

V.      CONFIDENTIALITY

Each of KCC and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.

3



# KCC AGREEMENT FOR SERVICES

VI.    SUSPENSION OF SERVICE AND TERMINATION

A.    This Agreement shall remain in force until terminated or suspended by either party (i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice for Cause (defined herein).  As used herein, the term "Cause" means (i) gross negligence or willful misconduct of KCC that causes serious and material harm to the Company's reorganization under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay KCC invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of invoices or unpaid services in excess of the retainer held by KCC where KCC reasonably believes it will not be paid.

B.    In the event that this contract is terminated, regardless of the reason for such termination, KCC shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions and KCC shall provide all necessary staff, services and assistance required for an orderly transfer.  The Company agrees to pay for such services in accordance with KCC's then existing prices for such services.  If such termination occurs following entry of the Retention Order, the Company shall immediately seek entry of an order (in form and substance reasonably acceptable to KCC) that discharges KCC from service and responsibility in the Company's bankruptcy case.

C.    Any data, programs, storage media or other materials furnished by the Company to KCC or received by KCC in connection with the services provided under the terms of this Agreement may be retained by KCC until the services provided are paid for, or until this Agreement is terminated with the services paid in full.  The Company shall remain liable for all fees and expenses imposed under this Agreement as a result of data or physical media maintained or stored by KCC.  KCC shall dispose of the data and media in the manner requested by the Company.  The Company agrees to pay KCC for reasonable expenses incurred as a result of the disposition of data or media.  If the Company has not utilized KCC's services under this Agreement for a period of at least ninety (90) days,  KCC may dispose of the data or media, and be reimbursed by the Company for the expense of such disposition, after giving the Company thirty (30) days' notice.  Notwithstanding any term herein to the contrary, following entry of the Retention Order, the disposition of any data or media by KCC shall be in accordance with any applicable instructions from the clerk of the Bankruptcy Court, local Bankruptcy Court rules and orders of the Bankruptcy Court.

VII.    SYSTEM IMPROVEMENTS

KCC strives to provide continuous improvements in the quality of service to its clients.  KCC, therefore, reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the KCC data center serving the Company, so long as any such changes do not materially interfere with ongoing services provided to the Company in connection with the Company's chapter 11 case.

4

# KCC AGREEMENT FOR SERVICES

VIII.    BANK ACCOUNTS

At the Company's request and subject to Court approval following any chapter 11 filing, KCC may be authorized to establish accounts with financial institutions in the name of and as agent for the Company.  To the extent that certain financial products are provided to the Company pursuant to KCC's agreement with financial institutions, KCC may receive compensation from such financial institutions for the services KCC provides pursuant to such agreement.

IX.     LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.      The Company shall indemnify and hold KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, judgments, liabilities and expenses (including reasonable counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to KCC's performance under this Agreement. Such indemnification shall exclude Losses resulting from KCC's gross negligence or willful misconduct.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against any Indemnified Party. The Company shall notify KCC in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that the Company becomes aware of with respect to the services provided by KCC under this Agreement.  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

B.      Except as provided herein, KCC's liability to the Company or any person making a claim through or under the Company for any Losses of any kind, even if KCC has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of KCC, shall be limited to the total amount billed or billable to the Company for the portion of the particular work which gave rise to the alleged Loss.  In no event shall KCC be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.  In no event shall KCC's liability to the Company for any Losses, whether direct or indirect, arising out of this Agreement exceed the total amount billed to the Company and actually paid to KCC for the services contemplated under the Agreement; provided, however, that this limitation shall not apply to the Company during any chapter 11 case in which the Company is a debtor.

C.      The Company is responsible for the accuracy of the programs, data and information it or any Company Party submits for processing to KCC and for the output of such information.  KCC does not verify information provided by the Company and, with respect to the preparation of schedules and statements, all decisions are at the sole discretion and direction of the Company. The Company reviews and approves all schedules and statements filed on behalf of, or by, the Company; KCC bears no responsibility for the accuracy or contents therein.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs and data submitted by the Company to KCC.

D.      The Company agrees that except as expressly set forth herein, KCC makes no representations or warranties, express or implied, including, but not limited to, any implied or

5

# KCC AGREEMENT FOR SERVICES

express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

X.      FORCE MAJEURE

Whenever performance by KCC of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, strike, lock-out or other industrial or transportation disturbance, fire, lack of materials, law, regulation or ordinance, war or war condition, or by reason of any other matter beyond KCC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

XI.     INDEPENDENT CONTRACTORS

The Company and KCC are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

XII.    NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or electronic mail or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:

| | |
|---|---|
| Kurtzman Carson Consultants LLC | Company |
| 2335 Alaska Ave. | Address |
| El Segundo, CA  90245 | City, ST Zip |
| Attn:  Drake D. Foster | Attn: |
| Tel: (310) 823-9000 | Tel: |
| Fax: (310) 823-9133 | Fax: |
| E-Mail: dfoster@kccllc.com | |

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

XIII.   APPLICABLE LAW

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of California.

XIV.    ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, other agreements, and communications oral and written between the parties relating to the subject

# KCC AGREEMENT FOR SERVICES

matter of this Agreement.  The Company represents that it has the authority to enter into this Agreement, and the Agreement is non-dischargeable under any applicable statute or law.  If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.  This Agreement may be modified only by a written instrument duly executed by an authorized representative of the Company and an officer of KCC.

## XV.   COUNTERPARTS; EFFECTIVENESS

This Agreement may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties, which delivery may be made by exchange of copies of the signature page by facsimile or electronic mail.

## XVI.   ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned without written consent by KCC to a wholly-owned subsidiary or affiliate of KCC.

## XVII.   ATTORNEYS' FEES

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorneys' fees, court costs, and all other related expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

[SIGNATURE PAGE FOLLOWS]



## KCC AGREEMENT FOR SERVICES

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants LLC

BY: Evan Gershbein                    DATE: 2/9/17
TITLE: Senior Vice President

Vanity Shop of Grand Forks Inc.

BY:                                   DATE:
TITLE: