## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re: | Case No.:  17-30112 |
| Vanity Shop of Grand Forks, Inc., | Chapter 11 |
| Debtor. | |

## APPLICATION FOR AN ORDER APPOINTING KURTZMAN CARSON CONSULTANTS, LLC AS ADMINISTRATIVE AGENT FOR THE DEBTOR-IN-POSSESSION PURSUANT TO 11 U.S.C. §§ 327(A), 328, AND 330 AND RULES 2014 AND 2016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, *NUNC PRO TUNC* TO THE PETITION DATE

Vanity Shop of Grand Forks, Inc. (the "**Debtor**") in the above-captioned chapter 11 case hereby files this application (this "**Application**"), pursuant to sections 327(a), 328 and 330 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking entry of an order, in substantially the form attached hereto as **Exhibit C** (the "**Retention Order**"): (i) authorizing and approving the retention and appointment of Kurtzman Carson Consultants, LLC ("**KCC**") as administrative agent (the "**Administrative Agent**") for the Debtor in this Chapter 11 case, effective as of the Petition Date (as defined herein); and (ii) providing any additional relief required in order to effectuate the foregoing.  In support of this Application, the Debtor relies on the *Declaration of Jill Motschenbacher in Support of Chapter 11 Petition and First Day Motions* (the "**First Day Declaration**") concurrently filed herewith and the declaration of Robert Jordan (the "**Jordan Declaration**"), attached hereto

as **Exhibit A** and incorporated by reference herein.  In further support of this Application, the Debtor respectfully represents as follows:

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this Chapter 11 case and this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and may be determined by this Court.  Venue of this Chapter 11 case and this Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are 28 U.S.C. § 156(c), and Bankruptcy Rule 2002.

**BACKGROUND**

3.      On the date hereof (the "**Petition Date**"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtor is authorized to continue to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  To date, no trustee, examiner or statutory committee has been appointed in this Chapter 11 case.  Additional factual background relating to the Debtor's business, capital structure and the commencement of this Chapter 11 case is set forth in detail in the First Day Declaration.

4.      Although the Debtor has not yet filed its schedules of assets and liabilities, Debtor knows that there will be in excess of two thousand individuals and entities to be noticed. In view of the number of claimants and the complexity of the Debtor's business, the Debtor submits that the appointment of an Administrative Agent is both necessary and in the best interests of both the Debtor's estate and its creditors.

2

2823206.1

## RELIEF REQUESTED

5.      By this Application, the Debtor seeks an order authorizing it to employ and retain KCC as Administrative Agent for the Debtor pursuant to the terms and conditions of the KCC Agreement for Services (the "**Engagement Agreement**") annexed hereto as **Exhibit B** and incorporated by reference herein, *nunc pro tunc* to the Petition Date.

6.      In addition to this Application, the Debtor has filed an application under 28 U.S.C. § 156(c) for authorization to retain KCC to serve as the claims, noticing and ballot agent in this Chapter 11 case (the "**Section 156(c) Application**").   Given that the administration of this Chapter 11 case will require KCC to perform duties outside the scope of 28 U.S.C. § 156(c), the Debtor supplements the Section 156(c) Application with this Application.

7.      11 U.S.C. § 327(a) provides that a debtor, subject to Court approval:

. . . [M[ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).  Moreover, section 328 of the Bankruptcy Code provides that a debtor, subject to Court approval, "may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

8.      Bankruptcy Rule 2014(a) requires that an application for retention include:

. . . [S]pecific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm]'s connections with the debtor,

3

2823206.1

creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed.R.Bank.P. 2014.

## KCC'S QUALIFICATIONS

9.     KCC is a bankruptcy administrator that specializes in providing comprehensive chapter 11 administrative services including noticing, claims processing, balloting and other related services critical to the effective administration of Chapter 11 cases.  KCC is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex Chapter 11 cases.  KCC has developed efficient and cost-effective methods to handle properly the voluminous mailings associated with the noticing, claims processing and balloting portions of chapter 11 cases to ensure the orderly and fair treatment of creditors, equity security holders and all parties in interest.  Further, KCC will work with the Clerk's Office to ensure that such methodology conforms to all of the Court's procedures, the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of North Dakota (the "**Local Bankruptcy Rules**") and the provisions of any orders entered by this Court.  KCC has provided identical or substantially similar administrative services in other chapter 11 cases.  *See, e.g., In re Peabody Energy Corporation, et al.*, No. 16-42529 (Bankr. E.D. Mo. Apr. 13, 2016); *In re Falcon Prods., Inc.*, No. 05-41108 (Bankr. E.D. Mo. March 10, 2005) (Docket No. 255); *see also In re Alpha Natural Res., Inc.*, No. 15-33896 (Bankr. E.D. Va. Aug. 5, 2015) (Docket No. 93); *In re Walter Energy, Inc.*, No. 15-02741 (Bankr. N.D. Ala. July 15, 2015) (Docket No. 55); *Azure Midstream Partners, LP, et al.*, Case No. 17-30461 (Bankr. S.D. Tex. Jan. 30, 2017);

2823206.1

*Forbes Energy Services, Ltd., et al.*, Case No. 17-20023 (Bankr. S.D. Tex. Jan. 22, 2017);

*Erickson Incorporated, et al.*, No. 16-34393 (Bankr. N.D. Tex. Nov. 11, 2016); *AstroTurf,*

*LLC*, No. 16-41504 (Bankr. N.D. Ga. June 28, 2016) *In re AMF Bowling Worldwide, Inc.*,

No. 12-36495 (Bankr. E.D. Va. Nov. 14, 2012) (Docket No. 61); *In re Old HB (f/k/a Hostess*

*Brands, Inc.)*, No. 12-22052 (Bankr. S.D.N.Y. Jan. 27, 2012 (Docket No. 201); *In re*

*Eastman Kodak Co.*, No. 12-10202 (Bankr. S.D.N.Y. Jan. 19, 2012) (Docket No. 47); *In re*

*Movie Gallery, Inc.*, No. 10-30696 (Bankr. E.D. Va. Feb. 3, 2010) (Docket No. 73); *In re*

*Circuit City Stores, Inc.*, No. 08-35653 (Bankr. E.D. Va. Nov. 12, 2008) (Docket No. 108).

## SERVICES TO BE RENDERED

10.     The Debtor seeks to retain KCC to provide, among other things, the following

bankruptcy administrative services (the "**Administrative Services**"), if and to the extent

requested:

   a.    Assisting with, among other things, solicitation, balloting, and tabulation and calculation of votes, as well as preparing any appropriate reports, as required in furtherance of confirmation of plans(s) of reorganization (the "**Balloting Services**");

   b.     Generating an official ballot certification and testifying, if necessary, in support of the ballot tabulation results;

   c.    In connection with the Balloting Services, handling requests for documents from parties-in-interest, including, if applicable, brokerage firms and bank back-offices and institutional holders;

   d.    Gathering data in conjunction with the preparation, and assisting with the preparation, of the Debtor's schedules of assets and liabilities and statements of financial affairs;

   e.    Managing and coordinating any distributions pursuant to a confirmed plan of reorganization or otherwise; and

   f.    Provide such other processing, solicitation, balloting and other administrative services described in the Services Agreement, but not

5

included in the Section 156(c) Application, as may be requested from time to time by the Debtor or the Court.

## **COMPENSATION**

11.     The Debtor proposes to compensate KCC in accordance with the Engagement Agreement.  The Engagement Agreement sets forth the proposed hourly consulting fee rates, which are subject to adjustment based on KCC's ordinary billing practices.  Consistent with company policy with respect to its other clients, KCC will charge the Debtor for all Administrative Services provided and for other charges and disbursements incurred in the rendition of services.  These charges and disbursements include (without limitation) costs for photocopying, electronic data management services, including scanning and document imaging, travel, travel-related expenses, meals, messengers, couriers, postage and other fees related to the services.

12.     During the course of this Chapter 11 case, KCC will apply to the Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred in connection with the services rendered in connection with the Engagement Agreement in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any order entered in this Chapter 11 case governing the professional compensation and reimbursement for services rendered and charges and disbursements incurred.

13.     The Debtor believes that the rates to be charged by KCC for its services are competitive with the rates charged by its competitors.  Prior to the Petition Date, the Debtor provided KCC a retainer in the amount of $30,000.00 in connection with prepetition services and has paid prepetition fees and expenses in the amount of $7,000 out of said retainer.

6

2823206.1

## DISINTERESTEDNESS

14.    The Debtor understands that except as otherwise set forth in the accompanying Jordan Declaration and other than in connection with this Chapter 11 Case, KCC and its employees (i) do not have any connection with the Debtor, its affiliates, its creditors, or any other party in interest, or their respective attorneys and accountants, the United State Trustee for the District of North Dakota or any person employed in the office of the same, or any judge in the Bankruptcy Court for the District of North Dakota or any person employed in the offices of the same with respect to any matter for which it will be employed; (ii) are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code; and (iii) do not hold or represent any interest adverse to the estate.

15.    KCC will conduct an ongoing review of its files to ensure that no conflict or other disqualifying circumstances exist or arise.  If any new facts are discovered, KCC will supplement its disclosure to the Court.  KCC will not share any compensation to be paid by the Debtor in connection with KCC's services as Administrative Agent to the Debtor with any other person, other than the principals and employees of KCC, to the extent required by section 504 of the Bankruptcy Code

16.    For the foregoing reasons, the Debtor believes that the retention of KCC is in its best interests and the best interests of its estate, creditors and other parties-in-interest, and therefore, the Debtor desires to retain and employ KCC as its Administrative Agent upon the terms set forth therein in the Engagement Agreement.

2823206.1

## <u>REQUEST FOR EXPEDITED RELIEF</u>

17.     The Debtor is requesting expedited relief on this Application.  The Debtor has

scheduled and served a number of First Day Motions designed to facilitate an orderly

transition to Chapter 11.  The granting of this Application on an expedited basis will enable

the Debtor to efficiently transition into its role as debtor in possession, and provide the

Debtor, the Clerk's Office, and KCC with clarity and certainty regarding each party's

respective role and responsibility with respect to Administrative Services in this case.  If

expedited relief is not granted, there will likely be confusion regarding which documents are

being served and mailed by which entity, which could result in delays in notice to parties in

interest.

## <u>NOTICE</u>

18.     Notice of this Motion has been given to: (i) the Office of the United States

Trustee for the District of North Dakota; (ii) counsel to Wells Fargo Bank, National

Association; (iii) holders of the twenty (20) largest unsecured claims on a consolidated basis

against Debtor; (iv) counsel to any committee appointed in this case; and (v) any party that

has requested notice pursuant to Bankruptcy Rule 2002.  Debtor submits, in light of the

nature of the relief requested, no other or further notice need be given.

## <u>CONCLUSION</u>

19.     WHEREFORE, the Debtor requests entry of an order, in the form annexed

hereto as **<u>Exhibit C</u>**, authorizing KCC to act as Administrative Agent to the Debtor, and

granting the relief requested herein and such other and further relief as the Court deems just

and proper.

2823206.1

Dated this ___ day of March, 2017.

_____

By: Jill Motschenbacher
Its: Chief Financial Officer

**VOGEL LAW FIRM**

BY: _____

Jon R. Brakke (#03554)
jbrakke@vogellaw.com
Caren W. Stanley (#06100)
cstanley@vogellaw.com
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
Telephone:  701.237.6983
*PROPOSED COUNSEL TO  DEBTOR IN
POSSESSION*

2823206.1

Dated this ___ day of February, 2017.


_____

By: Jill Motschenbacher
Its: Chief Financial Officer


**VOGEL LAW FIRM**


BY: */s/ Caren W. Stanley* _____
    Jon R. Brakke (#03554)
    jbrakke@vogellaw.com
    Caren W. Stanley (#06100)
    cstanley@vogellaw.com
    218 NP Avenue
    PO Box 1389
    Fargo, ND  58107-1389
    Telephone:  701.237.6983
    *PROPOSED COUNSEL TO  DEBTOR IN*
    *POSSESSION*

9

# **EXHIBIT A**

**(Declaration of Robert Jordan)**

2823206.1

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re: | Case No.:  17-30112 |
| Vanity Shop of Grand Forks, Inc., | Chapter 11 |
| Debtor. | |

## DECLARATION OF ROBERT JORDAN IN SUPPORT OF DEBTOR'S APPLICATION FOR AN ORDER APPOINTING KURTZMAN CARSON CONSULTANTS, LLC AS ADMINISTRATIVE AGENT FOR THE DEBTOR-IN-POSSESSION PURSUANT TO §§ 327(A), 328 AND 330 AND RULES 2014 AND 2016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, *NUNC PRO TUNC* TO THE PETITION DATE

I, Robert Jordan, under penalty of perjury, declare as follows:

1.      I am the Managing Director of Corporate Restructuring Services of Kurtzman Carson Consultants, LLC ("**KCC**")[1], a company specializing in the administration of large bankruptcy cases.  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.      This declaration (the "**Declaration**") is made in support of the Debtor's *Application for an Order Appointing Kurtzman Carson Consultants, LLC as Administrative Agent for the Debtor-In-Possession Pursuant to Sections 327(a), 328 and 330 and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure,* Nunc Pro Tunc *to the Petition Date* (the "**Application**").

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application or First Day Declaration, as applicable.

2823206.1

3.      As administrative agent, KCC will perform the Administrative Services specified in the Engagement Agreement.

4.      The fees that KCC will charge in connection with the Administrative Services it renders to the Debtor are set forth in the Engagement Agreement.  KCC's rates are competitive and comparable to the rates KCC's competitors charge for similar services and are reasonable given the quality of KCC's services the KCC's bankruptcy expertise.  KCC will seek reimbursement from the Debtor in accordance with the terms of the Engagement Agreement.

5.      KCC will apply to the Court for allowance of compensation and reimbursement of out-of-pocket expenses incurred after the Petition Date in connection with its services as Administrative Agent to the Debtor, subject to Court approval and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable procedures and order of this Court.

6.      KCC is a bankruptcy administrator that specializes in providing comprehensive chapter 11 administrative services including noticing, claims processing, balloting and other related services critical to the effective administration of chapter 11 cases. KCC is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex Chapter 11 cases.  KCC has substantial experience in matters of this size and complexity.  *See, e.g.*, *In re Peabody Energy Corporation, et al.*, No. 16-42529 (Bankr. E.D. Mo. Apr. 13, 2016); *In re Falcon Prods., Inc.*, No. 05-41108 (Bankr. E.D. Mo. March 10, 2005) (Docket No. 255); *see also In re Alpha Natural Res., Inc.*, No. 15 33896 (Bankr. E.D. Va. Aug. 5, 2015) (Docket No. 93); *In*

2823206.1

*re Walter Energy, Inc.*, No. 15 02741 (Bankr. N.D. Ala. July 15, 2015) (Docket No. 55);

*Azure Midstream Partners, LP, et al.*, Case No. 17-30461 (Bankr. S.D. Tex. Jan. 30, 2017);

*Forbes Energy Services, Ltd., et al.*, Case No. 17-20023 (Bankr. S.D. Tex. Jan. 22, 2017);

*Erickson Incorporated, et al.*, No. 16-34393 (Bankr. N.D. Tex. Nov. 11, 2016); *AstroTurf,*

*LLC*, No. 16-41504 (Bankr. N.D. Ga. June 28, 2016) *In re AMF Bowling Worldwide, Inc.*,

No. 12 36495 (Bankr. E.D. Va. Nov. 14, 2012) (Docket No. 61); *In re Old HB (f/k/a Hostess*

*Brands, Inc.)*, No. 12-22052 (Bankr. S.D.N.Y. Jan. 27, 2012 (Docket No. 201); *In re*

*Eastman Kodak Co.*, No. 12-10202 (Bankr. S.D.N.Y. Jan. 19, 2012) (Docket No. 47); *In re*

*Movie Gallery, Inc.*, No. 10 30696 (Bankr. E.D. Va. Feb. 3, 2010) (Docket No. 73); *In re*

*Circuit City Stores, Inc.*, No. 08 35653 (Bankr. E.D. Va. Nov. 12, 2008) (Docket No. 108).

      7.      To the best of my knowledge and belief, and based solely upon information provided to me by the Debtor, and except as provided herein, neither KCC, nor any employee of KCC, holds or represents any interest materially adverse to the Debtor, its estate or its creditors with respect to matters upon which KCC is to be engaged.

      8.      To the best of my knowledge and belief, and based solely upon information provided to me by the Debtor and except as provided herein, neither KCC, nor any employee of KCC, has any materially adverse connections to the Debtor, its creditors or equity interest holders, or other relevant parties, their respective attorneys and accountants that would conflict with the scope of KCC's retention or would create any interest adverse to the Debtor's estate or any other party-in-interest.

      9.      I caused to be submitted for review by our conflicts system the names of certain material creditors and parties in interest in this Chapter 11 case identified by the

2823206.1

Debtor.  The results of the conflict check were compiled and reviewed by KCC professionals under my supervision.   At this time, and as set forth in further detail herein, KCC is not aware of any relationship that would present a disqualifying conflict of interest.   Should KCC discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, KCC will use reasonable efforts to file promptly a supplemental declaration.

10.    KCC is an indirect subsidiary of Computershare Limited.   Computershare Limited is a financial services and technologies provider for the global securities industry. Within the Computershare corporate structure, KCC operates as a separate, segregated business unit.   As such, any relationships that Computershare Limited and its affiliates maintain do not create an interest of KCC that would be materially adverse to the Debtor's estate or any class of creditors or equity security holders.

11.    To the best of my knowledge, and based solely upon information provided to me by the Debtor, and except as provided herein, neither KCC nor any of its professionals, has any materially adverse connection to the Debtor, its creditors or other relevant parties. KCC may have relationships with certain of the Debtor's creditors as vendors or in connection with cases in which KCC serves or has served in a neutral capacity as Claims, Noticing and Ballot Agent for another Chapter 11 debtor.

12.    KCC has and will continue to represent clients in matters unrelated to this Chapter 11 case.   In addition, KCC has and will continue to have relationships in the ordinary course of its business with certain vendors, professionals and other parties in interest that may be involved in the Debtor's Chapter 11 case in matters unrelated to this

4

case. KCC may also provide administrative services to entities or persons that may be creditors or parties in interest in this Chapter 11 case, which services do not directly relate to, or have any direct connection with, this Chapter 11 case or the Debtor.

13.     KCC and its personnel in their individual capacities regularly utilize the services of law firms, accounting firms and financial advisors. Such firms engaged by KCC or its personnel may appear in Chapter 11 cases representing the Debtor or parties in interest. All engagements where such firms represent KCC or its personnel in their individual capacities are unrelated to this Chapter 11 case.

14.     To the best of my knowledge, neither KCC nor any of its partners or employees represents any interest materially adverse to the Debtor's estate with respect to any matter upon which KCC is to be engaged. Based on the foregoing, I believe that KCC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code. Prior to the Petition Date, the Debtor provided KCC a retainer in the amount of $30,000.00 in connection with prepetition services in connection with retention under the Section 156(c) Application and has paid prepetition fees and expenses in the amount of $7,000 out of said retainer. KCC seeks to hold the remainder of the retainer under the Engagement Agreement during this Chapter 11 case as security for the payment of fees and expenses under the Engagement Agreement.

15.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

5

2823206.1

Dated this 26th day of February, 2017.

_____
Robert Jordan, Managing Director of Corporate
Restructuring Services

2823206.1

# **EXHIBIT B**

**(Engagement Agreement)**



# KCC AGREEMENT FOR SERVICES

This Agreement is entered into as of the 6th day of February 2017, between Vanity Shop of Grand Forks Inc. (together with its affiliates and subsidiaries, the "Company"),[1] and Kurtzman Carson Consultants LLC (together with its affiliates and subcontractors, "KCC"). In consideration of the premises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**Terms and Conditions**

I.        SERVICES

A.        KCC agrees to provide the Company with consulting services regarding noticing, claims management and reconciliation, plan solicitation, balloting, disbursements and any other services agreed upon by the parties or otherwise required by applicable law, government regulations or court rules or orders.

B.        KCC further agrees to provide (i) computer software support and training in the use of the support software, (ii) KCC's standard reports as well as consulting and programming support for the Company requested reports, (iii) program modifications, (iv) data base modifications, and/or (v) other features and services in accordance with the fees outlined in a pricing schedule provided to the Company (the "KCC Fee Structure").

C.        Without limiting the generality of the foregoing, KCC may, upon request by the Company, (i) provide a communications plan including, but not limited to, preparation of communications materials, dissemination of information and a call center staffed by KCC and/or (ii) provide confidential on-line workspaces or virtual data rooms and publish documents to such workspaces or data rooms (which publication shall not be deemed to violate the confidentiality provisions of this Agreement).

D.        The price listed for each service in the KCC Fee Structure represents a bona fide proposal for such services, which may be accepted in whole or in part.  Services will be provided when requested by the Company or required by applicable law, government regulations or court rules or orders.  Services are mutually exclusive and are deemed delivered and accepted by the Company when provided by KCC.

E.        The Company acknowledges and agrees that KCC will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "Company Parties") with respect to the services being provided under this Agreement.  The parties agree that KCC may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.  The Company agrees and understands that KCC shall not provide the Company or any other party with any legal advice.

---

[1] The term Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in its chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



# KCC AGREEMENT FOR SERVICES

II.    PRICES, CHARGES AND PAYMENT

A.    KCC agrees to charge and the Company agrees to pay KCC for its services at the rates and prices set by KCC that are in effect as of the date of this Agreement and in accordance with the KCC Fee Structure.  KCC's prices are generally adjusted periodically to reflect changes in the business and economic environment and are inclusive of all charges.  KCC reserves the right to reasonably increase its prices, charges and rates annually.  If any price increases exceed 10%, KCC will give thirty (30) days written notice to the Company.

B.    In addition to fees and charges for services, the Company agrees to pay KCC's reasonable transportation, lodging, and meal expenses incurred in connection with services provided under this Agreement.

C.    In addition to all fees for services and expenses hereunder, the Company shall pay to KCC (i) any fees and charges related to, arising out of, or as a result of any error or omission made by the Company or the Company Parties, as mutually determined by KCC and the Company, and (ii) all taxes that are applicable to this Agreement or that are measured by payments made under this Agreement and are required to be collected by KCC or paid by KCC to a taxing authority.

D.    Where the Company requires services that are unusual or beyond the normal business practices of KCC, or are otherwise not provided for in the KCC Fee Structure, the cost of such services shall be charged to the Company at a competitive rate.

E.    KCC agrees to submit its invoices to the Company monthly and the Company agrees that the amount invoiced is due and payable upon the Company's receipt of the invoice. KCC's invoices will contain reasonably detailed descriptions of charges for both hourly (fees) and non-hourly (expenses) case specific charges. Where total invoice amounts are expected to exceed $10,000 in any single month and KCC reasonably believes it will not be paid, KCC may require advance payment from the Company due and payable upon demand and prior to the performance of services hereunder.  If any amount is unpaid as of thirty (30) days from the receipt of the invoice, the Company further agrees to pay a late charge, calculated as one and one-half percent (1-1/2%) of the total amount unpaid every thirty (30) days.  In the case of a dispute in the invoice amount, the Company shall give written notice to KCC within ten (10) days of receipt of the invoice by the Company.  The undisputed portion of the invoice will remain due and payable immediately upon receipt of the invoice.  Late charges shall not accrue on any amounts in dispute or any amounts unable to be paid due to Court order or applicable law.  Unless otherwise agreed to in writing, the fees for print notice and media publication (including commissions) must be paid at least three (3) days in advance of those fees and expenses being incurred.

F.    In the event that the Company files for protection pursuant to chapter 11 of the United States Bankruptcy Code (a "Chapter 11 Filing"), the parties intend that KCC shall be employed pursuant to 28 U.S.C. § 156(c) to the extent possible and otherwise in accordance with applicable Bankruptcy law and that all amounts due under this Agreement shall, to the extent possible, be paid as administrative expenses of the Company's chapter 11 estate.  As soon as practicable following a Chapter 11 Filing (and otherwise in accordance with applicable law and rules and orders of the Bankruptcy Court), the Company shall cause pleadings to be filed with the Bankruptcy Court seeking entry of an order or orders approving this Agreement (the "Retention

2

## KCC AGREEMENT FOR SERVICES

Order"). The form and substance of the pleadings and the Retention Order shall be reasonably acceptable to KCC. If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, KCC will continue to be paid for its services in accordance with the terms of this Agreement. The parties recognize and agree that if there is a conflict between the terms of this Agreement and the terms of the Retention Order, the terms of the Retention Order shall govern during the chapter 11 or other proceeding.

G.       To the extent permitted by applicable law, KCC shall receive a retainer in the amount of $20,000 (the "Retainer") that may be held by KCC as security for the Company's payment obligations under the Agreement. The Retainer is due upon execution of this Agreement. KCC shall be entitled to hold the Retainer until the termination of the Agreement. Following termination of the Agreement, KCC shall return to the Company any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

III.     RIGHTS OF OWNERSHIP

A.       The parties understand that the software programs and other materials furnished by KCC pursuant to this Agreement and/or developed during the course of this Agreement by KCC are the sole property of KCC. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. The Company agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B.       The Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or KCC's performance of its services developed or utilized during the term of this Agreement by KCC shall be the exclusive property of KCC. Fees and expenses paid by the Company do not vest in the Company any rights in such property, it being understood that such property is only being made available for the Company's use during and in connection with the services provided by KCC under this Agreement.

IV.      NON-SOLICITATION

The Company agrees that neither it nor its subsidiaries or other affiliated companies shall directly or indirectly solicit for employment, employ or otherwise retain employees of KCC during the term of this Agreement and for a period of twelve (12) months after termination of this Agreement unless KCC provides prior written consent to such solicitation or retention.

V.       CONFIDENTIALITY

Each of KCC and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.

3



# KCC AGREEMENT FOR SERVICES

VI.     SUSPENSION OF SERVICE AND TERMINATION

A.      This Agreement shall remain in force until terminated or suspended by either party
(i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice
for Cause (defined herein).  As used herein, the term "Cause" means (i) gross negligence or
willful misconduct of KCC that causes serious and material harm to the Company's
reorganization under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay
KCC invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of
invoices or unpaid services in excess of the retainer held by KCC where KCC reasonably believes
it will not be paid.

B.      In the event that this contract is terminated, regardless of the reason for such termination,
KCC shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy
Court, to maintain an orderly transfer of record keeping functions and KCC shall provide all
necessary staff, services and assistance required for an orderly transfer.  The Company agrees to
pay for such services in accordance with KCC's then existing prices for such services.  If such
termination occurs following entry of the Retention Order, the Company shall immediately seek
entry of an order (in form and substance reasonably acceptable to KCC) that discharges KCC
from service and responsibility in the Company's bankruptcy case.

C.      Any data, programs, storage media or other materials furnished by the Company to KCC
or received by KCC in connection with the services provided under the terms of this Agreement
may be retained by KCC until the services provided are paid for, or until this Agreement is
terminated with the services paid in full.  The Company shall remain liable for all fees and
expenses imposed under this Agreement as a result of data or physical media maintained or stored
by KCC.  KCC shall dispose of the data and media in the manner requested by the Company.
The Company agrees to pay KCC for reasonable expenses incurred as a result of the disposition
of data or media.  If the Company has not utilized KCC's services under this Agreement for a
period of at least ninety (90) days,  KCC may dispose of the data or media, and be reimbursed by
the Company for the expense of such disposition, after giving the Company thirty (30) days'
notice.  Notwithstanding any term herein to the contrary, following entry of the Retention Order,
the disposition of any data or media by KCC shall be in accordance with any applicable
instructions from the clerk of the Bankruptcy Court, local Bankruptcy Court rules and orders of
the Bankruptcy Court.

VII.    SYSTEM IMPROVEMENTS

KCC strives to provide continuous improvements in the quality of service to its clients.  KCC,
therefore, reserves the right to make changes in operating procedure, operating systems,
programming languages, general purpose library programs, application programs, time period of
accessibility, types of terminal and other equipment and the KCC data center serving the
Company, so long as any such changes do not materially interfere with ongoing services provided
to the Company in connection with the Company's chapter 11 case.

# KCC AGREEMENT FOR SERVICES

VIII.    BANK ACCOUNTS

At the Company's request and subject to Court approval following any chapter 11 filing, KCC may be authorized to establish accounts with financial institutions in the name of and as agent for the Company.  To the extent that certain financial products are provided to the Company pursuant to KCC's agreement with financial institutions, KCC may receive compensation from such financial institutions for the services KCC provides pursuant to such agreement.

IX.    LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.    The Company shall indemnify and hold KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, judgments, liabilities and expenses (including reasonable counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to KCC's performance under this Agreement. Such indemnification shall exclude Losses resulting from KCC's gross negligence or willful misconduct.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against any Indemnified Party. The Company shall notify KCC in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that the Company becomes aware of with respect to the services provided by KCC under this Agreement.  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

B.    Except as provided herein, KCC's liability to the Company or any person making a claim through or under the Company for any Losses of any kind, even if KCC has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of KCC, shall be limited to the total amount billed or billable to the Company for the portion of the particular work which gave rise to the alleged Loss.  In no event shall KCC be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.  In no event shall KCC's liability to the Company for any Losses, whether direct or indirect, arising out of this Agreement exceed the total amount billed to the Company and actually paid to KCC for the services contemplated under the Agreement; provided, however, that this limitation shall not apply to the Company during any chapter 11 case in which the Company is a debtor.

C.    The Company is responsible for the accuracy of the programs, data and information it or any Company Party submits for processing to KCC and for the output of such information.  KCC does not verify information provided by the Company and, with respect to the preparation of schedules and statements, all decisions are at the sole discretion and direction of the Company. The Company reviews and approves all schedules and statements filed on behalf of, or by, the Company; KCC bears no responsibility for the accuracy or contents therein.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs and data submitted by the Company to KCC.

D.    The Company agrees that except as expressly set forth herein, KCC makes no representations or warranties, express or implied, including, but not limited to, any implied or

# KCC AGREEMENT FOR SERVICES

express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

X.   FORCE MAJEURE

Whenever performance by KCC of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, strike, lock-out or other industrial or transportation disturbance, fire, lack of materials, law, regulation or ordinance, war or war condition, or by reason of any other matter beyond KCC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

XI.   INDEPENDENT CONTRACTORS

The Company and KCC are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

XII.   NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or electronic mail or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:

Kurtzman Carson Consultants LLC          Company
2335 Alaska Ave.                         Address
El Segundo, CA  90245                    City, ST Zip
Attn:  Drake D. Foster                   Attn:
Tel: (310) 823-9000                      Tel:
Fax: (310) 823-9133                      Fax:
E-Mail: dfoster@kccllc.com

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

XIII.   APPLICABLE LAW

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of California.

XIV.   ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, other agreements, and communications oral and written between the parties relating to the subject

6

KCC

# KCC AGREEMENT FOR SERVICES

matter of this Agreement.  The Company represents that it has the authority to enter into this Agreement, and the Agreement is non-dischargeable under any applicable statute or law.  If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.  This Agreement may be modified only by a written instrument duly executed by an authorized representative of the Company and an officer of KCC.

## XV.   COUNTERPARTS; EFFECTIVENESS

This Agreement may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties, which delivery may be made by exchange of copies of the signature page by facsimile or electronic mail.

## XVI.   ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned without written consent by KCC to a wholly-owned subsidiary or affiliate of KCC.

## XVII.   ATTORNEYS' FEES

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorneys' fees, court costs, and all other related expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

[SIGNATURE PAGE FOLLOWS]



## KCC AGREEMENT FOR SERVICES

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants LLC

BY: Evan Gershbein          DATE: 2/9/17
TITLE:  Senior Vice President

Vanity Shop of Grand Forks Inc.

BY:                          DATE:
TITLE:

8

# EXHIBIT C

**(Proposed Retention Order)**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re: | Case No.:  17-30112 |
| Vanity Shop of Grand Forks, Inc., | Chapter 11 |
| Debtor. | |

### ORDER AUTHORIZING RETENTION AND APPOINTMENT OF KURTZMAN CARSON CONSULTANTS, LLC AS ADMINISTRATIVE AGENT FOR THE DEBTOR-IN-POSSESSION PURSUANT TO §§ 327(A), 328 AND 330 AND RULES 2014 AND 2016 OF THE FEDERAL RULES OF CIVIL PROCEDURE, *NUNC PRO TUNC* TO THE PETITION DATE

Upon consideration of the *Application for an Order Appointing Kurtzman Carson Consultants, LLC as Administrative Agent for the Debtor-In-Possession Pursuant to Sections 327(a), 328 and 330 and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure,* Nunc Pro Tunc *to the Petition Date* (the "**Application**")[1] of the Debtor for an order authorizing the retention and appointment of KCC as administrative agent, pursuant to the terms set forth in the Application; and upon the declaration of Robert Jordan submitted in support of the Application; and upon consideration of the First Day Declaration; and the Court being satisfied, based on the representations made in the Application and the Jordan Declaration, that KCC and its professionals are "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code, neither hold nor represent any interest adverse to the Debtor and its estate; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 1334 and 157; and consideration of the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application or First Day Declaration, as applicable.

2823206.1

Application and the requested relief being a core proceeding under 28 U.S.C. § 157(b); and

venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Application having been provided; and it appearing that no other or further notice need

be provided; and the relief requested in the Application being in the best interests of the

Debtor, its estate, its creditors and other parties in interest; and the Court having reviewed the

Application; and the Court having determined that the legal and factual bases set forth in the

Application establish just cause for the relief granted herein; and after due deliberation and

sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The relief requested in the Application is hereby GRANTED.

2.      The Debtor is hereby authorized to employ and retain KCC as its

Administrative Agent *nunc pro tunc* to the Petition Date on the terms set forth in the

Application, the Engagement Agreement and this Order.  KCC is authorized to provide the

Administrative Services described in the Application.

3.      The terms of the Engagement Agreement, including without limitation, the fee

provisions, are reasonable terms and conditions of employment and are approved.

4.      With respect to the Administrative Services to be provided as Administrative

Agent for the Debtor, KCC shall apply to the Court for allowances of compensation and

reimbursement of out-of-pocket expenses incurred in this Chapter 11 case after the filing of

the petition in accordance with the applicable provisions of the Bankruptcy Code, the

Bankruptcy Rules, the Local Rules, and any order entered in this Chapter 11 case governing

2

professional compensation and reimbursement for services rendered and charges and disbursements incurred.

5.      The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

6.      KCC is authorized and empowered to take all actions necessary to comply with all duties set forth in the Application and this Order.

7.      Notwithstanding anything to the contrary in the Engagement Agreement, the Application, or the Jordan Declaration, the Debtor shall indemnify KCC under the terms of the Engagement Agreement; subject the following:

> a.      KCC shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Agreement for services other than the services provided under the Engagement Agreement, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Court.

> b.      Notwithstanding anything to the contrary in the Engagement Agreement, the Debtor shall have no obligation to indemnify KCC, or provide contribution or reimbursement to KCC, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from KCC's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtor alleges the breach of KCC's contractual obligations if the Court determines that indemnification, contribution or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co., et al.*, 315 F.3d 217 (3d Cir. 2003), or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which KCC should not receive indemnity, contribution or reimbursement under the terms of the Engagement Agreement as modified by the Retention Order.

> c.      If, before the earlier of (i) the entry of an order confirming a Chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), or (ii) the entry of an order closing this Chapter 11 case, KCC believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution and/or reimbursement obligations under the Engagement Agreement

3

(as modified by the Retention Order), including without limitation the advancement of defense costs, KCC must file an application therefore in this Court, and the Debtor may not pay any such amounts to KCC before the entry of an order by this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by KCC for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify KCC. All parties in interest shall retain the right to object to any demand by KCC for indemnification, contribution or reimbursement.

d.      There shall be no limitation of liability in favor of KCC during the pendency of the Debtor's Chapter 11 case.

8.      In the event of an inconsistency between the Application, the Engagement Agreement and this Order, this Order shall govern.

9.      Notwithstanding the possible applicability of Bankruptcy Rules 6004, 7062, or 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10.     This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated this ____ day of _____, 2017.

_____
United States Bankruptcy Judge

2823206.1

4