# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re: | Case No.:  17-30112 |
| Vanity Shop of Grand Forks, Inc., | Chapter 11 |
| Debtor. | |

## DEBTOR'S MOTION FOR ENTRY OF ORDER: (I) AUTHORIZING CONTINUED USE OF CASH MANAGEMENT SYSTEM; (II) AUTHORIZING USE OF PREPETITION BANK ACCOUNTS, ACCOUNT CONTROL AGREEMENTS, AND CERTAIN PAYMENT METHODS; AND (III) WAIVING THE REQUIREMENTS OF 11 U.S.C. § 345(B) ON AN INTERIM BASIS

Vanity Shop of Grand Forks, Inc. ("**Debtor**") in the above-captioned chapter 11 case hereby moves the Court ("**Motion**") for entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to Sections 105, 345, 363, 364(b), and 503(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.* ("**Bankruptcy Code**"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"): (i) authorizing Debtor's continued use of its existing cash management system; (ii) authorizing Debtor to continue using prepetition bank accounts and account control agreements, and using debit, wire, and ACH payments; and (iii) waiving the requirements of 11 U.S.C. § 345(b) on an interim basis. In support of this Motion, Debtor relies on the Declaration of Jill Motschenbacher in Support of Chapter 11 Petition and First Day Motions ("**First Day Declaration**"), which was filed contemporaneously with this Motion and is incorporated herein by reference. In further Support of this Motion, Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Chapter 11 Case and this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this Chapter 11 Case and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are Sections 105(a), 345, 363, 364(b), and 503(b) of the Bankruptcy Code, and Bankruptcy Rules 6003 and 6004.

## BACKGROUND

**I.      GENERAL**

3.      On the date hereof ("**Petition Date**"), Debtor commenced a voluntary case under Chapter 11 of the Bankruptcy Code.  Debtor is authorized to continue to operate its business and manage its property as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  To date, no trustee, examiner, or statutory committee has been appointed in this Chapter 11 case.  Additional factual background relating to Debtor's business, capital structure, and the commencement of this Chapter 11 case is set forth in further detail in the First Day Declaration.

**II.      CASH MANAGEMENT SYSTEM**

4.      As of the Petition Date, Debtor, in the ordinary course of its business operations, employs a total of approximately 149 bank accounts (collectively "**Bank Accounts**") which are maintained at Wells Fargo Bank, N.A. ("**Wells Fargo**") and certain

2

other banks (collectively "**Banks**")[1] that operate in connection with a centralized cash management system ("**Cash Management System**"). Through the Bank Accounts, Debtor efficiently collects, transfers, and disburses funds generated from its operations on a daily basis. Debtor believes the Bank Accounts are generally in a financially stable banking institution with the Federal Deposit Insurance Corporation or other appropriate government-guaranteed deposit protection insurance.

5.        **Exhibit B**, attached hereto, sets forth for each of the Bank Accounts the name and address of the Bank at which the account is maintained, the account number (last four digits only), and a brief description of the type of the account. Debtor manages its cash receipts, transfers, and disbursements through the Bank Accounts. In doing so, Debtor routinely deposits, withdraws, and otherwise transfers funds to, from, and between the Bank Accounts by various methods including check, wire transfer, automated clearing house transfer, and electronic funds transfer.

6.        As indicated on **Exhibit B**, each of Debtor's store locations maintains a separate deposit account into which each individual store's receipts and collections are deposited daily (collectively "**Store Deposit Accounts**"). The Store Deposit Accounts are swept regularly into a master depository account ("**Master Depository Account**") maintained at Wells Fargo. The frequency of the sweeps into the Master Depository Account varies for each Store Deposit Account—Wells Fargo Store Deposit Accounts are swept daily, and Store Deposit Accounts with other institutions are swept weekly.

---

[1] Debtor maintains multiple accounts with non-Wells Fargo banks, which are utilized primarily as store depository accounts. All such accounts ultimately flow into a Wells Fargo account as outlined herein.

2813204.4

7.     Funds in the Master Depository Account are swept on a daily basis by Wells Fargo, in its capacity as administrative agent and lender under Debtor's loan agreement ("**Wells Fargo Agreement**"), and are applied by Wells Fargo towards Debtor's payment obligations under the Wells Fargo Agreement.  On a regular basis, Debtor requests draws under the Wells Fargo Agreement, with the availability of funds dependent upon Debtor's borrowing base under the applicable loan documents.  Funds drawn by Debtor under the Wells Fargo Agreement are deposited into an operating account maintained by Debtor at Wells Fargo ("**Operating Account**").

8.     In addition, Debtor maintains three disbursement accounts (collectively "**Disbursement Accounts**") which are used for disbursement to satisfy obligations, excepting payroll obligations, which are satisfied through the Operating Account.  The Disbursement Accounts are zero-balance accounts, and a sufficient amount of funds necessary to make such payments are regularly transferred from the Operating Account to the Disbursements Accounts.

9.     On a daily basis, Debtor processes large numbers of transactions through the Cash Management System.  Debtor maintains current and accurate records of all transactions processed through the Cash Management System.  Debtor's Cash Management System is similar to those commonly employed by corporate retail enterprises of comparable size and complexity.  Among other benefits, the Cash Management System permits Debtor to accurately monitor cash availability at all times.  The Cash Management System also permits Debtor to centrally manage and track the collection and transfer of funds, which reduces administrative burden and expense and maximizes interest income.

2813204.4

10.     Pursuant to the Cash Management System, Debtor is party to a number of processing agreements (collectively "**Processing Agreements**") with Heartland Acquisition LLC, Bank of America Merchant Services, LLC, American Express, Authorize.net, Chase Paymentech, and Paypal (collectively "**Processing Companies**") that enable Debtor to accept credit cards as payment for its merchandise.   These Processing Agreements are essential to Debtor's business, as they allow Debtor's customers to purchase merchandise on credit.   This operation generally is taken for granted by modern consumers, and its loss would significantly impair Debtor's ability to serve, attract, and retain those customers.

11.     In certain instances, the Processing Companies deduct certain of their fees from settlement one day in the week following the end of Debtor's accounting period. Debtor estimates as of the Petition Date, approximately $45,000.00 in fees to the Processing Companies are outstanding.   Because credit card sales account for a significant percentage of Debtor's total sales, it is critical to the Cash Management System that there be no disruptions in these payments.   Debtor seeks authority from the Court to pay all prepetition unpaid fees due to the Processing Companies and to continue such payments to the Processing Companies in the ordinary course of Debtor's business.

12.     Under the Processing Agreements, upon the return to Debtor of merchandise purchased using a credit card, Debtor is obligated to refund to the Processing Companies the purchase price of the returned merchandise plus certain adjustments (collectively, the "**Chargebacks**") against daily settlement amounts.   It is possible that certain Chargebacks incurred by Debtor immediately prior to the Petition Date may not have been fully netted out prior to the Petition Date.   Moreover, although Debtor believes any Chargebacks arising after

5

the Petition Date would be postpetition obligations of Debtor, it may be argued that Chargebacks arising after the Petition Date nevertheless should be considered prepetition obligations where the returned merchandise was purchased from Debtor prior to the Petition Date.  In such circumstances, to the extent that the netting of the parties' obligations would not constitute recoupment, the setoff of Chargebacks arguably may be foreclosed by the automatic stay imposed by Section 362(a) of the Bankruptcy Code.  By this Motion, Debtor seeks authority to pay all Chargebacks obligations, and to continue to pay Chargebacks in the ordinary course of business.

13.     Moreover, as part of Debtor's Cash Management System, Debtor customarily pays for a variety of its Employee's business-related expenses incurred in performing their obligations ("**Business Expenses**").  In most cases, the Business Expenses are billed to various corporate credit cards ("**Purchase Cards**").  Approximately seven (7) Purchase Cards have been issued, and Employees currently use them to charge expenses for goods and services purchased for, or incidental to, Debtor's business, including for charges related to business travel.  Receipts from purchases made with Purchase Cards are entered into an electronic system, and both the purchasing Employee and his or her supervisor approve such purchases.  Statements are forwarded directly to Debtor, and Employees are not personally liable for such business-related charges.

14.     Because it is essential to the sustained operation of Debtor's business and the overall Cash Management System that it be permitted to continue paying for Business Expenses incurred on the Purchase Cards, debtor seeks relief to make payment on account of all accrued but unpaid Business Expenses outstanding on the Petition Date.  Although there

6

is no way to determine the precise amount of outstanding Business Expenses at any moment because expenses may not have yet been submitted, Debtor estimates approximately one month of Business Expenses remain outstanding as of the Petition Date. On average, the amount of Business Expenses incurred by Debtor on a monthly basis is approximately $18,000.00.

15.     In addition to the Cash Management System and Bank Accounts, Debtor uses in the ordinary course of its business numerous business forms (including but not limited to checks, deposit slips, letterhead, contracts, purchase orders, and invoices). Debtor has a supply of these forms on hand. It would be expensive, wasteful, and disruptive to Debtor's business to destroy all of these forms and order new ones.

## RELIEF REQUESTED

16.     Debtor hereby requests entry of an order, pursuant to Sections 105, 345, 363, 364(b), and 503(b) of the Bankruptcy Code, and Bankruptcy Rules 6003 and 6004: (i) authorizing Debtor's continued use of the Cash Management System; (ii) authorizing Debtor to continue using prepetition bank accounts and account control agreements, and using debit, wire, and ACH payments; and (iii) waiving the requirements of 11 U.S.C. § 345(b) on an interim basis.

## BASIS FOR RELIEF REQUESTED

## I.     MAINTAINING THE EXISTING CASH MANAGEMENT SYSTEM IS IMPORTANT TO DEBTOR'S OPERATIONS AND CHAPTER 11 EFFORTS

17.     In light of the substantial size and complexity of Debtor's operations, the maintenance of the Cash Management System is important for the preservation and maximization of the value of Debtor's assets.

2813204.4

18.    Debtor's request for authorization to continue to use the Cash Management System is consistent with Section 363(c)(1) of the Bankruptcy Code, which authorizes a debtor in possession to "use property of the estate in the ordinary course of business, without notice or a hearing." 11 U.S.C. § 363(c)(1). Section 363(c)(1) is intended to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business. *See, e.g.*, *In re Metropolitan Cosmetic & Reconstructive Surgical Clinic, P.A.*, 115 B.R. 185, 188 (Bankr. D. Minn. 1990); *see also In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992); *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007). Included within the purview of Section 363(c) is a debtor's ability to continue the routine transactions necessitated by its cash management system. *See Amdura Nat'l Distrib. Co. v. Amdura Corp. (In reAmdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996). Nevertheless, Debtor brings this Motion out of an abundance of caution, to the extent any aspect of the Cash Management System could be considered as outside the ordinary course of business for purposes of Section 363(c).

19.    Courts have noted an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *rev'd on other grounds*, 997 F.2d 1039 (3d Cir. 1993); *see also Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1114 (5th Cir. 1995) (finding cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets"). The United States Court of Appeals for the Third Circuit has agreed, emphasizing requiring a debtor to maintain separate accounts

8

"would be a huge administrative burden and economically inefficient." *In re Columbia Gas Sys., Inc.*, 997 F.2d 1039, 1061 (3d Cir. 1993). For these reasons, Debtor should be permitted to continue use of the Cash Management System.

## II. THE COURT SHOULD AUTHORIZE DEBTOR TO MAINTAIN EXISTING BANK ACCOUNTS AND CONTINUE TO USE ITS EXISTING CHECK STOCK

20. The Office of the United States Trustee has established operating guidelines for debtors in possession relating to cash management systems ("**UST Guidelines**"). The UST Guidelines, which are designed to provide a clear demarcation between a debtor's prepetition and postpetition operations, require, among other things, a debtor (a) close all existing bank accounts, (b) open new accounts designated as "debtor in possession" accounts, (c) make all post-petition disbursements by check, and (d) include the words "debtor in possession" and certain other information on all checks." *See* 28 U.S.C. § 586; UST Guidelines.

21. In larger Chapter 11 cases, courts have routinely waived the requirements of the UST Guidelines, recognizing they are often impractical and potentially detrimental to a debtor's postpetition business operations and restructuring efforts. *See, e.g.*, *Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1114 (5th Cir. 1995) (finding the cash management system allows the debtor "to administer more efficiently and effectively its financial operations and assets"); *Official Comm. Of Unsecured Creditors of the Columbia Gas Transmission Corp. v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys., Inc.)*, 997 F.2d 1039, 1061 (3d Cir. 1993) (finding a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient").

2813204.4

22.     Bankruptcy judges in Minnesota have routinely waived the strict enforcement of bank account closing requirements imposed pursuant to the guidelines adopted by the U.S. Trustee.  *See, e.g., In re Magnetation LLC,* No. 15-50307 (Bankr. D. Minn. May 7, 2015) (Docket No. 58); *In re Archdiocese of Saint Paul and Minneapolis*, No. 15-30125 (Bankr. D. Minn. Jan 16, 2015) (Docket #. 17); *In re Wagstaff Minnesota, Inc.*, No. 11-43073 (Bankr. D. Minn. May 5, 2011) (Docket No. 37); *In re Genmar Holdings, Inc.*, No. 09-43537 (Bankr. D. Minn. June 4, 2009) (Docket No. 24); *In re Intrepid U.S.A., Inc.*, No. 04-40416 (Bankr. D. Minn. Mar. 24, 2004) (Docket No. 65).

23.     Given the size and complexity of Debtor's business operations, any disruption of its accounting and cash management procedures would be enormously burdensome and disruptive, and could adversely impact Debtor's efforts to reorganize.  At this critical juncture, Debtor must be able to conduct "business as usual" to the extent possible.  To this end, it is essential Debtor be permitted to continue to use its existing Cash Management System and Bank Accounts.

24.     The Cash Management System and Bank Accounts provide numerous benefits to Debtor and its estate.  Among other benefits, the Cash Management System and Bank Accounts permit Debtor to centrally control and monitor the collection and transfer of funds, ensure cash availability, reconcile intercompany transactions, and reduce administrative burden and expense.  Debtor has the capability through the Cash Management System to distinguish between prepetition and postpetition transactions and to reconcile intercompany transactions without the necessity of closing the Bank Accounts and opening new ones.

Moreover, Debtor has the ability to generate through the Cash Management System detailed and accurate reports.

25.     Based on the foregoing, there is good cause for to allow Debtor to operate each of the Bank Accounts as such were maintained in the ordinary course of business before the Petition Date.  Continued use of the Cash Management System and the Bank Accounts is in the best interest of Debtor's estate and no party in interest would be prejudiced in any way by the continued use.

26.     In addition, Debtor has concurrently filed several motions seeking authorization to pay prepetition obligations in the ordinary course of business.  If Debtor was required to open new accounts, it would likely be unable to timely implement the critical relief sought in those motions.  Debtor has the ability to monitor disbursements from the Bank Accounts to ensure that only those prepetition obligations expressly approved by the Court are paid.

27.     In the ordinary course of its business, Debtor uses certain pre-printed check stock.  To avoid disruption of the Cash Management System and unnecessary expense, Debtor requests it be authorized to continue to use its existing check stock, without reference to its status as debtor in possession.  Debtor submits parties in interest will not be prejudiced if Debtor is authorized to continue to use its existing checks. Debtor will be sending a notice of commencement of this Chapter 11 case to all creditors.  Most parties doing business with Debtor undoubtedly will be aware of its status as debtor in possession; thus, changing checks immediately is unnecessary and unduly burdensome.

2813204.4

28.     The Court has authority to grant the relief requested in this Motion under Section 105(a) of the Bankruptcy Code, which empowers bankruptcy courts to enter "any order, process, or judgment that is necessary or appropriate" to carry out the provisions of the Bankruptcy Code.  11 U.S.C. § 105(a).  Section 105(a) of the Bankruptcy Code codifies the "equitable power" of bankruptcy courts and provides "broad authority" to accomplish tasks important to the implementation of the Bankruptcy Code.  *See United States v. Energy Res. Co.,* 495 U.S. 545, 549 (1990) ("stating the statutory directive of Section 105(a) is "consistent with the traditional understanding that bankruptcy courts, as courts in equity, have broad authority to modify creditor-debtor relationships").

## III.    THE COURT SHOULD AUTHORIZE DEBTOR TO CONTINUE USING DEBIT, WIRE, AND ACH PAYMENTS

29.     Debtor requests the Court grant further relief from the UST Guidelines to the extent they require Debtor to make all disbursements by check.  In particular, the UST Guidelines require all receipts and all disbursements of estate funds must be made by check with a notation representing the reason for the disbursement.  As discussed above, in the ordinary course of business, Debtor conducts transactions through ACH payments and other similar methods. If Debtor's ability to conduct transactions by debit, wire, ACH payment, or other similar methods is impaired, Debtor may be unable to perform under certain contracts, its business operations may be unnecessarily disrupted, and its estate will incur additional costs.  Accordingly, Debtor submits it should be permitted to continue using debit, wire, and ACH payments.

IV.    **THE COURT SHOULD AUTHORIZE THE BANKS TO CONTINUE TO MAINTAIN, SERVICE, AND ADMINISTER THE BANK ACCOUNTS IN THE ORDINARY COURSE OF BUSINESS.**

30.    Debtor respectfully requests the Court authorize the banks and financial institutions (collectively, the "**Banks**") at which the Bank Accounts are maintained to continue to maintain, service, and administer the Bank Accounts as accounts of debtor in possession, without interruption and in the ordinary course of business. In this regard, the Banks should be authorized and directed to receive, process, honor, and pay any and all checks, ACH payments, and other instructions, and drafts payable through, drawn, or directed on the Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto.

31.    Debtor further requests the Court authorize the Banks to accept and honor all representations from Debtor as to which checks, drafts, wires, or ACH payments should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH payments are dated before or after the Petition Date. Debtor also requests, to the extent a Bank honors a prepetition check or other item drawn on any account: (i) at the direction of Debtor; (ii) in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (iii) as a result of an innocent mistake made despite the above-described protective measures, such Bank shall not be deemed to be liable to Debtor or its estate on account of such prepetition check or other item honored postpetition. Debtor respectfully submits such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise. Debtor further requests the

2813204.4

Banks be authorized to (i) honor Debtor's directions with respect to the opening and closing of any Bank Account, and (ii) accept and hold, or invest, Debtor's funds in accordance with Debtor's instructions: provided in each case that the Banks shall not have any liability to any party for relying on such representations.

32.     Moreover, Debtor requests the Court authorize (i) the Banks to charge, and Debtor to pay or honor, both prepetition and postpetition service and other fees, costs, charges, and expenses to which the Banks are entitled under the terms and in accordance with their contractual arrangements with Debtor, and (ii) charge-back returned items to the Bank Accounts, whether such items are dated before, on or subsequent to the Petition Date, in the ordinary course.   Based on historical averages, Debtor estimates approximately $25,000 in prepetition Bank service and other fees have accrued but are not yet due and owing.

## V.     CAUSE EXISTS FOR WAIVING THE DEPOSIT AND INVESTMENT GUIDELINES UNDER SECTION 345 OF THE BANKRUPTCY CODE

33.     Section 345(a) of the Bankruptcy Code authorizes deposit or investment of the money of the estate, such as cash, as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."   11 U.S.C. § 345(a). Although Section 345(a) generally requires, with respect to deposits and investments that are not "insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States," the estate must require a bond in favor of the United States secured by the undertaking of a U.S. Trustee approved corporate surety, the court is permitted to dispense with this undertaking "for cause."   11 U.S.C. § 345(b).

14

34.     The Court's ability to excuse strict performance of the requirements of Section

345(b) of the Bankruptcy Code "for cause" arises from the 1994 amendments to the

Bankruptcy Code.  The legislative history of those amendments provides, in pertinent part, as

follows:

> Section 345 of the Code governs investments of funds of bankruptcy estates.
> The purpose[] is to make sure that funds of a bankrupt that are obliged to
> creditors are invested prudently and safely with the eventual goal of being able
> to satisfy all claims against the bankruptcy estate.  Under current law, all
> investments are required to be FDIC insured, collateralized or bonded.  While
> this requirement is wise in the case of a smaller debtor with limited funds that
> cannot afford a risky investment to be lost, it can work to needlessly handcuff
> larger, more sophisticated debtors.  This section would amend the Code to
> allow the courts to approve investments other than those permitted by section
> 345(b) for just cause, thereby overruling *In re Columbia Gas Systems, Inc.*,
> 33 F.3d 294 (3d Cir. 1994).

*In re Serv. Merch. Co.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) (quoting H.R. Rep. No.

103-835, at 46-47), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3355).

35.     In determining whether the "cause" standard under Section 345(b) of the

Bankruptcy Code has been met, courts consider a "totality of the circumstances analysis,"

utilizing the following factors: (i) the sophistication of the debtors' business; (ii) the size of

the debtors' business operations; (iii) the amount of the funds involved; (iv) the bank ratings

(Moody's and Standard and Poor) of the financial institutions where the debtor in possession

funds are held; (v) the complexity of the case; (vi) the safeguards in place within the debtor's

own business of insuring the safety of the funds; (vii) the debtor's ability to reorganize in the

face of a failure of one or more of the financial institutions; (viii) the benefit to the debtor;

(ix) the harm, if any, to the estate; and (x) the reasonableness of the debtor's request for relief

2813204.4

from the Section 345(b) requirements in light of the overall circumstances of the case. *Serv. Merch.*, 240 B.R. at 896.

36.    Debtor believes it is in compliance with the requirements of Section 345(a). Nevertheless, out of an abundance of caution, Debtor requests: (i) a waiver of the deposit and investment requirements of Section 345(b) of the Bankruptcy Code to the extent such requirements are inconsistent with Debtor's current practices; (ii) that applicable institutions be authorized and directed to accept and hold or invest such funds at Debtor's direction; and (iii) that applicable institutions be authorized and directed to honor Debtor's directions with respect to the opening and closing of any Bank Account.

37.    Even if Debtor's current deposit and investment practices do not strictly comply with the approved guidelines identified in Section 345 of the Bankruptcy Code, the practices nevertheless are prudent and designed to yield the maximum reasonable net return on the funds invested, taking into account the safety of such deposits.

38.    In light of the foregoing, Debtor submits cause exists for waiver of the requirements of Section 345(b) of the Bankruptcy Code to the extent that those requirements are inconsistent with Debtor's current deposit and investment practices.  Debtor requests interim waiver of the Section 345 requirements for a period of thirty (30) days from the Petition Date.

## IMMEDIATE RELIEF IS JUSTIFIED

39.    Bankruptcy Rule 6003 provides the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr.

2813204.4

P. 6003.  Debtor submits for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to Debtor.

## WAIVER OF ANY APPLICABLE STAY

40.     Debtor also requests the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise.  Fed. R. Bankr. P. 6004(h).  As described above, the relief sought herein is necessary for Debtor to operate its business without interruption and to preserve value of its estate.  Accordingly, Debtor respectfully requests the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## NOTICE

41.     Notice of this Motion has been given to: (i) the Office of the United States Trustee for the District of North Dakota; (ii) counsel to Wells Fargo Bank, National Association; (iii) holders of the twenty (20) largest unsecured claims on a consolidated basis against Debtor; (iv) the Banks; (v) counsel to any committee appointed in this case; and (vi) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Debtor submits, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

42.     WHEREFORE, Debtor respectfully requests the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granted the relief requested herein and such other and further relief as is just and proper.

2813204.4

Dated this 1st day of March, 2017.

**VOGEL LAW FIRM**

BY: */s/ Caren W. Stanley*
    Jon R. Brakke (#03554)
    jbrakke@vogellaw.com
    Caren W. Stanley (#06100)
    cstanley@vogellaw.com
    218 NP Avenue
    PO Box 1389
    Fargo, ND  58107-1389
    Telephone:  701.237.6983
    *PROPOSED COUNSEL TO DEBTOR IN
    POSSESSION*

2813204.4

## **EXHIBIT A**

### **(Proposed Order)**

2813204.4

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re: | Case No.:  17-30112 |
| Vanity Shop of Grand Forks, Inc., | Chapter 11 |
| Debtor. | |

### ORDER: (I) AUTHORIZING CONTINUED USE OF CASH MANAGEMENT SYSTEM; (II) AUTHORIZING USE OF PREPETITION BANK ACCOUNTS, ACCOUNT CONTROL AGREEMENTS, AND CERTAIN PAYMENT METHODS; AND (III) WAIVING THE REQUIREMENTS OF 11 U.S.C. § 345(B) ON AN INTERIM BASIS

Upon the Motion[1] of Debtor for entry of an order, pursuant to Sections 105, 345, 363, 364(b), and 503(b) of the Bankruptcy Code, and Bankruptcy Rules 6003 and 6004: (i) authorizing Debtor's continued use of the Cash Management System; (ii) authorizing Debtor to continue using prepetition Bank Accounts and account control agreements and using debit, wire, and ACH payments; and (iii) waiving the requirements of 11 U.S.C. § 345(b) on an interim basis; and upon consideration of the First Day Declaration and the record of this Chapter 11 case; and it appearing this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 1334 and 157; and it appearing this is a core matter pursuant to 28 U.S.C. § 157(b)(2) and this Court may enter a final order consistent with Article III of the United States Constitution; and it appearing venue of this Chapter 11 case and of the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing due and adequate notice of the Motion has been given under the circumstances, and that no other

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

or further notice need be given; and it appearing the relief requested in the Motion is in the best interests of Debtor, its estate, its creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefore;

**IT IS HEREBY ORDERED:**

1.      The Motion is GRANTED, as set forth herein.

2.      Debtor is authorized, in its sole discretion, to: (i) continue operating the Cash Management System and honor any prepetition obligations related thereto; (ii) maintain existing Bank Accounts and business forms; (iii) maintain the ability to use debit, wire and ACH payments; and (iv) continue to deposit and invest funds in accordance with their current practices to the extent set forth herein.

3.      Debtor shall maintain records in the ordinary course of business reflecting transfers of cash, if any, so as to permit all such transactions to be ascertainable and provide copies of such records to counsel to Wells Fargo upon request.

4.      Debtors is further authorized, in its sole discretion, to: (i) continue to use, with the same account numbers, all of the Bank Accounts in existence as of the Petition Date, including those accounts identified on **Exhibit B** to the Motion; (ii) use, in its present form, all checks and other documents related to the Bank Accounts existing immediately before the Petition Date, without reference to Debtor's status as debtor in possession; (iii) treat the Bank Accounts for all purposes as accounts of Debtor as debtor-in-possession; (d) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, ACH payments, and other debits; and (e) pay any ordinary course both prepetition

2

or postpetition bank fees incurred in connection with the Bank Accounts, and to otherwise perform its obligations under the documents governing the Bank Accounts.

5.     All Banks at which the Bank Accounts are maintained are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of debtor in possession, without interruption and in the ordinary course of business.  In this regard, the Banks are authorized to receive, process, honor and pay any and all checks, ACH payments and other instructions, and drafts payable through, drawn or directed on the Bank Accounts by holders, makers or other parties entitled to issue instructions with respect thereto on account of any claim arising (i) on or after the Petition Date or (ii) prior to the Petition Date and otherwise authorized by this Court.

6.     The Processing Agreements shall be maintained and shall continue to govern the postpetition cash management relationship between the Debtors and the Processing Companies, provided, however, that nothing contained herein shall constitute an assumption of the Processing Agreements pursuant to Section 365 of the Bankruptcy Code.

7.     The Debtor is authorized to use the commercial card program under the WellsOne Commercial Card Express Agreement, dated on or around April 20, 2006 (as amended, restated, supplemented or otherwise modified from time to time, the "Card Agreement"), between Debtor and Wells Fargo Bank, N.A. ("Wells Fargo") subject to the terms and conditions thereof.  Wells Fargo is authorized to make advances from time to time to Debtor with a maximum exposure at any time up to $15,000.  All prepetition charges and fees are authorized and required to be paid.  Wells Fargo may rely on representations of Debtor with respect to its use of the commercial card program pursuant to the Card

3

Agreement, and Wells Fargo shall not have any liability to any party for relying on such representations by Debtor as provided for herein.

8.      In the course of providing cash management services to Debtor, any Bank, without further order of this Court, is authorized to (i) charge, and Debtor is authorized to pay or honor, both prepetition and postpetition service and other fees, costs, charges and expenses to which the Banks are entitled under the terms and in accordance with its prepetition contractual arrangements with Debtor, and (ii) charge-back returned items to the Bank Accounts, whether such items are dated before, on or subsequent to the Petition Date, in the ordinary course.

9.      For Banks with existing deposit agreements and/or deposit account control agreements with the Debtor, said deposit agreements shall continue to govern the postpetition cash management relationship between the Debtor and the Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect.  Either the Debtor or the Banks may, without further Order of this Court, implement changes to the cash management systems and procedures in the ordinary course of business pursuant to terms of those certain existing deposit agreements and deposit account control agreements, including, without limitation, the opening and closing of bank accounts.

10.      Notwithstanding any other provisions of this Order, any Bank may rely on the representations of Debtor with respect to whether any check, draft, wire, or other transfer drawn or issued by Debtor prior to the Petition Date should be honored pursuant this or to any order of this Court, and any Bank that honors a prepetition check or other item drawn on

4

any account that is the subject of this Order: (i) at the direction of Debtor, (ii) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (iii) as a result of an innocent mistake made despite the above-described protective measures, shall neither be deemed to be in violation of this Order nor be liable to Debtor or its estate on their account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Order.

11.     Any Banks are further authorized to (i) honor Debtor's directions with respect to the opening and closing of any Bank Account, and (ii) accept and hold, or invest, Debtor's funds in accordance with Debtor's instructions; provided, in each case, that the Banks shall not have any liability to any party for relying on such representations.

12.     For Banks at which Debtor holds Bank Accounts that are party to a Uniform Depository agreement with the U.S. Trustee, within fifteen (15) days of the date of entry of this Order, Debtor shall (i) contact each Bank, (ii) provide the Bank with the Debtor's employer identification number, and (iii) identify each of the Bank Accounts held at such Banks as being held by a debtor in possession in a bankruptcy case.

13.     For Banks at which Debtor holds accounts that are not party to a Uniform Depository agreement with the U.S. Trustee, Debtor shall have thirty (30) days to comply with Section 345 of the Bankruptcy Code unless further extended by order of this Court, and Debtor shall use their good-faith efforts to cause the banks to execute a Uniform Depository agreement in a form prescribed by the U.S. Trustee within thirty (30) days of the date of this Order.

2813204.4

14.    Debtor is authorized to use its existing check stock; provided, however, that once Debtor's existing checks have been used, Debtor shall, when reordering checks, require the designation "Debtor in Possession" or "DIP" and the corresponding bankruptcy case number on all checks; provided, further, within fifteen days of entry of this Order, any electronically produced checks shall reflect the designation "Debtor in Possession" or "DIP" and the corresponding bankruptcy case number.

15.    Notwithstanding anything contained herein, despite Debtor's use of the consolidated Cash Management System, Debtor shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of the Debtor.

16.    Each of the Banks is authorized to debit Debtor's accounts in the ordinary course of business without need for further order of this Court for: (i) all checks, items, and other payment orders drawn on Debtor's accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Bank's receipt of notice of filing of the petition; (ii) all checks, automated clearing house entries, and other items deposited or credited to one of Debtor's accounts with such Bank prior to filing of the petition which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent Debtor was responsible for such items prior to filing of the Petition; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.

17.    Nothing contained herein shall prevent Debtor from closing any Bank Account(s) or opening any additional bank accounts, as it may deem necessary and

6

appropriate, and any relevant bank is authorized to honor Debtor's requests to close or open

such Bank Accounts or additional bank accounts, as the case may be; provided that notice of

the opening or closure of any account shall be given to the U.S. Trustee and any statutory

committee as soon as practicable; and provided, further, that any new bank accounts shall be

opened at a bank that is party to a Uniform Depository agreement with the U.S. Trustee, or at

a bank that is willing to immediately execute a Uniform Depository agreement.

18.    Debtor shall maintain accurate and detailed records of all transfers and

intercompany transactions, if any, within the Cash Management System so that all

transactions may be readily ascertained, traced, recorded properly, and distinguished between

prepetition and postpetition transactions.

19.    Debtor shall perform sweeps of the Store Deposit Accounts in the ordinary

course of business.

20.    Notwithstanding the relief granted herein and any actions taken hereunder,

nothing contained in the Motion or this Order shall constitute, nor is it intended to constitute,

an admission as to the validity or priority of any claim or lien against Debtor or a waiver of

Debtor's rights to dispute any claim or lien.

21.    Bankruptcy Rule 6003(b) has been satisfied because the relief requested in the

Motion is necessary to avoid immediate and irreparable harm to Debtor.  The requirements

of Bankruptcy Rule 6004(a) are waived under the circumstances.

22.    Notwithstanding any provision in the Bankruptcy Rules to the contrary: (i) this

Order shall be effective immediately and enforceable upon its entry; (ii) Debtor is not subject

to any stay in the implementation, enforcement, or realization of the relief granted in this

order; and (iii) Debtor is authorized and empowered, and may in its discretion and without further delay, take any action necessary or appropriate to implement this Order.

23.    Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

24.    This Court retains jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated this _____ day of _____, 2017.


_____
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT B

### (Bank Accounts)

2813204.4

**VANITY SHOP OF GRAND FORKS, INC.**

**Bank Account Listing**
**As of March 1, 2017**

| Store No. | Bank Name | Bank Address | Bank City | Bank Stat | Bank Zip | Acct. No. | Type |
|---|---|---|---|---|---|---|---|
| Corporate | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX0258 | Operating |
| Corporate | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX6968 | Disbursement |
| Corporate | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX4458 | Depository/Restricted |
| Corporate | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX0823 | Payroll/Checking |
| 2 | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX1899 | Depository/Restricted |
| 19 | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX1003 | Depository/Restricted |
| 22 | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX1029 | Depository/Restricted |
| 28 | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX1037 | Depository/Restricted |
| 32 | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX1045 | Depository/Restricted |
| 60 | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX6377 | Depository/Restricted |
| 65 | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX1060 | Depository/Restricted |
| 66 | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX1078 | Depository/Restricted |
| 68 | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX1086 | Depository/Restricted |
| 70 | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX1094 | Depository/Restricted |
| 78 | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX1580 | Depository/Restricted |
| 87 | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX1169 | Depository/Restricted |
| 88 | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX1177 | Depository/Restricted |
| 98 | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX1429 | Depository/Restricted |
| 108 | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX5899 | Depository/Restricted |
| 122 | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX4722 | Depository/Restricted |
| 132 | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX1185 | Depository/Restricted |
| 165 | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX4601 | Depository/Restricted |
| 167 | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX3207 | Depository/Restricted |
| 173 | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX1201 | Depository/Restricted |
| 177 | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX5259 | Depository/Restricted |
| 212 | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX1227 | Depository/Restricted |
| 213 | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX4529 | Depository/Restricted |
| 220 | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX0438 | Depository/Restricted |
| 245 | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX1243 | Depository/Restricted |
| 297 | Wells Fargo Bank | 406 Main Ave | Fargo | ND | 58123 | XXXXX6815 | Depository/Restricted |
| 3 | BREMER BANK | 3100 South Columbia Road | Grand Forks | ND | 58201 | XXXXX4602 | Depository |
| 4 | US BANK | 423 E Bismarck Expy | Bismarck | ND | 58504 | XXXXX1447 | Depository |
| 5 | UNION STATE BANK | 4530 17th Ave S, PO Box 9399 | Fargo | ND | 58106-9399 | XXXXX0005 | Depository |
| 7 | BANK OF THE WEST | 2015 College Way | Fergus Falls | MN | 56537 | XXXXX3214 | Depository |
| 8 | BLACKRIDGE BANK | 14084 Baxter Dr. Ste 16 | Baxter | MN | 56425 | XXXXX5433 | Depository |
| 9 | FIRST NATIONAL BANK | PO Box 670 | Bemidji | MN | 56619-0670 | XXXXX4805 | Depository |
| 10 | LAKE REGION BANK | 1690 South 1st St | Willmar | MN | 56201 | XXXXX1729 | Depository |
| 11 | FIRST NATIONAL BANK | 2505 W 41st, PO Box 5186 | Souix Falls | SD | 57117-5186 | XXXXX0556 | Depository |
| 12 | US BANK | 312 Raintree Rd | Mankato | MN | 56001 | XXXXX0837 | Depository |
| 13 | US BANK | 6376 N Government Way | Coeur D'Alene | ID | 83815 | XXXXX8482 | Depository |
| 15 | FIRST INTERSTATE BANK | 2501 Central Ave | Billings | MT | 59102 | XXXXX2237 | Depository |
| 16 | ROCKY MOUNTAIN BANK | 2901 West Main | Bozeman | MT | 59718 | XXXXX4753 | Depository |
| 18 | US BANK | 2200 N Maple Ave | Rapid City | SD | 57701 | XXXXX0617 | Depository |
| 20 | AMERICAN STATE BANK & TRUST | PO Box 1446 | Williston | ND | 58802-1446 | XXXXX127-5 | Depository |
| 25 | FIRST PREMIER BANK | 1414 9th Ave SE #7 | Watertown | SD | 57201 | XXXXX5072 | Depository |
| 26 | BREMER BANK | 925 31st Ave SW | Minot | ND | 58701 | XXXXX529 | Depository |
| 27 | STEARNS BANK | 4191 2nd St S | St. Cloud | MN | 56301 | XXXXX0524 | Disbursement |
| 31 | BLACKRIDGE BANK | 3313 Highway 29 South | Alexandria | MN | 56308 | XXXXX224 | Depository |
| 35 | FIRST CITIZENS BANK | 3220 Harrison Ave, PO Box 3149 | Butte | MT | 59701-3149 | XXXXX514 | Depository |
| 36 | US BANK | 1700 10th Ave S | Great Falls | MT | 59405 | XXXXX0310 | Depository |
| 42 | AMERICAN BANK | 8401 Unity Dr | Virginia | MN | 55792 | XXXXX0697 | Depository |
| 46 | US BANK | 2732 Milton Ave | Janesville | WI | 53545 | XXXXX9962 | Depository |
| 47 | BANK MUTUAL | 4323 W Wisconsin Ave | Appleton | WI | 54913 | XXXXX0799 | Depository |
| 48 | BMO HARRIS BANK | 5454 S 76th St | Greendale | WI | 53129 | XXXXX0440 | Depository |
| 49 | COMERICA BANK | 260 Brown Rd | Auburn Hills | MI | 48326 | XXXXX8773 | Depository |
| 51 | BMO HARRIS BANK | First American Center, 500 3rd St | Wausau | WI | 54403 | XXXXX2602 | Depository |
| 54 | US BANK | 18781 E 39th St S | Independence | MO | 64057 | XXXXX3473 | Depository |
| 61 | FIRST WESTROADS BANK | 15750 W Dodge Rd | Omaha | NE | 68118 | XXXXX046 | Depository |
| 67 | US BANK | 702 E 27th St | Scottsbluff | NE | 69361 | XXXXX0291 | Depository |
| 69 | FIRST NATIONAL BANK N PLATTE | 201 N Dewey St | North Platte | NE | 69101 | XXXXX1964 | Depository |

| 71 | KEY BANK | 2655 East 17th | Idaho Falls | ID | 63406 | XXXXX7743 | Depository |
|----|----------|----------------|-------------|-----|--------|-----------|------------|
| 72 | KEY BANK | 1665 Blue Lakes Blvd North | Twin Falls | ID | 83301 | XXXXX7147 | Depository |
| 73 | FIDELITY BANK | 177 S. Jordan Creek Parkway | West Des Moines | IA | 50266 | XXXXX386 | Depository |
| 74 | WASHINGTON FEDERAL BANK | Boise Town Square, 421 N Cole Rd | Boise | ID | 83704 | XXXXX0445 | Depository |
| 75 | BANK OF AMERICA | 30 E Wellesley Ave | Spokane | WA | 99207 | XXXXX2000 | Depository |
| 76 | WHEATLAND BANK | Spokane Valley Mall, 14732 E Indiana Ave | Spokane | WA | 99216 | XXXXX1450 | Depository |
| 77 | FIRST CITIZENS BANK | 33 E State St | Mason City | IA | 50401 | XXXXX6637 | Depository |
| 80 | CHEMICAL BANK | RiverTown Crossings, 3700 Rivertown Pkwy | Grandville | MI | 49418 | XXXXX2759 | Depository |
| 81 | FIRST TENNESSEE | Johnson City Plaza Shopping Center, 2112 N Roan St | Johnson City | TN | 37601 | XXXXX4432 | Depository |
| 82 | SOUTHERN COMMUNITY BANK | 1950 Old Fort Pkwy | Murfreesboro | TN | 37129 | XXXXX604 | Depository |
| 83 | CAPITAL BANK | 1786 Wilma Rudolph Blvd | Clarksville | TN | 37040 | XXXXX0716 | Depository |
| 84 | CHEMICAL BANK | 4955 Bay Rd | Saginaw | MI | 48604 | XXXXX3818 | Depository |
| 90 | DOLLAR BANK | 7891 Mentor Ave | Mentor | OH | 44060 | XXXXX3900 | Depository |
| 92 | PNC BANK | 2629 Scottsville Rd | Bowling Green | KY | 42104 | XXXXX9501 | Depository |
| 94 | FIRST NATIONAL BANK | 1601 N Hill Field Rod | Layton | UT | 84041 | XXXXX8801 | Depository |
| 96 | COMERICA BANK | 109 E Grand River Ave | East Lansing | MI | 48823 | XXXXX1770 | Depository |
| 100 | HUNTINGTON BANK | 68011 Mall Ring Rd | St. Clairsville | OH | 43950 | XXXXX3239 | Depository |
| 104 | US BANK | 4640 Golf Rd | Eau Claire | WI | 54701 | XXXXX7945 | Depository |
| 105 | BMO HARRIS BANK | 3500 State Road 16 | La Crosse | WI | 54601 | XXXXX948 | Depository |
| 106 | ASSOCIATED BANK | 2403 S. Oneida Street | Green Bay | WI | 54304 | XXXXX4411 | Depository |
| 109 | FIFTH THIRD BANK | 3200 East Third Street | Bloomington | IN | 47401 | XXXXX9322 | Depository |
| 110 | MUTUAL BANK | 1912 W McGalliard Rd | Muncie | IN | 47304 | XXXXX2214 | Depository |
| 111 | DACOTAH BANK | 3312 Sixth Ave SE | Aberdeen | SD | 57401-1500 | XXXXX0674 | Depository |
| 112 | HUNTINGTON BANK | 611 W. County Line Road | Greenwood | IN | 46142 | XXXXX1429 | Depository |
| 114 | PNC BANK | 2761 Fairfield Commons | Beavercreek | OH | 45431 | XXXXX0897 | Depository |
| 115 | PNC BANK | 8220 Springboro Pike | Miamisburg | OH | 45342 | XXXXX1391 | Depository |
| 116 | THE UNION BANK CO | 3211 Elida Rd | Lima | OH | 45805 | XXXXX4189 | Depository |
| 117 | FIRST NATIONAL BANK | 7025 Market St | Boardman | OH | 44512 | XXXXX7135 | Depository |
| 124 | US BANK | 11751 Princeton Pike | Cincinnati | OH | 45246 | XXXXX2779 | Depository |
| 126 | US BANK | 2801 Brooks St | Missoula | MT | 59801 | XXXXX5797 | Depository |
| 128 | 1ST INTERSTATE BANK | 521 SE Wyoming Blvd | Casper | WY | 82609 | XXXXX2188 | Depository |
| 129 | BANK OF THE WEST | 1515 Dell Range Blvd | Cheyenne | WY | 82009 | XXXXX6047 | Depository |
| 130 | VERIDIAN CREDIT UNION | 1422 Flammang Dr | Waterloo | IA | 50702 | XXXXX2508 | Depository |
| 131 | US BANK | 222 Washington St | Cedar Falls | IA | 50613 | XXXXX0440 | Depository |
| 133 | US BANK | 2615 Grand Ave | Ames | IA | 50010 | XXXXX06 | Depository |
| 136 | KEY BANK | 688 N Lexington Springmill Rd | Mansfield | OH | 44906 | XXXXX5166 | Depository |
| 137 | FARMERS STATE BANK | 1380 Twixt Town Rd | Marion | IA | 52302 | XXXXX945 | Depository |
| 138 | US BANK | 435 John F Kennedy Rd | Dubuque | IA | 52002 | XXXXX2986 | Depository |
| 139 | FARMERS & MERCHANTS BANK | Highway 534 and Gear Ave W | Burlington | IA | 52655 | XXXXX932 | Depository |
| 140 | HOMETOWN NATIONAL BANK | 4141 Venture Dr | Peru | IL | 61354 | XXXXX73 | Depository |
| 141 | US BANK | 6701 N Illinois St | Fairview Heights | IL | 62208 | XXXXX1348 | Depository |
| 143 | US BANK | 7200 Harrison Ave #C | Rockford | IL | 61112 | XXXXX1223 | Depository |
| 145 | BANK OF AMERICA | 14000 Lakeside Circle | Sterling Heights | MI | 48313 | XXXXX7385 | Depository |
| 147 | FIRST BANKERS TRUST CO | PO Box 3566 | Quincy | IL | 62305 | XXXXX22 | Depository |
| 148 | FIRST FINANCIAL BANK | 7690 Mall Road | Florence | KY | 41042 | XXXXX8491 | Depository |
| 152 | CHASE BANK | 434 Main St | Zanesville | OH | 43701 | XXXXX5020 | Depository |
| 163 | BANNER BANK | 8200 W Gage Blvd | Kennewick | WA | 99336 | XXXXX1215 | Depository |
| 164 | UMB BANK | 710 Citadel Dr E | Colorado Springs | CO | 80909 | XXXXX4086 | Depository |
| 166 | FIRST BANK OF NORTHERN CO | 2901 23rd Ave | Greeley | CO | 80631 | XXXXX7968 | Depository |
| 170 | PLAINSCAPITAL BANK | South Plains Mall, 6002 Slide Road | Lubbock | TX | 79414 | XXXXX079 | Depository |
| 171 | AMARILLO NAT'L BANK | 2401 Coulter St | Amarillo | TX | 79121 | XXXXX404 | Depository |
| 174 | CHASE BANK | 6025 Eastex Freeway | Beaumont | TX | 77706 | XXXXX4570 | Depository |
| 178 | CAPITAL ONE BANK | 7601 South Broadway | Tyler | TX | 75701 | XXXXX9889 | Depository |
| 179 | TEXAS BANK & TRUST | 3622 McCann Rd | Longview | TX | 75605 | XXXXX230 | Depository |
| 181 | KEY BANK | 711 Mall Circle | Monroeville | PA | 15146 | XXXXX3574 | Depository |
| 183 | UNITED BANK | 234 Grand Central Mall | Vienna | WV | 26105 | XXXXX2898 | Depository |
| 184 | UNITED BANK | 176 Holland Ave | Westover | WV | 26501 | XXXXX2437 | Depository |
| 185 | M & T BANK | 1400 Miracle Mile Drive | Rochester | NY | 14623 | XXXXX7300 | Depository |
| 190 | NATIONAL BANK OF COMMERCE | 3202 W Owen K Garriott Rd | Enid | OK | 73703 | XXXXX293 | Depository |
| 199 | IBC BANK | 7021 S Memorial Dr #269a | Tulsa | OK | 74133 | XXXXX3965 | Depository |
| 202 | TOWN & COUNTRY BANK | 3601 Wabash Ave | Springfield | IL | 62711 | XXXXX294 | Depository |
| 203 | ASSOCIATED BANK | 4600 Brandywine Drive | Peoria | IL | 61614 | XXXXX4329 | Depository |
| 207 | US BANK | 2005 N Moorland Rd | Brookfield | WI | 53005 | XXXXX1611 | Depository |
| 209 | CENTENNIAL BANK | 2901 E Highland Dr | Jonesboro | AR | 72401 | XXXXX902 | Depository |
| 210 | BANCORPSOUTH | 7000 Rogers Ave | Fort Smith | AR | 72903-5540 | XXXXX0401 | Depository |
| 214 | SUNFLOWER BANK | 1902 Vine St | Hays | KS | 67601 | XXXXX1332 | Depository |

| 217 | BANK OF AMERICA | 2105 Pinecroft Road | Greensboro | NC | 27407 | XXXXX6626 | Depository |
| 218 | ASHEVILLE SAVINGS BANK | 10 South Tunnel Rd | Asheville | NC | 28805 | XXXXX6667 | Depository |
| 219 | SUNTRUST BANK | 2006 S Hawthorne Rd | Winston-Salem | NC | 27103 | XXXXX7216 | Depository |
| 221 | US BANK | 3410 S 143rd Plz | Omaha | NE | 68144 | XXXXX8320 | Depository |
| 223 | CHASE BANK | 4512 24th Ave | Fort Gratiot | MI | 48059 | XXXXX0355 | Depository |
| 226 | TCF BANK | 2989 White Bear Ave N | Saint Paul | MN | 55109 | XXXXX0548 | Depository |
| 230 | COMMERCE BANK | 1345 E Battlefield Rd | Springfield | MO | 65804 | XXXXX4240 | Depository |
| 232 | COMMERCE BANK | 2000 Bernadette Dr | Columbia | MO | 65203 | XXXXX8996 | Depository |
| 233 | BANK MIDWEST | 801 N 36th St | St Joseph | MO | 64506 | XXXXX4633 | Depository |
| 234 | BANK OF AMERICA | 200 Mid Rivers Mall Dr | St Peters | MO | 63376 | XXXXX1449 | Depository |
| 235 | US BANK | 110 S County Center Way | St. Louis | MI | 63129 | XXXXX3192 | Depository |
| 236 | US BANK | 105 N Range Line Rd | Joplin | MO | 64801 | XXXXX7486 | Depository |
| 244 | SOUTH OTTUMWA SAVING BANK | PO Box 516 | Ottumwa | IA | 52501-0516 | XXXXX751 | Depository |
| 250 | FIRST NATIONAL BANK | 2414 E Kansas Ave | Garden City | KS | 67846 | XXXXX091 | Depository |
| 251 | UMB BANK | 2375 S 9th St | Salina | KS | 67401 | XXXXX8920 | Depository |
| 254 | COMMERCE BANK | 727 Poyntz Ave | Manhattan | KS | 66502 | XXXXX8869 | Depository |
| 255 | COREFIRST BANK & TRUST | 2129 SW Wanamaker Rd | Topeka | KS | 66614 | XXXXX432 | Depository |
| 271 | FIRST FINANCIAL BANK | Honey Creek Mall, 3401 US-41 | Terre Haute | IN | 47802 | XXXXX972 | Depository |
| 272 | CHASE BANK | 2207 Sagamore Pkwy S | Lafayette | IN | 47905 | XXXXX7374 | Depository |
| 275 | FIFTH THIRD BANK | 2133 North Telegraph Road | Monroe | MI | 48162 | XXXXX0306 | Depository |
| 276 | CHEMICAL BANK | G-3501 S Linden Rd | Flint | MI | 48507 | XXXXX6515 | Depository |
| 277 | CHEMICAL BANK | 6711 N Jefferson Ave | Midland | MI | 48642 | XXXXX7820 | Depository |
| Corporate | First Data Corp / First Data Money Network | 12510 E Belford M21A1 | Englewood | CO | 80112 | XXXXX0012 | Paycard Disbursement |