## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re: | Case No.:  17-30112 |
| Vanity Shop of Grand Forks, Inc., | Chapter 11 |
| Debtor. | |

## DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTOR TO PAY AND HONOR CERTAIN PREPETITION WAGES, BENEFITS, AND OTHER COMPENSATION OBLIGATIONS, (II) HONOR MANAGEMENT SERVICES AGREEMENT AND PAY PREPETITION OBLIGATIONS RELATED THERETO, AND (III) AUTHORIZING BANKS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATING TO SUCH OBLIGATIONS

Vanity Shop of Grand Forks, Inc. ("**Debtor**") in the above-captioned chapter 11 case hereby moves the Court (the "**Motion**") for entry of an order, substantially in the form attached hereto as **Exhibit A**, pursuant to Sections 105(a), 363(b), 507(a)(4), and 507(a)(5) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") for the following relief:

(I) authorizing, but not directing, Debtor:  (a) to pay its employees ( "**Employees**") accrued prepetition wages, salaries, and bonuses (collectively, the "**Employee Claims**"); (b) to honor any prepetition obligations in respect of, and continue in the ordinary course of business until further notice (but not assume), certain of Debtor's paid time off (vacation & sick leave), worker's compensation, employee, and retiree benefit plans and programs (collectively, the "**Employee Benefits**"), as described below; (c) to reimburse Employees for prepetition expenses that Employees incurred on behalf of Debtor in the ordinary course of business (the "**Employee Expenses**"); (d) to pay all related prepetition payroll taxes and

other deductions (the "**Employee Withholdings**"); and (e) to the extent that any of the foregoing programs is administered, insured, or paid through a third-party administrator or provider, to pay any prepetition claims of such administrator and provider in the ordinary course of business to ensure the uninterrupted delivery of payments or other benefits to the Employees (the "**Employee Administrator Obligations**" and collectively with the Employee Claims, the Employee Benefits, the Employee Expenses, and the Employee Withholdings, the "**Employee Obligations**");

(II) authorizing, but not requiring, Debtor to continue performing and exercising its respective rights and obligations under the Management Agreement (defined below) with Vanity, Inc. in the ordinary course of business; and

(III) authorizing Debtor's bank and other financial institutions (collectively, the "**Banks**") to honor and process related checks and electronic transfers.

In support of this Motion, Debtor relies on the Declaration of Jill Motschenbacher in Support of Chapter 11 Petition and First Day Motions (the "**First Day Declaration**"), which was filed contemporaneously with this Motion and is incorporated herein by reference. In further support of this Motion, Debtor respectfully represents as follows:

## <u>JURISDICTION AND VENUE</u>

1.      This Court has jurisdiction over this Chapter 11 case and this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this Chapter 11 case and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief sought herein are sections 105(a),

2

2814058.10

363(b), 507(a)(4), and 507(a)(5) of the Bankruptcy Code and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

2.      On the date hereof (the "**Petition Date**"), Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code.  Debtor is authorized to continue to operate its business and manage its property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  To date, no trustee, examiner, or statutory committee has been appointed in this Chapter 11 case.  Additional factual background relating to the Debtor's business, capital structure, and the commencement of this Chapter 11 case is set forth in detail in the First Day Declaration.

## RELIEF REQUESTED

3.      By this Motion, Debtor requests that the Court enter an order authorizing, but not directing, Debtor, in its sole discretion:  (A) to pay Employee Claims; (B) to honor any prepetition obligations in respect of, and continue in the ordinary course of business until further notice (but not assume), certain Employee Benefits, as described below; (C) to reimburse Employee Expenses; (D) to pay all related Employee Withholdings; and (E) to the extent that any Employee Benefit is administered, insured, or paid through a third-party administrator or provider, to pay any Employee Administrator Obligations.

4.      Debtor also requests this Court authorize, but not require, Debtor to continue performing and exercising its respective rights and obligations under the Management Agreement it is a party to with Vanity, Inc.

3

5.    Debtor also requests this Court authorize the Banks, when requested by Debtor, in its discretion, to honor and process any checks or electronic transfers drawn on Debtor's bank accounts to pay any prepetition obligations described herein, whether such checks or other requests were submitted prior to or after the Petition Date, provided that sufficient funds are available to make such payments.  Debtor further requests the Banks be authorized to rely on Debtor's designation of any particular check or electronic transfer request as approved pursuant to this Motion.

## I.    EMPLOYEE OBLIGATIONS

### A.    **Employee Claims**

6.    Debtor's workforce is comprised of full-time salaried employees, full-time hourly employees (collectively, the "**Full-Time Employees**"), and regular part-time hourly employees (the "**Part-Time Employees**").   As of the Petition Date, Debtor employs approximately 274 Full-Time Employees and 1,049 Part-Time Employees.   Of those, 8 Employees are currently on leave.  All Employees are stationed at one of Debtor's retail store or web fulfillment locations.

7.    All Employees are paid bi-weekly for the prior two weeks ending on the Saturday of any payroll week.  Payroll to the Employees is funded in net to ADP, Inc., Debtor's third-party payroll administrator, two business days before each pay date and payroll taxes/withholding/garnishments are funded to ADP, Inc. one business day before each pay date.  ADP, Inc. is responsible for distributing net pay to the Employees from its own accounts.  In 2016, the average amount funded to ADP, Inc. in each two-week period was approximately $537,000.  Debtor's prepetition payroll date of February 27, 2017,

4

covered the pay period from February 5, 2017 through February 18, 2017. The total amount of the February 27, 2017 payroll was approximately $543,000. Debtor's next scheduled payroll date is March 13, 2017, and it will cover the pay period from February 19, 2017 through March 4, 2017.

8.      Debtor pays ADP, Inc. approximately $8,000 per month for its administrative services. Debtor further estimates it owes ADP, Inc. approximately $18,300 for W-2's for 2016. As of the Petition Date, approximately $34,000 is owing to ADP, Inc.

9.      Debtor believes that, as of the Petition Date, approximately $385,000 was earned but remains unfunded with respect to Employees on account of accrued prepetition wages and salaries. The amount owed to any individual Employee on account of Employee Claims does not exceed the statutory salary cap established in 11 U.S.C. § 507(a)(4) of $12,850. Additionally, Debtor believes that, as of the Petition Date, approximately $80,000 was earned but remains unfunded with respect to Employees on account of accrued prepetition monthly incentive program, store closing retention incentives, and annual shrink bonus.

> **B.      Employee Benefits**
>
> >  1.      *Paid Time Off*

10.     Full-Time Employees accrue Paid Time Off ("**PTO**") on a pro rata basis throughout the year. PTO time is accrued based on years of service. Full-Time Employees with up to four years of full-time service can earn up to 130 PTO hours per year. Full-Time Employees with five to nine years of full-time service can earn up to 156 PTO hours per year. Full-Time Employees with ten or more years of full-time service can earn up to

5

182 PTO hours per year. Unused PTO hours may be carried over to the following year, provided that the maximum amount is 80 hours or less. Once an Employee reaches the maximum unused PTO accrual of 240 hours, the Employee may not accrue any additional PTO until the Employee uses PTO below the maximum. PTO pay is calculated based on the Employee's base hourly pay or base salary. Unless otherwise required by state law, at separation of employment, Employees receive payment of PTO on the basis of full-time service as follows: no PTO payment for less than 18 months of full-time service; 18-24 months of full-time service receive accumulated unused hours up to 40 hours; 25-36 months of full-time service receive accumulated unused hours up to 80 hours; 37-59 months of full-time service receive accumulated unused hours up to 120 hours; and 60 months or more of full-time service receive accumulated unused hours up to 160 hours.

11.      As of the Petition Date, the Employees had approximately $180,000 of accrued and unused PTO in the aggregate. Debtor seeks authorization to continue its PTO policy and to honor, in the ordinary course of business, all unused PTO time accrued prior to the Petition Date, but not to make cash payments on account of accrued but unused PTO time, except at separation of employment and where required by state law.

                    2.      *Sick and Safe Leave*

12.      Part-Time Employees in the City of Spokane, Washington accrue Sick and Safe Leave ("**Sick Leave**") on a pro rata basis throughout the year effective January 1, 2017. Sick Leave is accrued based on hours worked. Part-Time Employees accrue one-hour of Sick Leave for every 30 hours worked in the City of Spokane up to 40 hours per year. Sick

6

pay is calculated based on the Employee's base hourly pay.  Unused Sick Leave may be carried over to the following year, provided that the maximum amount is 40 hours or less.

13.    As of the Petition Date, the Employees had approximately $400 of accrued and unused Sick Leave in the aggregate.  Debtor seeks authorization to continue its Sick Leave and to honor, in the ordinary course of business, all unused Sick Leave accrued prior to the Petition Date, but not to make cash payments on account of accrued but unused Sick Leave, except at separation of employment and where required by state law.

3.    *Employee Benefit Plans*

14.    Prior to the Petition Date, Debtor offered Full-Time Employees various standard employee benefits (the "**Benefit Programs**") including, without limitation, (i) medical and prescription drug coverage, (ii) dental insurance, (iii) vision insurance, (iv) COBRA (as defined herein) coverage, (v) flexible spending accounts, (vi) life, short term disability, and accidental death and dismemberment insurance, (vii) additional medical administration costs, and (viii) voluntary benefits of additional life insurance, accident, cancer, and hospital indemnity.  Such benefits are administered pursuant to plans, programs, and policies that cover the Full-Time Employees.  The amounts set forth below reflect the approximate prepetition costs of such Benefit Programs, which the Debtor seeks to continue in the ordinary course of its business.

i.    Medical Insurance Program

15.    Debtor offers a self-insured medical and prescription drug programs (the "**Health Plan**") to Full-Time Employees, which is administered by Blue Cross Blue Shield of North Dakota.  The Health Plan is approximately 75% paid by Debtor and 25% paid by

7

the Full-Time Employees through paycheck withholdings. Debtor also maintains a stop-loss insurance policy (the "**Stop-Loss Policy**") to provide protection against catastrophic losses under their self-insured medical insurance program, which is also administered by Blue Cross Blue Shield of North Dakota. The average monthly cost (after taking into account Employee contributions) of maintaining the Health Plan, including administrative costs and premiums in respect of the Stop-Loss Policy, has been approximately $45,000 per month. The Health Plan administrator initiates an ACH payment paid on a weekly basis on account of claims paid by the administrators on Debtor's behalf. Debtor is unable to estimate with specificity the prepetition amounts owing in respect of the Health Plan because the typical lag time on Employees' submissions of medical claims is approximately 30 days. However, based on historical data, Debtor estimates that as of the Petition Date, it owes approximately $60,000 in respect of "incurred but not reported" claims under the Health Plan and related administrative costs (excluding amounts paid through Employee deductions), $8,000 in Health Plan Premiums, and approximately $15,000 in respect of filed claims that have not yet been paid. Debtor seeks authorization to pay prepetition amounts in respect of the Health Plan in an amount not to exceed $260,000 and to continue to pay postpetition costs of the Health Plan, including premiums in respect of the Stop-Loss Policy, during the pendency of this Chapter 11 case.

ii.   Dental Insurance Program

16.   Debtor offers a self-insured dental program (the "**Dental Program**") to Full-Time Employees, which is administered by Blue Cross Blue Shield of North Dakota. The Dental Plan is approximately 25% paid by Debtor and 75% paid by the Full-Time Employees

8

through paycheck withholdings.  The average monthly cost (after taking into account Employee contributions) of maintaining the Dental Plan, including administrative costs, has been approximately $4,000 per month.  Debtor is unable to estimate with specificity the prepetition amounts owing in respect of the Dental Plan because the typical lag time on Employees' submissions of dental claims is approximately 30 days.  However, based on historical data, Debtor estimates that as of the Petition Date, it owes approximately $4,000 in respect of "incurred but not reported" claims under the Dental Plan and related administrative costs (excluding amounts paid through Employee deductions), $2,000 in Dental Plan Premiums, and approximately $1,000 in respect of filed claims that have not yet been paid.  Debtor seeks authorization to pay prepetition amounts in respect of the Dental Plan in an amount not to exceed $20,000 and to continue to pay postpetition costs of the Dental Plan during the pendency of this Chapter 11 case.

iii.      Vision Insurance

17.     Debtor offers vision insurance to Full-Time Employees through Avesis (the "**Vision Plan**").  Full-Time Employees participating in the Vision Plan pay 100% of the plan premiums through paycheck withholdings.  As of the Petition Date, $1,250 is owing on the Vision Plan.  Debtor seeks authorization to pay prepetition amounts in respect of the Vision Plan in an amount not to exceed $1,500 and to continue to pay postpetition costs of the Vision Plan during the pendency of this Chapter 11 case.

iv.      COBRA

18.     Debtor seeks to continue to perform obligations under Section 4980B of the Internal Revenue Code to administer Continuation Health Coverage (26 U.S.C. § 4980B)

9

("**COBRA**") in respect to former Employees and their covered dependents.  Vanity, Inc. is the third-party COBRA administrator for Debtor.  Debtor has paid approximately $4,000 per month for administration of its COBRA obligations.  Debtor estimates that as of the Petition Date it owes approximately $1,400 in respect of this benefit.  Debtor seeks authorization to continue to pay prepetition costs in an amount not to exceed $9,000 and to continue to pay postpetition costs of the COBRA program during the pendency of this Chapter 11 case.

v.        Flexible Spending and Health Savings Accounts

19.    Debtor offers Full-Time Employees the use of a dependent care flexible spending and health savings accounts for various medical claims not otherwise covered or payable by the Health Plan. The flexible spending and health savings benefits (the "**Flex Benefits**") are administered by Discovery Benefits.  Debtor has paid approximately $35 per month for administration of all Flex Benefit plans.  Debtor estimates that as of the Petition Date it owes approximately $725 in respect of these benefits.  Debtor seeks authorization to continue to pay prepetition costs in an amount not to exceed $800 and to continue to pay postpetition costs of the Flex Benefits during the pendency of this Chapter 11 case.

vi.        Life, Disability, and Related Insurance Coverage

20.    Debtor provides Full-Time Employees with company-funded short-term disability insurance, accidental death and dismemberment insurance, and basic life insurance, all of which are insured by Unum Life Insurance.  Debtor pays 100% of the costs of these benefits.  In the aggregate, the average monthly cost of maintaining these programs has been approximately $4,100.  As of the Petition Date, approximately $4,100 is owing on short-term disability insurance, accidental death and dismemberment insurance, and basic life insurance.

10

Accordingly, Debtor seeks authorization to continue to pay prepetition costs in an amount not to exceed $4,500 and to continue to pay postpetition costs of short-term disability insurance, accidental death and dismemberment insurance, and basic life insurance during the pendency of this Chapter 11 case.

vii.    Additional Medical Administration Costs

21.    Debtor is required to pay certain fees related to the Affordable Care Act.  As of the Petition Date, Debtor owes an estimated $700 in respect to Patient-Centered Outreach Research Institute (PCORI) fees.  Debtor seeks authorization to continue to pay prepetition costs in an amount not to exceed $1,000 and to continue to pay postpetition costs of this benefit during the pendency of this Chapter 11 case.

viii.    Voluntary Benefits of Additional Life Insurance; Accident; Cancer, and Hospital Indemnity

22.    Debtor offers voluntary insurance benefits to Full-Time Employees for life insurance through Unum Life Insurance Company ("**Voluntary Life**") and accident, cancer, and hospital indemnity through AFLAC ("**Voluntary Other**").  Full-Time Employees participating in the Voluntary Life and Voluntary Other programs pay 100% of these benefits through paycheck withholdings.  As of the Petition Date, Debtor owes an estimated $150 with respect to Voluntary Life and $4,100 in respect to Voluntary Other programs.  Debtor seeks authorization to continue to pay prepetition costs in an amount not to exceed $300 for Voluntary Life and $4,500 for Voluntary Other programs and to continue to pay postpetition costs of this benefit during the pendency of this Chapter 11 case.

11

### ix.    Honoring of Prepetition Benefits

23.    As of the Petition Date, certain of the Benefit programs described above remained unpaid or not yet provided because certain obligations of Debtor under the applicable plan, program, or policy accrued either in whole or in part prior to the commencement of this Chapter 11 case, but will not be required to be paid or provided in the ordinary course of Debtor's business until a later date.  Debtor seeks authority to pay or provide, as they become due, all amounts in respect of the Benefit Programs described above that have already accrued, subject to the caps set forth herein.

### x.    Continuation of Benefit Programs Postpetition

24.    Debtor also requests confirmation of its right to continue to perform its obligations with respect to these Benefit Programs for the duration of its Chapter 11 case. These programs are an important component of the total compensation offered to the Employees and are essential to Debtor's efforts to maintain Employee morale and minimize attrition among those whose retention is important for Debtor's success.  Debtor believes that the expenses associated with such programs are reasonable and necessary in light of the potential attrition, loss of morale, and loss of productivity that would occur if such programs were discontinued.

### 4.    *Worker's Compensation Plan*

25.    Under the laws of various states, Debtor is required to maintain worker's compensation insurance to provide its Employees with coverage for injury claims arising from or related to their employment with Debtor.  Debtor maintains a worker's compensation benefits program through Liberty Mutual Insurance (the "**WC Program**") and other state

12

2814058.10

programs in North Dakota, Washington, Wyoming, and Ohio.  The WC Program provides benefits to all Employees for claims arising from or related to their employment with Debtor.

26.     As of the Petition Date, Debtor believes it is current with all administrative expenses in connection with the WC Program.  For the claims administration process in this Chapter 11 case to operate as efficiently as possible, and to ensure that Debtor complies with state law, it is necessary that Debtor obtains authority to continue to maintain the WC Program in the ordinary course of business, and to pay prepetition amounts related thereto, including, without limitation, any payments for worker's compensation claims, Employee Administrator Obligations to North Dakota, Washington, Wyoming and Ohio, and other amounts required in connection with the program as such amounts become due in the ordinary course during the pendency of this Chapter 11 case.

5.     *Retirement Savings Program*

27.     Debtor maintains a 401(k) plan (the "**Retirement Plan**"), administered by Bell State Bank, through which qualified and participating Employees may defer a portion of their salary to help meet their financial goals and accumulate savings for their future.  The Retirement Plan is funded by Employee and employer contributions.  Debtor currently provides a match of 50% on each Employee's first 4% of deferred compensation.  The Debtor's matching contributions vests on the basis of years of service.  In 2016, Debtor's incurred expense for matching contributions was approximately $45,000.  As of the Petition Date, there is $15,000 accrued but unfunded matching contributions with respect to the Retirement Plan.

13

28.     Debtor also pays Bell State Bank approximately $300 per year to file the 5500 tax return for the Retirement Plan and pays Eide Bailly approximately $8,000 per year to conduct an audit of the Retirement Plan.  As of the Petition Date, no amounts are owing for these services.

29.     Debtor seeks authorization to continue to pay prepetition costs in an amount not to exceed $15,000 and to continue to pay postpetition costs of the Retirement Plan during the pendency of this Chapter 11 case.

C.     **Employee Expenses**

30.     Prior to the Petition Date, Debtor directly or indirectly reimbursed its Employees for certain expenses incurred in the scope of their employment on behalf of Debtor.  The Employee Expenses are incurred in the ordinary course of Debtor's business operations and include, without limitation, expenses for meals, travel, automobile mileage, and other business-related expenses.

31.     Absent authority to pay the Employee Expenses incurred prepetition, the Employees could be obligated to pay such amounts out of their personal funds.  Debtor, therefore, seeks authority to pay all outstanding Employee Expenses in an amount not to exceed $15,000, and to continue the foregoing policy with respect to all remaining Employees during the pendency of this Chapter 11 case.

D.     **Employee Withholdings**

32.     Debtor routinely deducts certain amounts from Employees' compensation that represent earnings that judicial or government authorities or the Employees have designated for deduction, including, for example, various federal, state, and local income, Federal

14

Insurance Contribution Act ("**FICA**") and other taxes, support payments and tax levies, savings programs contributions, benefit plans insurance programs, and other similar programs, and forward those amounts to various third-party recipients.

33.     In addition, Debtor is responsible for remitting, for its own account, various taxes and fees associated with payroll pursuant to the FICA and federal and state laws regarding unemployment and disability taxes ("**Payroll Taxes**").  Debtor believes, as of the Petition Date, they are current on Payroll Taxes.  Debtor seeks authority to deduct Employee Withholdings in the ordinary course of business and remit Employee Withholdings to the appropriate third parties, including, without limitation, amounts determined to be related to the period prior to the Petition Date.

**II.     MANAGEMENT AGREEMENT**

34.     Management, corporate, and administrative employees are provided to the Debtor by Vanity, Inc. (collectively, the "**Administrative Employees**") pursuant to that certain Management Agreement by and between Debtor and Vanity, Inc. dated October 1, 2005, as amended (the "**Management Agreement**").   A true and correct copy of the Management Agreement and amendments is annexed hereto as **Exhibit B**.  All of the administrative and management services for Debtor including human resources administration, accounting/bookkeeping, marketing, IT support, product sourcing and design, training of Debtor's store employees, etc. are provided by the Administrative Employees pursuant to the Management Agreement.  Vanity, Inc. has 104 Administrative Employees as of the Petition Date.  These Administrative Employees, working alongside the Employees,

15

are responsible for operating the Debtor on a day-to-day basis, and are intimately familiar with the Debtor's business.

35.     Debtor's ability to maintain business operating during the wind-down and preserve the value of Debtor's assets and maximize creditor recovery hinges on the services of the Administrative Employees.  Should Debtor be required to obtain these services elsewhere, either from a third party or by hiring employees capable of providing such services and managing Debtor, it would create significant additional costs to Debtor and major disruption to, or shut down of, the Debtor's operations.  In short, Debtor would be incapable of functioning without the services provided by the Other Employees.  Thus, the continued ability to rely upon the provision of Administrative Employees is critical to the Debtor's wind down efforts in this Chapter 11 case.

36.     Pursuant to the Management Agreement, Debtor is required to reimburse Vanity, Inc. on a monthly basis for 100% of its direct management costs.  This includes reimbursement for Administrative Employees' compensation and benefits, operating costs incurred by Vanity, Inc. on behalf of Debtor and overhead costs attributable to the Administrative Employees (collectively, the "**Management Services Obligations**").  Importantly, the only payments made to Vanity, Inc. under the Management Agreement (with one exception discussed below), are to reimburse Vanity, Inc. for the actual cost of the services, and Vanity, Inc. receives no pass-through revenue or margin.

37.     The Administrative Employees are paid on a bi-weekly basis, and the Debtor reimburses Vanity, Inc. for such payments daily pursuant to the Management Agreement.  As of the Petition Date, the Debtor owes Vanity, Inc. approximately $315,000 in respect of such

16

wages, salaries, severance, and accrued PTO pursuant to the Management Agreement. Given that Vanity, Inc. pays the Administrative Employees, and Debtor simply reimburses Vanity, Inc. in respect of such payments, the statutory caps set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code do not apply to the Administrative Employees and the Debtor's payments to Vanity, Inc. under the Management Agreement in respect thereof. Nonetheless, Vanity, Inc.'s books and records indicate that only one (1) Administrative Employee is owed prepetition wages, salaries, severance, and accrued but unearned PTO exceeding the statutory cap as of the Petition Date.

38.     The Management Agreement, in addition to requiring Debtor to reimburse Vanity, Inc. for 100% of its direct management costs, requires Debtor to pay Vanity, Inc., on a quarterly basis, a profitability bonus equal to 75% of Debtor's pretax net profit.  In that Debtor has not recently had a pre-tax net profit, this provision of the Management Agreement is not relevant at this time and Debtor does not intend to pay any bonus to Vanity, Inc. without further order of the Court.

## III.    DIRECTION TO BANKS

39.     Finally, Debtor seeks an order authorizing the Banks to receive, process, honor, and pay all of Debtor's prepetition checks and fund transfers on account of any Employee Obligations, and prohibiting the Banks from placing any holds on, or attempting to reverse, any automatic transfers to any account of an Employee or other party for Employee Obligations.  Debtor also seeks an order authorizing it to issue new postpetition checks or effect new postpetition fund transfers on account of the Employee Obligations to replace any prepetition checks or fund transfers that may be dishonored or rejected.

2814058.10

## IV.    SUMMARY

40.    Debtor seeks authority to continue to honor and implement the Employee-related policies and practices as described above and to pay Employee Prepetition Obligations subject to the limits set forth below:

| Category[1] | Amount |
|---|---|
| Employee Claims[2]<br>(2/19/17 – 3/1/17) | $499,000 |
| Paid Time Off (only at separation and where required by state law) | $180,400 |
| Health Plan | $260,000 |
| Dental Plan | $20,000 |
| Vision Plan | $1,500 |
| COBRA | $9,000 |
| Flex Benefits | $800 |
| Life, Disability, and Related Coverage | $4,500 |
| Additional Medical Administration Costs | $1,000 |
| Voluntary Life | $300 |
| Voluntary Other | $4,500 |
| Retirement Plan | $15,000 |
| Employee Expenses | $15,000 |
| Administrative Employee Obligations Under the Management Agreement with Vanity, Inc. (2/19/17 – 3/1/17) | $315,000 |

---

[1] Each category includes amounts for related Employee Administrator Obligations

[2] No Employee will be paid more than $12,850 in the aggregate with respect to Employee Claims.

## BASIS FOR RELIEF

**I.    THE COURT SHOULD AUTHORIZE, BUT NOT DIRECT, DEBTOR, IN ITS DISCRETION, TO PAY OR OTHERWISE HONOR THE EMPLOYEE OBLIGATIONS.**

41.    Debtor seeks the relief requested herein because any delay in paying or otherwise honoring any of the Employee Obligations could severely disrupt Debtor's relationship with, and irreparably impair the morale of, the Employees at a time when their continued dedication, confidence, cooperation, and services are most critical to Debtor and the success of the Store Closing Sales and related wind-down initiatives.  Debtor faces the risk that its ability to effectively operate its business and wind down its operations in an efficient manner may be severely jeopardized if Debtor is not immediately granted authority to pay the Employee Obligations.  Granting the relief requested in this Motion on the grounds set forth below will allow Debtor to continue to operate with minimal disruption and enable it to maximize the value of its estate for the benefit of all stakeholders.

42.    Pursuant to section 507(a)(4) of the Bankruptcy Code, each Employee may be granted a priority claim for:

> allowed unsecured claims, but only to the extent of $12,850 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for –
>
> > (A)    wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual.

11 U.S.C. § 507(a)(4).

43.    Likewise, under section 507(a)(5) of the Bankruptcy Code, Employees may ultimately be granted a priority claim for:

2814058.10

allowed unsecured claims for contributions to an employee benefit plan –

    (A)    arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

    (B)    for each such plan, to the extent of –

        (i)    the number of employees covered by each such plan multiplied by $12,850; less

        (ii)    the aggregate amount paid to such employees under paragraph (4) of his subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. § 507(a)(5).

44.    Debtor believes that a substantial portion of the relief requested herein is within the statutory caps of section 507(a)(4) and 507(a)(5) of the Bankruptcy Code. Debtor, therefore, would be required to pay these claims in full to confirm any chapter 11 plan. 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for wages and salaries and certain allowed unsecured claims for contributions to an employee benefit plan). Thus, granting the relief requested herein would only affect the timing, and not the amount, of the payment of such amounts to the extent that they constitute priority claims.

45.    Even if a particular claim is not entitled to priority, payment is nonetheless justified under section 363(b)(1) of the Bankruptcy Code, which empowers the Court to allow Debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Debtor's decision to use, sell, or lease assets outside the ordinary course of business must be based upon its sound business judgment. *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999). Courts emphasize that

20

the business judgment rule is not an onerous standard and may be satisfied "as long as the proposed action *appears* to enhance the debtor's estate." *Crystalin, LLC v. Selma Props., Inc*., 293 B.R. 455, 463-64 (B.A.P. 8th Cir. 2003) (quoting *Four B. Corp. v. Food Barn Stores, Inc.*, 107 F.3d 558, 566 n.16 (8th Cir. 1997)). Under the business judgment rule, "management of a corporation's affairs is placed in the hands of its board of directors and officers, and the Court should interfere with their decisions only if it is made clear that those decisions are clearly erroneous, made arbitrarily, are in breach of the officers' and directors' fiduciary duty to the corporation, are made on the basis of inadequate information or study, are made in bad faith, or are in violation of the Bankruptcy Code." *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003).

46.    In addition to section 363(b)(1), payment is further justified under section 105(a) of the Bankruptcy Code and the well-established "doctrine of necessity." The Court's power to utilize the doctrine of necessity in chapter 11 cases derives from the Court's inherent equity powers and its statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The United States Supreme Court first articulated the doctrine of necessity over a century ago in *Miltenberger v. Logansport Railway Company*, 106 U.S. 286 (1882), in affirming the authorization by the lower court of the use of receivership funds to pay pre-receivership debts owed to employees, vendors, and suppliers, among others, when such payments were necessary to preserve the receivership property and the integrity of the business in receivership. *See id.* at 309-14. The modern application of the doctrine of necessity is largely unchanged from the Court's reasoning in *Miltenberger*. *See In re Lehigh & New*

*Eng. Ry.*, 657 F.2d 570, 581-82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the [debtor's] continued operation . . . in serious, jeopardy.").

47.     The doctrine of necessity permits the Court to authorize payment of certain prepetition claims prior to the completion of the reorganization process where the payment of such claims is necessary to the reorganization. *See In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment); *see also In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[T]he court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process.").

48.     The Employees perform a variety of critical functions for Debtor, and their knowledge, skills, and service are essential to the success of the Store Closing Sales. Without the continued service and dedication of the Employees, it will be difficult, if not impossible, to efficiently and effectively complete the going-out-of-business sales and maximize the value of Debtor's assets.  Moreover, absent the requested relief, the Employees would suffer great hardship and, in many instances, financial difficulties, because these monies and benefits are needed to enable them to meet their personal obligations.  This would have a highly negative impact on workforce morale and likely would result in unmanageable performance issues or turnover, thereby resulting in immediate and

22

irreparable harm to Debtor and its estate.  Debtor, therefore, believes it is necessary to pay

and/or honor the prepetition Employee Obligations to maintain employee morale and a

focused workforce during this critical time, which will allow Debtor to avoid any

inopportune interruptions to their efforts to maximize the value of its estate for the benefit of

all stakeholders.

**II.    THE COURT SHOULD AUTHORIZE, BUT NOT DIRECT, DEBTOR TO CONTINUE PERFORMING AND EXERCISING RIGHTS AND OBLIGATIONS UNDER THE MANAGEMENT AGREEMENT WITH VANITY, INC.**

49.    The same analysis applies with respect to maintaining Debtor's Management

Agreement with Vanity, Inc.  As noted above, Vanity, Inc. and the Administrative

Employees are essential to Debtor's operations given its administration of crucial services.

Without the ability to maintain the Management Agreement, Debtor will further face added

costs to facilitate its wind-down process.

**III.    THE COURT SHOULD AUTHORIZE THE BANKS TO HONOR AND PROCESS DEBTOR'S PAYMENTS ON ACCOUNT OF THE EMPLOYEE OBLIGATIONS.**

50.    Debtor represents that it has sufficient funds to pay the amounts described

herein in the ordinary course of business by virtue of expected cash flows from ongoing

business operations, and anticipated access to cash collateral.  As a result of the

commencement of this Chapter 11 case and in the absence of an order of the Court providing

otherwise, Debtor's checks and electronic fund transfers in respect of the Employee

Obligations may be dishonored or rejected by financial institutions.  Under Debtor's cash

management system, Debtor can readily identify checks or transfers as relating directly to

payment of Employee Obligations.  Accordingly, Debtor believes that prepetition checks and

2814058.10

transfers other than those for Employee Obligations will not be honored inadvertently. Debtor submits that any Bank should be authorized to rely on the representations of Debtor with respect to whether any check drawn or transfer request issued by Debtor prior to the Petition Date should be honored pursuant to this Motion.

51.      For the reasons set forth above, Debtor submits that the relief requested herein is in the best interests of Debtor, its estate, and its creditors and, therefore, should be granted.

## IMMEDIATE RELIEF IS JUSTIFIED

52.      Bankruptcy Rule 6003 provides the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  Debtor submits for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to Debtor.

## WAIVER OF ANY APPLICABLE STAY

53.      Debtor also requests the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As described above, the relief sought herein is necessary for Debtor to operate its business without interruption and to preserve value of its estate.  Accordingly, Debtor respectfully requests the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

2814058.10

## RESERVATION OF RIGHTS

54.     Nothing in this Motion or any actions taken by Debtor pursuant to relief granted in any order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or (ii) shall impair, prejudice, waive, or otherwise affect the rights of Debtor or its estate with respect to the validity, priority, or amount of any claim against Debtor and its estate.

## NOTICE

55.     Notice of this Motion has been given to: (i) the Office of the United States Trustee for the District of North Dakota; (ii) counsel to Wells Fargo Bank, National Association; (iii) holders of the twenty (20) largest unsecured claims on a consolidated basis against Debtor; (iv) the Banks; (v) counsel to any committee appointed in this case; and (vi) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Debtor submits, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

56.     WHEREFORE, Debtor respectfully requests the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granted the relief requested herein and such other and further relief as is just and proper.

2814058.10

Dated this 1st day of March, 2017.

**VOGEL LAW FIRM**

BY: */s/ Caren W. Stanley*
       Jon R. Brakke (#03554)
       jbrakke@vogellaw.com
       Caren W. Stanley (#06100)
       cstanley@vogellaw.com
       218 NP Avenue
       PO Box 1389
       Fargo, ND  58107-1389
       Telephone:  701.237.6983
       *PROPOSED ATTORNEYS FOR DEBTOR*

2814058.10

## **Exhibit A**

**(Proposed Order)**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| In Re: | Case No.:  17-30112 |
|---|---|
| Vanity Shop of Grand Forks, Inc., | Chapter 11 |
| Debtor. | |

**ORDER (I) AUTHORIZING THE DEBTOR TO PAY AND HONOR CERTAIN PREPETITION WAGES, BENEFITS, AND OTHER COMPENSATION OBLIGATIONS, (II) HONOR MANAGEMENT SERVICES AGREEMENT AND PAY PREPETITION OBLIGATIONS RELATED THERETO, AND (III) AUTHORIZING BANKS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATING TO SUCH OBLIGATIONS**

Upon consideration of the motion (the "**Motion**")[1] of Debtor for the entry of an order, pursuant to sections 105(a), 363(b), 507(a)(4), and 507(a)(5) of the Bankruptcy Code, (i) authorizing, but not directing, Debtor, in accordance with its stated policies and in its discretion, to pay, honor, or otherwise satisfy certain of the Employee Obligations, including amounts and obligations related to the period prior to the Petition Date, (ii) authorizing, but not requiring, Debtor to continue performing and exercising rights and obligations under the Management Agreement, and (iii) authorizing Banks to honor and process related checks and electronic transfers; and upon consideration of the Motion and all pleadings related thereto, including the First Day Declaration; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required; and it appearing that this Court has jurisdiction to consider the Motion in accordance with

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion or the First Day Declaration, as applicable.

2814058.10

28 U.S.C. §§ 157 and 1334; and it appearing that this is a core proceeding pursuant to

28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is

proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in

the Motion and provided for herein is in the best interest of Debtor, its estate, and its

creditors; and after due deliberation and sufficient cause appearing therefore,

IT IS HEREBY ORDERED:

1.      The Motion is GRANTED as set forth herein.

2.      Upon entry of this Order, Debtor is authorized, but not directed, to pay and/or

honor (including to any third parties that provide or aid in the monitoring, processing, or

administration of the Employee Obligations), in its sole discretion, the Employee Obligations

as and when such obligations are due, in amounts not to exceed the limits set forth in the

Motion; provided, however, notwithstanding any other provision of this Order, no payments

to any Employee shall exceed the amounts set forth in sections 507(a)(4) and 507(a)(5) of the

Bankruptcy Code unless such amounts above the $12,850 statutory cap provided for under

section 507(a)(4) of the Bankruptcy Code (the "**Statutory Cap**") are the result of cash

payment for unpaid Paid Time Off that is required under applicable state law.

3.      Debtor is authorized, but not directed, in its sole discretion, in amounts not to

exceed the limits set forth in the Motion to honor and continue the Employee Benefits that

were in effect as of the Petition Date; provided, however, that such relief shall not constitute

or be deemed an assumption or an authorization to assume any of such Employee Benefits

under section 365(a) of the Bankruptcy Code.

2

4.       Debtor is authorized, but not directed, to continue performing and exercising rights and obligations under the Management Agreement with Vanity, Inc. including the reimbursement of 100% of direct management costs in accordance with its prepetition ordinary course of business.  Debtor will not pay any bonus to Vanity, Inc. without further order of the Court.

5.       Prepetition amounts authorized to be paid by this Order are limited as follows:

| Category[2] | Amount |
|---|---|
| Employee Claims[3] (2/19/17 – 3/1/17) | $499,000 |
| Paid Time Off (only at separation and where required by state law) | $180,400 |
| Health Plan | $260,000 |
| Dental Plan | $20,000 |
| Vision Plan | $1,500 |
| COBRA | $9,000 |
| Flex Benefits | $800 |
| Life, Disability, and Related Coverage | $4,500 |
| Additional Medical Administration Costs | $1,000 |
| Voluntary Life | $300 |
| Voluntary Other | $4,500 |
| Retirement Plan | $15,000 |

[2] Each category includes amounts for related Employee Administrator Obligations

[3] No Employee will be paid more than $12,850 in the aggregate with respect to Employee Claims.

3

| Employee Expenses | $15,000 |
|---|---|
| Administrative Employee Obligations Under the Management Agreement with Vanity, Inc. (2/19/17 – 3/1/17) | $315,000 |

6.      In addition to the foregoing, Debtor is authorized to make payments in an amount not to exceed $10,000 in the aggregate to reimburse certain Employees for out-of-pocket expenses associated with prepetition payroll payments that were unintentionally omitted and/or prepetition checks for payroll that did not clear.  For the avoidance of doubt, the payment of these amounts shall not result in any single Employee being paid more than the Statutory Cap.

7.      The Banks shall be and hereby are authorized to receive, process, honor, and pay all prepetition and postpetition checks and fund transfers on account of the Employee Obligations that had not been honored and paid as of the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.  The Banks are prohibited from placing any holds on, or attempting to reverse, any automatic transfers to any account of an Employee or other party for Employee Obligations.  Debtor shall be and is hereby authorized to issue new postpetition checks or effect new postpetition fund transfers on account of the Employee Obligations to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

8.      Notwithstanding any other provision of this Order, any Bank may rely on the representations of Debtor with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtor prior to the Petition Date should be honored pursuant to any

4

order of this Court, and any Bank that honors a prepetition check or other item drawn on any account that is the subject of this Order (i) at the direction of Debtor, (ii) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (iii) as a result of an innocent mistake made despite the above-described protective measures, shall not be liable to Debtor or its estate on account of such prepetition check or other item being honored postpetition.

9.      Debtor may pay and remit any and all withholding, including social security, FICA, federal and state income taxes, garnishments, health care payments, retirement fund withholding, and other types of withholding, whether these relate to the period prior to or after the Petition Date.

10.     Any party receiving payment from Debtor is authorized to rely upon the representation of Debtor as to which payments are authorized by this Order.

11.     Nothing in the Motion or this Order or the relief granted (including any actions taken or payments made by Debtor pursuant to the relief) shall:  (i) be construed as a request for authority to assume any executor contract under section 365 of the Bankruptcy Code; (ii) waive, affect, or impair any of Debtor's rights, claims, or defenses, including, but not limited to, those arising from section 365 of the Bankruptcy Code, other applicable law, and any agreement; (iii) grant third-party beneficiary status or bestow any additional rights on any third party; or (iv) be otherwise enforceable by any third party.

12.     Nothing in this Order shall be construed as binding on this Court or any other party-in-interest, or to establish the law of the case, with respect to whether an individual is or is not an insider within the meaning of section 101(31) of the Bankruptcy Code.

2814058.10

13.     Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

14.     Nothing in this Order shall be deemed to:  (i) authorize the payment of any amounts subject to section 503(c) of the Bankruptcy Code, (ii) authorize or approve any bonus plan or severance plan that is subject to section 503(c) of the Bankruptcy Code, or (iii) authorize Debtor to cash out unpaid vacation or leave time upon termination of an employee unless applicable state law requires such payment.

15.     Bankruptcy Rule 6003(b) has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to Debtor.

16.     Notwithstanding any provision in the Bankruptcy Rules to the contrary: (i) this Order shall be effective immediately and enforceable upon its entry; (ii) Debtor is not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order; and (iii) Debtor is authorized and empowered, and may in its discretion and without further delay, take any action necessary or appropriate to implement this Order.

17.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated this _____ day of _____, 2017.


_____
UNITED STATES BANKRUPTCY JUDGE

6