# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| In Re: | Case No.: 17-30112 |
|---|---|
| Vanity Shop of Grand Forks, Inc., | Chapter 11 |
| Debtor. | |

## DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS: (I) AUTHORIZING THE DEBTOR TO ASSUME THE CONSULTING AGREEMENT, (II) AUTHORIZING AND APPROVING THE CONDUCT OF STORE CLOSING SALES, WITH SUCH SALES TO BE FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, AND (III) GRANTING RELATED RELIEF

Vanity Shop of Grand Forks, Inc. ("**Debtor**") in the above-captioned chapter 11 case hereby moves the Court ("**Motion**"), pursuant to Sections 105(a) and 363, 365, and 554 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.* ("**Bankruptcy Code**"), and Rules 2002, 6003 and 6004 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), for entry of an interim order, substantially in the form attached hereto as **Exhibit A** (the "**Interim Order**"), and a final order (the "**Final Order**")[1]: (i) authorizing the Debtor to assume the Consulting Agreement (the "**Consulting Agreement**") dated as of February 27, 2017, by and between Debtor, on the one hand, and Tiger Capital Group, LLC (the "**Consultant**"), on the other hand, a copy of which is attached as **Exhibit B**, (ii) authorizing the Debtor to continue store closing or similar themed sales in accordance with the Agreement and the terms of the store closing sale guidelines (the "**Sale Guidelines**"), a copy of which are attached as **Exhibit C**, with such sales to be free and clear of all liens, claims,

---

[1] A proposed form of the Final Order will be filed with the Court prior to the Final Hearing.

2821695.4

and encumbrances; and (iii) granting certain related relief. In support of this Motion, Debtor relies on the Declaration of Jill Motschenbacher in Support of Chapter 11 Petition and First Day Motions ("**First Day Declaration**"), which was filed contemporaneously with this Motion and is incorporated herein by reference. In further Support of this Motion, Debtor respectfully represents as follows:

**JURISDICTION AND VENUE**

1.     The Court has jurisdiction over this Chapter 11 case and this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and Debtor consents to entry of a final order by the Court in connection with this Motion to the extent it is later determined the Court, absent consent of the parties, cannot enter final order or judgments in connection herewith consistent with Article III of the United States Constitution. Venue of this Chapter 11 case and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.     The statutory bases for the relief requested herein are Sections 105(a), 363, 365, and 554 of the Bankruptcy Code and the Bankruptcy Rules 2002, 6003 and 6004.

**BACKGROUND**

I.     **GENERAL**

3.     On the date hereof ("**Petition Date**"), Debtor commenced a voluntary case under Chapter 11 of the Bankruptcy Code. Debtor is authorized to continue to operate its business and manage its property as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. To date, no trustee, examiner, or statutory committee has been appointed in this Chapter 11 case. Additional factual background relating to Debtor's

2

2821695.4

business, capital structure, and the commencement of this Chapter 11 case is set forth in further detail in the First Day Declaration.

## II.     THE DEBTOR'S STORES.

4.     As set forth in further detail in the First Day Declaration, the Debtor is a regional specialty retailer of casual apparel and accessories for fashion-conscious young women.  The Debtor is privately owned and sells its own private-label goods, along with an assortment of private-label branded denim, through approximately 137 mall-based stores in 27 states and through its website, Vanity.com, which was launched in 2008.

5.     After attempts to develop going-concern restructuring options proved unsuccessful, the Debtor determined, upon consultation with its key constituents, that commencing going-out-of-business sales (collectively, the "**Store Closing Sales**") through the Debtor's retail locations (collectively, the "**Stores**") and this Chapter 11 case provided the best opportunity to maximize value for the Debtor's estate, creditors and all interested parties.   This decision was reached only upon considering all reasonable alternatives, exploring and entertaining creative restructuring solutions.

## III.    THE STORE CLOSING SALES AND PREPETITION MARKETING EFFORTS.

6.     Accordingly, in February 2017, the Debtor and its advisors began contacting certain nationally-recognized potential liquidators (the only parties that can effectuate a transaction of this magnitude) to solicit interest in bidding on the right to conduct the Store Closing Sales.   The Debtor initially contemplated soliciting a bid from Hilco Merchant Resources, LLC (who has routinely performed inventory appraisals and liquidation analyses of Debtor's assets every six months) but was advised that Hilco is currently unavailable to

2821695.4

take on another liquidation project at this time.  Debtor discussed the Store Closing Sales and solicited bids from Consultant, a nationally-recognized liquidator firm, to conduct the same. The Debtor selected the Consultant to conduct the Store Closing Sales, and determined to close the Stores and liquidate the merchandise (the "**Merchandise**") and furniture, fixtures, and equipment (the "**FF&E**" and together with the Merchandise, the "**Store Closing Assets**") at each of the Stores in accordance with the terms of the Consulting Agreement (the material terms of which are set forth below) and the Sale Guidelines.  Accordingly, the Store Closing Sales are scheduled to commence on March 2, 2017.

**IV.   THE CONSULTING AGREEMENT**

7.     Under the terms of the Consulting Agreement, subject to the Court's approval of the attached Interim Order and a subsequent Final Order, respectively, the Consultant will serve as the exclusive agent to the Debtor for the purpose of conducting a sale of the Store Closing Assets using the procedures outlined in the Sale Guidelines.

8.     Debtor negotiated the terms and conditions of the Consulting Agreement in good faith and at arms' length.  The terms set forth in the Consulting Agreement – including Consultant's compensation—are consistent with industry standards.  The Debtor seeks to assume the Consulting Agreement so that it may leverage the experience and resources of the Consultant in performing large-scale liquidations while retaining control over the sale process, which the Debtor believes will provide the maximum benefit to the estate.

9.     The Consulting Agreement is provided in its entirety as **Exhibit B** to this

Motion.  However, the material terms are summarized in the table below[2]:

| TERM | DESCRIPTION OF APPLICABLE CONSULTING AGREEMENT PROVISIONS |
|---|---|
| **Sale Commencement Date** | Thursday, March 2, 2017 |
| **Sale Termination Date** | April 30, 2017, unless Debtor and Consultant mutually agree to extend. |
| **Consultant's Services** | During the Sale Term, Consultant shall provide Merchant with the following services with respect to the conduct of the Sale: (a) provide qualified supervisors (the "**Supervisors**") engaged by Consultant to oversee the Sale of the Merchandise from the Stores; (b) determine appropriate point-of-sale and external advertising for the Stores, approved in advance by Merchant; (c) determine appropriate discounts with respect to Merchandise, staffing levels for the Stores and the DCs, approved in advance by Merchant, and appropriate bonus and incentive programs, if any, for the Stores' and the DCs' employees, approved in advance by Merchant; (d) oversee display of Merchandise for the Stores; (e) evaluate sales of Merchandise by category and sales reporting and monitor expenses; (f) maintain the confidentiality of all proprietary or non-public information regarding Merchant in accordance with the provisions of the confidentiality agreement signed by the Parties; (g) assist Merchant in connection with managing and controlling loss prevention and employee relations matters; and (h) provide such other related services deemed necessary or appropriate by Merchant and Consultant. |
| **Merchant's Duties** | Merchant shall (a) be the employer of the Stores' and the DCs' employees, other than the Supervisors, and provide employees at the Stores and the DCs; (b) pay all taxes, costs, expenses, accounts payable, and other liabilities relating to the Stores, the DCs, the Stores' employees and other representatives of Merchant; (c) prepare and process all tax forms and other documentation; (d) collect all sales taxes and pay them to the appropriate taxing authorities for the Stores; (e) use reasonable efforts to cause Merchant's employees to cooperate with |

---

[2] All capitalized terms set forth in the table below have the meaning ascribed under the Consulting Agreement unless otherwise defined in the table below.  To the extent there is any conflict between the summarized terms in this paragraph 9 and the Consulting Agreement, the Consulting Agreement shall control.

2821695.4

|  | Consultant and the Supervisors; (f) execute all agreements determined by the Merchant and Consultant to be necessary or desirable for the operation of the Stores, the DCs during the Sale; (g) arrange for the ordinary maintenance of all point-of-sale equipment required for the Stores; (h) ensure that Consultant has quiet use and enjoyment of, and reasonable access to, the Stores and the DCs for the Sale Term in order to perform its obligations under this Agreement; (i) use reasonable efforts to cause Merchant's employees to cooperate with Consultant and the Supervisors.

Additionally, Merchant shall provide central administrative services necessary for the Sale, including, without limitation, customary POS administration, sales audit, cash reconciliation, accounting, and payroll processing, credit card systems and servicing arrangement during the course of the Sale at no cost to Consultant.

Merchant shall be solely responsible for all expenses of the Sale, including, without limitation, (A) all Store-level and DC-level operating expenses and (B) to the extent in compliance with the **Expense Budget** (as defined below). |
|---|---|

6

| Consultant's Fees and Expenses | In consideration of its services hereunder with respect to the Stores, Consultant shall earn a fee (the "**Merchandise Fee**") equal to the product of the Gross Proceeds of the Merchandise and the percentage determined pursuant to the following table (the "**Consultant's Percentage**"): |
|---|---|

| Recovery Percentage | Consultant's Percentage |
|---|---|
| < 135.00% | 0.00% |
| 135.00-139.99% | 1.00% |
| 140.00-144.99% | 1.50% |
| ≥ 145.00% | 2.00% |

The Recovery Percentage for the Merchandise shall be determined in connection with the Final Reconciliation, and once determined, the Parties (as part of the Final Reconciliation) shall determine the applicable Consultant's Percentage. Once Consultant's Percentage is determined, the Merchandise Fee shall be calculated using the applicable Consultant's Percentage back to dollar one.

If requested by Merchant, Consultant shall sell Merchant's goods not constituting Merchandise during the Sale at the Stores, and in consideration of such services with respect to the Stores, consultant shall earn a fee equal to the twenty percent (20%) multiplied by the Gross Proceeds from the sale of such goods at the Stores

Upon execution of the Consulting Agreement, Merchant shall advance Consultant $200,000 (the "**Retainer**") to cover expenses of the Sale (including, without limitation, supervision and advertising) and amounts due to Consultant. Prior to the entry of the Final Retention Order, Merchant shall not be permitted to apply (by offset or otherwise) the Retainer against any amounts due and owing to Consultant; provided, that, if the Bankruptcy Court declines to enter the Interim Retention Order, Merchant shall be allowed to use the Retainer to pay all amounts due Consultant under this Consulting Agreement.. From and after the entry of the Final Retention Order, the Retainer shall be applied to expenses required to be reimbursed to Consultant by Merchant and other amounts payable to Consultant in accordance with the terms of the Consulting Agreement.

2821695.4

| Expense Budget | Advertisement $154,895<br>Supervision 508,956<br>Miscellaneous 60,000<br>Total Consultant Exp. $723,851 |
|---|---|
| **Additional Consultant Goods and Fee for Sale of Same** | Consultant shall have the right, at Consultant's sole cost and expense, to supplement the Merchandise in the Sale with additional goods procured by Consultant which are of like kind, and no lesser quality, to the Merchandise in the Sale ("**Additional Merchandise**"). Consultant shall consult with Merchant with respect to the Additional Merchandise to ensure that the Additional Merchandise is of like kind, and no lesser quality, to the Merchandise in the Sale and is in categories designed to enhance the Sale.<br><br>The Additional Merchandise shall be purchased by Consultant as part of the Sale, and delivered to the Stores at Consultant's sole expense (including as to labor, freight and insurance relative to shipping such Additional Merchandise to the Stores). Sale of Additional Merchandise shall be run through Merchant's cash register systems. Consultant shall provide signage in the Stores notifying customers that the Additional Merchandise have been included in the Sale.<br><br>Consultant shall pay to Merchant an amount equal to five percent (5.00%) of the Gross Proceeds from the sale of the Additional Merchandise (the "**Additional Merchandise Fee**"). Consultant shall retain all remaining amounts from the sale of the Additional Merchandise Consultant. Merchant and Lender intend that the transactions relating to the Additional Merchandise are, and shall be construed as, a true consignment from Consultant to Merchant in all respects and not a consignment for security purposes. |

8

| | |
|---|---|
| **Consultant's Lien Rights** | Consultant shall be granted a valid, binding and enforceable security interest in and lien upon (i) the Additional Merchandise and (ii) the Additional Merchandise proceeds (with respect to the Additional Merchandise and the identifiable Additional Merchandise proceeds, senior to all other liens on such collateral, including, without limitation, any liens in favor of any Lender). |
| | Merchant shall deposit on a weekly basis 1% of the prior week's Gross Proceeds from the sale of Merchandise in a segregated account (the "**Segregated Account**").  The Merchandise Fee, the FF&E Fee, any proceeds from the sale of Additional Merchandise owed to Consultant and all of Merchant's other payment obligations to Consultant under this Agreement shall be secured by (and Merchant hereby grants to Consultant) a first priority security interest in and lien on the Segregated Account and all funds on deposit therein.  Such security interest and lien created hereunder is (i) validly created, (ii) effective upon immediately upon execution of this Agreement, (iii) senior to all other liens on such collateral, including, without limitation, any liens in favor of Wells Fargo (to the extent permitted by applicable law). |

2821695.4

| | |
|---|---|
| **Indemnification by Merchant (Debtor)** | Merchant shall indemnify, defend, and hold Consultant and its consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, representatives, lenders, potential co-investors,  principals, affiliates, and Supervisors (collectively, **"Consultant Indemnified Parties"**) harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to: (a) the willful or negligent acts or omissions of Merchant or the Merchant Indemnified Parties (as defined below); (b) the material breach of any provision of this Agreement by Merchant; (c) any liability or other claims, including, without limitation, product liability claims, asserted by customers, any Store employees (under a collective bargaining agreement or otherwise), or any other person (excluding Consultant Indemnified Parties) against Consultant or an Consultant Indemnified Party, except claims arising from Consultant's gross negligence, willful misconduct or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortuous or otherwise actionable treatment of Consultant's Indemnified Parties or Merchant's customers by Merchant or Merchant's Indemnified Parties; and (e) Merchant's failure to pay over to the appropriate taxing authority any taxes required to be paid by Merchant during the Sale Term in accordance with applicable law. |

| Indemnification by Consultant | Consultant shall indemnify, defend and hold Merchant and its consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, representatives, lenders, potential co-investors, principals, and affiliates (other than the Consultant or the Consultant Indemnified Parties) (collectively, "**Merchant Indemnified Parties**") harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to (a) the willful or grossly negligent acts or omissions of Consultant or the Consultant Indemnified Parties; (b) the breach of any provision of, or the failure to perform any obligation under, this Agreement by Consultant; (c) any liability or other claims made by Consultant's Indemnified Parties or any other person (excluding Merchant Indemnified Parties) against a Merchant Indemnified Party arising out of or related to Consultant's conduct of the Sale, except claims arising from Merchant's negligence, willful misconduct, or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortuous or otherwise actionable treatment of Merchant Indemnified Parties, or Merchant's customers by Consultant or any of the Consultant Indemnified Parties and (e) any claims made by any party engaged by Consultant as an employee, agent, representative or independent contractor arising out of such engagement. |

10.     As set forth in its Motion for Entry of an Order Authorizing Maintenance, Administration, and Continuation of Certain Customer Programs, Debtor is no longer selling gift cards.  However, gift cards, and coupons that were issued prior to the Petition Date will continue to be honored, and returns of Merchandise purchased pre-petition will be accepted for ten (10) days from the Petition Date, subject to all other terms set forth in Debtor's return and exchange policy.

11.     Debtor and Consultant have begun the process of preparing for the Store Closing Sales, including (a) determining how to distribute its remaining inventory across its Stores to maximize proceeds realized from the Store Closing Sales; (b) ordering customized specialty banners and signs to announce the Store Closing Sales at the Stores; and (c)

2821695.4

engaging with Debtor's employees about the Store Closing Sales.  Further, Consultant has worked to familiarize itself with Debtor's operations, the Merchandise, the Stores, and other Store Assets.

12.     On February 27, 2017, following the execution of the Consulting Agreement, the Consultant began preparations to officially launch the Store Closing Sales on March 2, 2017.

## RELIEF REQUESTED

13.     By this Motion, Debtor seeks the entry of the Interim Order and Final Order (a) authorizing Debtor to assume the Consulting Agreement; (b) authorizing Debtor to conduct the Store Closing Sales in accordance with the Consulting Agreement and Sale Guidelines, with all such sales being free and clear of all liens, claims, and encumbrances; and (c) granting certain other related relief.

## BASIS FOR RELIEF REQUESTED

**A.     Assumption of the Consulting Agreement is Warranted under Bankruptcy Code § 365.**

14.     Debtor requests authority to assume the Consulting Agreement under Bankruptcy Code § 365(a), which permits Debtor to assume or reject any executory contract or unexpired lease subject to court approval.  The Eighth Circuit has adopted the business judgment rule for determining whether a debtor is justified in assuming or rejecting an executory contract.  *See Crystalin, LLC v. Selma Props. Inc. (In re Crystalin, LLC)*, 293 B.R. 455, 463 (B.A.P. 8th Cir. 2003).  Under the business judgment rule, "management of a corporation's affairs is placed in the hands of its board of directors and officers, and the Court should interfere with their decisions only if it is made clear that those decisions are,

12

*inter alia*, clearly erroneous, made arbitrarily, are in breach of the officers' and directors' fiduciary duty to the corporation, are made on the basis of inadequate information or study, are made in bad faith, or are in violation of the Bankruptcy Code." *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (citing *In re United Artists Theatre Co.*, 315 F.3d 217, 233 (3d Cir. 2003).  In order to satisfy the business judgment rule in the Eighth Circuit, a debtor must carry its burden to show some benefit to the estate.  *Crystalin*, 293 B.R. at 464.  However, courts emphasize that "this test is not an onerous one", *Id.* at 463, *see also In re AbitibiBowater*, 418 B.R. 815, 831 (Bankr. D. Del. 2009) (the business judgment standard is "not a difficult standard to satisfy"), and courts should find this prong of the analysis met "'as long as the proposed action *appears* to enhance the debtor's estate.'" *Crystalin*, 293 B.R. at 464 (quoting *Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 566 n.16 (8th Cir. 1997) (emphasis original, internal alterations and quotations omitted)).  Once a benefit to the estate has been shown, only a finding of "bad faith or gross abuse of . . . 'business discretion'" should prevent the debtor from assuming the contract.  *Id.* (quoting *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985)); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (stating a debtor's decision to reject an executory contract is governed by the business judgment standard and can only be overturned if the decision was the product of bad faith, whim, or caprice).

15.    The business judgment rule is crucial in Chapter 11 cases and shields a debtor's management from judicial second-guessing.  *See In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992); *see also Comm. of Asbestos Related Litigants and/or*

2821695.4

*Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attached to a debtor's management decisions."). In this case, Debtor has satisfied the "business judgment" standard and has a sound business reason for seeking to assume the Consulting Agreement. As detailed above and in the First Day Declaration, it has proven impossible to restructure Debtor's business as a going concern, notwithstanding Debtor's best efforts. Debtor, in consultation with Wells Fargo, has determined that the Stores should be closed and the Store Assets should be immediately liquidated for the benefit of Debtor's creditors. Debtor has also determined, after arms' length negotiations and reasonable due diligence, that the Consulting Agreement provides the best return to Debtor and its creditors from the liquidation of the Merchandise.

16.     The Debtor believes that the terms set forth in the Agreement are fair and equitable and present the best path forward with respect to winding down their operations. Additionally, as set forth more fully in the First Day Declaration, the Consulting Agreement's material terms, including the fees paid to the Consultant, are consistent with standard terms for liquidation sales of this kind.

17.     Assuming the Consulting Agreement will allow Debtor and Consultant to continue to manage and complete the Store Closing Sales quickly and efficiently and avoid unnecessary administrative expenses, while maximizing creditors' potential recovery.

18.     Consultant has overseen similar Store Closing Sales and is best positioned to maximize the value received from liquidating this number of Stores and volume of Merchandise. Given the complexity of the Store Closing Sales across Debtor's 137 stores

14

located in 27 states, Consultant's extensive expertise is all the more important, and brings significant strategic and managerial experience needed to maximize recoveries through the liquidation.

19.    Prohibiting Debtor from assuming the Consulting Agreement will only lead to unnecessary delay and expense to the detriment of Debtor's creditors by postponing the Store Closing Sales—which will otherwise continue after the Petition Date—and diverting substantial time and effort from preparing and managing the sale process to seeking bids from other liquidators or gearing up to manage the Store Closing Sales internally. Ultimately, such disruption and delay would significantly increase the Debtor's administrative expenses and overall losses, without any associated benefit to Debtor's estate. Moreover, because the Store Closing Sales are scheduled to conclude on or before April 30, 2017, it is unlikely that any new agents even could be found at this stage of the Store Closing Sales to undertake continuation thereof on an uninterrupted basis.   This would in all likelihood decrease the recovery to the Debtor's estate from the Store Closing Sales.

20.    Debtor seeks, on an interim and final basis, an order confirming that the Consulting Agreement is operative and effective.   Similar relief has been granted in other retail cases like this one.   *See e.g., In re Michigan Sporting Goods Distributors, Inc.,* Case No. 17-00612, Doc. No. 107 (Bankr. W.D. Mich. February 17, 2017) (interim order); *In re The Wet Seal, LLC*, Case No. 17-10229, Doc. No. 50 (Bankr. D. Del. February 3, 2017) (interim order); *In re TSA WD Holdings, Inc.*, Case No. 16-10537, Doc. No. 156 (Bankr. D. Del. March 3, 2016) (interim order); *In re TSA WD Holdings, Inc.*, Case No. 16-10537, Doc. No. 1700 (Bankr. D. Del. May 3, 2016) (final order); *In re Quicksilver, Inc.*, Case No. 15-

15

11880, Doc. No. 253 (Bankr. D. Del. Oct. 7, 2015) (final order); *In re Quicksilver, Inc.*, Case

No. 15-11880, Doc. No. 72 (Bankr. D. Del. Sept. 10, 2015) (interim order); *In re Radio

Shack Corp.*, Case No. 15-10197, Doc. No. 455 (Bankr. D. Del. Feb. 20, 2015) (final order);

*In re Radio Shack Corp.*, No. 15-10197, Doc. No. 106 (Bankr. D. Del. Feb. 6, 2015) (interim

order).

21.     Debtor submits that it has exercised reasonable business judgment in seeking

to assume the Consulting Agreement and engaging the Consultant to continue with the Store

Closing Sales post-petition, and that there is clear business justification to assume the

Consulting Agreement.

**B.      Continuing the Store Closing Sales Pursuant to the Sales Guidelines is
        Authorized Under Bankruptcy Code § 363(b).**

22.     Debtor also requests authorization to continue with the Store Closing Sales

under Bankruptcy Code § 363(b)(1), which permits a debtor to use, sell, or lease estate

property "other than in the ordinary course of business" after notice and a hearing.  Although

section 363(b) does not specify a standard for determining when it is appropriate for a court

to authorize the use, sale, or lease of property of the estate, courts have required that such

use, sale, or lease be based upon the sound business judgment of the debtor.  *See, e.g., Myers

v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (internal citation omitted); *Comm.

of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070–71 (2d Cir.

1983); *In re Abbotts Dairies, Inc.*, 788 F.2d 143, 147–48 (3d Cir. 1986) (implicitly adopting

the "sound business judgment" test of *Lionel Corp.*); *In re Del. & Hudson Ry. Co.*, 124 B.R.

169, 175–76 (D. Del. 1991) (holding that the Third Circuit adopted the "sound business

judgment" test in *Abbotts Dairies*); *Dai-Icho Kangyo Bank v. Montgomery Ward Holding

16

*Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999)

(same); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) "[A] bankruptcy

court can authorize a sale of all a Chapter 11 debtor's assets under § 363(b)(1) when a sound

business purpose dictates such action."

23.    As set forth above, the demonstration of a valid business justification by the

debtor leads to a strong presumption "that in making [the] business decision the directors of a

corporation acted on an informed basis, in good faith and in the honest belief that the action

taken was in the best interests of the company." *In re Integrated Res.*, 147 B.R. at 656.

Accordingly, similar store closing or liquidation sales are routinely approved by courts in

Chapter 11 cases involving retail debtors.

24.    As explained above and in the First Day Declaration, sound business reasons

exist to proceed with the proposed Store Closing Sales.  Debtor—in consultation with Wells

Fargo and its constituents—engaged in an exhaustive analysis of its ongoing and future

business prospects.  Debtor made every effort to reach a workable out-of-court restructuring.

In the end, these efforts did not result in a sustainable go-forward business plan.  As a result,

Debtor concluded that winding down the Debtor's business by conducting the Store Closing

Sales at the Stores is the best remaining alternative and that the Consulting Agreement and

proposed Sale Guidelines are the best sale strategy to maximize the profits realized from the

liquidation and stop the rapid deterioration of the Debtor's business.

25.    Accordingly, Debtor has a compelling business justification for continuing the

Store Closing Sales in accordance with the Consulting Agreement and Sale Guidelines.

2821695.4

**C.     The Sale of the Store Assets Free and Clear of Liens, Claims and Encumbrances is Authorized Under Bankruptcy Code § 363(f).**

26.     Debtor requests approval to sell the Store Assets on a final "as is" basis, free and clear of liens, claims, interests and encumbrances in accordance with Bankruptcy Code § 363.  A debtor in possession may sell property under Bankruptcy Code § 363 "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

    i.     applicable non-bankruptcy law permits the sale of such property free and clear of such interest;

    ii.     such entity consents;

    iii.     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    iv.     such interest is a bona fide dispute; or

    v.     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

27.     The Debtor submits that it is appropriate to sell the Store Closing Assets on a final "as is" basis, free and clear of any and all liens, claims, and encumbrances in accordance with section 363(f) of the Bankruptcy Code because one or more of the tests of section 363(f) are satisfied.  Specifically, but without limitation, Debtor has satisfied Bankruptcy Code § 363(f)(2) because Debtor's pre-petition secured lender holds a first priority perfected security interest in the Store Assets and has consented to the sale of the Store Assets free and clear.  Furthermore, the Debtor proposes that any such liens, claims, and encumbrances be transferred and attached to the proceeds of the Store Closing Sales that Debtor earns.

18

28.     Accordingly, the Debtor proposes that section 363(f) of the Bankruptcy Code authorizes the transfer and conveyance of the Store Closing Assets free and clear of any liens, claims, and encumbrances.  A number of courts have approved similar relief in other Chapter 11 cases.  *See, e.g., In re Michigan Sporting Goods Distributors, Inc.,* Case No. 17-00612, Doc. No. 107 (Bankr. W.D. Mich. February 17, 2017) (interim order) *In re Quicksilver, Inc.,* Case No. 15-11880 (Bankr. D. Del. Oct. 7, 2015); *In re RadioShack Corp.,* Case No. 15-10197 (Bankr. D. Del. Feb. 20, 2015).

**D.      The Court Should Approve the Proposed Sale Guidelines.**

29.     As set forth in greater detail below, many states have laws (the "Liquidation Laws") that require special and cumbersome licenses, waiting periods, time limits, and other procedures for store closing and liquidation sales.  Therefore, although the Debtor intends to comply fully with applicable state and local health and safety and consumer protection laws in connection with the Store Closing Sales, the Debtor seeks a waiver of compliance with the Liquidation Laws and instead requests the authority to conduct such sales in accordance with the Sale Guidelines.

30.     The Debtor and the Consultant developed the Sale Guidelines with the intent to provide a means of controlling the administrative burdens on their estates that are associated with complying with the Liquidation Laws, while at the same time protecting the interests of the landlords and the applicable governmental agencies enforcing such laws. Accordingly, the Debtor submits that the Sale Guidelines adequately address any concerns that the landlords or the governmental agencies may raise with respect to the Store Closing

2821695.4

Sales, and therefore, the requested relief below seeking the waiver of Liquidation Laws should be approved.

**E.      Exemption from Liquidation Laws is Warranted and Appropriate.**

31.     Debtor recognizes that certain states and local laws, statutes, rules, regulations and ordinances that relate to liquidation sales may be applicable to the Stores where the Store Closing Sales will occur.  For example, certain states have laws that require securing a permit to conduct store closing sales, with certain limitations and restrictions as to how and when such sales may take place, including inventory restrictions, waiting periods.

32.     To ensure the efficient and orderly liquidation of the Store Assets, however, Debtor requests that the Court authorize Debtor to conduct the Store Closing Sales without strictly complying with any applicable Liquidation Laws.  The Court retains jurisdiction and oversight over the Store Closing Sales, with the proposed Sale Guidelines and Consulting Agreement governing its completion.  The Store Closing Sales are necessary and appropriate to effectuate the orderly liquidation of the Store Assets for the benefit of Debtor's estate and creditors, with creditors and the public adequately protected through the Court's supervision over the liquidation process.

33.     Debtor notes that many Liquidation Laws provide that court-authorized liquidation sales are exempt from or otherwise preempt a particular state's Liquidation Law. Even if no such express exemption exists, Debtor submits that to the extent a conflict exists between state/local law and federal bankruptcy law, the federal bankruptcy law preempts state/local law.  *See, e.g., Aloe v. Shenango Inc. (In re Shenango Group, Inc.)*, 186 B.R. 623, 628 (Bankr. W.D. Pa. 1995) ("Trustees and debtors-in-possession have unique fiduciary and

legal obligations pursuant to the bankruptcy code . . . . [A] state statute cannot place burdens on them where the result would contradict the priorities established by the federal bankruptcy code); *Baker & Drake, Inc. v. Pub. Serv. Comm'n of Nev. (In re Baker & Drake, Inc.)*, 35 F.3d 1348, 1353-54 (9th Cir. 1994) (noting that while preemption is not always appropriate (*e.g.*, when health and safety of the public is at stake), it is likely appropriate "where a state statute concerned with economic regulation" is at issue).

34.    Relief from strict application with Liquidation Laws has been approved by other courts in similar circumstances.  *See, e.g., In re The Wet Seal, LLC*, Case No. 17-10229, Doc. No. 50 (Bankr. D. Del. February 3, 2017); *In re Michigan Sporting Goods Distributors, Inc.*, Case No. 17-00612, Doc. No. 107 (Bankr. W.D. Mich February 17, 2017); *In re Quicksilver, Inc.*, Case No. 15-11880, Doc. No. 253 (Bankr. D. Del. Oct. 7, 2015); *In re RadioShack Corp.*, Case No. 15-10197, Doc. No. 455 (Bankr. D. Del. Feb. 20, 2015); *In re Coldwater Creek Inc.*, Case No. 14-10867, Doc. No. 355 (Bankr. D. Del. May 7, 2014); *In re Nantco, LLC*, Case No. 13-10610, Doc. No. 124 (Bankr. D. Del. Apr. 12, 2013); *In re Borders Grp., Inc.*, Case No. 11-10614, Doc. No. 1377 (Bankr. S.D.N.Y. July 21, 2011); *In re Blockbuster Inc.*, Case No. 10-14997, Doc. No. 864 (Bankr. S.D.N.Y. Jan. 20, 2011); *In re Anchor Blue Retail Grp.*, Case No. 09-11770, Doc. No. 182 (Bankr. D. Del. June 18, 2009).

35.    Therefore, to the extent that any Liquidation Laws potentially interfere with the Store Closing Sales, Debtor seeks authority to proceed with the Store Closing Sales without the necessity of, and the delay associated with, complying with them. Debtor further requests that no other person or entity, including (but not limited to) any governmental unit or lessor be allowed to take any action to prevent, interfere with, or otherwise hinder the

2821695.4

conduct of the Store Closing Sales, including the advertisement and promotion of the Store

Closing Sales, as contemplated in the Consulting Agreement and in accordance with the Sale

Guidelines.

36.    Notwithstanding such requests, the Debtor proposes to serve, within two (2)

business days of the entry of the Interim Order and the Final Order, copies of such Orders

and the Sale Guidelines attached thereto, by email, facsimile, or regular mail on (i) the

Attorney General's office for each state in which the Debtor operates a retail location, and

(ii) the division of consumer protection for each state in which the Debtor operates a retail

location, (collectively, the "**Governmental Units**"), and (iii) the applicable landlord for each

Store (collectively, the "**Landlords**").

**F.    Waiver of Contractual Restrictions in Leases Restricting the Store Closing Sales is Authorized and Appropriate.**

37.    Debtor recognizes that the Store Closing Sales and the Sale Guidelines may be

inconsistent with certain contractual covenants contained in leases, agreements, licenses,

recorded documents or other obligations applicable to certain Stores.  Debtor requests that

the Court excuse Debtor from complying with any such restrictions that may impair Debtor's

ability to conduct the Store Closing Sales in accordance with the Consulting Agreement and

Sale Guidelines.

38.    Store closing or liquidation sales have unfortunately become a fairly common

aspect of Chapter 11 cases involving retail debtors.  Such sales are consistently approved by

courts despite provisions in various contractual and recorded documents that seek and

purport to prohibit or restrict such sales.  *See In re R.H. Macy & Co.*, 170 B.R. 69, 77 (Bankr.

S.D.N.Y. 1994) (restrictive lease provision is unenforceable against debtor seeking to

conduct going-out-of-business sale "because it conflicts with the Debtor's fiduciary duty to maximize estate assets"); *In re Ames Dep't Stores, Inc.*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992) ("[T]o enforce the anti-[going out-of-business] sale clause of the Lease would contravene overriding federal policy requiring Debtor to maximize estate assets by imposing additional constraints never envisioned by Congress."); *In re Tobago Bay Trading Co.*, 112 B.R. 463, 467 (Bankr. N.D. Ga. 1990) (clause in lease prohibiting going-out-of-business sales is unenforceable); *In re Lisbon Shops, Inc.*, 24 B.R. 693, 695 (Bankr. E.D. Mo. 1982) (holding restrictive lease provision unenforceable in chapter 11 case where debtor sought to conduct a liquidation sale).

39.    Here, for the reasons discussed in this Motion, the First Day Declaration, Debtor respectfully submits that the Store Closing Sales are essential and critical to Debtor's liquidation strategy.   Therefore, Debtor should be excused from complying with any contractual provision that would prohibit, restrict, or otherwise interfere with the Store Closing Sales.  Bankruptcy courts have routinely granted similar relief in other bankruptcy cases involving retail debtors, holding that restrictive provisions in various documents are impermissible restraints on a debtor's ability to maximize the value of its assets under section 363 of the Bankruptcy Code.  *See, e.g., In re The Wet Seal, LLC*, Case No. 17-10229, Doc. No. 50 (Bankr. D. Del. February 3, 2017); *In re Michigan Sporting Goods Distributors, Inc.*, Case No. 17-00612, Doc. No. 107 (Bankr. W.D. Mich February 17, 2017); *In re Quicksilver, Inc.*, Case No. 15-11880, Doc. No. 253 (Bankr. D. Del. Oct. 7, 2015); *In re RadioShack Corp.*, Case No. 15-10197, Doc. No. 455 (Bankr. D. Del. Feb. 20, 2015); *In re Coldwater Creek Inc.*, Case No. 14-10867, Doc. No. 355 (Bankr. D. Del. May 7, 2014); *In re Namco,*

23

*LLC*, Case No. 13-10610, Doc. No. 124 (Bankr. D. Del. Apr. 12, 2013); *In re Borders Grp.,*

*Inc.*, Case No. 11-10614, Doc. No. 1377 (Bankr. S.D.N.Y. July 21, 2011); *In re Blockbuster*

*Inc.*, Case No. 10-14997, Doc. No. 864 (Bankr. S.D.N.Y. Jan. 20, 2011).

40.     Accordingly, Debtor respectfully requests the Court waive the applicability or

deem unenforceable any contractual restrictions with respect to any Store Closing Stores that

could otherwise impede Debtor from conducting the Store Closing Sales.

**G.     Abandonment of Certain Property in Connection with the Store Closing Sales
and in Accordance with the Sale Guidelines is Warranted Under Section 554 of
the Bankruptcy Code.**

41.     Section 554 of the Bankruptcy Code provides that after notice and a hearing, a

debtor "may abandon any property of the estate that is burdensome to the estate or that is of

inconsequential value and benefit to the estate." 11 U.S.C. § 554(a); *see also Bittel v. Yamato*

*Int'l Corp.*, 70 F.3d 1271 (6th Cir. 1995) ("[T]he trustee may abandon "any property of the

estate that is burdensome ... or that is of inconsequential value." *See, e.g., In re K.C. Mach. &*

*Tool Co.*, 816 F.2d 238, 246 (6th Cir. 1987) ("[I]n its discretion, the trustee may abandon

property to the debtor where administration thereof would not benefit the estate-the

creditors.").

42.     Debtor will make every reasonable effort to sell all Store Assets at the Store

Closing Sales as quickly and efficiently as possible for the benefit of its estate and creditors.

However, Debtor may determine that the costs associated with the continued sale efforts as

to certain Store Assets is likely to exceed the projected proceeds that could be realized from

their continued marketing and sale.

2821695.4

43.    In cases where selling the last remaining Store Assets (the "**Remaining Assets**") will impose a financial burden on Debtor's estate, Debtor requests authority to abandon the Remaining Asset once the applicable Store Closing Sale has concluded, without liability to any person or entity.    Before abandoning any Remaining Asset, Debtor will determine in the exercise of Debtor's business judgment, that such Remaining Asset to be abandoned by the Debtor is either (a) burdensome to the estate because removal and storage costs for the Remaining Asset are likely to exceed any net proceeds or (b) of inconsequential value and benefit to the estate.    Prior to abandoning any such Remaining Asset, Debtor will use all commercially reasonable efforts to remove, or cause to be removed, any confidential or personal identifying information in any of the Remaining Asset.    Debtor requests that the Court's Order provide that the presence of any Remaining Assets on the leased premises does not preclude the Debtor from claiming it has vacated the leased premises and rejected the subject lease and, as a result, the landlord is not entitled to a continuing administrative expense claim.

44.    Similar relief for other retail debtors has been approved under similar circumstances in recent bankruptcy cases.    See, e.g., *In re The Wet Seal, LLC*, Case No. 17-10229, Doc. No. 50 (Bankr. D. Del. February 3, 2017); *In re Michigan Sporting Goods Distributors, Inc.*, Case No. 17-00612, Doc. No. 107 (Bankr. W.D. Mich February 17, 2017); *In re Coldwater Creek Inc.*, Case No. 14-10867, Doc. No. 355 (Bankr. D. Del. Dec. 2, 2015); *In re Quicksilver, Inc.*, Case No. 15-11880, Doc. No. 253 (Bankr. D. Del. Oct. 7, 2015).

**H.      Appointment of a Consumer Privacy Ombudsman is Not Required by Sections 332 and 363(b)(1) of the Bankruptcy Code.**

45.      Section 363(b)(1) of the Bankruptcy Code provides that a debtor may not sell or lease personally identifiable information unless such sale or lease is consistent with its policies or upon appointment of a consumer privacy ombudsman (a "**CPO**") under Bankruptcy Code § 332.  Bankruptcy Code § 332 requires the appointment of a CPO no less than seven days in advance of a hearing on a sale under section 363(b)(1) so the CPO can assist the Court in its consideration of a "proposed sale or lease of personally identifiable information under section 363(b)."

46.      Debtor does not intend to sell any personally identifiable information in the course of the Store Closing Sales, and intends to remove any such information from any Store Asset that is sold or Remaining Asset before abandoning it.

47.      Accordingly, the Debtor submits that the appointment of a CPO is not necessary in connection with the Store Closing Sales.

## SATISFACTION OF BANKRUPTCY RULE 6003

48.      Pursuant to Bankruptcy Rule 6003(b), any motion seeking to use property of the estate pursuant to section 363 of the Bankruptcy Code within twenty-one days of the Petition Date requires the Debtor to demonstrate that such relief "is necessary to avoid immediate and irreparable harm." There is no question that the Debtor's failure to continue to conduct the Store Closing Sales without interruption would result in immediate and irreparable harm to the Debtor's estate by causing unnecessary delay and expense that would in turn disrupt the Debtor's liquidation efforts and decrease the recovery to the Debtors' estate from the Store Closing Sales.

49.    For the reasons set forth herein, the Debtor respectfully submits that Bankruptcy Rule 6003(b) has been satisfied and the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtor and the estate.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(H)

50.    Debtor also requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  The relief that Debtor seeks in this Motion is only effective if it is granted with immediate effect to allow Debtor to continue to operate its business without interruption and preserve the value for the bankruptcy estate. Accordingly, Debtor respectfully requests that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

51.    Nothing in the Proposed Order or this Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against Debtor and its estate, (ii) shall impair, prejudice, waive, or otherwise affect the rights of Debtor and its estate with respect to the validity, priority, or amount of any claim against Debtor and their estates, or (iii) shall be construed as a promise to pay a claim.

2821695.4

## NOTICE

52.     Notice of this Motion has been given to: (i) the U.S. Trustee for the District of North Dakota; (ii) counsel to Wells Fargo, N.A.; (ii) holders of the twenty (20) largest unsecured claims on a consolidated basis against the Debtor; (iii) the Landlords; (iv) the Governmental Units; (v) counsel to any committee appointed in this case; and (vi) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

53.     For the reasons set forth above, Debtor respectfully requests that the Court enter an Interim Order in the form attached as **Exhibit A**, granting the relief requested in this Motion and such other and further relief as may be just and proper under the circumstances.

Dated this 1st day of March, 2017.

**VOGEL LAW FIRM**


BY: */s/ Jon R. Brakke*
        Jon R. Brakke (#03554)
        jbrakke@vogellaw.com
        Caren W. Stanley (#06100)
        cstanley@vogellaw.com
        218 NP Avenue
        PO Box 1389
        Fargo, ND  58107-1389
        Telephone:  701.237.6983
        *PROPOSED COUNSEL TO  DEBTOR IN POSSESSION*

## **EXHIBIT A**

**(Proposed Interim Order)**

2821695.4

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In Re: | Case No.: 17-30112 |
| Vanity Shop of Grand Forks, Inc., | Chapter 11 |
| Debtor. | |

**INTERIM ORDERS: (I) AUTHORIZING THE DEBTOR TO ASSUME THE CONSULTING AGREEMENT, (II) AUTHORIZING AND APPROVING THE CONDUCT OF STORE CLOSING SALES, WITH SUCH SALES TO BE FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, AND (III) GRANTING RELATED RELIEF**

Upon the Debtor's Motion for Interim and Final Orders (I) Authorizing the Debtor to Assume the Consulting Agreement with Tiger Capital Group, LLC, (II) Authorizing and Approving Store Closing Sales Free and Clear of All Liens, Claim, and Encumbrances, and (III) Granting Related Relief (the "**Motion**");[1] and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b); and this Court having found that venue of these cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that due and sufficient notice of the Motion has been given under the particular circumstances and that no other or further notice of the Motion need be given; and this Court having determined that it may enter a final order consistent with Article III Constitution; and upon consideration of the First Day Declaration; and a hearing having been held to consider the relief requested in the Motion;

---

[1] All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

and upon the record of the hearing and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interest of the Debtors, their estates and creditors, and all other parties in interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

IT IS FOUND CONCLUDED AND DETERMINED THAT:[2]

A.      The Debtor has advanced sound business reasons for entering into the Consulting Agreement, a copy of which is attached hereto as **Exhibit 1**, on an interim basis as set forth in the Motion and at the hearing, and entering into the Consulting Agreement is a reasonable exercise of the Debtor's business judgment and is in the best interest of the Debtor and its estate.

B.      Based on the representations of counsel to the Debtor, the First Day Declaration, testimony at the hearing, and subject to entry of a final order: (i) the Debtor and its officers, directors, employees, agents and representatives, and the Consultant and its members, officers, directors, employees, agents and representatives acted in good faith; (ii) the Consulting Agreement was negotiated, proposed, and entered into by the Consultant and the Debtor without collusion or fraud, and in good faith and from arm's length bargaining positions; and (iii) the Consultant's prospective performance and payment of amounts owing under the Consulting Agreement are in good faith and for valid business purposes and uses.

---

[2] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2821695.4

C.      The Sale Guidelines, as described in the Motion and attached as **Exhibit 2** hereto, are reasonable and will maximize the returns on the Store Assets for the benefit of the Debtor's estate and creditors.

D.      The Store Closing Sales, in accordance with the Sale Guidelines and with the assistance of the Consultant, will provide an efficient means for the Debtor to liquidate and dispose of the Store Assets as quickly and effectively as possible, and are in the best interests of the Debtor's estate.

E.      The dispute resolution procedures set forth in this Interim Order are fair and reasonable, and comply with applicable law.

F.      The Debtor has represented that, pursuant to the Motion, it is not seeking to either sell or lease personally identifiable information during the course of the Store Closing Sales at the Stores; provided, however, that the Consultant will be authorized to distribute emails and promotional materials to the Debtor's customers consistent with the Debtor's existing policies on the use of consumer information.

G.      The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtor and its estate, and the Debtor has demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

H.      The entry of this Interim Order is in the best interest of the Debtor, its estate and creditors, and all other parties in interest herein.

### IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on an interim basis, as set forth herein.

3

2821695.4

2.      A final hearing (the "**Final Hearing**") will be held before this Court on

_____, 2017, at _____ (CST) to consider the relief requested in the

Motion on a final basis.  All objections, if any, to the Motion shall be in writing and filed

with this Court and served on (i) counsel to the Debtor, Vogel Law Firm, (ATTN: Jon

Brakke and Caren Stanley), 218 NP Ave., Fargo, ND 58102, cstanley@vogellaw.com (ii)

counsel to the Consultant, Cohen, Tauber, Spievack & Wagner P.C., (ATTN: Robert A.

Boghosian),    420    Lexington    Ave,    Suite    2400,    New    York,    NY    10170,

rboghosian@ctswlaw.com (iii) counsel to Wells Fargo, NA, Riemer & Braunstein LLP,

(ATTN:  Donald Rothman and Alexander Rheaume), Three Center Plaza, Boston, MA

02108, drothman@riemerlaw.com; (iv) counsel to any statutory committee (collectively, the

"**Notice Parties**"), as to be received on or before _____, 2017, at 4:00 p.m.

(CST).

3.      The Debtor is authorized and empowered to take all actions necessary to

implement the relief granted in this Interim Order.  The failure to specifically include any

particular provision of the Consulting Agreement in this Interim Order shall not diminish or

impair the effectiveness of such provisions, it being the intent of this Court that the

Consulting Agreement and all of its provisions, payments, and transactions, be and hereby

are authorized and approved as and to the extent provided for in this Interim Order.

4.      To the extent there is any conflict between this Interim Order, the Sale

Guidelines, and the Consulting Agreement, the terms of this Interim Order shall control over

all other documents, and the Sale Guidelines shall control over the Consulting Agreement.

2821695.4

A.    **Effectiveness of the Consulting Agreement.**

5.    Subject to the entry of a final order, Consultant is retained by the Debtor on an interim basis pursuant to sections 327 and 328 of the Bankruptcy Code.  The payment of all fees and reimbursement of expenses under the Consulting Agreement to Consultant, including payment of the Retainer to cover Expenses of the Sale, is approved on an interim basis under section 328(a) of the Bankruptcy Code without further order of the Bankruptcy Court and shall be free and clear of all liens, claims and encumbrances.  All such payments of fees and reimbursement of expenses shall be made on a weekly basis in accordance with the terms of the Consulting Agreement without further order of the Court.  The Consulting Agreement is operative and effective on an interim basis.  The Debtor is authorized to act and perform in accordance with the terms of the Consulting Agreement, including, but not limited to, making payments required by the Consulting Agreement to the Consultant without the need for any application of the Consultant or a further order of this Court.  The Consultant is not required to maintain time records or file interim or final fee applications.

6.    With respect to costs and expenses incurred by the Consultant pursuant to and in accordance with the Consulting Agreement and fees due to the Consultant on account of services provided from the date of the Consulting Agreement through the date of entry of this Interim Order, the Consultant shall be entitled to and shall receive reimbursement of such costs and expenses incurred and fees earned pursuant to and in accordance with the Consulting Agreement immediately upon entry of this Interim Order.

7.    No later than five (5) days prior to the Final Hearing, the Consultant shall file a declaration of disinterestedness.

5

2821695.4

8.       Subject to the restrictions set forth in this Interim Order and the Sale Guidelines, the Debtor and the Consultant are authorized to take any and all actions as maybe necessary or desirable to implement the Consulting Agreement and the Store Closing Sales. The Debtor, the Consultant, and each of their respective officers, employees, and agents are hereby authorized to execute such documents and to do such acts as are necessary or desirable to carry out the Store Closing Sales and effectuate the Consulting Agreement and each of the transactions and related actions contemplated or set forth therein.

9.       This Interim Order shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Store Assets.

10.      Subject to the entry of a final order, this Interim Order and the terms and provisions of the Consulting Agreement shall be binding on all of the Debtor's creditors (whether known or unknown), the Debtor, the Consultant, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting an interest in the Store Assets, notwithstanding any subsequent appointment of any trustee, party, entity or other fiduciary under any section of the Bankruptcy Code with respect to the forgoing parties, and as to such trustee, party, entity or

6

other fiduciary, such terms and provisions likewise shall be binding.  Subject to the entry of a final order, the provisions of this Interim Order and the terms and provisions of the Consulting Agreement, and any actions taken pursuant hereto or thereto shall survive the entry of any order which may be entered confirming or consummating any plan of the Debtor or converting the Debtor's case from Chapter 11 to Chapter 7, and the terms and provisions of the Consulting Agreement, as well as the rights and interests granted pursuant to this Interim Order and the Consulting Agreement, shall continue in these or any superseding case and shall be binding upon the Debtor, the Consultant and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtor under Chapter 7 or Chapter 11 of the Bankruptcy Code.  Subject to entry of a final order, any trustee appointed in the Debtor's cases shall be and hereby is authorized to operate the business of the Debtor to the fullest extent necessary to permit compliance with the terms of this Interim Order and the Consulting Agreement, and the Consultant and the trustee shall be and hereby are authorized to perform under the Consulting Agreement upon the appointment of the trustee without the need for further order of this Court.

**B.      Authority to Engage in the Store Closing Sales.**

11.      The Debtor is authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the Store Closing Sales in accordance with this Interim Order, the Sale Guidelines, and the Consulting Agreement.

12.      The Sale Guidelines are approved in their entirety.

7

13.     All entities that are presently in possession of some or all of the Store Assets in which the Debtor holds an interest that are or may be subject to the Consulting Agreement or this Interim Order hereby are directed to surrender possession of such Store Assets to the Debtor or the Consultant.

14.     Except as provided herein, neither the Debtor nor the Consultant nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any governmental unit of any kind (a "**Governmental Unit**") or any landlord with respect to any of the Stores (a "**Landlord**"), to conduct the Store Closing Sales and any related activities in accordance with the Sale Guidelines.

15.     No Landlord, licensor, property owner, and/or property manager shall prohibit, restrict, or otherwise interfere with any of the Store Closing Sales.

16.     The Debtor is authorized to discontinue operations at the Stores in accordance with this Interim Order and the Sale Guidelines.

**C.      Conducting the Store Closing Sales.**

17.     All newspapers and other advertising media in which the Store Closing Sales may be advertised and all Landlords are directed to accept this Interim Order as binding authority so as to authorize the Debtor and the Consultant to conduct the Store Closing Sales and the sale of Store Assets pursuant to the Consulting Agreement and the Sale Guidelines, including, without limitation, to conduct and advertise the sale of the Store Assets and the Additional Merchandise in the manner contemplated by and in accordance with this Interim Order, the Sale Guidelines, and the Consulting Agreement.

2821695.4

18.    Nothing in this Interim Order or the Consulting Agreement releases the Debtor or the Consultant from complying with laws and regulations of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "**General Laws**").

19.    The Debtor and the Consultant are hereby authorized to take such actions as may be necessary and appropriate to implement the Consulting Agreement and to conduct the Store Closing Sales without the need for a further order of this Court, including, but not limited to, advertising the sale as a "going out of business", "total liquidation", "store closing", "sale on everything", "everything must go" or similar sale in accordance with the Sale Guidelines (including, without limitation, the posting of signs, the use of exterior banners at non-enclosed mall Stores and at enclosed mall Stores to the extent the applicable entrance does not require entry into the enclosed mall common area, the use of sign-walkers and street signage), notwithstanding any applicable non-bankruptcy laws that restrict such sales and activities, and notwithstanding any provision in any lease, sublease, license, or other agreement related to occupancy, "going dark," or abandonment of assets (subject to the entry of a Final Order), or other provisions that purport to prohibit, restrict, or otherwise interfere with the Store Closing Sales.

20.    Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the sale of the Store Assets and Additional Merchandise, to the extent that disputes arise during the course of the

9

Store Closing Sales regarding laws regulating the use of sign-walkers, banners, or other advertising, and the Debtors and the Consultant are unable to resolve the matter consensually with a governmental unit, any party may request an immediate hearing with this Court pursuant to these provisions.

21.    No person or entity, including, but not limited to, any Landlord, service providers, utility provider, and creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder the Store Closing Sales or the sale of Store Assets and the Additional Merchandise, or the advertising and promotion of the Store Closing Sales.

22.    In accordance with and subject to the terms and conditions of the Consulting Agreement, the Consultant shall have the right to use the Stores and all related Store services, furniture, fixtures, equipment, and other assets of the Debtors for the purpose of conducting the store Closing Sales, free of any interference from any entity or person, subject to compliance with the Sale Guidelines and this Interim Order.

23.    The Consultant shall (i) honor gift cards and coupons that were issued by or on behalf the Debtor prior to the Petition Date and (ii) for the first 10 days after the Petition Date, accept a return or exchange of Merchandise sold by the Debtor prior to the Petition Date, provided that such return or exchange is otherwise in compliance with the Debtor's applicable policies and procedures that were in place at the time the Merchandise was purchased.

24.    All sales of all Store Assets shall be "as is" and final.  Conspicuous signs stating that "all sales are final" and "as is" will be posted at the cash register areas at all Stores.

2821695.4

25. The Consultant shall not be liable for sales taxes except as expressly provided in the Consulting Agreement. The Debtor remains responsible for the payment of any and all sales taxes. The Debtor is directed to remit all taxes accruing from the store Closing Sales to the applicable Governmental Units as and when due, provided that in the case of a bona fide dispute, the Debtor is only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit. For the avoidance of doubt, sales taxes collected and held in trust by the Debtor shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected.

26. Pursuant to section 363(f) of the Bankruptcy Code, the Consultant, on behalf of the Debtor, is authorized to sell all Store Assets pursuant to the Consulting Agreement and in accordance with the Sale Guidelines. All sales of Store Assets, whether by the Consultant or the Debtor, shall be free and clear of any and all liens, claims, and encumbrances; provided, however, that any liens, claims, and encumbrances shall attach to the proceeds of the sale of the applicable Store Assets with the same validity and priority and to the same extent and amount that any such liens, claims, and encumbrances had with respect to such Store Assets, subject to any claims and defenses that the Debtor may possess with respect thereto. Further, to the extent any of the Debtor's obligations to Wells Fargo remain outstanding, all proceeds from the Sale net of the amounts to be deposited into the Segregated Account (as defined in the Consulting Agreement), shall be segregated and paid to Wells Fargo in accordance with the Stipulation Concerning Interim Use of Cash Collateral

11

2821695.4

and Adequate Protection entered into between the Debtor and Wells Fargo, as approved by the Court.

27.    To the extent that the Debtor proposes to sell or abandon Store Assets that may contain any personal and/or confidential information about the Debtor's employees and/or customers (the "**Confidential Information**"), the Debtor shall remove all such the Confidential Information from such Store Assets before they are sold or abandoned.

28.    The Debtor and the Consultant are authorized and empowered to transfer Store Assets among the Stores and the DCs (as defined in the Consulting Agreement).  The Consultant is authorized to sell or abandon the Store Assets in accordance with the terms of the Consulting Agreement and the Sale Guidelines; provided, however, to the extent any of the Store Assets remain at a Store on the effective date of rejection for the underlying lease, such Store Assets shall be deemed abandoned to the affected Landlord at the time of any rejection of the lease with the right of the Landlord to dispose of such property free and clear of all interests and without notice or liability to any person or entity.

29.    In accordance with Section 6(iii) of the Consulting Agreement, the Consultant is authorized to supplement the Merchandise in the Stores with Additional Merchandise. Sales of Additional Merchandise shall be run through the Debtor's cash register systems; provided, however, that the Consultant shall mark the Additional Merchandise using either a "dummy" SKU or department number, or in such other manner so as to distinguish the sale of Additional Merchandise from the sale of Merchandise.  The Consultant shall provide signage in the Stores notifying customers that the Additional Merchandise have been included in the Sale.

30.     The transactions under the Agreement relating to the Additional Merchandise are, and shall be construed as, a true consignment from the Consultant to the Debtor in all respects and not a consignment for security purposes.  At all times and for all purposes, the Additional Merchandise and their proceeds shall be the exclusive property of the Consultant, and no other person or entity (including, without limitation, the Debtor, or any third person claiming a security interest in the Debtor's property, including the Debtor's secured lender), shall have any claim against any of the Additional Merchandise or the identifiable proceeds thereof.  Subject solely to Consultant's obligations to pay the Merchant the Additional Merchandise Fee and the security interest of the Lenders in such Additional Merchandise Fee, the Additional Merchandise and the identifiable proceeds thereof are not property of the Merchant (or the Merchant's estate) and do not constitute property of the Merchant's (or the Merchant's estate) subject to any Lender's lien.  The Additional Merchandise shall at all times remain subject to the exclusive control of the Consultant, and the Consultant shall insure the Additional Merchandise and, if required, promptly file any proofs of loss with regard thereto.  Consultant is hereby granted a valid, binding and enforceable security interest in the Additional Merchandise and the proceeds thereof (with respect to the Additional Merchandise and the identifiable proceeds thereof, senior to all other liens on such collateral, including, without limitation, any liens in favor of the Debtor's secured lender), which security interest shall be deemed perfected pursuant to this Interim Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties (provided that Consultant is hereby authorized to deliver any notices and file any financing statements and amendments thereof under the applicable UCC

13

identifying Consultant's interest in the Additional Merchandise (and any proceeds from the sale thereof) as consigned goods thereunder and the Debtor as the consignee therefor, and Agent's security interest in such Additional Merchandise and the proceeds thereof).  In the event of a breach by the Debtor hereunder or under the Consulting Agreement, in any jurisdiction where the enforcement of its rights hereunder is sought, the Consultant shall have, in addition to all other rights and remedies, the rights and remedies of a secured party under the UCC.

31.    The Consultant and the respective Landlord of each Store are authorized to enter into a side letter agreement (a "**Side Letter Agreement**") to govern the conduct of the Closing Sales at the applicable Store and such Side Letter Agreements shall control over the Sale Guidelines and this Interim Order.

**D.     Resolution Procedures for Disputes Regarding Liquidation Laws.**

32.    To the extent that the Store Closing Sales at the Stores are conducted in accordance with this Interim Order and the Sale Guidelines, and are therefore conducted under the supervision of this Court, such Closing Sales are authorized notwithstanding any federal, state, or local statute, ordinance, rule, or licensing requirement directed at regulating "going out of business", "total liquidation", "store closing", "sale on everything", "everything must go" or similar sale, or bulk sale laws, including laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers in connection with the sale and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions (collectively, the "**Liquidation Laws**").  The Debtor shall be presumed to be in

2821695.4

compliance with all Liquidation Laws and are authorized on an interim basis to conduct the Closing Sales in accordance with the terms of this Interim Order and the Sale Guidelines without the necessity of showing compliance with any of the Liquidation Laws.

33.     To the extent that any Governmental Unit asserts a dispute related to the any Liquidation Law, such Governmental Unit may assert a dispute (a "**Liquidation Dispute**") by serving written notice (a "**Dispute Notice**") of such Liquidation Dispute on the Notice Parties and the affected Landlord.  If the Debtor, the Consultant, the affected Landlord, and the Governmental Unit are unable to resolve the Liquidation Dispute within 14 days of service of the Dispute Notice, such Governmental Unit may file a motion with this Court requesting consideration and resolution of the Liquidation Dispute (a "**Dispute Resolution Motion**"), which shall be heard as scheduled by the Court in this Chapter 11 case.  The filing of a Dispute Resolution Motion shall not be deemed to affect the finality of this Interim Order or to limit or interfere with the Debtor's or the Consultant's ability to conduct or to continue to conduct the Store Closing Sales pursuant to this Interim Order and in accordance with the Sale Guidelines, absent further order of this Court.

34.     Within two (2) business days of the entry of this Interim Order, the Debtor shall serve copies of this Interim Order, which includes the Consulting Agreement and the Sale Guidelines, by email, facsimile, or regular mail on the Office of the United States Trustee for the District of North Dakota, (ii) the state attorney general in each state in which the Debtor operates a Store, (iii) the division of consumer protection for each state in which the Debtor operates a retail location; (iv) all applicable federal, state, and local taxing

2821695.4

authorities having jurisdiction over any Store or any of the Store Assets, including, without limitation, the Internal Revenue Service, and (v) each Landlord.

35.    The Consultant shall have a valid, duly perfected first priority, senior security interests in and liens upon the Segregated Account (as defined in the Consulting Agreement) and all funds on deposit therein to secure the full payment and performance of all obligations of the Debtor to the Consultant in respect of the Merchandise Fee (as defined in the Consulting Agreement), the FF&E Fee (as defined in the Consulting Agreement), any proceeds from the sale of Additional Merchandise owed to Consultant and all of the Debtor's other payment obligations to the Consultant under the Consulting Agreement.  Such security interest and lien created under the Consulting Agreement is (i) validly created, (ii) effective upon immediately upon execution of the Consulting Agreement, (iii) senior to all other liens on such collateral, including, without limitation, any liens in favor of the Debtor's secured lender, provided, however, the security interest granted to Consultant in accordance with Section 6(vi) of the Consulting Agreement shall be junior and subordinate in all respects to the security interests of Wells Fargo in the funds deposited in the Segregated Account to the extent and amount of any unperformed obligations by Consultant owing to the Debtor under the Consulting Agreement and hereunder.  Such security interest and lien is hereby deemed properly perfected without the necessity of filing UCC financing statements or any other documentation (provided that Consultant is hereby authorized to deliver any notices and file any financing statements and amendments thereof under the applicable UCC identifying Consultant's security interest in such collateral).  In the event of a breach by the Debtor hereunder or under the Consulting Agreement, in any jurisdiction where the enforcement of

16

its rights hereunder is sought, the Consultant shall have, in addition to all other rights and remedies, the rights and remedies of a secured party under the UCC.

36.    Nothing in this Interim Order shall be deemed to constitute a postpetition assumption of any agreement under section 365 of the Bankruptcy Code.

37.    Non-material modifications, amendments, or supplementations to the Consulting Agreement and related documents by the parties may be made in accordance with the terms thereof without further order of this Court.

38.    The Consultant shall not be liable for any claims against the Debtor, and the Debtor shall not be liable for any claims against the Consultant, in each case, other than as expressly provided for in the Consulting Agreement.  The Consultant shall have no successor liability whatsoever with respect to any liens, claims or encumbrances of any nature that may exist against the Debtor.

39.    Subject to the entry of a final order, nothing contained in any plan confirmed in the Debtor's case or any order of this Court confirming such plan or in any other order in the Debtor's case (including any order entered after any conversion of the Debtor's case to a case under Chapter 7 of the Bankruptcy Code), shall alter, conflict with, or derogate from, the provisions of the Consulting Agreement or the terms of this Interim Order.

40.    The Consultant is a party in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Interim Order, the various procedures contemplated herein, any issues related to or otherwise connected to the Store Closing Sales and the Consulting Agreement.

17

2821695.4

41.     This Court shall retain exclusive jurisdiction with regard to all issues or disputes arising from or relating to the implementation, interpretation, or enforcement of this Interim Order or the Consulting Agreement, including, but not limited to, any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit the Store Closing Sales in accordance with the Sale Guidelines, or any other disputes related to the Store Closing Sales.  No parties or person shall take any action against the Debtor or the Consultant until this Court has resolved such dispute.  This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

42.     The Debtor is authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests in respect of payments made in accordance with this Interim Order that are dishonored or rejected.

43.     Each of the Debtor's banks and financial intuitions is authorized to honor checks presented for payment and all fund transfer requests made by the Debtor, to the extent that sufficient funds are on deposit in the applicable accounts, in accordance with this Interim Order and any other order of this Court.

44.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

45.     Nothing in this Interim Order is intended to affect any rights of any Governmental Unit to enforce any law affecting the Debtor's conduct of the Store Closing Sales prior to the Petition Date.

2821695.4

46.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

47.     Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

48.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.


Dated this _____ day of March, 2017.


_____
UNITED STATES BANKRUPTCY JUDGE

2821695.4

# **EXHIBIT B**

## **(Consulting Agreement)**

## CONSULTING AGREEMENT

This Consulting Agreement ("Agreement") is made as of February 27, 2017, by and between **VANITY SHOP OF GRAND FORKS, INC.**, a North Dakota corporation (collectively, together with and on behalf of each of its subsidiaries, if any, "Merchant" or a "Party"), and **TIGER CAPITAL GROUP, LLC**, a Massachusetts limited liability company ("Tiger") ("Consultant" or a "Party" and, together with Merchant, the "Parties").

## RECITALS

WHEREAS, Merchant operates retail stores and desires that the Consultant provide consulting services to Merchant with respect to Merchant's (a) sale of all of the Merchandise (as hereinafter defined) from Merchant's one hundred thirty seven (137) retail store locations identified on Exhibit A attached hereto (each individually a "Store," and collectively the "Stores") and Merchant's distribution centers identified on Exhibit A attached hereto ("DCs") by means of a "going out of business", (subject to entry of the Interim Retention Order and Final Retention Order (each as defined below), as applicable) "total liquidation", "inventory blowout sale", "store closing", "sale on everything", "everything must go" or similar sale in the Stores, in each case as determined by Merchant in its discretion, and subject to the terms of applicable leases and/or local laws and ordinances, including, without limitation, permitting requirements (subject to entry of the Interim Retention Order and Final Retention Order, as applicable); and (b) disposition of the FF&E (as hereinafter defined) in the Stores, DCs and Merchant's corporate offices (as further described below, the "Sale").

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Consultant and Merchant hereby agrees as follows:

## Section 1.    **Appointment of Consultant**

Effective as of the date hereof, Merchant hereby appoints the Consultant, and the Consultant hereby agrees to serve, as Merchant's exclusive independent consultant in connection with the conduct of the Sale on the terms and conditions of this Agreement.  Consultant shall be authorized to conduct and advertise the Sale as a "going out of business", (subject to entry of the Interim Retention Order and Final Retention Order, as applicable) "total liquidation", "store closing", "sale on everything", "everything must go", "inventory blowout sale", "inventory liquidation", or similar-themed sale, in each case as determined by Merchant in its discretion, and subject to the terms of applicable leases and/or local laws and ordinances, including, without limitation, permitting requirements (subject to entry of the Interim Retention Order and Final Retention Order, as applicable), and otherwise in accordance with the sale guidelines attached hereto as Exhibit B (the "Sale Guidelines").

## Section 2.    **Merchandise**

For purposes hereof, "Merchandise" shall mean all goods, saleable in the ordinary course, located in the Stores on the Sale Commencement Date (defined below) or delivered thereto from the DCs after the Sale Commencement Date.  "Merchandise" does not mean and shall not include: (1) goods that belong to sublessees, licensees, department lessees or concessionaires of Merchant; (2) owned

furnishings, trade fixtures, equipment and improvements to real property that are located in the Stores, DCs and Merchant's corporate offices (collectively, "FF&E"); (3) goods held by Merchant on memo, on consignment, or as bailee; (4) damaged or defective merchandise that cannot be sold in the ordinary course; (5) unredeemed gift cards, gift certificates, merchandise credits, or rewards points coupons; or (6) Additional Merchandise.

**Section 3.        Sale Term**

For each Store, the Sale shall commence on or about March 2, 2017 (the "Sale Commencement Date") and is expected to run for approximately five (5) full weeks but shall conclude no later than April 30, 2017 (the "Sale Termination Date"); provided, however, that the Parties may mutually agree in writing to extend or terminate the Sale at any Store prior to the Sale Termination Date (it being understood that, if the timing set forth herein changes, Merchant and Consultant shall mutually agree on adjustments to the Expense Budget, including Consultant Expenses (defined below)). For any Store, the period between the Sale Commencement Date and the Sale Termination Date with respect to such Store shall be referred to as the "Sale Term". At the conclusion of the Sale at each Store, Consultant shall surrender the premises for such Store to Merchant in broom clean condition; provided that unsold FF&E may be abandoned by Consultant in place at the Stores, the DCs or Merchant's corporate offices without any cost or liability of any kind to Consultant.

**Section 4.        Project Management**

(A)        Consultant's Undertakings

During the Sale Term, Consultant shall provide Merchant with the following services with respect to the conduct of the Sale: (a) provide qualified supervisors (the "Supervisors") engaged by Consultant to oversee the Sale of the Merchandise from the Stores; (b) determine appropriate point-of-sale and external advertising for the Stores, approved in advance by Merchant; (c) determine appropriate discounts with respect to Merchandise, staffing levels for the Stores and the DCs, approved in advance by Merchant, and appropriate bonus and incentive programs, if any, for the Stores' and the DCs' employees, approved in advance by Merchant; (d) oversee display of Merchandise for the Stores; (e) evaluate sales of Merchandise by category and sales reporting and monitor expenses; (f) maintain the confidentiality of all proprietary or non-public information regarding Merchant in accordance with the provisions of the confidentiality agreement signed by the Parties; (g) assist Merchant in connection with managing and controlling loss prevention and employee relations matters; (h) prior to the commencement of the Bankruptcy Case, advise Merchant of the applicable waiting period under such laws, and/or prepare (in Merchant's name and for Merchant's signature) all permitting paperwork as may be necessary under such laws, deliver all such paperwork to Merchant, and file, on behalf of Merchant, all such paperwork where necessary, and/or advise where permitting paperwork and/or waiting periods do not apply; (i) advise Merchant on consolidating Stores and closing Stores prior to the Sale Termination Date in order to maximize the net proceeds generated to Merchant from the Sale; and (j) provide such other related services deemed necessary or appropriate by Merchant and Consultant.

The Parties expressly acknowledge and agree that the Supervisors are independent contractors engaged by Consultant (not Merchant), Merchant shall have no liability to the Supervisors for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination

2

or any other liability arising from Consultant's hiring or engagement of the Supervisors, and the Supervisors shall not be considered employees of Merchant.

(B)      Merchant's Undertakings

During the Sale Term, Merchant shall (a) be the employer of the Stores' and the DCs' employees, other than the Supervisors, and provide employees at the Stores and the DCs; (b) prepare and process all tax forms and other documentation; (c) collect all sales taxes and pay them to the appropriate taxing authorities for the Stores; (d) use reasonable efforts to cause Merchant's employees to cooperate with Consultant and the Supervisors; (e) execute all agreements determined by the Merchant and Consultant to be necessary or desirable for the operation of the Stores, the DCs during the Sale; (f) arrange for the ordinary maintenance of all point-of-sale equipment required for the Stores; and (g) ensure that Consultant has quiet use and enjoyment of, and reasonable access to, the Stores and the DCs for the Sale Term in order to perform its obligations under this Agreement.

Merchant shall provide throughout the Sale Term central administrative services necessary for the Sale, including, without limitation, customary POS administration, sales audit, cash reconciliation, accounting, and payroll processing, all at no cost to Consultant.  Merchant shall provide throughout the Sale Term Merchant's current credit card systems and servicing arrangements (including Merchant's credit card terminals and processor(s), credit card processor coding and bank accounts) during the course of the Sale at no cost to Consultant.

The Parties expressly acknowledge and agree that Consultant shall have no liability (i) to Merchant's employees for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Merchant's employment, hiring or retention of its employees, and such employees shall not be considered employees of Consultant, and (ii) to pay any of Merchant's taxes, costs, expenses, accounts payable, and liabilities relating to the Stores, the DCs, the Stores' employees and other representatives of Merchant, all of which shall be the responsibility of the Merchant.

**Section 5.      The Sale**

All sales of Merchandise shall be made on behalf of Merchant.  Other than any security interest or lien granted under this Agreement (limited to Consultant's interest in the Segregated Account (defined below) to the extent provided herein), Consultant does not have, nor shall it have, any right, title or interest in the Merchandise.  Subject to the entry of the Interim Retention Order (as defined below) and the Final Retention Order (as defined below), all sales of Merchandise shall be by cash, gift card, gift certificate, merchandise credit, rewards points coupon or credit card and, at Merchant's discretion, by check or otherwise in accordance with Merchant's policies, and shall be "final" with no returns accepted or allowed, unless otherwise directed by Merchant.  Prior to the commencement of the Bankruptcy Case (defined herein), Merchant shall advertise and conduct the Sale as a "store closing", "inventory blowout sale", "inventory liquidation", "sale on everything", "everything must go", or similar-themed sale, in each case as determined by Merchant in its discretion, and subject to the terms of applicable leases and/or local laws and ordinances, including, without limitation, permitting requirements.  Upon entry of the Interim Retention Order (and to the extent applicable, the Final Retention Order), Merchant shall be allowed to advertise and conduct the Sale as a "going out of business", "total liquidation", "store closing", "sale on everything", "everything must go" "inventory blowout sale", "inventory liquidation", or similar-themed sale.

3

**Section 6.**        <u>**Consultant Fee and Expenses in Connection with the Sale**</u>

(i)        <u>Certain Definitions</u>

As used in this Agreement, the following terms shall have the following meanings:

a.    "<u>Cost Value</u>" shall mean, with respect to each item of Merchandise, on an SKU, by location basis, the lowest cost of such item, as reflected in the File; <u>provided</u>, that with respect to Returned Merchandise that is saleable as first quality Merchandise, such Returned Merchandise shall be included in Merchandise and shall be included in the calculation of Cost Value but subject to the prevailing discount; <u>provided</u>, <u>further</u>, that any Returned Merchandise that is not saleable as first quality Merchandise shall be excluded as Merchandise under this Agreement.

b.    "<u>File</u>" shall mean "3 Store SKU OH detail as of 2.18.17", together with all updated versions of such file delivered by Merchant to Consultant, if any, on or prior to the Sale Commencement Date.

c.    "<u>Gross Proceeds</u>" shall mean gross receipts (including, without limitation, receipts as a result of the redemption of any gift card, gift certificate, merchandise credit or rewards points coupon, net only of applicable sales taxes; <u>provided</u>, <u>however</u>, that it is expressly understood and agreed that Gross Proceeds shall not include proceeds of sales made prior to the Sale Commencement Date or after the Sale Termination Date (including items which were sold prior to the Sale Commencement Date but delivered following the Sale Commencement Date).

d.    "<u>Recovery Percentage</u>" shall mean, with respect to the Merchandise, the aggregate Gross Proceeds of all sales of the Merchandise divided by the aggregate Cost Value of the items of Merchandise sold during the Sale.

e.    "<u>Returned Merchandise</u>" shall mean Merchandise sold by Merchant prior to the Sale Commencement Date that is returned in accordance with Merchant's return policy.

(ii)        <u>Consultant Fee</u>

In consideration of its services hereunder with respect to the Stores, Consultant shall earn a fee (the "<u>Merchandise Fee</u>") equal to the product of the Gross Proceeds of the Merchandise and the percentage determined pursuant to the following table (the "<u>Consultant's Percentage</u>"):

| Recovery Percentage | Consultant's Percentage |
|---|---|
| < 135.00% | 0.00% |
| 135.00-139.99% | 1.00% |
| 140.00-144.99% | 1.50% |
| ≥ 145.00% | 2.00% |

The Recovery Percentage for the Merchandise shall be determined in connection with the Final Reconciliation, and once determined, the Parties (as part of the Final Reconciliation) shall

{00315365.DOC; 1}

determine the applicable Consultant's Percentage. Once Consultant's Percentage is determined, the Merchandise Fee shall be calculated using the applicable Consultant's Percentage back to dollar one.

If requested by Merchant, Consultant shall sell Merchant's goods not constituting Merchandise during the Sale at the Stores, and in consideration of such services with respect to the Stores, Consultant shall earn a fee equal to the twenty percent (20%) multiplied by the Gross Proceeds from the sale of such goods at the Stores.

      (iii)    <u>Additional Merchandise</u>

Upon entry of the Interim Retention Order, Consultant shall have the right, at Consultant's sole cost and expense, to supplement the Merchandise in the Sale with additional goods procured by Consultant which are of like kind, and no lesser quality, to the Merchandise in the Sale ("<u>Additional Merchandise</u>"). Consultant shall consult with Merchant with respect to the Additional Merchandise to ensure that the Additional Merchandise is of like kind, and no lesser quality, to the Merchandise in the Sale and is in categories designed to enhance the Sale. The Additional Merchandise shall be purchased by Consultant as part of the Sale, and delivered to the Stores at Consultant's sole expense (including as to labor, freight and insurance relative to shipping such Additional Merchandise to the Stores). Sale of Additional Merchandise shall be run through Merchant's cash register systems; provided that Consultant shall mark the Additional Merchandise using either a "dummy" SKU or department number, or in such other manner so as to distinguish the sale of Additional Merchandise from the sale of Merchandise.

Consultant shall pay to Merchant an amount equal to five percent (5%) of the Gross Proceeds from the sale of the Additional Merchandise (the "<u>Additional Merchandise Fee</u>"). Consultant shall retain all remaining amounts from the sale of the Additional Merchandise. Consultant shall pay Merchant its Additional Merchandise Fee in connection with each weekly sale reconciliation with respect to sales of Additional Merchandise sold by Consultant during each then prior week (or at such other mutually agreed upon time).

Consultant and Merchant intend that the transactions relating to the Additional Merchandise are, and shall be construed as, a true consignment from Consultant to Merchant in all respects and not a consignment for security purposes. Subject solely to Consultant's obligations to pay to Merchant the Additional Merchandise Fee and the security interest of any lender under Merchant's existing credit facility, including, without limitation, Wells Fargo Bank, National Association ("<u>Wells Fargo</u>" or "<u>Lender</u>") in such Additional Merchandise Fee, at all times and for all purposes the Additional Merchandise and the proceeds thereof shall be the exclusive property of Consultant, and no other person or entity shall have any claim against any of the Additional Merchandise or its proceeds. The Additional Merchandise shall at all times remain subject to the exclusive control of Consultant. Subject solely to Consultant's obligations to pay the Merchant the Additional Merchandise Fee and the security interest of Wells Fargo in such Additional Merchandise Fee, the Additional Merchandise and the identifiable proceeds thereof are not property of the Merchant (or the Merchant's estate) and do not constitute property of the Merchant (or the Merchant's estate) subject to any Lender's lien.

Merchant shall, at Consultant's sole cost and expense, insure the Additional Merchandise and, if required, promptly file any proofs of loss with regard to same with Merchant's insurers. Consultant

5

shall be responsible for payment of any deductible under any such insurance in the event of any casualty affecting the Additional Merchandise.

Merchant acknowledges, and the Interim Retention Order and the Final Retention Order shall provide, that the Additional Merchandise shall be consigned to Merchant as a true consignment under Article 9 of the Uniform Commercial Code ("UCC").  Consultant is hereby granted a valid, binding and enforceable security interest in and lien upon (i) the Additional Merchandise and (ii) the Additional Merchandise proceeds (with respect to the Additional Merchandise and the identifiable Additional Merchandise proceeds, senior to all other liens on such collateral, including, without limitation, any liens in favor of any Lender), which security interest shall be deemed perfected pursuant to the Interim Retention Order and the Final Retention Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties (provided that Consultant is hereby authorized to deliver (and Merchant shall cooperate with the delivery of) all required notices and file all necessary financing statements and amendments thereof under the applicable UCC identifying Consultant's interest in the Additional Merchandise as consigned goods thereunder and the Merchant as the consignee therefor, and Consultant's security interest in and lien upon such Additional Merchandise and Additional Merchandise proceeds).  WF acknowledges and agrees that (i) the Additional Merchandise and any identifiable proceeds thereof are not property of the Merchant (or the Merchant's estate) and do not constitute property of the Merchant (or the Merchant's estate) subject to any Lender's lien and (ii) Consultant's security interest and lien upon (x) the Additional Merchandise and (y) the Additional Merchandise proceeds is valid, binding and enforceable and, upon the entry of the Interim Retention Order, shall be deemed perfected without the filing of a UCC financing statement for the purposes of Section 9-324(b)(1) of the UCC and (iii) this Agreement shall constitute a sufficient authenticated notification received by WF and containing all necessary information for the purposes of  Section 9-324(b)(2), (3) and (4) of the UCC).

The Interim Retention Order and the Final Retention Order shall incorporate these provisions.

(iv)    Expenses

Merchant shall be solely responsible for all expenses of the Sale, including, without limitation, (A) all Store-level and DC-level operating expenses and (B) to the extent in compliance with the Expense Budget (as defined below), the reasonable fees and expenses of Consultant's legal counsel incurred in connection with the negotiation of, and entrance into, this Agreement, Consultant's performance under this Agreement and the conduct of the Sale.  To control expenses of the Sale, Merchant and Consultant have established an aggregate budget (the "Expense Budget") for Store-level expenses directly incurred by Consultant (denominated in the Expense Budget under the heading "Consultant Expenses"), which Consultant Expenses the Consultant shall not exceed in the aggregate absent Merchant's written consent, which consent may be withheld, delayed or denied in Merchant's sole discretion.  The Expense Budget includes various Store-level costs and expenses of the Sale that will be directly incurred by Consultant, including costs of supervision (including, without limitation, Supervisors' wages, fees, travel and industry standard deferred compensation) and advertising and promotion costs (including, without limitation, interior and exterior signage, print and other media advertising, direct mail, etc.)).  The Expense Budget also limits the amount of fees and expenses of Consultant's legal counsel that are to be paid by Merchant.  The Expense Budget does not include Store-level expenses to be incurred by Merchant (including payroll and occupancy expenses) or expenses relating to Merchant's corporate offices or the DCs, which

6

expenses shall in each case not be subject to the Expense Budget. The Expense Budget for the Sale is attached hereto as Exhibit C. The Expense Budget may only be modified by mutual agreement of Consultant and Merchant. The costs of supervision set forth on Exhibit C include, among other things, industry standard deferred compensation. Upon execution of this Agreement, Merchant shall advance Consultant $200,000 (the "Retainer") to cover expenses of the Sale (including, without limitation, supervision and advertising) and amounts due to Consultant. Prior to the entry of the Final Retention Order, Merchant shall not be permitted to apply (by offset or otherwise) the Retainer against any amounts due and owing to Consultant; provided, that, if the Bankruptcy Court declines to enter the Interim Retention Order, Merchant shall be allowed to use the Retainer to pay all amounts due Consultant under this Agreement. From and after the entry of the Final Retention Order, the Retainer shall be applied to expenses required to be reimbursed to Consultant by Merchant and other amounts payable to Consultant in accordance with the terms of this Agreement.

(v)    Reconciliation

All accounting matters (including, without limitation, all fees and expenses per the Expense Budget that are reimbursable or payable to Consultant or, with respect to the Additional Merchandise Fee, Merchant) shall be reconciled on every Wednesday for the prior week (ending, for the avoidance of doubt, on the preceding Sunday) and shall be paid within five (5) days after each such weekly reconciliation. The Parties shall complete a final reconciliation and settlement of all amounts payable to Consultant and contemplated by this Agreement (including, without limitation, Expense Budget items, and fees earned hereunder) no later than forty five (45) days following the Sale Termination Date for the last Store (the "Final Reconciliation").

(vi)    Weekly Deposit of Estimated Merchandise Fee

Merchant shall deposit on a weekly basis (payable at the same time as amounts due with respect to the corresponding weekly reconciliation) 1% of the prior week's Gross Proceeds from the sale of Merchandise in a segregated account (the "Segregated Account"). The Merchandise Fee, the FF&E Fee, and any proceeds from the sale of Additional Merchandise owed to Consultant and all of Merchant's other payment obligations to Consultant under this Agreement shall be secured by (and Merchant hereby grants to Consultant) a security interest and lien on the Segregated Account and all funds on deposit therein. Such security interest and lien created hereunder is (i) validly created and effective upon immediately upon execution of this Agreement, and (ii) subject to (x) prior to the commencement of the Bankruptcy Case, Consultant's satisfaction of all steps required to perfect a security interest in such Segregated Account, or (y) subject to entry of the Interim Retention Order or the Final Retention Order, senior to all other liens on such collateral, including, without limitation, any liens in favor of the Wells Fargo (to the extent permitted by applicable law). Wells Fargo hereby expressly consents to Merchant's grant to Consultant of a security interest in the funds deposited in the Segregated Account only  (including as to the priority of such security interest and lien granted to Consultant); provided, however, the security interest granted to Consultant hereunder shall be junior and subordinate in all respects to the security interests of Wells Fargo in the funds deposited in the Segregated Account to the extent and amount of any unperformed obligations by Consultant owing to Merchant hereunder. Consultant is hereby authorized to deliver (and Merchant shall cooperate with Consultant with respect to the delivery of) all filings (including, without limitation, UCC-1 financing statements) and other actions to the extent reasonably requested by Consultant in connection with the security interests and liens granted under this Agreement. The Interim Retention Order and the Final Retention Order shall deem such security interest and lien

7

perfected without any requirement of filing UCC financing statements or providing notifications to any prior secured parties. In the event the Bankruptcy Court declines to enter the Interim Retention Order, the Consultant agrees to return to Merchant the amounts then remaining on deposit in the Segregated Account and the Retainer, net of any amounts due Consultant under the terms of this Agreement. Any such refund/return shall be completed not later than seven (7) days after the hearing in connection with the Retention Motion (defined below).

**Section 7.    Indemnification**

      (i)    <u>Merchant's Indemnification</u>

Merchant shall indemnify, defend, and hold Consultant and its consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, representatives, lenders, potential co-investors,  principals, affiliates, and Supervisors (collectively, "<u>Consultant Indemnified Parties</u>") harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to: (a) the willful or grossly negligent acts or omissions of Merchant or the Merchant Indemnified Parties (as defined below); (b) the material breach of any provision of this Agreement by Merchant; (c) any liability or other claims, including, without limitation, product liability claims, asserted by customers, any Store employees (under a collective bargaining agreement or otherwise), or any other person (excluding Consultant Indemnified Parties) against Consultant or an Consultant Indemnified Party, except claims arising from Consultant's gross negligence, willful misconduct or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortious or otherwise actionable treatment of Consultant's Indemnified Parties or Merchant's customers by Merchant or Merchant's Indemnified Parties; and (e) Merchant's failure to pay over to the appropriate taxing authority any taxes required to be paid by Merchant during the Sale Term in accordance with applicable law.

      (ii)    <u>Consultant's Indemnification</u>

Consultant shall indemnify, defend and hold Merchant and its consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, representatives, lenders, potential co-investors, principals, and affiliates (other than the Consultant or the Consultant Indemnified Parties) (collectively, "<u>Merchant Indemnified Parties</u>") harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to (a) the willful or grossly negligent acts or omissions of Consultant or the Consultant Indemnified Parties; (b) the breach of any provision of, or the failure to perform any obligation under, this Agreement by Consultant; (c) any liability or other claims made by Consultant's Indemnified Parties or any other person (excluding Merchant Indemnified Parties) against a Merchant Indemnified Party arising out of or related to Consultant's conduct of the Sale, except claims arising from Merchant's gross negligence, willful misconduct, or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortious or otherwise actionable treatment of Merchant Indemnified Parties, or Merchant's customers by Consultant or any of the Consultant Indemnified Parties, (e) any claims made by any party engaged by Consultant as an employee, agent, representative or independent contractor arising out of such engagement, including, without limitation, any Supervisor, and (f) any claims, demands, penalties, losses,

liability or damage, including, without limitation, reasonable attorneys' fees and expenses arising from Merchant's alleged violation of any local law or ordinance restricting the use of external and outdoor advertising methods (e.g., banners and signwalkers) as recommended by Consultant.

**Section 8.**     **Insurance**

(A)     Merchant's Insurance Obligations

Merchant shall maintain throughout the Sale Term, liability insurance policies (including, without limitation, products liability (to the extent currently provided), comprehensive public liability insurance and auto liability insurance) covering injuries to persons and property in or in connection with the Stores, and shall cause Consultant to be named an additional insured with respect to all such policies.  At Consultant's request, Merchant shall provide Consultant with a certificate or certificates evidencing the insurance coverage required hereunder and that Consultant is an additional insured thereunder.  In addition, Merchant shall maintain throughout the Sale Term, in such amounts as it currently has in effect, workers compensation insurance in compliance with all statutory requirements.

(B)     Consultant's Insurance Obligations

As an expense of the Sale and set forth on the Expense Budget, Consultant shall maintain throughout the Sale Term, liability insurance policies (including, without limitation, products liability/completed operations, contractual liability, comprehensive public liability and auto liability insurance) on an occurrence basis in an amount of at least one million dollars ($1,000,000) and an aggregate basis of at least five million dollars ($5,000,000) covering injuries to persons and property in or in connection with Consultant's provision of services at the Stores.  Consultant shall name Merchant as an additional insured and loss payee under such policy, and upon execution of this Agreement provide Merchant with a certificate or certificates evidencing the insurance coverage required hereunder.  In addition, Consultant shall maintain throughout the Sale Term, workers compensation insurance compliance with all statutory requirements.  Further, should Consultant employ or engage third parties to perform any of Consultant's undertakings with regard to this Agreement, Consultant will ensure that such third parties are covered by Consultant's insurance or maintain all of the same insurance as Consultant is required to maintain pursuant to this paragraph and name Merchant as an additional insured and loss payee under the policy for each such insurance.

**Section 9.**     **Representations, Warranties, Covenants and Agreements**

(A)     Merchant's Representations, Warranties, Covenants and Agreements.

Merchant warrants, represents, covenants and agrees that (a) Merchant is a corporation duly organized, validly existing and in good standing under the laws of its state of organization, with full power and authority to execute and deliver this Agreement and to perform its obligations hereunder, and maintains its principal executive office at the address set forth herein, (b) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions of Merchant and this Agreement constitutes a valid and binding obligation of Merchant enforceable against Merchant in accordance with its terms and conditions (except as such enforceability may be limited by applicable bankruptcy, reorganization, moratorium or other similar laws affecting

9

{00315365.DOC; 1}

creditors' rights generally and by general principles of equity (regardless of whether enforceability is consider in a proceeding in equity or at law), and the consent of no other entity or person is required for Merchant to fully perform all of its obligations herein, (c) all ticketing of Merchandise at the Stores and the DCs has been and will be done in accordance with Merchant's customary ticketing practices, (d) all normal course hard markdowns on the Merchandise have been, and will be, taken consistent with customary Merchant's practices, (e) other than as a result of the Bankruptcy Case, the Stores and the DCs will be operated in the ordinary course of business in all respects, other than those expressly agreed to by Merchant and Consultant, and (f) Merchant shall comply with and act in accordance with any and all applicable state and local laws, rules, and regulations, and other legal obligations of all governmental authorities (except as such may be modified pursuant to the terms of the Interim Retention Order and the Final Retention Order).

(B)     <u>Consultant's Representations, Warranties, Covenants and Agreements</u>.

Each entity comprising Consultant warrants, represents, covenants and agrees that (a) such entity is a limited liability company duly organized, validly existing and in good standing under the laws of its state of organization, with full power and authority to execute and deliver this Agreement and to perform the Consultant's obligations hereunder, and maintains its principal executive office at the addresses set forth herein, (b) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions of such entity and this Agreement constitutes a valid and binding obligation of such entity enforceable against it in accordance with its terms and conditions (except as such enforceability may be limited by applicable bankruptcy, reorganization, moratorium or other similar laws affecting creditors' rights generally and by general principles of equity (regardless of whether enforceability is consider in a proceeding in equity or at law), and the consent of no other entity or person is required for Consultant to fully perform all of its obligations herein, (c) Consultant shall comply with and act in accordance with any and all applicable state and local laws, rules, and regulations, and other legal obligations of all governmental authorities (except as such may be modified pursuant to the terms of the Interim Retention Order and the Final Retention Order), (d) no non-emergency repairs or maintenance in the Stores will be conducted without Merchant's prior written consent, which consent may be withheld, delayed or denied in Merchant's sole discretion, and (e) Consultant will not take any disciplinary action against any employee of Merchant.

## Section 10.     Furniture, Fixtures and Equipment

Consultant shall sell the FF&E (i) in the Stores and the DCs from the Stores and the DCs themselves and (ii) in the DCs and Merchant's corporate offices.  Merchant shall be responsible for all reasonable costs and expenses incurred by Consultant in connection with the sale of FF&E, which costs and expenses shall be incurred pursuant to a budget or budgets to be established from time to time by mutual agreement of the Parties.  Consultant shall have the right to abandon at the Stores, DCs and/or Merchant's corporate offices any unsold FF&E without any cost or liability of any kind to Consultant.

In consideration for providing the services set forth in this section 10, Consultant shall be entitled to a commission from the sale of the FF&E equal to twenty percent (20.00%) of the Gross Proceeds of the sale of the FF&E (the "<u>FF&E Fee</u>").  Prior to Consultant selling the FF&E, Merchant and Consultant shall negotiate a FF&E expense budget (the "<u>FF&E Expense Budget</u>") setting forth the expenses to be incurred by Consultant for the sale of the FF&E (the "<u>Consultant FF&E Expenses</u>").

The Consultant shall not exceed in the aggregate the amounts set forth on the FF&E Expense Budget absent Merchant's written consent, which consent may be withheld, delayed or denied in Merchant's sole discretion.    Merchant shall be responsible for paying all Consultant FF&E Expenses up to the FF&E Expense Budget.

Consultant shall remit to Merchant all Gross Proceeds from the sale of FF&E.  During each weekly reconciliation described in section 6 above, Consultant's FF&E Fee shall be calculated, and Consultant's calculated FF&E Fee and all Consultant FF&E Expenses then incurred shall paid within seven (7) days after each such weekly reconciliation.

**Section 11.    [Reserved]**

**Section 12.    <u>Notices</u>**

All notices, certificates, approvals, and payments provided for herein shall be sent by electronic mail as follows:  (a) To Merchant: (i) Vanity Shops of Grand Forks, Inc., 1001 North 25th Street, Attn: Jim Bennett, Facsimile: (406)-652-8320, Email: jimb@diamondbco.com, and (ii) Vogel Law Firm, 218 NP Ave Fargo, ND  58102,  Attn: Caren W. Stanley Facsimile: (701) 476.7676, Email: cstanley@vogellaw.com; (b) To Consultant: (i) Tiger Capital Group, LLC, 60 State Street, 11th Floor, Boston, MA  02109, Attn:  Michael McGrail, Facsimile:  (617) 523-3007, Email: mmcgrail@tigergroup.com and (iii) Cohen Tauber Spievack & Wagner P.C., 420 Lexington Avenue, Suite 2400, New York, NY 10170, Attn: Robert A. Boghosian, Esq., Facsimile: (212) 586-5095, Email: rboghosian@ctswlaw.com (c) To Wells Fargo: (i) One Boston Place, 19th Floor, Boston, MA  02108, Attn:  Brent Shay, Director, Fax:  _____, Email: sally.a.sheehan@wellsfargo.com, and (ii) Riemer & Braunstein LLP, Three Center Plaza, Boston, MA  02108, Attn:  Donald E.  Rothman, Esq., Fax (617) 692-3556, Email: drothman@riemerlaw.com; or (d) such other address as may be designated in writing by Merchant, Consultant or Wells Fargo.

**Section 13.    <u>Independent Consultant</u>**

Consultant's relationship to Merchant is that of an independent contractor without the capacity to bind Merchant in any respect.  No employer/employee, principal/agent, joint venture or other such relationship is created by this Agreement.  Merchant shall have no control over the hours that Consultant or its employees or assistants or the Supervisors work or the means or manner in which the services that will be provided are performed and Consultant is not authorized to enter into any contracts or agreements on behalf of Merchant or to otherwise create any obligations of Merchant to third parties, unless authorized in writing to do so by Merchant.

**Section 14.    <u>Non-Assignment</u>**

Neither this Agreement nor any of the rights hereunder may be transferred or assigned by either Party without the prior written consent of the other Party; <u>provided</u>, that Consultant agrees that Merchant may assign this Agreement to its lender(s) as collateral security for any obligations due such lender(s).  No modification, amendment or waiver of any of the provisions contained in this Agreement, or any future representation, promise or condition in connection with the subject matter of this Agreement, shall be binding upon any Party to this Agreement unless made in writing and signed by a duly authorized representative or agent of such Party.  This Agreement shall be binding

upon and inure to the benefit of the Parties and their respective heirs, legal representatives, successors and permitted assigns.

### Section 15.    Severability

If any term or provision of this Agreement, as applied to either Party or any circumstance, for any reason shall be declared by a court of competent jurisdiction to be invalid, illegal, unenforceable, inoperative or otherwise ineffective, that provision shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and enforceable.  If the surviving portions of the Agreement fail to retain the essential understanding of the Parties, the Agreement may be terminated by mutual consent of the Parties.

### Section 16.    Governing Law and Jury Waiver

This Agreement, and its validity, construction and effect, shall be governed by and enforced in accordance with the internal laws of the State of North Dakota (without reference to the conflicts of laws provisions therein).  Merchant and Consultant waive their respective rights to trial by jury of any cause of action, claim, counterclaim or cross-complaint in any action, proceeding and/or hearing brought by either Consultant against Merchant or Merchant against Consultant on any matter whatsoever arising out of, or in any way connected with, this Agreement, the relationship between Merchant and Consultant, any claim of injury or damage or the enforcement of any remedy under any law, statute or regulation, emergency or otherwise, now or hereafter in effect.

### Section 17.    Entire Agreement

This Agreement, together with all additional schedules and exhibits attached hereto, constitutes a single, integrated written contract expressing the entire agreement of the Parties concerning the subject matter hereof.  No covenants, agreements, representations or warranties of any kind whatsoever have been made by any Party except as specifically set forth in this Agreement.  All prior agreements, discussions and negotiations are entirely superseded by this Agreement.

### Section 18.    Execution

This Agreement may be executed simultaneously in counterparts (including by means of electronic mail, facsimile or portable document format (pdf) signature pages), any one of which need not contain the signatures of more than one party, but all such counterparts taken together shall constitute one and the same instrument. This Agreement, and any amendments hereto, to the extent signed and delivered by means of electronic mail, a facsimile machine or electronic transmission in portable document format (pdf), shall be treated in all manner and respects as an original thereof and shall be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person.

### Section 19.    Bankruptcy; Jurisdiction; Venue

Upon the commencement of a chapter 11 case by the Merchant (the "Bankruptcy Case") seeking protection under Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court (the "Bankruptcy Court"), Merchant shall promptly (and in no event more than one business day after the date of Merchant's commencement of the Bankruptcy Case) file a motion

12

in the Bankruptcy Court seeking expedited entry of an interim order (the "Interim Retention Order") and a final order (the "Final Retention Order"), in each case by the Bankruptcy Court under section 327, 328 and 365 of the Bankruptcy Code, in form and substance reasonably acceptable to Consultant, authorizing the Merchant's assumption of and approving of this Agreement. The Merchant shall use the Merchant's best efforts to ensure that the Interim Retention Order and the Final Retention Order shall be entered and specifically provide, among other things, that: (i) Consultant is being retained pursuant to sections 327 and 328 of the Bankruptcy Code by the Merchant; (ii) the payment of all fees and reimbursement of expenses hereunder to Consultant is approved under section 328(a) of the Bankruptcy Code without further order of the Bankruptcy Court and shall be free and clear of all liens, claims and encumbrances; (iii) all such payments of fees and reimbursement of expenses shall be made on a weekly basis without further order of the Bankruptcy Court and in accordance with this Agreement; (iv) Consultant is not required to maintain time records or file interim or final fee applications; (v) the transaction contemplated hereby is approved and this Agreement is assumed; (vi) the Sale in accordance with the terms of this Agreement and the Sale Guidelines is authorized without the necessity of Consultant or Merchant complying with state and local rules, laws, ordinances and regulations, including, without limitation, permitting and licensing requirements, that would otherwise govern the Sale; (vii) the Sale in accordance with the terms of this Agreement and the Sale Guidelines is authorized notwithstanding restrictions in leases, reciprocal easement agreements or other contracts that purport to restrict the Sale or the necessity of obtaining any third party consents; (viii) all security interests and/or liens granted pursuant to this Agreement are validly created, effective and perfected (subject to the priority set forth herein) without any requirement of filing UCC financing statements or providing notifications to any prior secured parties; (ix) the sale of Additional Merchandise in accordance with the terms and conditions of this Agreement is approved; and (x) Merchant and Consultant are authorized to take all further actions as are necessary or appropriate to carry out the terms and conditions of this Agreement. Following the commencement of Bankruptcy Case by the Merchant, any legal action, suit or proceeding arising in connection with this Agreement shall be submitted to the exclusive jurisdiction of the Bankruptcy Court and each Party hereby waives any defenses or objections based on lack of jurisdiction, improper venue or *forum non conveniens*.

[Remainder of Page Intentionally Left Blank]

13

IN WITNESS WHEREOF, the Consultant and the Merchant hereby execute this Agreement by their duly authorized representatives as a sealed instrument as of the day and year first written above.

**MERCHANT:**

VANITY SHOP OF GRAND FORKS, INC.

By: _James L. Bennett_

Its: _Chairman_

**CONSULTANT:**

TIGER CAPITAL GROUP, LLC

By:  Michael McGrail
Its:  Chief Operating Officer

[Signature Page to Consulting Agreement]

Acknowledged and Agreed to solely with respect to Section 6(iii) – (Additional Merchandise) and
Section 6(vi) – (Weekly Deposit of Estimated Merchandise Fee):

WELLS FARGO BANK, NATIONAL ASSOCIATION

By: Brent E. Shay

Its: Director

Exhibit A
Stores and DCs

| Loc Number | Location Name | Location Address | Location City | Location State | Postal Code |
|---|---|---|---|---|---|
| 2 | Miller Hill Mall | 1600 Miller Trunk Highway, Space # I-5 | Duluth | MN | 55811 |
| 3 | Columbia Mall | 2800 So. Columbia Rd. #329 | Grand Forks | ND | 58201 |
| 4 | Kirkwood Mall | 626 Kirkwood Mall #175 | Bismarck | ND | 58504 |
| 5 | West Acres Shopping Center | 3902 13th Avenue South Suite #2321 | Fargo | ND | 58103 |
| 8 | Westgate Mall | 14136 Baxter Dr Ste 30 | Baxter | MN | 56425 |
| 9 | Paul Bunyan Mall | 1401 Paul Bunyan Dr. NW #48 | Bemidji | MN | 56601 |
| 10 | Kandi Mall | 1605 1st Street South #A-117 | Willmar | MN | 56201 |
| 11 | The Empire Mall | 4001 West 41st Street. #1540 | Sioux Falls | SD | 57106 |
| 12 | River Hill Mall | 1850 Adams Street #120 | Mankato | MN | 56001 |
| 13 | Silver Lakes Mall | 200 West Hanley Avenue; Suite 1117 | Coeur d' Alene | ID | 83815 |
| 15 | Rimrock Mall | 300 So. 24th Street West; Suite #A13 | Billings | MT | 59102 |
| 16 | Gallatin Valley Mall | 2825 Main Street Unit 5-G | Bozeman | MT | 59718 |
| 18 | Rushmore Mall | 2200 North Maple Avenue Space #2440 | Rapid City | SD | 57701 |
| 19 | Prairie Hills Mall | 1681 3rd Avenue West #15 | Dickinson | ND | 58601 |
| 20 | 323 Main Ave | PO Box 1492 | Williston | ND | 58801 |
| 22 | Washington Square Mall | 815 Lake Ave | Detroit Lakes | MN | 56501 |
| 25 | Watertown Mall | 1300 9th Avenue SE Ste 54 | Watertown | SD | 57201 |
| 26 | Dakota Square Mall | 2400 10th Street SW #409 | Minot | ND | 58701 |
| 27 | Crossroads Shopping Center | 4201 West Division Street | St. Cloud | MN | 56301 |
| 28 | Southern Hills Mall | 4400 Sergeant Road Suite 370 | Sioux City | IA | 51106 |
| 31 | Viking Plaza | 3015 Highway 29 So.; Suite 4006 | Alexandria | MN | 56308 |
| 32 | Central Square Mall | 201 NW 4th Street #32 | Grand Rapids | MN | 55744 |
| 35 | Butte Plaza Mall | 3100 Harrison Ave, Space C-4 | Butte | MT | 59701 |
| 36 | Holiday Village Mall | 1200 10th Avenue South Ste 12 | Great Falls | MT | 59405 |
| 46 | Janesville Mall | 2500 Milton Ave Space 122A | Janesville | WI | 53545 |
| 47 | Fox River Mall | 4301 West Wisconsin Ave #808 | Grand Chute | WI | 54913 |
| 48 | Southridge Mall | 5300 S 76th St #290 | Greendale | WI | 53129 |
| 49 | Great Lakes Crossing | 4282B Baldwin Rd. Space # 530A | Auburn Hills | MI | 48326 |
| 51 | Wausau Center Mall | C320  Wausau Center, #320 | Wausau | WI | 54403 |
| 54 | Independence Center | 18813 East 39th Street, #2048 | Independence | MO | 64057 |
| 60 | Gateway Mall | 6100 O St. | Lincoln | NE | 68505 |
| 61 | Westroads Shopping Center | 10000 California Street; Suite 2248 | Omaha | NE | 68114 |
| 65 | Conestoga Mall | 3404 West 13th Street Suite 125 | Grand Island | NE | 68803 |
| 66 | Hilltop Mall | 5027 2nd Ave. Ste 38 | Kearney | NE | 68847 |
| 68 | Sunset Plaza | 1700 Market Lane; Suite 8 | Norfolk | NE | 68701 |
| 69 | North Platte Mall | 1100 S Dewey St | North Platte | NE | 69101 |
| 70 | Pine Ridge Mall | 4155 Yellowstone Avenue; Suite 1210 | Chubbuck | ID | 83202 |
| 71 | Grand Teton Mall | 2300 East 17th Street  Space #136 | Idaho Falls | ID | 83404 |
| 72 | Magic Valley Mall | 1485 Poleline Rd. East; Suite 227 | Twin Falls | ID | 83301 |
| 73 | Jordan Creek Town Center | 101 Jordan Creek Parkway Space 12568 | West Des Moines | IA | 50266 |
| 74 | Boise Towne Center | 350 North Milwaukee #2007 | Boise | ID | 83704 |
| 75 | Northtown Mall | 4750 North Division St,. Space 224 | Spokane | WA | 99207 |
| 76 | Spokane Valley Mall | 14700 E Indiana, Space 1024 | Spokane | WA | 99216 |
| 77 | Southbridge Mall | 100 South Federal Avenue #108 | Mason City | IA | 50401 |
| 78 | New Gate Mall | 1214 New Gate Mall Space #1214 | Ogden | UT | 84405 |
| 80 | Rivertown Crossing Mall | 3700 Rivertown PKWY #2010 | Grandville | MI | 49418 |
| 81 | Johnson City Mall | 2011 North Roan St. | Johnson City | TN | 37601 |
| 82 | Stones River Mall | 1720 Old Fort Parkway Space #F0105 | Murfreesboro | TN | 37129 |
| 83 | Governor's Square Mall | 2801 Wilma Rudolph BLVD Suite 870 | Clarksville | TN | 37040 |
| 84 | Fashion Square Mall | 4880 Fasion Square Mall #116 | Saginaw | MI | 48604 |
| 88 | Cache Valley Mall | 1300 Cache Valley Mall Space 1340 | Logan | UT | 84341 |
| 90 | Great Lakes Mall | 7850 Mentor Have, Ste #554B | Mentor | OH | 44060 |
| 92 | Greenwood Mall | 2625 Scottsville Road Space #330 | Bowling Green | KY | 42104 |
| 94 | Layton Hills Mall | 1036 Layton Hills Mall | Layton | UT | 84041 |
| 96 | Meridian Mall | 1982 Grand River Ave Space 245 | Okemos | MI | 48864 |
| 98 | East Towne Mall | 8 East Towne Mall, E-506 | Madison | WI | 53704 |
| 100 | Ohio Valley Mall | 67800 Mall Road, Space 550 | St. Clairesville | OH | 43950 |
| 104 | Oakwood Mall | 4800 Golf Road, Space 334 | Eau Claire | WI | 54701 |
| 105 | Valley View Mall | 3800 State Road #16 | La Crosse | WI | 54601 |
| 106 | Bay Park Square | 275 Bay Park Square, #275 | Green Bay | WI | 54304 |

Exhibit A
Stores and DCs

| Loc Number | Location Name | Location Address | Location City | Location State | Postal Code |
|---|---|---|---|---|---|
| 108 | Glenbrook Square Mall | 4201 Coldwater Road Space M16A | Fort Wayne | IN | 46805 |
| 109 | College Mall | 2894 E 3rd Street Space PO6 | Bloomington | IN | 47401 |
| 110 | Muncie Mall | 3501 N Granville Ave Space L03A | Muncie | IN | 47303 |
| 111 | Lakewood Mall | 3315 6th Ave SE | Aberdeen | SD | 57401 |
| 112 | Greenwood Park Mall | 1251 US 31 North Space F-13 | Greenwood | IN | 46142 |
| 114 | The Mall at Fairfield Commons | 2727 Fairfield Commons Space #W223 | Beavercreek | OH | 45431 |
| 115 | Dayton Mall | 2700 Miamisburg-Centerville Mall Space 370 | Dayton | OH | 45459 |
| 116 | Lima Mall | 2400 Elida Rd Space #364 | Lima | OH | 45805 |
| 117 | Southern Park Mall | 7401 Market St. Space #823 | Youngstown | OH | 44512 |
| 122 | South Towne Center | 10450  S State Street Ste 2312 | Sandy | UT | 84070 |
| 124 | Tri County Mall | 11700 Princeton Pike Space D 9A | Cincinnati | OH | 45246 |
| 126 | Southgate Mall | 2901 Brooks St,#H-2. | Missoula | MT | 59801 |
| 128 | Eastridge Mall | 601 SE Wyoming Blvd. - Space 270 | Casper | WY | 82609 |
| 129 | Frontier Mall | 1400 Dell Range Blvd, Space #91 | Cheyenne | WY | 82009 |
| 130 | Crossroads Center | 2060 Crossroads Blvd. Space 220 | Waterloo | IA | 50702 |
| 131 | College Square Mall | 1395 College Square Mall | Cedar Falls | IA | 50613 |
| 132 | Crossroads Mall | 217 South 25th Street; Space E-5 | Fort Dodge | IA | 50501 |
| 133 | North Grand Mall | 2801 Grand Avenue #1375 | Ames | IA | 50010 |
| 136 | Richland Mall | 625 Richland Mall Space A4 | Mansfield | OH | 44906 |
| 137 | Lindale Mall | 4444 1st Ave NE, #78 | Cedar Rapids | IA | 52402 |
| 138 | Kennedy Mall | 555 JFK Road  Space 274 | Dubuque | IA | 52002 |
| 139 | Westland Mall | 550 S Gear Ave Space 33 | West Burlington | IA | 52655 |
| 140 | Peru Mall | 3940 Route 251, Ste V12 | Peru | IL | 61354 |
| 141 | St. Clair Square Mall | 107 St. Clair Square | Fairveiw Heights | IL | 62208 |
| 143 | CherryVale Mall | 7200 Harrison Ave. Space E-64 | Rockford | IL | 61112 |
| 145 | Lakeside Mall | 14000 Lakeside Circle #2510 | Sterling Heights | MI | 48313 |
| 147 | Quincy Mall | 3347 Broadway Space 3363 | Quincy | IL | 62301 |
| 148 | Florence Mall | 1132 Florence Mall | Florence | KY | 41042 |
| 152 | Colony Square Mall | 3575 N Maple Ave #164 | Zanesville | OH | 43701 |
| 163 | Columbia Mall | 1321 N. Columbia Center Blvd.#401A | Kennewick | WA | 99336 |
| 164 | Citadel Mall | 750 Citadel Drive East  Space #2012 | Colorado Springs | CO | 80909 |
| 165 | Pueblo Mall | 3284 Dillion Drive, #E-08A | Pueblo | CO | 81008 |
| 167 | Mesa Mall | 2424 US-6 & 50 Mesa Mall, Suite #92A | Grand Junction | CO | 81505 |
| 170 | South Plains Mall | 6002 Slide Road, Spc B13 | Lubbock | TX | 79414 |
| 171 | Westgate Mall | 7701 West Interstate 40 #160 | Amarillo | TX | 79121 |
| 173 | Sunset Mall | 4001 Sunset Dr  #1102 | San Angelo | TX | 76904 |
| 174 | Parkdale Mall | 6155 Eastex Freeway, Space 266 | Beaumont | TX | 77706 |
| 177 | Firewheel Town Center | 255 Cedar Sage Dr. | Garland | TX | 75040 |
| 178 | Broadway Square | 4601 S. Broadway Ave | Tyler | TX | 75703 |
| 179 | Longview Mall | 3500 McCann Rd Space #J02A | Longview | TX | 75605 |
| 181 | Monroeville Mall | 223 Monroeville Mall | Monroeville | PA | 15146 |
| 183 | Grand Central Mall | P.O. Box 6041 Space 280 | Vienna | WV | 26105 |
| 184 | Morgantown Mall | 9317 Mall Road Space # 907 | Morgantown | WV | 26501 |
| 185 | Market Place Mall | 701 Miracle Mile Drive | Rochester | NY | 14623 |
| 190 | Oakwood Mall | 4125 West Garriot Road l F-2 | Enid | OK | 73703 |
| 199 | Woodland Hills Mall | 7021 South Memorial Drive: Suite 221 | Tulsa | OK | 74133 |
| 202 | White Oaks Mall | 2501 West Wabash Ave Space E-11 | Springfield | IL | 62704 |
| 203 | Northwoods Mall | 2200 W War Memorial Dr, Ste DL07 | Peoria | IL | 61613 |
| 207 | Brookfield Square | 95 N. Moorland Rd, Space #D2 | Brookfield | WI | 53005 |
| 209 | Mall at Turtle Creek | 3000 East Highland Suite 602 | Jonesboro | AR | 72401 |
| 210 | Central Mall | 5111 Rogers Ave. Box 40A | Fort Smith | AR | 72903 |
| 212 | Northtown Mall | 262 Northtown Drive  Space H-20 | Blaine | MN | 55434 |
| 213 | Burnsville Center | 1080 Burnsville Center | Burnsville | MN | 55306 |
| 214 | The Mall at Hays | 2918 Vine Street Space 270 | Hays | KS | 67601 |
| 217 | Four Seasons Town Centre | P.O. Box 282 301 Four Seasons Town Center | Greensboro | NC | 27407 |
| 218 | Asheville Mall | 3 S Tunnel Rd. Space #G08 | Asheville | NC | 28805 |
| 219 | Hanes Mall | 3320 Silas Creek Parkway Suite #GL3332 | Winston-Salem | NC | 27103 |
| 220 | Apache Mall | 658 Apache Mall Space 220 | Rochester | MN | 55902 |
| 221 | Oakview Mall | 3301 144th St. S. Suite 1025 Space - D14A | Omaha | NE | 68144 |
| 226 | Maplewood Mall | 3001 White Bear Ave N. Unit #2047A | St. Paul | MN | 55109 |

Exhibit A
Stores and DCs

| Loc Number | Location Name | Location Address | Location City | Location State | Postal Code |
|---|---|---|---|---|---|
| 230 | Battlefield Mall | 2825 Glenstone Avenue E04C | Springfield | MO | 65804 |
| 232 | Columbia Mall | 2300 Bernadette Dr. Suite #318 | Columbia | MO | 65203 |
| 233 | East Hills Shopping Center | 3702 Frederick Ave #22 | St. Joseph | MO | 64506 |
| 234 | Mid Rivers Mall | 1010 Mid Rivers Mall | St. Peters | MO | 63376 |
| 235 | South County Center | 415 South County Centerway #415 | Mehlville | MO | 63129 |
| 236 | Northpark Mall | 101 North Range Line Space 230 | Joplin | MO | 64801 |
| 244 | Quincy Place | 1110 N Quincy Ave Box 18, Space #2 | Ottumwa | IA | 52501 |
| 245 | Valley West Mall | 1551 Valley West Dr. #257 | West Des Moines | IA | 50266 |
| 250 | Garden City Plaza | 2214 E. Kansas Ave | Garden City | KS | 67846 |
| 251 | Central Mall | 2259 South 9th Street, #26 | Salina | KS | 67401 |
| 254 | Manhattan Town Center | 100 Manhattan Town Center Space 685 | Manhattan | KS | 66502 |
| 255 | West Ridge Mall | 1801 SW Wanamaker Rd, Unit #G18 | Topeka | KS | 66604 |
| 271 | Honey Creek Mall | 3401 South Highway 41 Space J-7 | Terre | IN | 47802 |
| 272 | Tippecanoe Mall | 2415 Sagamore Pkwy S Space # C01 | Lafayette | IN | 47905 |
| 275 | Mall of Monroe | 2121 N. Monroe St.. Unit #565 | Monroe | MI | 48162 |
| 276 | Genesee Valley Mall | 3365 South Linden Road Space 570 | Flint | Mi | 48507 |
| 277 | Midland Mall | 6800 Eastman Ave E552 | Midland | MI | 48642 |
| **137** | **Subtotal: Stores** | | | | |
| | Home Office & Warehouse | 1001 N 25th St | Fargo | ND | 58102 |
| | Vanity.com (web) | 222 7th Ave N, Unit 100 | Fargo | ND | 58102 |
| **2** | **Subtotal: Distribution Centers** | | | | |

**EXHIBIT B**

**SALE GUIDELINES**

A.     The Sale shall be conducted so that the Stores in which sales are to occur will remain open no longer than during the normal hours of operation provided for in the respective leases for the Stores.

B.     The Sale shall be conducted in accordance with applicable state and local "Blue Laws", where applicable, so that no Sale shall be conducted on Sunday unless the Merchant had been operating such Store on a Sunday.

C.     On "shopping center" property, Consultant shall not distribute handbills, leaflets or other written materials to customers outside of any Stores' premises, unless permitted by the lease or, if distribution is customary in the "shopping center" in which such Store is located; provided that Consultant may solicit customers in the Stores themselves. On "shopping center" property, Consultant shall not use any flashing lights or amplified sound to advertise the Sale or solicit customers, except as permitted under the applicable lease or agreed to by the landlord.

D.     At the conclusion of the Sale, Consultant shall vacate the Stores in broom clean condition. Consultant may abandon any FF&E not sold in the Sale at the Stores, the DCs or Merchant's corporate offices at the conclusion of the Sale without cost or liability of any kind to Consultant.  Any abandoned FF&E left in a Store after a lease is rejected shall be deemed abandoned to the landlord having a right to dispose of the same as the landlord chooses without any liability whatsoever on the part of the landlord to any party and without waiver of any damage claims against the Merchant.  For the avoidance of doubt, as of the Sale Termination Date, Consultant may abandon, in place and without further responsibility or liability of any kind, any FF&E located at a Store, DC or Merchant's corporate offices.

E.     Prior to entry of the Interim Retention Order, Consultant may advertise the sale as a "sale on everything", "everything must go" or similar themed sale.  Following, and subject to, the entry of the Interim Retention Order and/or the Final Retention Order (as applicable), Consultant may also advertise the sale as a "store closing", "total liquidation" and/or "going-out-of-business" sale, as dictated by the respective Interim Retention Order and/or the Final Retention Order (as applicable).

F.     Consultant shall be permitted to utilize display, hanging signs, and interior banners in connection with the Sale; provided, however, that such display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner. The Merchant and Consultant shall not use neon or day-glo on its display, hanging signs, or interior banners.  Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Sale Guidelines.   In addition, the Merchant and Consultant shall be permitted to utilize exterior banners at (i) non-enclosed mall Stores and (ii) enclosed mall Stores to the extent the entrance to the applicable Store does not require entry into the enclosed mall common area; provided, however, that such banners shall be located or hung so as to make clear that the Sale is being conducted only at the affected Store, shall not be wider than the storefront of the Store, and shall not be larger than 4 feet x 40 feet.  In addition, the Merchant and Consultant shall be permitted to utilize sign walkers in a safe and professional manner and in accordance with the terms of the Interim Retention Order and/or the Final Retention Order.   Nothing contained in these Sale Guidelines shall be construed to create or impose upon Consultant any additional restrictions not contained in the applicable lease agreement.

F.      Conspicuous signs shall be posted in the cash register areas of each of the affected Stores to effect that "all sales are final."

G.      Except with respect to the hanging of exterior banners, Consultant shall not make any alterations to the storefront or exterior walls of any Stores.

H.      Consultant shall not make any alterations to interior or exterior Store lighting. No property of the landlord of a Store shall be removed or sold during the Sale. The hanging of exterior banners or in-Store signage and banners shall not constitute an alteration to a Store.

I.      Consultant shall keep Store premises and surrounding areas clear and orderly consistent with present practices.

J.      Subject to the provisions of the Agreement, Consultant shall have the right to sell all furniture, fixtures, and equipment located at the Stores, the DCs and Merchant's corporate offices (the "FF&E"). Consultant may advertise the sale of the FF&E in a manner consistent with these guidelines at the Stores, the DCs and Merchant's corporate offices.  The purchasers of any FF&E sold during the sale shall be permitted to remove the FF&E either through the back shipping areas at any time, or through other areas after applicable business hours. For the avoidance of doubt, as of the Sale Termination Date, Consultant may abandon, in place and without further responsibility, any FF&E at the Stores, the DCs and Merchant's corporate offices.

K.      Consultant shall be entitled to include Additional Merchandise in the Sale in accordance with the terms of the Interim Retention Order and/or the Final Retention Order and the Agreement.

L.      At the conclusion of the Sale at each Store, pending assumption or rejection of applicable leases, the landlords of the Stores shall have reasonable access to the Stores' premises as set forth in the applicable leases.  The Merchant, Consultant and their agents and representatives shall continue to have exclusive and unfettered access to the Stores.

M.      Post-petition rents shall be paid by the Merchant as required by the Bankruptcy Code until the rejection or assumption and assignment of each lease.  Consultant shall have no responsibility therefor.

N.      The rights of landlords against Merchant for any damages to a Store shall be reserved in accordance with the provisions of the applicable lease.

O.      If and to the extent that the landlord of any Store affected hereby contends that Consultant or Merchant is in breach of or default under these Sale Guidelines, such landlord shall email or deliver written notice by overnight delivery on the Merchant's counsel and Consultant's counsel as follows:

> If to Consultant:
>
> Tiger Capital Group, LLC
> 60 State Street, 11th Floor
> Boston, MA 02109
> Attn: Michael McGrail
> Facsimile: (617) 523-3007
> Email: mmcgrail@tigergroup.com

2

<u>If to Merchant</u>:

Vanity Shop of Grand Fork, Inc.
1001 North 25th Street
Fargo, ND 58102
Attn:  Jill Motschenbacher
Facsimile: (701) 237-0861
Email: jmotschen@vanity.com

3

# Exhibit C– Budget

| | | |
|---|---|---|
| **Advertisement** | $ | 154,895 |
| **Supervision** | | 508,956 |
| **Miscellaneous** | | 60,000 |
| **Total Consultant's Exp.** | **$** | **723,851** |

Note:
(1) Assumes an 5.0 -week Sale from Thu, 03/02 - Wed, 04/05.

# **EXHIBIT C**

**(Sale Guidelines)**

2821695.4

# SALE GUIDELINES

A.      The Sale shall be conducted so that the Stores in which sales are to occur will remain open no longer than during the normal hours of operation provided for in the respective leases for the Stores.

B.      The Sale shall be conducted in accordance with applicable state and local "Blue Laws", where applicable, so that no Sale shall be conducted on Sunday unless the Merchant had been operating such Store on a Sunday.

C.      On "shopping center" property, Consultant shall not distribute handbills, leaflets or other written materials to customers outside of any Stores' premises, unless permitted by the lease or, if distribution is customary in the "shopping center" in which such Store is located; provided that Consultant may solicit customers in the Stores themselves. On "shopping center" property, Consultant shall not use any flashing lights or amplified sound to advertise the Sale or solicit customers, except as permitted under the applicable lease or agreed to by the landlord.

D.      At the conclusion of the Sale, Consultant shall vacate the Stores in broom clean condition. Consultant may abandon any FF&E not sold in the Sale at the Stores, the DCs or Merchant's corporate offices at the conclusion of the Sale without cost or liability of any kind to Consultant.  Any abandoned FF&E left in a Store after a lease is rejected shall be deemed abandoned to the landlord having a right to dispose of the same as the landlord chooses without any liability whatsoever on the part of the landlord to any party and without waiver of any damage claims against the Merchant.  For the avoidance of doubt, as of the Sale Termination Date, Consultant may abandon, in place and without further responsibility or liability of any kind, any FF&E located at a Store, DC or Merchant's corporate offices.

E.      Prior to entry of the Interim Retention Order, Consultant may advertise the sale as a "sale on everything", "everything must go" or similar themed sale. Following, and subject to, the entry of the Interim Retention Order and/or the Final Retention Order (as applicable), Consultant may also advertise the sale as a "store closing", "total liquidation" and/or "going-out-of-business" sale, as dictated by the respective Interim Retention Order and/or the Final Retention Order (as applicable).

F.      Consultant shall be permitted to utilize display, hanging signs, and interior banners in connection with the Sale; provided, however, that such display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner. The Merchant and Consultant shall not use neon or day-glo on its display, hanging signs, or interior banners.  Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Sale Guidelines.   In addition, the Merchant and Consultant shall be permitted to utilize exterior banners at (i) non-enclosed mall Stores and (ii) enclosed mall Stores to the extent the entrance to the applicable Store does not require entry into the enclosed mall common area; provided, however, that such banners shall be located or hung so as to make clear that the Sale is being conducted only at the affected Store, shall not be wider than the storefront of the Store, and shall not be larger than 4 feet x 40 feet.  In addition, the Merchant and Consultant shall be permitted to utilize sign walkers in a safe and professional manner and in accordance with the terms of the Interim Retention Order and/or the Final Retention Order.   Nothing contained in these Sale Guidelines shall be construed to create or impose upon Consultant any additional restrictions not contained in the applicable lease agreement.

F.    Conspicuous signs shall be posted in the cash register areas of each of the affected Stores to effect that "all sales are final."

G.    Except with respect to the hanging of exterior banners, Consultant shall not make any alterations to the storefront or exterior walls of any Stores.

H.    Consultant shall not make any alterations to interior or exterior Store lighting. No property of the landlord of a Store shall be removed or sold during the Sale. The hanging of exterior banners or in-Store signage and banners shall not constitute an alteration to a Store.

I.    Consultant shall keep Store premises and surrounding areas clear and orderly consistent with present practices.

J.    Subject to the provisions of the Agreement, Consultant shall have the right to sell all furniture, fixtures, and equipment located at the Stores, the DCs and Merchant's corporate offices (the "FF&E"). Consultant may advertise the sale of the FF&E in a manner consistent with these guidelines at the Stores, the DCs and Merchant's corporate offices.  The purchasers of any FF&E sold during the sale shall be permitted to remove the FF&E either through the back shipping areas at any time, or through other areas after applicable business hours. For the avoidance of doubt, as of the Sale Termination Date, Consultant may abandon, in place and without further responsibility, any FF&E at the Stores, the DCs and Merchant's corporate offices.

K.    Consultant shall be entitled to include Additional Merchandise in the Sale in accordance with the terms of the Interim Retention Order and/or the Final Retention Order and the Agreement.

L.    At the conclusion of the Sale at each Store, pending assumption or rejection of applicable leases, the landlords of the Stores shall have reasonable access to the Stores' premises as set forth in the applicable leases.  The Merchant, Consultant and their agents and representatives shall continue to have exclusive and unfettered access to the Stores.

M.    Post-petition rents shall be paid by the Merchant as required by the Bankruptcy Code until the rejection or assumption and assignment of each lease.  Consultant shall have no responsibility therefor.

N.    The rights of landlords against Merchant for any damages to a Store shall be reserved in accordance with the provisions of the applicable lease.

O.    If and to the extent that the landlord of any Store affected hereby contends that Consultant or Merchant is in breach of or default under these Sale Guidelines, such landlord shall email or deliver written notice by overnight delivery on the Merchant's counsel and Consultant's counsel as follows:

> If to Consultant:
>
> Tiger Capital Group, LLC
> 60 State Street, 11th Floor
> Boston, MA 02109
> Attn: Michael McGrail
> Facsimile: (617) 523-3007
> Email: mmcgrail@tigergroup.com

{00315265.DOC; 2}

<u>If to Merchant</u>:

Vanity Shop of Grand Fork, Inc.
1001 North 25th Street
Fargo, ND 58102
Attn:  Jill Motschenbacher
Facsimile: (701) 237-0861
Email: jmotschen@vanity.com

3