1

1        UNITED STATES BANKRUPTCY COURT

2           DISTRICT OF NORTH DAKOTA

3    ----------------------------------------------------------

4    In Re:                          Bankruptcy No. 17-30112

5    Vanity Shop of Grand Forks,     Chapter 11

6    Inc., d/b/a Vanity,

7            Debtor.

8    ----------------------------------------------------------

9

10       BEFORE THE HONORABLE SHON HASTINGS

11          United States Bankruptcy Judge

12

13

14                    * * *

15          TRANSCRIPT OF PROCEEDINGS

16                MARCH, 2017

17                    * * *

18

19   Proceedings recorded by electronic sound recording,
     transcript prepared by transcription service.
20

21

22          LISA M. THORSGAARD, RPR
               MN Court Reporters
23             6659 Indigo Court
              St. Paul, MN 55101
24             (651) 280-8985

25

2

## A-P-P-E-A-R-A-N-C-E-S

Jon R. Brakke
Caren W. Stanley
Vogel Law Firm
P.O. Box 1389
Fargo, North Dakota 58107-1389
Attorney for Debtor


Sarah J. Wencil
Office of the U.S. Trustee
Suite 1015 U.S. Courthouse
300 South Fourth Street
Minneapolis, Minnesota 55415
Attorney for U.S. Trustee


Mette H. Kurth
Fox Rothschild, LLP
1800 Century Park East, Suite 300
Los Angeles, California 90067
Attorney for Unsecured Creditors Committee


Ellie J. Barragry
Fox Rothschild, LLP
Campbell Mithun Tower - Suite 2000
222 South Ninth Street
Minneapolis, Minnesota 55402
Attorney for Unsecured Creditors Committee


Dustin P. Branch
Ballard Spahr, LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067
Attorney for Landlord Creditors: Centennial Real
Estate Company, Southgate Mall Associates, LLP, ST
Mall Owner, LLC, Starwood Retail Partnership, LLC
Macerich Company


Ivan M. Gold
Allen, Matkins, Leck, Gamble, Mallory & Natsis LLP
Three Embarcadero Center, 12th Floor
San Francisco, California 94111
Attorney for GGP Limited Partnership (Landlords)

3

1                    APPEARANCES (Cont'd)

2

3    Donald E. Rothman
     Riemer & Braunstein, LLP
     Three Center Plaza
4    Boston, Massachusetts 02108
     Attorney for Wells Fargo Bank, National Association
5

6    Ronald E. Gold
     Frost Brown Todd, LLC
7    3300 Great American Tower, 301 E. Fourth St.
     Cincinnati, Ohio 45202
8    Attorney for Washington Prime Group, Inc.

9

     Robert A. Boghosian
10   Cohen, Tauber, Spievack & Wagner, P.C.
     420 Lexington Avenue, Suite 2400
11   New York, New York 10170
     Attorney for Tiger Capital Group, LLC
12

13   Brad A. Sinclair
     Kaler-Doeling, PLLP
14   3429 Interstate Boulevard South,
     Fargo, North Dakota 58103
15   Local Counsel for Tiger Capital Group

16

     Andrew S. Conway
17   200 East Long Lake Road, Suite 300
     Bloomfield Hills, Michigan 48304
18   Attorney for Taubman Landlords

19

     Steven R. Fox
20   Fox Law Corporation
     17835 Ventura Blvd., Suite 306
21   Encino, California 91316
     Attorney for Anfield Apparel Group, Inc.

22

23                        * * *

24

25

4

1                    P-R-O-C-E-E-D-I-N-G-S

2

3                    THE COURT:  Good morning.  The

4       case before the court this morning is

5       Bankruptcy Case No. 17-30112, In Re: Vanity

6       Shop of Grand Forks, Inc.  And the issue

7       before the court are the final hearings on the

8       first stay motions.

9            Will the parties please make their

10      appearance for the record.  Let's begin with

11      those appearing by telephone.

12                    MS. WENCIL:  Your Honor, Sarah

13      Wencil appearing for the U.S. Trustee.

14                    MR. ROTHMAN:  Good morning,

15      Your Honor.  Donald Rothman, Riemer &

16      Braunstein, on behalf of Wells Fargo.

17                    MR. GOLD:  Good morning, Your

18      Honor.  Ronald Gold, Frost, Brown, Todd, on

19      behalf of Washington Prime Group.

20                    MR. BRANCH:  Good morning, Your

21      Honor.  Dustin Branch, Ballard Spahr, LLP, on

22      behalf of Centennial Real Estate Company,

23      Southgate Mall Associates, ST Mall Owner,

24      Starwood Retail Partners, LLC, and the

25      Macerich Company.

1                    MR. BOGHOSIAN:  Good morning,

2       Your Honor.  Robert Boghosian from Cohen,

3       Tauber, Spievack & Wagner on behalf of Tiger

4       Capital Group.

5                    MR. CONWAY:  Your Honor, Andrew

6       Conway on behalf of the Taubman Landlords.

7                    THE COURT:  Are there any other

8       parties appearing by telephone?  Okay.  We

9       have the video conference working.  Was

10      somebody supposed to join us by video

11      conference?  Okay.  All right.  So then we're

12      in Fargo.

13                    MR. BRAKKE:  As debtor's

14      counsel, Your Honor, John Brakke and Caren

15      Stanley, and as representatives of the debtor,

16      Micky Quinn, Jill Machenbacher, and Lowell

17      Patrell (phonetic).

18                    MR. FOX:  Good morning, Your

19      Honor.  My name is Steven Fox.  I'm a

20      principal of Fox Law Corporation.  My client

21      is Anfield, A-N-F-I-E-L-D, Anfield Apparel

22      Group, a creditor with an unsecured claim and

23      also a reclamation claim of record.

24                    MS. BARRAGRY:  And, Your Honor,

25      if I may, Ellie Barragry on behalf -- or with

6

1    Fox, Rothschild on behalf of the Committee of

2    Unsecured Creditors.  And my colleague, Mette

3    Kurth, as you saw, was going through security

4    and that chair is open and waiting for her.

5                    THE COURT:  Okay.  All right.

6    Your last name again?

7                    MS. BARRAGRY:  Barragry,

8    B-A-R-R-A-G-R-Y.

9                    THE COURT:  And the person

10   who's going through security, will you repeat

11   that name again?

12                   MS. BARRAGRY:  Mette Kurth,

13   M-E-T-T-E, K-U-R-T-H.

14                   THE COURT:  Okay.

15                   MR. SINCLAIR:  Attorney Brad

16   Sinclair, local counsel for Tiger Capital

17   Group, LLC.

18                   THE COURT:  Okay.  You are

19   Ms. Kurth?

20                   MS. KURTH:  I am.  Sorry, I got

21   lost (inaudible).

22                   THE COURT:  I'll give you a

23   minute to get ready if you'd like.

24       While we are waiting, Mr. Brakke, I

25   think I will look to you.  I received a couple

1    of proposed orders.  And I noticed -- and I'm

2    very grateful that you filed them in the

3    context of a notice so that all parties could

4    review the redlined versions of several orders

5    so that we would all know what suggestions

6    that debtor would have for revising interim

7    orders to final orders.

8         I saw that there were five of them but

9    there are more than five interim orders.  And

10   my question to the debtors is, are the other

11   orders relatively acceptable except for the

12   words interim and the like or were you

13   drafting other suggestions for proposed

14   orders?

15                 MR. BRAKKE:  Your Honor, I

16   believe that on the four other motions which

17   are utilities, insurance, taxes, and wages,

18   draft final order were also submitted at the

19   same time as the motions and we thought that

20   those were in acceptable form.

21                 THE COURT:  Okay.  All right.

22   So I'll take a look at the proposed final

23   orders to see how they differ from my interim

24   orders and make a comparison that way.  All

25   right.

8

1          I think what I will do is take the more

2     difficult issues first.  And by difficult, I

3     just simply mean those orders where there are

4     objections to the entry of a final order at

5     least in the form proposed.

6          And I think I'd like to begin with cash

7     collateral.  I notice that the affidavit, the

8     declaration of Jill Machenbacher had mentioned

9     that the secured creditor who had liens

10    against cash collateral, Wells Fargo, was

11    likely paid in full while there was a

12    suggestion that -- in the objection that they

13    were likely paid in full, and the declaration

14    clarified that there was sufficient earnings

15    to pay them in full and that the only thing

16    that was left remaining were escrowed funds

17    that were available in the event that there

18    were claims in the future.

19          So, in essence, Wells Fargo was paid in

20    full; is that right?

21                MR. BRAKKE:  There are two

22    matters remaining with Wells Fargo, Your

23    Honor.  There's Wells Fargo's claim for

24    attorneys' fees and costs and then there is

25    Wells Fargo's claim for adequate protection

1       with respect to Wells Fargo's agreement to

2       allow the debtor's personnel to continue to

3       use Wells Fargo credit cards.

4               I spoke to Mr. Rothman this morning,

5       Your Honor.  The draft final order provides

6       for an escrow amount, I believe, of $95,000.

7       The debtor and Wells Fargo have agreed that

8       that amount will be increased to $103,000,

9       Your Honor.  And that will be accepted by

10      Wells Fargo as adequate protection with

11      respect to its remaining potential claims for

12      attorneys' fees and costs and the potential

13      contingent claim with respect to future use of

14      the credit cards.

15              And with that, Your Honor, Wells Fargo

16      will agree that it has been fully paid subject

17      to retaining its rights in the monies escrowed

18      and that Wells Fargo will have no further

19      claim with respect to cash collateral use by

20      the debtor and will terminate all its filings.

21                     THE COURT:  Okay.  All right.

22                     MR. ROTHMAN:  Your Honor, this

23      is Donald Rothman.  Just one issue with that.

24      On the termination of the lien, we would

25      customarily maintain our lien until the

1     expiration of the challenge period from the

2     committee.  I don't believe it interferes

3     obviously with the sale since sales of

4     inventory are made free and clear of our lien,

5     but I wouldn't want there to be any

6     misunderstanding that if we incur an

7     obligation that was reimbursable by the debtor

8     to Wells Fargo, that we had somehow waived our

9     priority to receive reimbursement for those

10    amounts.

11              MR. BRAKKE:  Debtor agrees with

12    that point, Your Honor.

13              THE COURT:  Okay.  All right.

14    So is there language?

15              MR. BRAKKE:  That will require

16    a slight adjustment to the draft final order,

17    and I will work on that with Mr. Rothman, Your

18    Honor.

19              THE COURT:  Okay.  The cash

20    collateral order that -- the proposed order,

21    proposed final order has a lot of language in

22    it suggesting continuing use of cash

23    collateral, but if Wells Fargo is willing to

24    satisfy its liens, it no longer has an

25    interest in cash collateral.  So are you

1       considering a substantial pare down of the

2       order in its current form?

3                   MR. BRAKKE:  I was not, Your

4       Honor.  And the Court has probably noted that

5       I -- a number of provisions in the interim

6       order were eliminated.

7                   THE COURT:  Yes.

8                   MR. BRAKKE:  The revised

9       proposed final order protects, as I think it

10      should, the fact that Wells Fargo allowed use

11      of cash collateral until last week when they

12      were paid in full.  And those provisions need

13      to stay because that was consistent with what

14      Wells Fargo allowed.  And we're not changing

15      that fact, Your Honor.

16          The remaining provisions, Your Honor, I

17      believe are qualified.  With respect to the

18      extent the debtor continues to use Wells

19      Fargo's cash collateral, these provisions will

20      apply.  So I believe the draft final order is

21      properly qualified in those respects, Your

22      Honor.

23                  THE COURT:  Okay.  I will --

24                  MR. KURTH:  Your Honor, we had

25      some comments as well on the committee side if

12

1    I may.

2              THE COURT:  You may when I

3    finish.

4              MR. KURTH:  Sorry.  I thought

5    you were --

6              THE COURT:  Don't worry.  I'll

7    get to you.  I promise.

8              MR. KURTH:  Okay.

9              THE COURT:  Okay.  So I will

10   look at it more carefully to make sure that I

11   understand that -- what's not clear to me was

12   that you had qualified the language in a way

13   that ensures that going forward debtor's use

14   of cash -- us of cash is not contingent upon

15   an agreement with Wells Fargo.

16        One question I had, Mr. Brakke was

17   whether there was any other creditor who had

18   an interest in cash collateral.  I assume not

19   because I hadn't heard about it.

20              MR. BRAKKE:  There is an entity

21   by the name of TGC, Your Honor.

22              THE COURT:  Okay.

23              MR. BRAKKE:  Potentially has an

24   interest.  However, TGC has agreed the debtor

25   may use its cash without restrictions, that

1        TGC makes no claim to cash collateral

2        protection.

3                     THE COURT:  Okay.  And no other

4        creditor?

5                     MR. BRAKKE:  Correct.

6                     THE COURT:  That has an

7        interest.  Okay.  All right.

8              So the concerns that were expressed by

9        Wells Fargo a moment ago, those have not yet

10       been included in this language or have not yet

11       been clarified in this language?

12                    MR. BRAKKE:  I think clarified,

13       Your Honor, is the point.

14                    THE COURT:  All right.  Can you

15       direct me to the paragraph where you --

16                    MR. BRAKKE:  I believe the

17       concern would be with paragraph 13 of the

18       revised marked up order, Your Honor.  And it

19       speaks of Wells Fargo terminating its liens

20       and security interest.  I believe

21       Mr. Rothman's point is that Wells Fargo would

22       be entitled to retain its filings but that

23       Wells Fargo would agree that at present it has

24       no -- there are no restrictions on the

25       debtor's use of its cash inventory, et cetera.

14

1          MR. ROTHMAN:  This is Donald

2     Rothman.  That's correct, Your Honor.

3          THE COURT:  So, Mr. Rothman,

4     Wells Fargo wouldn't satisfy its lien until

5     all claim periods have expired?

6          MR. ROTHMAN:  That's correct.

7     For example, we've had cases, Your Honor,

8     where the committee undertakes discovery or

9     whatever it might be and we incur further

10    obligations.  And we would just like to

11    maintain our reimbursement obligation priority

12    with our first priority security interest.

13         THE COURT:  Okay.  Okay.

14    That's very helpful.  All right.  Ms. Kurth.

15         MR. KURTH:  Thank you, Your

16    Honor.  I didn't mean to interrupt.  I thought

17    you were winding down.

18         We had similar concerns, I think,

19    procedurally to the concerns that you had

20    echoed.  And there were some areas where

21    procedurally, in terms of the cash collateral

22    order, we felt that it wasn't entirely clear

23    what was being maintained on a go forward

24    basis that was no longer relevant and that

25    Wells Fargo is exiting.  But substantively, we

1       have no problems with anything that they are

2       discussing or describing.  We just wanted to

3       maintain our ability to review and comment on

4       the specific form of order as its revised and

5       make sure that all of that is clear.

6               Also, to make you aware, we have asked

7       the debtor -- yesterday we had very good

8       conversation with them, although a short one,

9       yesterday with the debtor and we ask that the

10      committee be allowed to receive reporting,

11      either the reporting that Wells Fargo has

12      already received or to the extent that Wells

13      Fargo is receiving reporting, that we receive

14      the same reporting.

15              I understand that they will likely no

16      longer be sending reporting to Wells Fargo,

17      and we had a proposal for the debtor to

18      provide the committee with a streamline form

19      of reporting so we could see their budget to

20      actual performance in real time since the

21      committee, with the exit of Wells Fargo, is

22      really the primary economic party in interest

23      here.

24              We don't have a formal answer back, but

25      I think it would be fair to say they were

1     receptive to that but wanted to see the exact

2     language proposal.  So that is something we

3     would like to see in the cash collateral order

4     as well.

5                    THE COURT:  Okay.  So tell me

6     the creditors committee's -- I mean, I

7     understand that you have an interest in any,

8     you know, excess proceeds.  I completely

9     understand that baseline interest, but its use

10    of cash collateral, so since the creditor's

11    committee doesn't have a lien against cash

12    collateral.  You certainly want and need

13    reporting requirements, but why do I -- why

14    should I include that in a cash collateral

15    order?

16                    MR. KURTH:  Well, it is

17    commonly done, Your Honor, especially in a

18    situation where the bank is receiving ongoing

19    reporting because that's simply --

20                    THE COURT:  Because it has an

21    interest in cash collateral.

22                    MR. KURTH:  Because it has an

23    interest --

24                    THE COURT:  -- has a lien

25    against it.

1              MR. KURTH:  Exactly.  And so

2    the committee will typically request that it

3    receive the same reporting as a way for it to

4    stay up to date and current with respect to

5    the case.  And it's a lot cheaper, a lot more

6    efficient than going through 2004 examinations

7    and taking more adversarial posture.

8              So while it's not our cash collateral

9    order, that is routinely granted in connection

10   with these types of orders.

11             It's a little more unusual because

12   Wells Fargo is exiting and so may not be

13   receiving reporting, but we wanted some

14   assurance that the debtor would receive

15   similar, although curtailed, real-time

16   reporting as far as how this liquidation is

17   going.  It's something that is expedient.

18   It's a lot cheaper and a lot more efficient

19   than going through 2004 processes and taking

20   up a litigation posture.  My understanding was

21   that the debtor was amenable to something like

22   that.

23             THE COURT:  I agree that it is

24   helpful and convenient.  I'm not surprised

25   that it's included in other court's orders.

1              My question to you is why should I

2      include it?  If the debtor is willing to

3      provide it in the context of the case and it's

4      necessary, absolutely necessary that the

5      creditors committee be advised, I'm trying to

6      understand the authority.  It's a learning

7      experience for me as well as an interest in

8      understanding the scope of an order.

9                      MR. KURTH:  Right.

10                     THE COURT:  So I will ensure

11     that the debtor reports.  I'm trying to

12     understand the authority for me ordering the

13     reporting in the context of a cash collateral

14     order.

15                     MR. KURTH:  Well, I guess it

16     generally comes in as a form of stipulated

17     agreement between the bank and the debtor and

18     the committee and that's -- that's how it's

19     placed here.  I can't say that I've ever had

20     this question raised before but I understand

21     your point as a matter of legal authority.  I

22     guess our other alternative, as I said, would

23     be to file a 2004 motion and deal with it that

24     way.  The debtor was amenable, so -- but we

25     can.

1              THE COURT:  And if the debtor

2      is amenable, I'm relieved to hear it.  So I'll

3      turn to Mr. Brakke.

4              Are you going to continue to provide

5      the creditors committee the same type of

6      reporting that you've provided to Wells Fargo?

7              MR. BRAKKE:  The reports that

8      were provided to Wells Fargo, Your Honor, were

9      special reports not kept in the ordinary

10     course of business.  And, frankly, it was

11     expensive to provide those reports.  Since

12     cash collateral use is no longer an issue, we

13     have no further reporting obligations to Wells

14     Fargo and so we see no point to incurring that

15     expense.

16             We did receive an email from counsel

17     for the unsecured creditors committee, more

18     exactly the financial account that they may be

19     retaining, asking for some, I would say,

20     relatively modest financial reports.  We think

21     that we can accommodate those requests without

22     undue expense to the estate, Your Honor, and

23     we're happy to consider those requests.

24             But as a practical matter, Your Honor,

25     this is a cash collateral motion.  What the

1     unsecured creditors are requesting has no

2     relationship to a cash collateral motion.

3     There is no authority in the court to grant

4     the requested relief sought by the unsecured

5     creditors committee, and if they want reports

6     that they don't think are being provided, they

7     can certainly file the appropriate motion with

8     the court when and if that ever becomes an

9     issue.

10                    THE COURT:  Well, I hope it

11     doesn't become an issue.  I hope there is

12     information flowing back and forth.  But

13     Mr. Brakke is right.  I --

14                    MR. KURTH:  Okay.

15                    THE COURT:  You know, this

16     context of cash collateral order is really not

17     the place.

18                    MR. KURTH:  That's fine.  We

19     will proceed by way of 2004 motion.

20                    THE COURT:  I think what you

21     should proceed is the way you have been

22     proceeding which is asking the debtors for the

23     information and that -- I anticipate they will

24     happily provide is what I --

25                    MR. KURTH:  I hope they do.  I

1        sincerely hope they do, Your Honor.

2                    THE COURT:  -- anticipate.  If

3        they don't, then by all means, I will promptly

4        review any requests for reporting.

5             I assume that all reporting that goes

6        to the United States Trustee is either

7        docketed or shared with the creditors

8        committee.

9                    MR. BRAKKE:  Yes, Your Honor.

10                   THE COURT:  All right.  So if

11       there is additional information that you need

12       that you cannot achieve by general requests,

13       then by all means, I would expect to see a

14       2004 motion.

15                   MR. KURTH:  Thank you, Your

16       Honor.

17                   THE COURT:  All right.  What

18       else in the cash collateral proposed order and

19       the subsequent conversation that you've heard

20       between Wells Fargo and the debtor to tweak it

21       raises concerns on behalf of the creditors

22       committee, Ms. Kurth?

23                   MR. KURTH:  I believe really

24       our comments reflect the comments that you

25       made on the bench earlier with regard to

1        redundant.  We had the same concerns.

2                    THE COURT:  Okay.  All right.

3        Are there any other objections by any other

4        party to the entry of a final order on use of

5        cash collateral substantially in the form

6        proposed and filed as a notice at docket 158

7        with some tweaks as to the sum of money that

8        will be held in escrow and perhaps a tweak to

9        language to ensure that Wells Fargo's entitled

10       to retain its liens until the claim period

11       expires?  Anybody else object to that?

12                   MR. FOX:  Your Honor, a comment

13       that may or may not be an objection, and I --

14       once again, I represent Anfield which is an

15       unsecured creditor which provided goods

16       prepetition.  It has sent a letter to the

17       debtor as well as filed a notice of perfection

18       with the court and so it may have a

19       reclamation claim.

20            Reclamation claims relate back in time

21       to the date of filing, as I understand the

22       law.  And it may be that my client, Anfield

23       Apparel, has a secured claim.  I'm not at this

24       point asking for adequate protection because

25       I'm not sure of the amount, if any, that my

1      client may have in terms of a reclamation

2      claim, and I'm not sure if other creditors

3      have filed notices of perfection or have given

4      alternative notice of a reclamation claim to

5      the debtor or to the debtor's counsel, but I

6      would suggest that perhaps the order should

7      include a provision essentially stating that

8      certain parties have or may have asserted

9      reclamation claims and that all rights of such

10     parties to assert reclamation, to assert a

11     lien based on reclamation rights, to demand

12     segregation of goods, to demand an accounting,

13     perhaps demand segregation of monies that are

14     proceeds of reclaimed goods that were perhaps

15     improperly or hastily sold are preserved.

16             So I'm not asking that any new rights

17     be created but that such an order preserve any

18     rights which may exist.  And Your Honor's

19     response to me, maybe this is a cash

20     collateral order.

21                  THE COURT:  Yes.

22                  MR. FOX:  And perhaps it

23     doesn't fit.  And it may not fit.  But I think

24     that I should at least say something now

25     because I'm going to have a similar objection

1  down the road of some of the other matters,

2  and so I at least want to state my objection

3  on the record.  And it may be an inappropriate

4  place, this language in the cash collateral

5  order, or it may not.  I simply raise the

6  issue.

7      THE COURT:  Okay.  Would you

8  agree with me that a hypothetical reclamation

9  claim would not have priority over, say, Wells

10  Fargo as to cash collateral?

11      MR. FOX:  I would agree

12  100 percent, and that's why my client makes no

13  comment about the order insofar as it concerns

14  Wells Fargo.  My client does not have an issue

15  there.  Wells Fargo is in first place.

16      THE COURT:  So you're saying

17  that because you might have a reclamation

18  claim against cash at some point, that it

19  should be included in the cash collateral

20  order?

21      MR. FOX:  That the fact that

22  such claims not only by my client but other

23  vendors may exist, whatever those rights are,

24  they're preserved despite, you know, any other

25  language in the order.

1          THE COURT:  Well, it sounds

2     like a -- I'm not seeing it in this order.

3     It's perhaps appropriate in another context,

4     claim of some sort, but it sounds a lot to me

5     like a comfort order, and one that is possibly

6     unnecessary.  So I -- that gives me pause.

7          MR. FOX:  I understand, Your

8     Honor.

9          THE COURT:  But if the debtors

10    would like to include such language.

11          MR. FOX:  Your Honor, I

12    understand why the debtors would not wish to

13    include such language.  I acknowledge that

14    there is a comfort, a macaroni and cheese

15    feel, to what I said.

16          THE COURT:  Right.  Uh-huh.

17          MR. FOX:  Although, at age 59,

18    macaroni and cheese is a less --

19          THE COURT:  Less comforting.

20          MR. FOX:  Less of a comfort

21    food for me.

22          It's a reservation of rights provision.

23    Maybe that's what takes it out of the comfort,

24    the macaroni and cheese zone and just says to

25    the extent that these rights exist, no one is

| | |
|---|---|
| 1 | intending to trample over these rights. |
| 2 | THE COURT:  If there were |
| 3 | language in the proposed order that suggests |
| 4 | that I was trampling on those rights, I would |
| 5 | adjust that language. |
| 6 | Can you point me to any sentence or |
| 7 | paragraph that would suggest that those rights |
| 8 | are being affected? |
| 9 | MR. FOX:  Your Honor, I was on |
| 10 | an airplane all day yesterday coming up here |
| 11 | and I saw the orders.  I had note in my office |
| 12 | to download and to email me the orders.  I |
| 13 | haven't seen the orders, at least the ones |
| 14 | that were downloaded yesterday.  So no, I |
| 15 | cannot. |
| 16 | THE COURT:  Okay.  Well, I |
| 17 | don't remember one.  I will keep your |
| 18 | objection in mind as I carefully review the |
| 19 | proposal that the debtors have provided.  If I |
| 20 | run across language that might suggest that |
| 21 | reclamation claims or interests are being |
| 22 | affected by the language, I will most |
| 23 | certainly keep your objection in mind. |
| 24 | MR. FOX:  Thank you, Your |
| 25 | Honor. |

1           THE COURT:  But I don't plan on

2      adding any language if there isn't any

3      suggestion that the order might affect them.

4                MR. FOX:  Thank you, Your

5      Honor.

6                THE COURT:  Okay.  Any other

7      questions, concerns, or suggestions?  All

8      right.

9           Then the Court will grant the motion

10      for use of cash collateral and enter an order

11      substantially in the form that was proposed by

12      debtors and filed as a notice with some of the

13      suggestions -- suggested changes that I noted

14      on the record, keeping in mind the rights of

15      reclamation claims.  Okay.

16           So then the next issue I will bring is

17      the requested final order authorizing the

18      debtor to assume the consulting agreement,

19      authorizing and approving the conduct of the

20      store closing sales, and to ensure that such

21      sales are free and clear of all liens.  Okay.

22           So I think I will begin with Ms. Kurth

23      first.  But before I ask her to speak about

24      the objection, I would like to ask Mr. Brakke

25      one question.

28

1             In the context of the first stay

2     motions, several of the other motions were

3     affected by the order granting interim use of

4     cash collateral.  The cash collateral order

5     was based in part on a budget.  And if you'll

6     remember, Mr. Brakke, I referred the parties

7     back to the budget a number of times,

8     particularly where it appeared as though the

9     limits of spending exceeded the budget in the

10    context of other orders.

11            One of the concerns raised by the

12    creditors committee is that there's no budget

13    for liquidation.  Was the budget proposed for

14    use of cash collateral proposed as a

15    liquidation budget?  I mean, is this the

16    budget that you were considering when, in the

17    declaration, Ms. Machenbacher testified that

18    they were exceeding expectations for income,

19    dramatically I might add, but that they were

20    spending less than the budgeted sums?

21            And my question to you is, when you

22    refer to the budget, is it document 23, the

23    cash collateral budget that you were referring

24    to?

25                   MR. BRAKKE:  Yes, Your Honor.

29

1          THE COURT:  Okay.

2          MR. BRAKKE:  And, your Honor, I

3    do believe the unsecured creditors committee

4    has withdrawn its objection to that motion.

5          MR. KURTH:  That is correct.

6          THE COURT:  Oh.  Withdrawn the

7    objection to the consulting agreement?

8          MR. KURTH:  Yes, ma'am.  Yes.

9    We had projected -- right after we filed it

10   the debtor reached out and we were able to set

11   a very quick call yesterday about 1:00 with

12   the CFO and our financial advisor.  It was a

13   short call, about 30 minutes, but extremely

14   helpful.  And they did explain to us how

15   Tiger's effort interfaced with the budget.

16        We had concerns particularly about the

17   20 stores being liquidated in April and the

18   associated budget expense, and the CFO walked

19   us through that.  There were a lot of accrual

20   items in that April budget that were incurred

21   in May.  So we were especially concerned.  We

22   didn't want to see, you know, millions of

23   dollars spent to liquidate 20 stores.  But

24   once we had the detail and a better

25   explanation of the line items and how the

1     accruals worked, concluded that, yes, this

2     makes a lot of sense and we went ahead and

3     withdrew our objection yesterday afternoon.

4                    THE COURT:  My mistake.  All

5     right.  I did not see it this morning.  Okay.

6                    MR. KURTH:  Could possibly have

7     been after hours.  I'm not sure but --

8                    THE COURT:  Well, I was

9     reviewing the docket at 8:00 and 9:00 last

10    night just to make sure I didn't miss

11    anything, so it was entirely my mistake.  So

12    okay.  All right.  Well, delighted to hear it.

13         Are there any other -- so you don't

14    have any objections?  Not just to the budget

15    concerns --

16                    MR. KURTH:  No.  We have no

17    objections.  We're very comfortable with Tiger

18    proceeding as they have proposed.

19                    THE COURT: All right.  Are

20    there any other objections, suggestions,

21    questions relating to the entry of a final

22    order authorizing the debtor to assume

23    consulting agreement and authorizing and

24    approving the store closing sales?

25                    MR. FOX:  Yes, Your Honor.

1      Steven Fox for Anfield.  I will keep my

2      comments very brief because they will be

3      similar to my comments relating to cash

4      collateral.

5            I just wanted to point out, at least

6      from the motion, it does not appear to be any

7      provision to segregating goods that have been

8      made subject of a reclamation claim.  There's

9      no provision to account for such goods.  No

10     provision to segregate funds from any -- based

11     upon any such reclamation claim.

12           And with respect to the free and clear

13     nature of the sale under 363(f), there should

14     be some protection for reclamation claims,

15     hypothetical, de minimus, small, or large

16     preserving their rights.

17           Other than that, my client has no

18     objection and thinks that the motion is well

19     taken.  There should be -- the sale should go

20     forward just with a preservation of rights.

21                  THE COURT:  Okay.  Explain to

22     me exactly your client's interest in

23     disposition of the goods.

24                  MR. FOX:  Sure.  Your Honor, to

25     the extent any part of my client's claim is

1    based upon reclamation, my client has made a

2    claim by letter and by filing with the court a

3    notice of perfection.  The impact of those two

4    items is that my client asserts a lien on

5    goods.

6         The debtor has an obligation to

7    segregate such goods, although typically

8    debtors don't.  They do have some obligation

9    to segregate into account.  And as a result,

10   the debtor has an obligation when it's doing a

11   going-out-of-business sale to, at a minimum,

12   account for those goods and if they have been

13   sold, to segregate the monies.  If they

14   haven't been sold, to segregate the goods or

15   to at least reach an agreement with the

16   reclaiming creditor as to what can be done.

17   For example, sale of those goods and on what

18   conditions.

19         Your Honor, again, this is a

20   preservation of rights request.

21              THE COURT:  So your clients do

22   not yet have a reclamation claim or they have

23   some claims that have been addressed or

24   haven't been addressed or they just might have

25   claims?

1           MR. FOX:  My clients provided

2     goods in the 45-day period prepetition.

3           THE COURT:  Uh-huh.

4           MR. FOX:  And filed a notice of

5     perfection.  I'm planning to have a

6     conversation with debtor's counsel after the

7     hearing, which is one of the reasons I came up

8     today, face-to-face meetings are always

9     better.

10          THE COURT:  Uh-huh.

11          MR. FOX:  So I can put into

12    place with the debtor a mechanism to figure

13    out what products may have been present on the

14    date of the petition filing and also the date

15    that the demands for reclamation were made.

16         But until then, it's not clear to me

17    that my client has a reclamation claim or does

18    not.  I suspect it does but I can't say that

19    with certainty one way or the other.

20          THE COURT:  Okay.  So,

21    Mr. Brakke, it was apparent to me after

22    reading some of the pleadings in this case

23    that some of the goods that were added to the

24    Vanity sales were tagged with special price

25    tags that would allow those parties providing

34

1      inventory to understand and be able to

2      separately segregate what funds should go to

3      the management company, the consulting company

4      that was adding goods, additional goods to the

5      sales.

6           So I know that there's a way to

7      separately segregate but it's not clear to me

8      that Vanity would have -- or my question to

9      you is, does Vanity even have the capacity to

10     separately segregate goods from suppliers who

11     have asserted a lien against goods or made

12     such a claim because they provided goods

13     within 45 days of the petition?

14                MR. BRAKKE:  The short answer

15     is no, Your Honor.  If I may expand on that?

16                THE COURT:  Please.

17                MR. BRAKKE:  To the extent the

18     goods are, so to speak, in the warehouse, Your

19     Honor, and essentially are still in the

20     original shipping cartons, it is possible to

21     identify goods subject to a reclamation claim.

22          We believe, Your Honor, that with one

23     exception, which is a shipment of sunglasses

24     with a value of approximately $3,000, all of

25     the other goods on which we've received

1    reclamation claims have been shipped out of

2    the warehouse long before the case was started

3    and are, in all probability, were sold before

4    the case was started.  It is simply impossible

5    to trace.

6            And with respect to a reclamation

7    claim, Your Honor, it's my understanding from

8    the case law that the courts have held that,

9    number one, the Bankruptcy Code does not

10   create a reclamation claim independent of the

11   Uniform Commercial Code.  And that where

12   you're dealing with Uniform Commercial Codes,

13   this is not a security interest and there is

14   no claim to proceeds.

15           The only claim to proceeds, and it

16   really isn't even analogous, is the right of a

17   reclamation claimant to have administered a

18   claim, which is provided for in the Bankruptcy

19   Code.

20           But again, that's not to proceeds, Your

21   Honor.  It simply gives a particular priority

22   as to distribution.

23           And when we speak of perfection of a

24   reclamation claim, Your Honor, I believe the

25   case law is also very clear that simply filing

1       a notice of reclamation claim does not perfect

2       the reclamation claim.  And there are a

3       variety of additional steps the reclamation

4       claimant must take to have a reclamation claim

5       determined.  None of the reclamation claimants

6       have done what is required in this situation.

7                   THE COURT:  To secure an

8       administrative claim?

9                   MR. BRAKKE:  Again, Your Honor,

10      that is a separate matter and that depends on

11      simply the timing of the shipment of goods and

12      they will be able to file an administrative

13      claim.  What I'm talking about, and I'm sorry

14      if I didn't make myself clear, is the actual

15      reclamation claim as to the specific goods.

16                  THE COURT:  Okay.

17                  MR. BRAKKE:  The administrative

18      claim and the reclamation claim are entirely

19      separate.  They deal with the same concept.

20      But again, one is priority in distribution.

21      The other one is saying you get your goods

22      back.  That is the reclamation claim.

23            And if I may, Your Honor.

24                  THE COURT:  Yeah, please.

25                  MR. BRAKKE:  The free and clear

1          language in the draft order simply ensures

2          that customers receive goods they are

3          purchasing free and clear.  I don't think

4          there's any language in the store closing

5          order, Your Honor, that tramples on the rights

6          of reclamation claimants to the extent they

7          have rights.  They simply need to take the

8          steps that are outlined in the case law to

9          pursue those claims.  And at present all we

10         have are potential reclamation claims that the

11         Court has not been provided with any facts to

12         analyze.

13                    THE COURT:  What does the

14         debtor plan to do -- what is the plan with

15         regard to disposition of the final inventory

16         that's not sold, if any?

17                    MR. BRAKKE:  There are various

18         sources of, Your Honor, that are essentially

19         bulk purchasers of non-saleable inventory.

20         And my understanding, Your Honor, that's the

21         course of action the debtor would pursue when

22         we're at the very end of the liquidation

23         process.

24                    THE COURT:  So actually

25         returning merchandise, once it's been shipped

1           from the crates at the original point of

2           reception of the goods that were received,

3           once it was shipped out to various stores,

4           there's virtually no way to return the goods

5           to the suppliers that provided them?

6                       MR. BRAKKE:  There's no way to

7           return them and there's also really no way to

8           trace them to a particular shipment that might

9           be subject of a reclamation claim.

10                      THE COURT:  Okay.  So the

11          remedy would be --

12                      MR. BRAKKE:  An administrative

13          expense claim, which I would think would have

14          far more value than inventory with Vanity

15          labels that the manufacturers really can't

16          make any use of if they recover it.

17               But, again, that's not in the record,

18          Your Honor.  Just a comment.

19                      THE COURT:  So, Mr. Fox, the

20          language of the consulting agreement, I know

21          you only got a chance to look at it on your

22          cell phone, but is there some language in this

23          proposed order that was filed as 162 on the

24          docket that suggests that it would affect any

25          of your client's rights to file a claim and

1    seek administrative priority or to file a

2    claim and pursue it?

3                    MR. FOX:  Your Honor, again, I

4    have not seen the order because it was

5    uploaded -- the notice was filed when I was

6    traveling.

7        At this point I just raise this and

8    I'll leave it to the Court to do what the

9    Court deems appropriate.

10                   THE COURT:  Okay.  My plan

11   would be to carefully review the language as I

12   did the cash collateral order, and if there's

13   any language suggesting that it may affect the

14   rights of reclamation claimants, that I would

15   adjust the language or include language

16   preserving your rights.  But barring that, my

17   plan would be to enter an order substantially

18   in the form proposed essentially authorizing

19   the debtor to assume -- the final order

20   authorizing the debtor to assume consulting

21   agreement and authorizing the store closing

22   sales.

23                   MR. FOX:  I understand, Your

24   Honor.

25                   THE COURT:  Okay.  Before I

40

1    move on, was there any other questions,

2    concerns, suggestions?

3         Okay.  Then it will be my plan to enter

4    an order granting the motion.  All right.

5         Next we have request for a final order

6    authorizing the debtor to pay and honor

7    certain prepetition wages, benefits, and other

8    compensation obligations, to honor a

9    management services agreement and pay related

10   prepetition obligations, and to authorize

11   banks to honor checks.  All right.

12        The last time I reviewed the case it

13   appeared as though the creditors committee had

14   an objection.  Is that objection still --

15             MR. KURTH:  Yes.  We do still

16   have -- we have more answers than we did

17   yesterday, but we still have an objection and

18   some concerns.

19             THE COURT:  Okay.  Then I think

20   I will let you lead the discussion and allow

21   you to tell me, Ms. Kurth, what the creditors

22   committee is still objecting to and what it is

23   not objecting to.

24             MR. KURTH:  Okay.  Thank you,

25   Your Honor.

41

1          First, to be very clear, we have no

2     objection to the payment of the prepetition

3     wages and benefits to the employees of the

4     debtor, which was already approved on an

5     interim basis, and we have no issue with that

6     being approved on a final basis.

7          Our concerns with respect to the motion

8     really have to do with this contract that they

9     have with Vanity, Inc., which has common

10    ownership with the debtor.  And my experience

11    sometimes is those relationships are fine, but

12    they also open a door for a lot of mischief.

13    So we're very concerned in getting that, you

14    know, a level of due diligence in our

15    discussions with the debtor.

16         There are some aspects of it that we do

17    understand.  The headquarters employees and

18    staffing is being provided by virtue of this

19    agreement with Vanity, Inc.  So we understand

20    that those employees need to be supported and

21    deserve a fair wage.

22         At the same time, our concern is there

23    is $1.2 million, as we now understand it, of

24    the $7 million operating budget reflects

25    payments under this Vanity, Inc. contract,

1       which is about 15 percent of the case

2       administration going forward.  So it's not a

3       small number at issue.

4            This includes passthrough payments for

5       employees.  It also includes rent, utilities,

6       bank charges, credit card payments.  We

7       understand that it does not include a

8       profit -- don't want to say profit share --

9       but basically a bonus component that was

10      figured by profits because there were no

11      profits.  But it does include this other

12      passthrough cost.  And one of them with

13      respect to rent, when we inquired yesterday,

14      we learned that the property that they're

15      operating is owned by -- the owners are at

16      least an entity with a substantially similar

17      ownership to Vanity, Inc.  So these are all

18      insiders and insider affiliates.

19           We have a representation -- I mean, and

20      this was a five-minute phone conversation.

21      But we do have a representation that the CFO

22      believes it's (inaudible).  We haven't been

23      able to verify that.

24           So we do continue to have some

25      questions with respect to how this contract

43

1       works.  Some of the things that we want to be

2       sure of is we want to be able to explore any

3       possible fraudulent transfer inquiries that we

4       might have if this -- if these arrangements

5       are not at market, if they include costs that

6       are not passthrough costs for market wages for

7       basically staff-level employees that rent and

8       other components that might be benefiting

9       insiders.  We feel that we need an ability to

10      scrutinize that.

11          So we certainly want to be, clear even

12      with respect to the 315 that was already

13      approved on an interim basis that money has

14      been paid, if some of those payments would

15      otherwise be a fraudulent transfer, we'd want

16      to preserve our rights.

17          And I would ask, if Your Honor is

18      amenable, that we continue this aspect of the

19      motion perhaps another week so that we can do

20      a little more due diligence with respect to

21      some of the nonemployee payments in

22      particular, ensure that that rent is

23      verifiably market rent.  For example, an

24      unnecessary payment needs to be made so we

25      have a full understanding of the insider

44

1      transactions here.  And in a week we may have

2      some sufficient answers and, as with Tiger,

3      feel fully comfortable or we may be able to

4      come to you and say, hey, we don't think this

5      is market or we have this specific concern.

6            But we did start the discussion

7      yesterday which was productive but we were

8      focused on Tiger, so it was -- it was a

9      five-minute conversation.

10           THE COURT:  Mr. Brakke, does

11     the debtor have any objection to continuing?

12           MR. BRAKKE:  We do, Your Honor.

13     The issue is that Vanity, Inc. is essentially

14     the brain while Vanity Shops are the legs and

15     arms.  Vanity, Inc. provides essentially the

16     entire management structure of the debtor,

17     anything above regional managers, so its

18     functioning is critical.  The employees of

19     Vanity, Inc., all know that their jobs are

20     limited duration.  They will probably be out

21     of jobs by the end of next month.

22           To delay, Your Honor, to make it

23     uncertain as to whether they will continue to

24     receive paychecks would simply be disastrous

25     to our ability to retain those employees.  And

1        we are able to provide testimony on that issue

2        today, Your Honor, if there is any doubt of

3        what I'm saying.

4              If the only issue, Your Honor, is

5        whether any conveyances made pursuant to this

6        motion might be fraudulent transfers, there is

7        nothing in the draft order, Your Honor, that

8        would alter the committee's rights to pursue

9        such simply baseless claims, Your Honor, and

10       increase administrative expenses in this case.

11             So the committee's sole concern, Your

12       Honor, is not impaired by this draft order.

13       But to continue the matter, Your Honor, would

14       simply impair the ability of Vanity to

15       continue.  As the court's indicated, we are

16       producing revenues far above expectations,

17       even the expectations of the expert

18       liquidation consultant, Tiger.  And we are

19       keeping expenses below budget.

20             The quickest way to destroy that

21       admirable track record is to create risk in

22       the minds of the employees of Vanity, Inc.,

23       and that's exactly what this suggestion does.

24                   THE COURT:  So, Ms. Kurth, it

25       seems to me that there were -- some of the

1      expenses that were paid that gave you pause,

2      that gave creditors committee pause, and that

3      there are some expenses that do not.  And as

4      it pertains to the payment of the

5      administrative employees, it didn't appear to

6      me, or maybe you will have to rearticulate for

7      my benefit, but it didn't appear to me that

8      you really had any concerns about the type of

9      work that was performed by Vanity, Inc., but

10     rather, that it was paying expenses through

11     rent to people who were likely insiders.  And

12     you haven't had a chance yet to find out

13     whether those payments were, you know, market.

14                   MR. KURTH:  That is generally

15     correct.  We don't have -- we don't have

16     complete answers as to who is being paid under

17     the agreement.  There was a representation in

18     the motion that nothing would be paid in

19     excess of a priority cap.  And I'm trying to

20     recall if there was a representation that

21     insiders would be paid or not paid.  But we're

22     not clear if there are insiders, that there

23     are owners who are receiving payments in any

24     kind under this agreement.

25                   So I would say payments to insiders who

| | |
|---|---|
| 1 | might also be providing services might be |
| 2 | fine, but we don't have a visibility here that |
| 3 | would allow us to understand what they're |
| 4 | being paid.  And it's really the non-wage |
| 5 | items.  We have no concerns with, you know, |
| 6 | payroll and salary going out to the rank and |
| 7 | file employees who are providing those |
| 8 | day-to-day services. |
| 9 | THE COURT:  I don't remember |
| 10 | from the motion, were insiders paid or |
| 11 | specifically excluded in either the motion or |
| 12 | the -- |
| 13 | MR. BRAKKE:  Well, to the |
| 14 | extent we have insiders in the category of |
| 15 | (inaudible), Your Honor, such as |
| 16 | Ms. Machenbacher, yes.  Officers are being |
| 17 | paid.  And, of course, Ms. Machenbacher is the |
| 18 | chief financial officer.  And if we're talking |
| 19 | about the brain of the operation, that is the |
| 20 | top of the brain. |
| 21 | THE COURT:  So she's being paid |
| 22 | a salary? |
| 23 | MR. BRAKKE:  Right. |
| 24 | THE COURT:  But not bonuses or |
| 25 | incentives that were specifically excluded? |

48

1          MR. BRAKKE:  Correct.

2          MR. KURTH:  And I believe, if

3    we're correct, she's not an owner.  She's an

4    officer.

5          MR. BRAKKE:  Correct.  But

6    she's still an insider.

7          MR. KURTH:  Correct.

8          MR. BRAKKE:  Under the code

9    definition.

10          MR. KURTH:  Our concern is not

11    with Ms. Machenbacher.  Our concern is with

12    any owners.

13          THE COURT:  Are shareholders

14    being paid?

15          MR. BRAKKE:  No.

16          THE COURT:  Okay.  Would debtor

17    have an objection to me including a paragraph

18    that says shareholders shall not be paid under

19    this order?

20          MR. BRAKKE:  No.

21          THE COURT:  Shareholders of

22    Vanity Shop of Grand Forks, Inc., and any

23    related entity.

24          MR. BRAKKE:  Yes.  That would

25    be acceptable, Your Honor.  And, Your Honor,

MARCH 23, 2017

49

1          we're talking about wages and salary.

2                    THE COURT:  Yeah.  I'm just

3          saying shall not be paid under this order,

4          which is limited to wages, benefits, and other

5          compensation obligations.

6                    MR. BRAKKE:  Although, assuming

7          the management contract also involves

8          compensating Vanity, Inc. for rental of the

9          premises that house the Vanity, Inc. employees

10         that are providing all these services to

11         Vanity Shop, the debtor, Your Honor, that, I

12         think, was the real concern of the unsecured

13         creditors committee as to whether that rent

14         was at market rates, Your Honor.

15                   THE COURT:  Is that the only

16         expense we're talking about here?

17                   MR. BRAKKE:  It's

18         administrative overhead, Your Honor.  Again,

19         rent, utilities, all those things.  There is

20         no profit being assessed.  We can provide

21         testimony today, Your Honor, as to the fact

22         there's no profit, the fact that all these

23         other expenses are at market rates.

24             But again, if the sole concern is a

25         fraudulent conveyance, there is nothing in

1     this proposed order that would preclude the

2     right of the unsecured creditors committee to

3     make such an assertion at a later date.

4                THE COURT:  Ms. Kurth, can you

5     think of anything other than rent that gives

6     you pause?  Rent to the shareholders?

7                MR. KURTH:  Right.  My

8     understanding is the rent, utilities, bank

9     charge -- bank charges, credit cards and there

10    may be other items.  It was not -- it was not

11    a complete list.  Those were some examples

12    that the CFO provided us yesterday.  So if

13    there are other items, we haven't had time and

14    gotten a full answer from the CFO.  There

15    could be other items being charged through as

16    expenses.  But that would be our concern are

17    passthrough expenses.

18                MR. BRAKKE:  If I may, Your

19    Honor.

20                THE COURT:  Yes.

21                MR. BRAKKE:  I can't understand

22    the concern about utilities.  The utility

23    company is not an insider.  Utilities are

24    being billed at actual.  There is no markup.

25    There is no possibility of abuse.  There is no

1     possibility of a fraudulent conveyance.

2     Credit cards are for travel expenses for these

3     employees that everybody acknowledges are

4     necessary to the functioning of the debtor.

5          If rent is the issue, let's be clear

6     that rent is the issue.  And we can either

7     have an evidentiary hearing today or if we

8     need to delay it by a week, we can delay it by

9     a week.  But these other expenses are rather

10    fundamental, Your Honor, are owed to third

11    parties.

12                    THE COURT:  Well, Ms. Kurth did

13    not have the benefit of attending the first

14    hearing where I heard from Ms. Machenbacher

15    about this management agreement because it

16    gave me pause as well.

17         So my question -- my decision here,

18    what I'm debating is whether to grant partial

19    relief today and hold over the issue of

20    expenses paid to shareholders arising from

21    rent of the facility and credit cards, if

22    that's what it is, to allow the parties an

23    opportunity to exchange information or whether

24    to have that information produced right now,

25    recognizing that counsel really hasn't had an

1	opportunity to review it.

2	So I could easily schedule something

3	for a week from now, but I don't anticipate

4	that you will be here, Ms. Kurth, will you?

5	MR. KURTH:  I can be available

6	by phone.  I don't anticipate coming.

7	If I may, Your Honor, our CFO -- or

8	financial advisor, Chris Thomas, with

9	Alliance, he's up here in Minnesota, and he

10	had a very good conversation, about a

11	half-hour conversation with the CFO yesterday.

12	And the focus was Tiger because that was the

13	most pressing priority, and we have limited

14	time.  But she was very helpful in answering

15	questions and concerns.  And I do believe, I'm

16	optimistic that if we had a week continuance

17	and they could have a similar call to really

18	focus on this agreement, hopefully that will

19	address our concerns or at least we can narrow

20	them and identify precisely if there is

21	something that remains a concern.

22	THE COURT:  All right.  It's

23	only because the creditors committee's counsel

24	has just arrived that I'm going to agree to

25	this.

53

1      I am going to enter an order granting

2      all the relief that has been requested except

3      for any payments made to insiders or

4      shareholders -- not insiders -- to

5      shareholders arising from anything from

6      expenses reimbursed to rent.  Any other rent?

7      What else should be accepted?  Ms. Kurth?

8      Credit card payments to insiders?

9                  MR. KURTH:  I think payments to

10     insiders whether it -- you know, I don't know

11     if any of them are providing management or

12     employee services are receiving compensation.

13     We're not clear.  We have a representation

14     that they're not.  But we'd like to have a

15     more robust answer to see if they have rent

16     expenses as the primary thrust.

17                  THE COURT:  Okay.  So it's

18     basically any payments at all to shareholders

19     arising from expenses or rent or any

20     similar --

21                  MR. KURTH:  Right.  To

22     shareholders or affiliates.  You know, we know

23     about the property.  I don't know if there are

24     other affiliated entities that are receiving

25     other payments, you know, the credit cards.  I

1      don't know if that's to an affiliate, for

2      example.  We need to ask.

3                    THE COURT:  Okay.

4                    MR. BRAKKE:  Your Honor, one

5      point of qualification.  Of course, there have

6      already been payments made pursuant to the

7      interim order.

8                    THE COURT:  Right.

9                    MR. BRAKKE:  Presume those will

10     not be subject to challenge and this would be

11     an order simply going forward?

12                   THE COURT:  It would be an

13     order going forward except to the extent that

14     naturally the creditors committee could pursue

15     a fraudulent transfer claim for those payments

16     that were made if there were sufficient

17     evidence to do so.

18                   MR. BRAKKE:  Understood.

19                   THE COURT:  Okay.  Yes, the

20     answer to that question is going forward.

21          Are there any other objections,

22     questions, concerns at all relating to an

23     entry of final order authorizing the debtor to

24     pay and honor certain prepetition wages,

25     benefits, and compensation obligations and

55

1      honor a management services agreement other

2      than those that I have heard from the

3      creditors committee and plan to separately

4      qualify?

5                      MR. FOX:  Your Honor is looking

6      at me, so I'll simply answer -- I'll simply

7      mention that the CFO is more than the brain.

8      The CFO is the most important person.  Perhaps

9      her salary can be doubled and she could have

10     all the macaroni and cheese she would like.  I

11     mean that in jest.  CFOs are very important.

12                     THE COURT:  Are you suggesting

13     that she has to be included in the group that

14     may not be reimbursed within this next week?

15                     MR. FOX:  Not at all.  She

16     should be reimbursed.

17                     THE COURT:  Okay.

18                     MR. FOX:  I was speaking in

19     jest.  But the CFO is so important.  So

20     important.

21                     THE COURT:  Okay.  I do enjoy a

22     sense of humor but I'm also trying to figure

23     out my order.  So thank you.  Okay.  All

24     right.

25          So not hearing any other objections to

1          the granting of the final order, I will enter

2          a final order essentially granting all the

3          relief requested except for payments to

4          shareholders, Vanity -- shareholders or

5          affiliates of the debtor may not be paid for

6          any reason, including expenses, bank charges,

7          reimbursement of expenses during this interim

8          period.

9               And I will schedule a telephone hearing

10         for a week from today I hope.  That would be

11         the 30th.  Okay.  Maybe -- can you do Friday?

12         Okay.  The 30th of March is already a very

13         full day on my calendar, so I'll schedule a

14         telephone hearing for the morning of the 31st.

15              Ms. Kurth, the way it works in this

16         court is if you anticipate that you will be

17         asserting an objection, I will hear evidence

18         on that date.  So you will have to appear or

19         have someone appear on your behalf either in

20         person or by video conference.

21              And the video conferencing is not

22         difficult to arrange.  We are very willing to

23         accommodate lots of different forms of

24         technology.  You just have to make plans to do

25         so in advance.

1        MR. KURTH:  I prefer nice

2    things about the video conferencing here, Your

3    Honor.  Thank you.

4        THE COURT:  And I'm happy to

5    accommodate it to save the parties expenses.

6        MR. KURTH:  And do you want to

7    treat this as a hold date?  In other words, if

8    we're able to resolve our concerns before then

9    and submit a stipulated form of order to Your

10    Honor and --

11        THE COURT:  That would be

12    wonderful.

13        MR. KURTH:  Okay.

14        THE COURT:  Yep.  That would be

15    better.  And then as soon as it's resolved, I

16    will enter a final order.  I could essentially

17    revise the order that will be filed today or

18    enter a new one, whatever you think would be

19    clearer to those people who have to read this

20    very lengthy docket.

21        MR. KURTH:  I think you want

22    this order entered today.

23        THE COURT:  I'm going to enter

24    everything except for -- I mean, I'll just

25    qualify the order is the way it will work.

1              MR. KURTH:  Thank you, Your

2       Honor.

3              THE COURT:  So then the

4       question will be whether I amend the order to

5       be completely unqualified using the language

6       that was proposed or whether I enter a

7       separate order granting additional relief.

8              MR. KURTH:  Okay.

9              THE COURT:  So I'll schedule it

10      for probably 9 a.m. on March 31 and any

11      pleading that's filed before then will result

12      in cancellation.  All right.  So that resolves

13      the wage and benefits and other compensation.

14          All right.  Let's move next to cash

15      management system.  Are there any parties

16      objecting to an order on the final basis

17      authorizing continued use of cash management

18      systems, authorizing use of prepetition bank

19      accounts, account control agreements, and

20      certain payment methods?

21              MR. FOX:  Your Honor, I will

22      just insert my continuing comments about

23      reclamation and leave it with that.

24              THE COURT:  How would that fit

25      into this?  How would your concerns about

1        asserting the reclamation claim fit within

2        this order?

3                    MR. FOX:  To the extent that

4        any goods that have been -- that should have

5        been set aside is subject to reclamation have

6        not or were not and such proceeds from those

7        reclaimed goods are -- I'm sorry, Your Honor.

8        This is the cash management motion?

9                    THE COURT:  Yes.

10                   MR. FOX:  Forget it.  I'm

11       sorry.  I'm confused.  Wrong motion.

12                   THE COURT:  Yes.  This has to

13       do with allowing the banks to continue to --

14                   MR. FOX:  Right.

15                   THE COURT:  The debtor to use

16       the same bank accounts it used prepetition

17       essentially.

18                   MR. FOX:  Sorry, Your Honor.

19                   THE COURT:  With lots of

20       extra --

21                   MR. FOX:  I got my motions

22       mixed up.

23                   THE COURT:  Okay.  So Mr. Fox,

24       your clients have no objection to the entry of

25       a final order authorizing continued use of

1     cash management systems, authorizing use of

2     prepetition bank accounts, accounting control

3     agreements, and certain payment methods and

4     granting additional time to comply with the

5     requirements of 345(b).

6                    MR. FOX:  Absolutely no

7     objection.

8                    THE COURT:  Okay.  Any other

9     objections?  All right.

10         Hearing none, the Court will enter an

11    order substantially in the form that was filed

12    as document 159 as a notice.  In that notice

13    is a proposed order which essentially tweaks

14    the language of the interim order.  And so

15    having read through that, I think it will be

16    entered substantially in that final form

17    except for I'll delete on an interim basis in

18    the original caption and minor tweaks like

19    that.

20         All right.  That motion is granted.

21         Next would be -- does any party have an

22    order to -- or an objection to entry of a

23    final order authorizing maintenance,

24    administration, and continuation of certain

25    customer programs?  So this is the use of gift

61

1     cards and honoring of sale programs.  Any

2     objections?

3          All right.  The Court will enter a

4     final order authorizing maintenance,

5     administration and continuation of certain

6     customer programs in substantially the form as

7     filed as docket 160, which was a notice, but

8     essentially a revised order based on my

9     interim order granting the full relief

10    requested by the debtors.  So that motion is

11    granted.

12         All right.  How about is there an

13    objection to entry of a final order

14    prohibiting utility companies from

15    discontinuing, altering, or refusing service,

16    approving adequate assurance utility deposit,

17    and establishing procedures for resolving

18    requests for additional assurance and granting

19    related relief?  Excellent.  All right.

20         So there was a proposed final order

21    which I will review but I expect that it will

22    be substantially in the same form with some

23    minor changes as the interim order granting

24    relief, but I will compare it to the final

25    order that was proposed.

62

1          And that was attached to your motion.

2     Am I right about that?

3               MS. STANLEY:  I believe it was

4     the original motion, yes.

5               THE COURT:  Okay.  So that

6     would be docket 12 and I'll look at that.

7          Next I will take an order related to

8     paying prepetition taxes and fees.  So is

9     there any objection to the entry of a final

10    order authorizing payment of certain

11    prepetition taxes and fees and authorizing

12    financial institutions to honor all related

13    checks and electronic payment requests?  So

14    this was the motion filed as docket 15.

15              MR. FOX:  Yes, Your Honor.

16              THE COURT:  Okay.

17              MR. FOX:  On item No. 15,

18    granted it's important that taxes be paid,

19    we're talking about prepetition taxes, I

20    believe, at least in part.  I believe I saw in

21    that -- I do not have my note here.  Here we

22    go.  A cap of $775,000 to pay such taxes.  I'm

23    concerned that, again, we may have a potential

24    reclamation problem here if the debtor is not

25    properly accounting for and segregating goods.

1          And yes, there will be an argument over how

2     many steps have to be taken by a creditor

3     asserting reclamation.  It's not as simple as

4     what has been already expressed to the Court.

5     But if that money is spent and that is money

6     that should have been turned over to any

7     reclamation creditor, then there is a

8     prejudice to those creditors.

9          And so I would object to the motion on

10    the grounds that the debtor may be paying

11    monies or likely is paying monies that

12    priority may exist already and not to

13    reclamation creditors.

14         Your Honor, let me try it a different

15    way.

16              THE COURT:  Okay.

17              MR. FOX:  In the normal course

18    you send a demand out and the debtor's

19    counsel, the debtor says, okay, we can

20    identify the goods.  Here the debtor said, at

21    least with counsel's representation is made,

22    it can't identify the goods.  The best it can

23    do is identify that it received the goods.

24         So this presents a terrible problem for

25    any creditor seeking reclamation because the

1    debtor will argue that, well, we already sold

2    the goods.  But here the debtor is saying we

3    don't know where the goods are once they've

4    left the warehouse.  In fact, everything left

5    the warehouse apparently except for some

6    quantity of sunglasses.

7         It seems to me that the Court has to

8    fashion a remedy for a reclamation complaint

9    to come that says to the debtor, well, if the

10   creditor can meet its elements, its five or

11   six elements for reclamation, and you don't

12   have the goods, you've got equitably -- you've

13   got to do something equitable which is give

14   back the dollar value of the goods shipped.

15        And so my client, Anfield's objection

16   to this particular motion dealing with the

17   taxes is you can't approve the payment of

18   prepetition taxes until you know in this

19   liquidating context what monies are going to

20   be left over and how the monies have to be

21   paid out.

22        And I'm sorry, Your Honor.  I took a

23   lot of time and I shouldn't have.

24              THE COURT:  No, I don't -- you

25   can -- I have time.  Don't feel bad about

1      that.

2           It seems to me that at most you have a

3      hypothetical competing claim for priority of

4      payment.  So if representations are correct

5      and the goods cannot be traced and so you

6      aren't going to have a genuine opportunity to

7      retrieve inventory that your clients may have

8      sent, then what you have is a claim for

9      compensation.  And although I'm not familiar

10     with the provisions, if Mr. Brakke is correct,

11     you may seek an administrative claim and

12     receive that type of priority in the event you

13     can achieve all of the necessary elements.

14                 MR. FOX:  If Mr. Brakke wishes

15     to so stipulate now, then maybe we have

16     something to do.  But I believe that an

17     administrative claim under Section 503(b)(9)

18     is for goods received in the 20 days before a

19     bankruptcy was filed.  And my information

20     right now is that the goods were received

21     outside the 20-day period.

22                 THE COURT:  Okay.  Then it's

23     possible that you have a general unsecured

24     claim.  Is that what you're saying?

25                 MR. FOX:  Based upon -- yes.  A

1      reclamation -- I'm sorry.  A reclamation claim

2      in part that may be dashed if the debtor says,

3      well, we can't trace -- we don't know what we

4      have.

5            And so the Court has to fashion a

6      remedy which would basically be in lieu of

7      receiving the goods back, receiving the dollar

8      value of the goods back would be the logical

9      alternative remedy.  Simply to tell a creditor

10     with a priority right, again hypothetical

11     priority right, well, the goods are gone, you

12     know, your priority is gone as well is not, I

13     don't think, the correct answer.  The Court

14     has to fashion a remedy, and the only remedy

15     would seem to be the payment of money.

16                 THE COURT:  Okay.  If that's

17     the case, then you will either have, depending

18     on when the goods were shipped and what type

19     of remedy you qualify, an administrative claim

20     or a general unsecured claim.

21           But because you would have an arguably

22     competing claim with taxing authorities, how

23     does that affect their authority and their

24     ability or right to receive compensation?

25                 MR. FOX:  At the moment taxing

1    authorities, as far as I'm aware, do not have

2    a secured claim.  They may have an inchoate

3    claim, an inchoate secured claim perhaps under

4    their jurisdiction's laws.

5          My client, if it has a reclamation

6    claim and any other creditor that might have a

7    reclamation claim, has a right -- basically

8    has a right to receive goods back.  And it's

9    akin to a secured claim.  If its claim is --

10   its claim is superior to say a taxing agency's

11   inchoate claim or unsecured claim or priority

12   claim simply because a reclamation creditor is

13   entitled to the stuff.  And if it can't have

14   the stuff, it's entitled to something in an

15   alternative form.  Here money.

16                 THE COURT:  And so you're

17   asking me to deny relief to taxing authorities

18   based on the possibility that your clients

19   might have a reclamation claim?

20                 MR. FOX:  Or if Your Honor is

21   not inclined to do that, to include a comfort

22   provision that says the rights of any

23   reclamation creditors are not affected or

24   impaired by any other relief in this order.

25                 THE COURT:  Well, they're not.

68

1         What this order authorizes is the debtors to

2         pay taxing authorities.  The only way you're

3         affected is if by paying the taxing

4         authorities it doesn't provide sufficient

5         money for your clients to recover in their

6         entirety.  But right now you haven't even told

7         me that there is, in fact, a claim to protect.

8                    MR. FOX:  Your Honor, I can

9         tell you that my client meets, in part, the

10        elements of Section 546 dealing with

11        reclamation.  And I can tell you there's a

12        representation by counsel for debtor that

13        debtor has no way to trace the goods.  So that

14        tells me that a fundamental right under the

15        Uniform Commercial Code is being dashed to the

16        extent it exists.  So there has to be some

17        other remedy under the UCC and under the

18        equitable provisions of the Bankruptcy Code.

19        I'm concerned that granting this relief would

20        impair those rights.  I believe those rights

21        are superior to any priority claim for taxes

22        under 507(a) whatever, but at a minimum if

23        Your Honor could simply, in the order,

24        acknowledge that there is a hypothetical

25        competing claim, as Your Honor called it

1      earlier, to at least preserve rights so that

2      down the road in the context of a complaint

3      for reclamation, the debtor can't say

4      you've -- you lost over the tax motion because

5      it was granted.

6               THE COURT:  Yeah, no.  I can

7      assure you that if the debtors asserted that,

8      it would be rejected by the court because

9      simply because you didn't get to include

10     language in this order granting debtor's

11     authority to pay taxing authorities does not

12     mean that you will not prevail on any claims

13     and causes of action -- claims or causes of

14     action related to your reclamation claim, that

15     that type of argument would be rejected.

16               MR. FOX:  Thank you, Your

17     Honor.

18               THE COURT:  Mr. Brakke, do you

19     have any response to the request to include

20     that language?

21               MR. BRAKKE:  If it is not

22     possible to trace the goods, that will defeat,

23     in and of itself, the reclamation claim.  So

24     this is not a situation where what the debtor

25     has done defeats the claim but simply as a

1       matter of the reclamation claimant not being

2       able to prove their prima facie case.

3               And if, in fact, there is no

4       reclamation claim, it would be dangerous for

5       this court to start trying to create some kind

6       of equitable remedy that is not conceived in

7       the case law and is certainly not conceived of

8       by the Code as basically something to protect

9       people with reclamation claims they can't

10      prove.  There is nothing in this order that

11      would limit a reclamation claim if it can be

12      properly proved.

13              The ultimate issue, Your Honor, is if

14      there is a reclamation claim that can be

15      proved, is there money available to pay that

16      administrative expense.  And all of the data

17      Your Honor shows that this estate is

18      administratively solvent.  So there is simply

19      no practical risk by this motion, let alone

20      the absence of a legal justification for

21      adding the proposed language.

22                      THE COURT:  I know this is

23      early in the case but is there a very rough

24      estimate of unsecured claims or administrative

25      claims?  Let's say unsecured claims.  Just --

1      do you know, Ms. Kurth?

2                    MR. KURTH:  Yes.  The estimate

3      that we had was 5.7 million which includes

4      employee-related liabilities and past due rent

5      but does not include, I believe, rejection

6      damages that was the estimated general

7      unsecured claims in the first stay motions.

8      TGC, LLP, assuming that that is (inaudible)

9      with unsecured creditors, that's another

10     $5 million because that security interest was

11     perfected within weeks of the petition date.

12     So (inaudible) plus.

13                    THE COURT:  Estimate of

14     administrative claims.

15                    MR. KURTH:  Estimated

16     administrative claims, the best information we

17     have is the debtor's budget which would

18     indicate about 7.6 million operating and

19     .9 million on a non-operating basis.  And

20     that's from the first stay pleadings, so

21     Mr. Brakke.

22                    THE COURT:  Is that about

23     right, Mr. Brakke?

24                    MR. BRAKKE:  The budget, Your

25     Honor, shows --

1          THE COURT:  Where did I put it?

2     Budget at docket 23, the same --

3          MR. BRAKKE:  Yes.  The budget,

4     Your Honor, after the expenses of liquidation

5     shows a net cash flow of --

6          THE COURT:  3.328?

7          MR. BRAKKE:  -- 3.328.  And we

8     are doing better than the budget, as Your

9     Honor has indicated.

10          THE COURT:  So --

11          MR. BRAKKE:  And so that

12     would -- I'm sorry.  Excuse me.

13          THE COURT:  Would that be mean

14     that you suspect that you're going to have

15     money to pay unsecured creditors?  Maybe not

16     in full but --

17          MR. BRAKKE:  Yes.  And to

18     perhaps provide a fuller answer to Your

19     Honor's question, the 3.328 would be after any

20     expenses of liquidation that might be deemed

21     administrative expenses.

22          THE COURT:  Okay.

23          MR. BRAKKE:  So conceivably the

24     only administrative expenses not covered by

25     the budget would be reclamation claims.  Based

1      on the total reclamation claims we've

2      received, even if they were all for goods

3      delivered within the last 20 days, reclamation

4      claims would be 600,000?  About 600,000.

5              So, again, I don't think there's any

6      indication that this case is going to be

7      administratively insolvent.

8                      THE COURT:  It appears not.

9      Okay.

10             I am going to overrule the objection

11     that was asserted by Mr. Fox's clients and

12     grant the order authorizing payment of

13     prepetition taxes and fees and authorizing

14     financial institutions to honor all related

15     checks and electronic payments.

16             The final order will be substantially

17     in the same form as the interim order with

18     adjustments to ensure that I've reviewed the

19     proposed order at docket 15 and also revise

20     the language to reflect a final order until --

21     final as in effective through April 19, I

22     think, is the date that you picked.

23                     MR. BRAKKE:  Yes, Your Honor.

24                     THE COURT:  Okay.  All right.

25                     MS. STANLEY:  Your Honor?

74

1       THE COURT:  Yes.

2       MS. STANLEY:  Just one quick

3  comment.  We had done the interim order for

4  650,000.  And then the final order was 775.

5       THE COURT:  Oh, yes.  And I

6  remember that.

7       MS. STANLEY:  Yep.

8       THE COURT:  Which is why I told

9  myself I need to look at those proposed

10  orders.  But that is one of the major reasons.

11  So 700 and --

12       MS. STANLEY:  Seventy-five.

13       THE COURT:  Seventy-five.

14  Thank you.  Anything else in particular I

15  should pay very close attention to?

16       MS. STANLEY:  No, Your Honor.

17       THE COURT:  Thank you for

18  reminding me.

19       The next issue I will consider is a

20  final order.  So I'm asking right now are

21  there any objections to the entry of a final

22  order authorizing debtor to continue

23  prepetition insurance policies and pay-related

24  prepetition insurance obligations and

25  authorizing the banks to honor related checks

| | |
|---|---|
| 1 | and transfers?  Any objection to insurance? |
| 2 | MR. KURTH:  No, Your Honor. |
| 3 | THE COURT:  Okay.  All right. |
| 4 | The Court will enter a final order in |
| 5 | substantially the same form as the interim |
| 6 | order except that I will ensure that it reads |
| 7 | as the final order.  And I will also take a |
| 8 | look at the proposed order filed at docket 14 |
| 9 | to ensure that I haven't missed anything. |
| 10 | Do I have one left?  Okay.  The lease |
| 11 | rejection.  So are there any objections to the |
| 12 | entry of a final order establishing procedures |
| 13 | for the rejection of executory contracts and |
| 14 | unexpired leases? |
| 15 | MR. BRANCH:  Good morning, Your |
| 16 | Honor.  Dustin Branch, Ballard Spahr, LLP on |
| 17 | behalf of the member landlord.  As you recall, |
| 18 | we went through this order a couple weeks ago |
| 19 | and the form order is acceptable.  Just a |
| 20 | couple of points to raise on this. |
| 21 | The language in the order providing for |
| 22 | the abandonment of property once the lease is |
| 23 | rejected is not also in the notice and it |
| 24 | should be in there so that parties receiving |
| 25 | notice of the rejection will also receive |

1         notice of the abandonment.

2                  And just one other point I'd note that

3         the order provides that there will be a form

4         of order attached to the notice, and the

5         notice doesn't reflect that.

6                       THE COURT:  Right.  Here was my

7         concern.  I have to confess that I struggled

8         with this for far too long on the day that I

9         entered the order.  The way that the proposed

10        order reads it suggests that there are no

11        objections asserted by anyone who received

12        notice.  And so it left me struggling with

13        either trying to adjust the language of the

14        notice or the proposed order in ways that were

15        not logical.

16                 And so I removed the proposed order and

17        reference to the proposed order and instead

18        thought I would just consider the order that

19        the parties proposed at the time that a notice

20        of rejection of executory contracts were

21        filed.

22                 So I recognize now that the debtor has

23        filed two of them, one at docket 129 and one

24        at docket 131.  And when those orders are ripe

25        for review, I would enter a proposed order

| | |
|---|---|
| 1 | using the go bys essentially provided by the |
| 2 | parties rather than providing notice of what |
| 3 | an order might look like only if no party to |
| 4 | receive notice objected. |
| 5 | Do you see where my confusion and my |
| 6 | concern lies?  So I don't intend to attach a |
| 7 | proposed order to the notice. |
| 8 | MR. BRANCH:  And, Your Honor, |
| 9 | Dustin Branch again.  I think that's fine.  I |
| 10 | don't think there's a need to attach the |
| 11 | order.  We would just like to see the |
| 12 | abandonment language from the order that's |
| 13 | being approved today carry over into the |
| 14 | notice so the parties have notice of that. |
| 15 | THE COURT:  I agree that that |
| 16 | should have been included and we'll most |
| 17 | certainly add a paragraph.  So the -- from the |
| 18 | order establishing procedures, the abandonment |
| 19 | language is provided in what paragraph so that |
| 20 | I can add it -- or do you want to -- |
| 21 | MR. BRANCH:  In paragraph 2(d). |
| 22 | It's the last sentence of 2(d) starting with |
| 23 | "Upon the rejection date." |
| 24 | THE COURT:  Oh, yeah.  I see |
| 25 | it.  Okay.  All right.  So I suppose that |

78

1    paragraph can just be copied into the notice.

2    Any reason it couldn't be?

3                    MR. BRAKKE:   No.   Do you want

4    us to do that, Your Honor?

5                    THE COURT:   No.   I think -- I

6    think I could -- if you would like to tell me

7    exactly where you would like it placed, I see

8    no problem in saying, Please take notice

9    that -- please also take notice that.

10        So where would it fit most logically

11   just so everybody knows where I expect it to

12   go?

13                   MR. BRAKKE:   We would suggest,

14   Your Honor, that it should be at the top of

15   page 3 right after the -- top of page 2, right

16   below the unexpired nonresidential real

17   property leases chart.

18                   THE COURT:   Okay.

19                   MR. BRAKKE:   With the

20   fill-in-the-blanks.

21                   THE COURT:   So I'll include the

22   words, "Please take further notice" in

23   capitals and then add "Please take notice that

24   upon rejection date any personal property,"

25   blah, blah, blah, right?

79

| | |
|---|---|
| 1 | MR. BRAKKE:  Yes, Your Honor. |
| 2 | THE COURT:  Very helpful, |
| 3 | Mr. Branch.  Anything else? |
| 4 | MR. BRANCH:  No, Your Honor. |
| 5 | Not from me. |
| 6 | THE COURT:  Okay.  Was there -- |
| 7 | did I miss some language referring to the |
| 8 | proposed order in the interim order or the |
| 9 | notice?  You know what?  I'll just do a word |
| 10 | search. |
| 11 | MS. STANLEY:  Your Honor. |
| 12 | THE COURT:  Yeah. |
| 13 | MS. STANLEY:  Paragraph 2(b), |
| 14 | again right at the end before the struck out |
| 15 | language, All rejection notices must be |
| 16 | accompanied by a copy of the proposed order |
| 17 | approving the rejection of the contracts. |
| 18 | THE COURT:  Okay.  2(b).  So |
| 19 | I'm just going to delete that sentence unless |
| 20 | you really think it's necessary that they see |
| 21 | a copy of the proposed order.  Okay.  If I |
| 22 | grant the relief.  It's all been in the |
| 23 | motion.  It's all been in the notice.  Okay. |
| 24 | Thank you. |
| 25 | Did you see any other places, |

80

1    Ms. Stanley?

2              MS. STANLEY:  No.  That was the

3    one that tripped me up when I did the first

4    one.

5              THE COURT:  Okay.  All right.

6    I notice that the debtors had deleted the

7    reference to with respect to all other

8    contracts or leases.  You have no other

9    executory contracts or releases?  That's why

10   that's deleted?

11             MS. STANLEY:  That sentence is

12   in there twice.

13             THE COURT:  Well, it's in there

14   once for real property leases and then I

15   thought this was a second -- that's why it was

16   in there.  I thought that you put that in

17   there twice for a reason because the first

18   one -- the first sentence refers to real

19   property leases and then the second one I

20   thought referred to everything else.  Am I

21   mistaken about that?

22             MS. STANLEY:  That -- the

23   sentence that's crossed out is the exact same

24   sentence that's two above.

25             THE COURT:  Except for the

1    introductory clause, so -- oh, I see.  You're

2    right.  Never mind.  You do have an extra

3    sentence.  Good one.

4                    MS. STANLEY:  Yep.

5                    THE COURT:  Okay.  All right.

6    Are there any objections?  Mr. Branch, is

7    there anything else that you had questions or

8    concerned about?  Anything else you needed to

9    add or would like to add?

10                    MR. BRANCH:  No, Your Honor.

11   That was it.

12                    THE COURT:  Okay.  Any other

13   concerns about entry of the final order?  All

14   right.

15        Then hearing no objection, the Court

16   will enter a final order establishing the

17   procedures for the rejection of executory

18   contracts and unexpired leases.  And this

19   order will be substantially in the same form

20   as docket No. 161 which was a revision

21   prepared by the debtors based on the Court's

22   interim orders with the adjustments that we

23   discussed today, both to the entry of the

24   order as well as the notice.  So those changes

25   we discussed today will be included in the

```
1     final order and notice attached.  So that
2     motion is granted.
3            As long as we're visiting about leases,
4     I notice that the notice filed at document 129
5     does not have an objection deadline but 131
6     does.
7                   MS. STANLEY:  Your Honor, one
8     of them was a second omnibus, correct?
9                   THE COURT:  Yes.
10                  MS. STANLEY:  Did I miss the
11    notice part of the --
12                  THE COURT:  129 didn't have a
13    notice.
14                  MS. STANLEY:  Because one of
15    them was the -- what I call my second omnibus
16    because it was rejecting leases that were
17    never -- you know, stores that had never been
18    opened.  So those were not filed under these
19    procedures that we've been talking about.
20    They were just a normal -- a normal -- my
21    second omnibus.
22                  THE COURT:  Okay.
23                  MS. STANLEY:  So it wasn't
24    under these shortened procedures.  And then I
25    did my first notice of rejection under this
```

83

1       procedure one.

2                       THE COURT:  Okay.  So you're --

3       it's -- right.  The first notice of the --

4       using these procedures was the notice under --

5       filed as document 129.  It was the first one.

6                       MS. STANLEY:  Right.  And I

7       called it my first notice one.  I probably

8       should have said my third.

9                       THE COURT:  Yeah.  That's --

10      yeah.  You said debtor's first notice of

11      rejection, right.

12                      MS. STANLEY:  Right.

13                      THE COURT:  Right.  So when is

14      this ripe for an order?

15                      MS. STANLEY:  I think it's

16      after the ten days.  I don't have a copy of

17      that one with me.  I apologize.

18                      THE COURT:  Fourteen days.  So

19      after the entry --  after 14 days if there are

20      no objections filed.  And this is with the

21      Court now.

22                      MS. STANLEY:  Oh, 14 days.

23      Yes.  Right.

24                      THE COURT:  Then you will look

25      to the Court for entry of an order rejecting,

84

| | |
|---|---|
| 1 | which is the proposed orders that we've been |
| 2 | talking about that were provided that might |
| 3 | have been attached but -- |
| 4 | MS. STANLEY:  That was attached |
| 5 | in this first one but I won't do it in the |
| 6 | next one. |
| 7 | THE COURT:  The proposed order |
| 8 | was attached to this one? |
| 9 | MS. STANLEY:  I believe it was. |
| 10 | THE COURT:  Well, I don't mind |
| 11 | if you attach a proposed order.  It's just I |
| 12 | don't want to make anyone think it was my |
| 13 | idea. |
| 14 | MS. STANLEY:  I did that |
| 15 | because there was that other sentence, that |
| 16 | hidden sentence because I know you had crossed |
| 17 | out -- |
| 18 | THE COURT:  Right. |
| 19 | MS. STANLEY:  That hidden |
| 20 | sentence in there said I had to submit one, so |
| 21 | that's why I said it tripped me up. |
| 22 | THE COURT:  Got it.  And I can |
| 23 | see why that would because I would have -- I |
| 24 | intended to delete all references to that and |
| 25 | obviously missed one. |

1                    MS. STANLEY:  Yes.  So then for

2         my next one I will not submit a proposed

3         order.

4                    THE COURT:  Okay.

5                    MS. STANLEY:  Or attach a

6         proposed order but will just submit one.

7                    THE COURT:  Okay.

8                    MS. STANLEY:  After the 14-day

9         objection period runs.

10                    THE COURT:  Great.  All right.

11        And this looks to me to be the same proposed

12        order that I -- I've seen before.

13                    MS. STANLEY:  Yes.

14                    THE COURT:  So if there are no

15        objections, then I would expect to enter

16        something that looks a lot like it.  But if

17        there are objections, I would qualify the

18        order to say for those parties who didn't

19        object.

20                    MS. STANLEY:  Okay.

21                    THE COURT:  Their

22        opportunity -- the rejection is final.  Okay.

23        Now we're all on the same page.  Okay.  So

24        I'll -- I would expect to see more notices

25        like the first notice.

Case 17-30112   Doc 250   Filed 04/25/17   Entered 04/25/17 08:10:41   Desc Main
Document 23 Page 96 of 90
MARCH 23, 2015

1          What's next?  What can I look forward

2     to next?

3                    MS. STANLEY:  Your Honor, they

4     are -- they closed six more stores yesterday,

5     so I am teeing up -- once we get this order

6     entered, I will be filing my second notice

7     that has probably 11 more stores on it.

8                    THE COURT:  Okay.

9                    MS. STANLEY:  And then next

10    week is going to be a flurry because they're

11    planning to get 80 stores closed or -- by the

12    end of March.  So next week is going to be

13    very busy for them.

14                   THE COURT:  Okay.  All right.

15    Should I be expecting a plan?  What will the

16    next steps be, Mr. Brakke or Ms. Stanley?

17                   MR. BRAKKE:  We're still

18    contemplating what the next step should be,

19    Your Honor, to maximize the recovery for the

20    unsecured creditors whether it should be a

21    liquidating plan or whether this case should

22    be converted to Chapter 7.

23                   THE COURT:  Okay.  All right.

24    Is there anything else that the Court should

25    address today?  Did I get all the motions I

Case 17-30112   Doc 250   Filed 04/25/17   Entered 04/25/17 08:10:41   Desc Main
Document   Page 87 of 90

1       was supposed to rule on?  Sharon?

2                       MR. KURTH:  I think so.  If I

3       may add a comment, Your Honor?

4                       THE COURT:  Please.

5                       MR. KURTH:  I think from the

6       committee's perspective, we would very much

7       like to see a liquidating plan and liquidating

8       trust established as something we -- the

9       committee members have done frequently and can

10      do that quickly and cheaply.

11           Also, as a heads up with respect to

12      TGC, which is the subordinated insider loan, a

13      $5 million loan, we may actually require some

14      discovery on that.  We'll have to see.  But we

15      have attempted to get documents from TGC.  And

16      I understand, briefly put, they have a

17      malpractice claim against a former attorney

18      and are not in a position right now to

19      voluntarily provide any documents so that we

20      can understand what that lien is and deal with

21      the issues such as --  in terms of what may be

22      coming up.  We're trying to find a

23      constructive workaround, but I'm not sure

24      because it's a very odd posture on -- that

25      there is going to be a voluntary path forward,

1    so --

2                    THE COURT:  TGC has a

3    subordinated claim?

4                    MR. KURTH:  They're

5    subordinated -- okay.  So had paid Wells

6    Fargo.  They have a $5 million claim.

7                    THE COURT:  Secured claim.

8                    MR. KURTH:  Yes.  They

9    perfected it in February, so a few weeks

10   before the bankruptcy filing.

11        So our position is, at a minimum, that

12   that is something that we should be able to

13   avoid as a preferential -- as a preference

14   with respect to them.  And we're not sure what

15   other issues are there.  We don't have -- we

16   received a little bit of paperwork from the

17   debtor.  It's just in terms of -- we may need

18   some assistance because they find themselves

19   unable to voluntarily comply.

20                    THE COURT:  Okay.  All right.

21   So I might look forward to seeing an

22   adversary.  All right.  Well, I will be in

23   town, so whatever comes up, I am available.  I

24   will plan to enter the orders that we

25   discussed today.

89

1          Anything further?

2                    MR. BRAKKE:  Your Honor, I

3     would anticipate that Wells Fargo and the

4     debtor can provide a revised order on a cash

5     collateral by the end of the day.

6                    THE COURT:  Sure.  Yeah.  And

7     if you can't do it until tomorrow, I'm here

8     tomorrow.  Whatever works for you.  So I'll

9     postpone that one.

10                    MR. BRANCH:  Thank you very

11    much, Your Honor.

12                    MR. KURTH:  Thank you, Your

13    Honor.

14                    THE COURT:  Matter stands in

15    recess.

16                         *  *  *

17

18

19

20

21

22

23

24

25

90

```
1    STATE OF MINNESOTA   )
                          ) ss.
2    COUNTY OF WASHINGTON)

3

4         BE IT KNOWN, that I transcribed the

5    electronic recording relative to the matter

6    contained herein;

7

8

9         That the proceedings were recorded

10   electronically and stenographically transcribed

11   into typewriting, that the transcript is a true record

12   of the proceedings, to the best of my

13   ability;

14

15

16        That I am not related to any of the

17   parties hereto nor interested in the outcome of

18   the action;

19

20

21        IN EVIDENCE HEREOF, WITNESS MY HAND.

22

23
                              _____
24                            Lisa M. Thorsgaard

25
```