**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| In re:<br><br>VANITY SHOP OF GRAND FORKS, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 17-30112 |

**NOTICE OF B.E. CAPITAL'S MOTION TO CONVERT CASE**

NOTICE IS HEREBY GIVEN that B.E. Capital Management Fund LP has filed a motion to convert this chapter 11 case to one under chapter 7, a copy of which is attached and is served upon you.

NOTICE IS FURTHER GIVEN that written objections to said motion, if any, shall be filed with the Clerk of the U.S. Bankruptcy Court for the District of North Dakota, Quentin N. Burdick Courthouse, 655 1st Avenue North, Fargo, North Dakota 58102, within TWENTY-ONE (21) days from the date of service hereof. Objections not timely filed and served may be deemed waived.

Dated: March 14, 2018

STORCH AMINI PC

/s/ Jeffrey Chubak
Jeffrey Chubak (admitted pro hac vice)
140 East 45th Street, 25th Floor
New York, New York 10017
Tel: (212) 490-4100
Fax: (212) 490-4208
jchubak@storchamini.com

*Attorneys for Creditor B.E. Capital Management Fund LP*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In re:<br><br>VANITY SHOP OF GRAND FORKS, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 17-30112 |

## B.E. CAPITAL'S MOTION TO CONVERT CASE

B.E. Capital Management Fund LP ("B.E. Capital") moves for an order, substantially in the form attached hereto as Exhibit 1, converting this chapter 11 case to one under chapter 7, and respectfully states:

### INTRODUCTION

1. Cause for conversion exists under Bankruptcy Code section 1112(b)(4)(A) and, as a result, conversion is mandatory under section 1112(b)(1), regardless of whether a plan can be confirmed in the near term. Conversion is also in the estate's best interest for reasons set forth below.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter under 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2).

3. Venue is proper under 28 U.S.C. § 1408.

### BACKGROUND

4. The Debtor commenced this case on March 1, 2017.

5. B.E. Capital owns nine claims in this case.[1]

---

[1] Copies of the claims can be viewed at http://kccllc.net/vanity/register (click "View More," search for B.E.).

6.     TGC, LP is by far the single largest creditor in this case, having filed a $5.25 million unsecured claim [ECF No. 543-12]. Item 8 of the claim states that it is for "loan and interest." It is undisputed that TGC, LP and its partners are insiders.[2]

7.     The Committee states in its motion for derivative standing, filed December 18, 2017 [ECF No. 543], that the TGC claim should be recharacterized as equity, or alternatively, equitably subordinated, but that the Debtor is refusing to pursue the foregoing causes of action. The Committee's motion seeks authorization to pursue those claims on behalf of the estate, as well as additional claims against insiders. Briefing on the Committee's motion has not yet been completed [ECF No. 586].

8.     The Debtor has sold substantially all of its assets, and realized over $7 million in net proceeds from store closing sales, and $477,500 in proceeds from the sale of its intellectual property assets (Disclosure Statement, p.10), which are available for payment of allowed claims against the Debtor, less administrative expenses subsequently incurred.

9.     The Debtor has filed a liquidating plan and an accompanying disclosure statement [ECF Nos. 510-11]. The plan provides for unsecured creditors to receive their pro rata share of available cash, save convenience creditors with claims of $1,500 or less. (Plan §§ 5.2-5.4.) Under the plan the estate would be wound down and distributions would be made by a Debtor-designated plan administrator. (*Id*. § 7.2.a.) The plan administrator would be charged with "retain[ing] Special Counsel" to "analyze and determine if prosecution of any Causes of Action" "against Statutory Insiders" "are appropriate," and if the plan administrator so determines, to "object to, and/or prosecute the Claims of Statutory Insiders and possible Causes of Action against Statutory Insiders." (*Id*. §§ 9.1-9.3.)

---

[2] The Debtor has no additional significant prepetition financial debt, having repaid its Wells Fargo loan.

10. The plan has broad releases by the Debtor and third parties (*id*. §§ 10.3, 10.5, 10.7) for "Released Parties" and "Exculpated Parties," terms whose definitions (*id*. §§ 2.232, 2.259) includes TGC and a slew of other insiders.

11. The disclosure statement projects unsecured recoveries of approximately 34%, and presumes allowance of the TGC claim. (*Id*. p.16.) The disclosure statement acknowledges that if the TGC claim were recharacterized or subordinated, unsecured creditors' percentage recovery would naturally increase. (*Id*. p.16, n.2.)

12. The hearing to consider disclosure statement approval has been adjourned on multiple occasions [*e.g.*, ECF Nos. 548, 586].

13. On December 7, 2017, the Committee filed its first interim fee application, which sought allowance of $246,565 in fees and expenses for the approximately seven-month period following its formation on March 10, 2017 [ECF No. 118]. The Debtor has challenged the reasonableness of the Committee's fees [ECF No. 554], and the hearing on that application has likewise been adjourned [ECF No. 570].

## ARGUMENT

### I. LEGAL STANDARD

14. Section 1112(b)(1) provides "the court <u>shall</u> convert a case under this chapter to a case under chapter 7 … for cause unless the court determines that the appointment … of a trustee or an examiner is in the best interests of creditors and the estate" (emphasis added). Section 1112(b)(4) provides a non-exhaustive list of factors that constitute "cause." Subdivision (A) provides "cause" includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."

3

**II.    CAUSE EXISTS UNDER SECTION 1112(b)(4)(A)**

    **A.    The Debtor Has No Reasonable Likelihood of Rehabilitation**

15.  The leading bankruptcy treatise interprets "rehabilitation" in section 1112(b)(4)(A) as follows:

> [T]he second part of the test under section 1112(b)(4)(A) requires a reasonable likelihood of "rehabilitation," not "reorganization." Thus, the standard under section 1112(b)(4)(A) is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort. Rehabilitation is not another word for reorganization. Rehabilitation means to reestablish a business. Whereas confi1mation of a plan could include a liquidation plan, rehabilitation does not include liquidation.

7 Collier on Bankruptcy ¶1112.04[6][a][ii] (16th ed.), quoted in *In re Brutsche*, 476 B.R. 298, 301-02 (Bankr. D. N.M. 2012). *See also In re Paterno*, 511 B.R. 62, 68 (Bankr. M.D. N.C. 2014) ("Where a debtor proposes a plan of pure liquidation, there is no likelihood of rehabilitation").

16.  The sale of substantially all of the Debtor's assets has been completed, as noted above. The Debtor has closed all of its stores, and liquidated its intellectual property, pursuant to prior orders of this Court. (Disclosure Statement, p.10.) Accordingly, the Debtor has no reasonable likelihood of rehabilitation.

    **B.    The Estate is Experiencing Continuing Loss**

17.  It is black letter law that debtors experiencing negative cash flow satisfy the first element of section 1112(b)(4)(A). *Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 515-16 (8th Cir. 2004) (citing, *inter alia*, *In re Schriock Construction, Inc.*, 167 B.R. 569, 575 (Bankr. D. N.D. 1994)) ("Under the interpretation of § 1112(b)(1) consistently used in bankruptcy courts, this negative cash flow situation alone is sufficient to establish 'continuing loss to or diminution of the estate'"); *In re Johnston*, 149 B.R. 158, 161 (B.A.P. 9th Cir. 1992) (affirming order granting motion to convert where debtor "lacked the income [to] indicate a reasonable likelihood of rehabilitation");

4

Case 17-30112   Doc 602   Filed 03/14/18   Entered 03/14/18 16:30:25   Desc Main
Document      Page 6 of 13

*In re ARS Analytical, LLC,* 433 B.R. 848, 862 (Bankr. D. N.M. 2010) ("Projected future revenues were $-0- for some indefinite future. Projected expenses going forward would be $48,000 per month plus attorney and reorganization fees. These all demonstrate a 'continuing loss'"); 7 Collier on Bankruptcy § 1112.04[5][a][i] (16th ed.) ("If the debtor is operating with sustained negative cash flow … this fact is sufficient to support a finding that the debtor is experiencing a 'continuing loss to the estate'").

18. This is true, notwithstanding that "this interpretation of § 1112(b)(1) amounts to a *per se* rule allowing a creditor … to force conversion to Chapter 7 whenever a debtor seeks to liquidate under Chapter 11." *Loop*, 379 F.3d at 516. As noted by the Eighth Circuit:

> We are convinced that this interpretation is correct, notwithstanding Loop's concern that a liquidating debtor will "inevitably" have a negative cash flow. The purpose of § 1112(b)(l) is to "preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." *In re Lizeric Realty Corp.,* 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995). In the context of a debtor who has ceased business operations and liquidated virtually all of its assets, any negative cash flow—including that resulting only from administrative expenses effectively—comes straight from the pockets of the creditors. This is enough to satisfy the first element of § 1112(b)(1) ...
>
> [I]t is difficult to imagine a liquidating debtor who will not meet the criteria for cause described in § 1112(b)(1).

*Id*. (emphasis added). *See also BH S&B Holdings, LLC*, 439 B.R. 342, 348 (Bankr. S.D.N.Y. 2010) ("courts in this district have converted or dismissed chapter 11 cases on facts similar to those in *Loop*").

19. There can be little doubt the Debtor is experiencing negative cash flow. Its most recent monthly operating report, for January 2018 [ECF No. 589], indicate cash receipts of just $37.29, comprised of a refund from a utility, and cash disbursements of $20,779 to Debtor's counsel, $17,426 to Debtor's accountant, $14,237 to the Consumer Privacy Ombudsman, $10,094

to the Debtor's claims agent, and $1,950 in Q4 U.S. Trustee fees ($64,486 total).  (*Id.* Form 2-B.) Significantly, this does not even reflect the Committee's professional fees for that month.  The prior report, for December 2017 [ECF No. 580], likewise reflects cash receipts of just refunds of $6,342 and "old outstanding checks to stores" totaling $211.84, and cash disbursements of $18,163.16 to the Debtor's claims agent.  (*Id.* Form 2-B.)  Plan confirmation, as well as litigation over the Committee's professional fees, and right to prosecute claims on behalf of the estate, would likewise require the estate to incur additional professional fees.[3]

20.     Estate professionals may be providing legitimate services, but they are nevertheless running up bills for the estate, at stakeholders' expense, which is all that matters for the purpose of evaluating if the first element of section 1112(b)(4)(A) has been met.  As noted by the Eighth Circuit, "any negative cash flow—including that resulting only from administrative expenses—effectively comes straight from the pockets of creditors."  *Loop*, 379 F.3d at 516.  *See also In re FRGR Managing Member LLC,* 419 B.R. 576, 581 (Bankr. S.D.N.Y. 2009) ("As to the first prong, it is apparent [debtor's] actions are causing a diminution to the estate.  FRGR continues to incur quarterly U.S. Trustee fees as well as legal fees, causing continuing loss to the estate"); *Brutsche*, 476 B.R. at 305 ("professional services come at a cost, obviously, which cost needs to be factored in the calculation of gains and losses for the estate.  And the hard fact is that these costs are rapidly mounting expenses for the estate that help put the estate in the position of continuing substantial losses"); *In re Angel Fire Water Co., LLC,* No. 13-bk-10868, 2015 WL 251570, at *4 (Bankr. D. N.M. Jan. 20, 2015) ("The Debtor has no income, cash, or business operations, but continues to

---

[3] Although the Committee is not entitled to compensation for defending its professional fees, *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158 (2015), nothing prohibits the Debtor from seeking compensation for challenging the Committee's fees.

6

incur monthly expenses such as U.S. Trustee fees, attorney fees ... The Court concludes that there is a continuing diminution of Debtor's estate").

21.  That the Debtor may have been cash flow positive prior to the sale of substantially all of its assets is of no matter, because in evaluating if cause exists courts consider if any of the section 1112(b)(4) factors are presently satisfied.  *In re Sletteland*, 260 B.R. 657, 672 (Bankr. S.D.N.Y. 2001) ("the focus is on the debtor's current activities, not [the] past"); *ARS Analytical*, 433 B.R. at 862 (measuring present value of projected future revenues ($0) against its expenses in concluding that debtor was suffering "continuing loss"); 7 Collier on Bankruptcy ¶1112.04[5][a][i] (15th ed.), quoted in *Loop*, 379 F.3d at 516  ("If the debtor is [not was] operating with a sustained negative cash flow … this fact is sufficient to support a finding that the debtor is experiencing a 'continuing loss'").

**C.    Whether the Debtor Can Confirm a Plan in the Near Term is Irrelevant**

22.  Whether or when the Debtor can confirm a plan is irrelevant to the issue of whether this case should be converted.  Although section 1112(b)(2) affords courts discretion to deny a motion to convert if "there is a reasonable likelihood that a plan will be confirmed … within a reasonable period of time" and "unusual circumstances" exist, pursuant to section 1112(b)(2)(B) that carveout is inapplicable where, as here, the motion seeks conversion for cause under section 1112(b)(4)(A).  *Brutsche*, 476 B.R. at 306 (citing *ARS*, 433 B.R. at 865, n.25) ("The statute is explicit that the Court may not rely on unusual circumstances to refuse to convert or dismiss if it finds cause under § 1112(b)(4)(A)"); *In re RainTree Healthcare of Forsyth LLC*, No. 17-bk-51237, 2018 WL 770367, at *8 n.17 (Bankr. M.D. N.C. Feb. 7, 2018) ("the statute makes clear that the

7

exception under section 1112(b)(2) does not apply where cause is established under section 1112(b)(4)(A), as it has been here").[4]

23. Pre-BAPCPA case law acknowledging judicial discretion to deny conversion despite the existence of cause under section 1112(b)(4) is inapposite, given that the net effect of BAPCPA and the Bankruptcy Technical Corrections Act of 2010 was to modify section 1112(b)(1) as follows:

> Except as provided in **paragraph (2) and** subsection (c) ~~of this section~~, on request of a party in interest ~~or the United States trustee or bankruptcy administrator~~, and after notice and a hearing, the court ~~may~~ **shall** convert a case under this chapter to a case under chapter 7 ~~of this title~~ or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause~~,~~ ~~including …~~ **unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate**.[5]

24. By replacing the word "may" with "shall," Congress eliminated judicial discretion upon a showing of cause under section 1112(b)(4)(A). *In re Riverbend Comm., LLC*, No. 11-bk-11771, 2012 WL 1030340, at *3 n.6 (Bankr. D. Del. 2012) ("Congressional intent that 'shall' really does mean 'must' in the convert or dismiss provision is readily apparent. In 2005, Congress removed the word 'may' from Section 1112(b) and substituted 'shall' if a moving party establishes 'cause.' [BAPCPA citation.] Congress clearly intended to make conversion or dismissal mandatory upon proof of 'cause'"); *RainTree Healthcare*, 2018 WL 770367, at *8 n.17 (quoting

---

[4] Whether a debtor can confirm a plan is also irrelevant because cases are subject to conversion even post-confirmation. *See*, *e.g.*, *In re Lacy,* 304 B.R. 439, 444 (D. Col. 2004) ("Section 1112(b) provides express authority for dismissal or conversion of a Chapter 11 case, including post-confirmation conversion"); *In re Greenfield Dr. Storage Park,* 207 B.R. 913, 918 (B.A.P. 9th Cir. 1997) ("Even if the case had been properly closed under § 350 the case could thereafter be reopened to convert the case to chapter 7").

[5] A redlined copy of the Bankruptcy Code indicating the changes implemented by BAPCPA can be found at https://www.skadden.com/sites/default/files/publications/Publications1029_0.pdf.  A copy of the 2010 act can be found at https://www.congress.gov/111/plaws/publ327/PLAW-111publ327.pdf.

8

7 Collier on Bankruptcy ¶1112.04[4] (16th ed.)) ("the statute does not appear to provide unfettered discretion in determining whether cause exists. If one of the enumerated examples of cause set forth in section 1112(b)(4) is proven by the movant by a preponderance of the evidence, the court must find that movant has established cause").

### III.   CONVERSION IS IN THE ESTATE'S BEST INTEREST

25.   Conversion would permit an objective trustee—not Special Counsel selected by the Debtor—to analyze the potential viability of the recharacterization and equitable subordination claims and other causes of action against insiders, and pursue those that will maximize value for the estate free of restrictions imposed by releases set forth in a plan.  Conversion would also relieve this Court from having to decide complex issues relating to derivative standing, and whether the Debtor's proposed plan is designed to protect insiders.  It would also substantially reduce overall professional spend by, among other things, terminating the Committee and eliminating derivative standing litigation, eliminating the Debtor's obligation to pay U.S. Trustee fees, and precluding the Debtor from spending estate resources to protect insiders.

WHEREFORE, B.E. Capital respectfully requests that this Court convert this case to one under chapter 7.

Dated: March 14, 2018                              STORCH AMINI PC

/s/ Jeffrey Chubak
Jeffrey Chubak (admitted pro hac vice)
140 East 45th Street, 25th Floor
New York, New York 10017
Tel: (212) 490-4100
Fax: (212) 490-4208
jchubak@storchamini.com

*Attorneys for Creditor B.E. Capital Management Fund LP*

9

# **EXHIBIT 1**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:

VANITY SHOP OF GRAND FORKS, INC.,

Debtor.

Chapter 11

Case No. 17-30112

## ORDER GRANTING B.E. CAPITAL'S MOTION TO CONVERT CASE

On B.E. Capital Management Fund LP's motion to convert this chapter 11 case to one under chapter 7; and due and proper notice having been provided; now therefore, it is hereby ORDERED:

1. The motion is granted.

2. The above-captioned chapter 11 case is hereby converted to one under chapter 7.

3. The Debtor shall file the statements and schedules required by Rule 1019(1)(A) within fourteen days of entry hereof.

Dated: _____, 2018

_____
United States Bankruptcy Judge

**CERTIFICATE OF SERVICE**

    I hereby certify that on March 14, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, causing notice of such filing to be sent to all parties that have appeared in this chapter 11 case.

                                                  /s/ Jeffrey Chubak