**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

In re:

**Vanity Shop of Grand Forks, Inc.**,

                Debtor.

Case No.: 17-30112
Chapter 11

**Hearing Date: March 27, 2018 at 2:00 p.m.**
**Re: Docket No. 510 and 543**

# OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DEBTOR'S DISCLOSURE STATEMENT DATED NOVEMBER 22, 2017

Although objections to the Debtors' *Disclosure Statement With Respect to Chapter 11 Plan Of Liquidation Of Vanity Shop Of Grand Forks, Inc. Dated November 22, 2017* [Docket No. 510] (the "Disclosure Statement") are due today, March 20, 2018, Vanity Shop of Grand Forks, Inc., at 5:12 p.m., filed a *Notice of Filing of Proposed Disclosure Statement and Second Plan of Liquidation Dated March 20, 2018* [Doc. 607] together with a proposed *Disclosure Statement With Respect to the Chapter 11 Plan of Liquidation of Vanity Shop of Grand Forks, Inc.* dated March 20, 2018 and a proposed *Second Plan of Liquidation* dated March 20, 2018. Counsel to the Debtor e-mailed counsel for the Official Committee of Unsecured Creditors (the "Committee") appointed in this chapter 11 case on Sunday, March 18, 2018 at 8:17 p.m., stating that the Debtor intended "hopefully tomorrow afternoon" to file a modified plan and disclosure statement. But the Debtor did not provide drafts of these proposed, modified documents for the Committee's review or comment prior to their filing. On March 20, 2018 at 3:00 p.m. Eastern Time, counsel for the Committee requested that, if the Debtor still intended to file modified documents, it agree to a brief extension of the objection deadline to provide counsel with an opportunity to review these new documents, to consult with its client, the Committee, and to address any objections and comments

ACTIVE\54451494.v1-3/20/18

to the newly filed documents. Debtor's counsel has not yet responded to this request. These actions have deprived the Committee of due process with respect to the pending disclosure statement hearing. Accordingly, the Committee, by and through its undersigned counsel, submits this objection (the "Objection") to the Debtor's original *Disclosure Statement With Respect to Chapter 11 Plan Of Liquidation Of Vanity Shop Of Grand Forks, Inc. Dated November 22, 2017* [Docket No. 510] (the "Disclosure Statement") and fully reserves its rights to supplement this objection to address the new, last-minute filings or otherwise as well as to request a continuance of the hearing to consider approval of the Disclosure Statement, including as it may have been modified or amended.

In support of this Objection, the Committee respectfully represents as follows:

## PRELIMINARY STATEMENT

1. This is a case in which the Debtor, having no economic stake in this case, has attempted from the onset to control the plan process and dictate terms and conditions of a plan which the Committee opposes. With the Debtor's wind down concluded, the Debtor's only remaining function is the prosecution of certain claims and causes of action and the resolution of claims in this estate. Based upon the Debtor's own schedules and disclosure statement, there is no possibility that equity will receive any distribution. Accordingly, the only constituency with any real economic interest in this case are the creditors. The interests of unsecured creditors are represented by the Committee appointed by the U.S. Trustee.

2. Yet it is apparent that the Debtor is now administering this bankruptcy case solely to seek to eliminate insider liability and to redirect as much of its remaining estate back to these same insiders at the expense of non-insider creditors. It is nothing short of remarkable that the Debtor has rejected the Committee's request early on that—as is common practice in liquidating

2

cases—a liquidating trust governed by an independent trustee selected by, or at least in conjunction with and with the support of, the Committee, be established to preside over the administration of the Debtor's remaining claims and causes of action as well as the resolution of any insider claims. In addition, the Debtor has rejected the Committee's request that a post-confirmation committee or creditors' advisory board be established to oversee and provide input to the post-liquidating trust, comprised of members selected by the Committee, *i.e.*, the constituency with the largest economic stake in this case.

3. Instead, through their control of the Debtor, these insiders are apparently seeking to control the post-petition Debtor. In an effort to retain control of the Debtor's assets and maximize their claims against, and distributions from, this estate, the insiders controlling the Debtor have drafted and filed a patently flawed Plan and Disclosure Statement. During that process, rather than using the exclusivity period to negotiate with creditors regarding a consensual resolution of this case that would be in the best interest of the estate and its creditors—the real party of interest—they have refused to negotiate with the Committee in good faith with respect to that Plan, they have ignored the Committee's proposals regarding the Plan and Disclosure statement, and ultimately they unilaterally filed a Plan and Disclosure Statement (and a modified Plan and Disclosure Statement) without obtaining input or support from the Committee.

4. On December 18, 2018, the Committee filed its *Motion for Derivative Standing to Pursue Claims on Behalf of the Estate* [Docket No. 543] (the "Standing Motion"), bringing to this Court's attention a number of potential issues rendering the Plan and Disclosure Statement unconfirmable. The Standing Motion is incorporated herein by reference. This Objection presents a more fulsome recitation of the issues contained in the Disclosure Statement.

5. Furthermore, the Committee renews its suggestion and request that the parties

3

submit to mediation in an effort to seek, in good faith, to resolve the issues presented by the Plan and Disclosure Statement and the insider claims that lie at the center of that dispute. That this request has consistently fallen on deaf ears again speaks volumes with respect to the Debtor's lack of good faith and their utter disregard for creditor interests.

## ARGUMENT

6.  Under Bankruptcy Code section 1125(b), a plan proponent may not solicit acceptances or rejections of its proposed plan until creditors and other parties in interest receive "a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b). Bankruptcy Code section 1125(a) defines the term "adequate information" to mean: [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, . . . that would enable [a hypothetical investor typical of the holders of claims or interests] . . . of the relevant class to make an informed judgment about the plan . . . ." 11 U.S.C. § 1125(a) (quotes omitted).

7.  The purpose of a disclosure statement, and the "adequate information" requirement, is to provide creditors and interest holders with all the information necessary to allow them to make an informed decision about the merits of the proposed plan. *See*, *e.g., Prudential Ins. Co. v. Monnier (In re Monnier Bros.)*, 755 F.2d 1336, 1342 (8th Cir. 1985); *Duff v. United States Tr. (In re Cal. Fid., Inc.)*, 198 B.R. 567, 571 (B.A.P. 9th Cir. 1996).

8.  Courts interpreting section 1125 have articulated a list of categories of information that should generally be included in a disclosure statement. *See*, *e.g., In re Oxford Homes, Inc., 204 B.R. 264 (Bankr. D. Me. 1997)* (listing 18 categories of information to be disclosed).[1] Notably, however, "the list is not exhaustive, and a case may arise in which disclosure of all these

enumerated factors is still not sufficient to provide adequate information for the creditors to evaluate the plan." *In re Metrocraft Publ'g Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984). The adequacy of the information provided must be analyzed on a case-by-case basis.

9. As a general matter, the Debtor has refused to incorporate any of the Committee's suggestions as to the provisions of the Plan and Disclosure Statement. This has resulted, unfortunately, in a complete lack of consensual resolution of the issues identified by the Committee.

10. The Committee objects to the Disclosure Statement, in part, because it does not provide basic material information, including:

- What value are the "Released Parties" providing that warrants their release from all liability?

- Why are the "Released Parties" receiving general releases instead of releases related only to their specific roles with the Debtor.

- What oversight of the Plan Administrator will be implemented?

- When can creditors expect a distribution?

- When will the identity of the Plan Administrator be made known and who will select the Plan Administrator?

11. Based on the Debtor's failure to answer these questions and more, it is certain that the Disclosure Statement does not contain "adequate information" for creditors to make an informed decision with respect to the proposed Plan. In addition, the Committee submits the following specific objections to the Disclosure Statement.

**A.    Plan Administration Oversight**

12. To confirm a plan of reorganization, a debtor must satisfy all of the conditions set forth in Bankruptcy Code section 1129(a)(1)-(15). These include section 1129(a)(5) which requires the plan proponent to disclose "the identity and affiliations of any individual proposed to

5

serve, after confirmation of the plan, as a director, officer or voting trustee of the debtor . . ." and to demonstrate that "the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy" (emphasis added). In addition, section 1129(a)(1) requires that a plan comply with all of the applicable provisions of title 11. 11 U.S.C. § 1129(a)(1). One of those provisions is contained in section 1123(a)(7), which states that the plan shall "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director or trustee under the plan and any successor to such officer, director, or trustee." 11 U.S.C. § 1123(a)(7) (emphasis added).

13.     The Disclosure Statement provides that the Plan Administrator shall have the following powers, among others, without any provision for oversight:

  i.     review, reconcile, compromise, settle, or object to Administrative Claims (including Professional Fee Claims, Administrative Tax Claims, and Priority Tax Claims) and Claims in Class 2, Class 3, and Class 4 and resolve such objections as set forth in the Plan;

  iii.    review, reconcile, enforce, collect, compromise, **settle, or elect not to pursue any or all Causes of Action, Avoidance Actions and Preserved Claims** or similar actions;

  iv.    retain, compensate, and employ Professionals and other Persons to represent the Plan Administrator with respect to and in connection with its rights and responsibilities;

  xiv.   **exercise such other powers as deemed by the Plan Administrator to be necessary and proper to implement the provisions of the Plan**;

(emphasis added).  The breadth of power given to the Plan Administrator, with no transparency into the selection process and no oversight, is unprecedented and inappropriate.  It transmutes all decisions that should be visible and subject to public review into a black-box through which any

6

manner of self-dealing transactions may be cleansed.

14. The Committee has requested that the Debtor include provisions providing for an oversight committee to be appointed to oversee and either approve or deny actions or decisions of the Plan Administrator above a certain threshold. The Debtor has denied the Committee's request, thus far failing to include any provisions in the Plan that would limit the Plan Administrator's authority or that would permit the interests of non-insider creditors to be taken into account. In addition to supporting this Objection, the Debtor's failure in this regard provides substantial support for the Committee's Standing Motion. In any event, the Debtor's "manner of selection" of the Plan Administrator does not meet section 1123(a)(7)'s mandatory requirement and is not consistent with the interests of creditors as required by section 1129(a)(5).

15. An opinion from a court in the Southern District of New York is instructive on this point. In *In re Mesa Air Grp., Inc.*, No. 10-10018 (MG), 2011 Bankr. LEXIS 3855 (Bankr. S.D.N.Y. Jan. 20, 2011)[3], a creditor objected to confirmation of the plan, for a number of reasons, including its assertion that the proposed board of directors did "not contain meaningful representation of noninsider economic stakeholders." Mesa Air, 2011 Bankr. LEXIS 3855, at *32. However, the plan proponent responded by demonstrating that the board was selected in an open process, involving the active participation of the creditors committee, where there was "solicitation of nominations from members of the Creditors Committee, appointment of a board composition sub-committee and consideration of approximately thirty (30) potential candidates, and eventually selecting six members, all of whom were ratified by the full Creditors Committee." Id. The court found that the proposed board was "consistent with the interest of creditors and equity holders and public policy under sections 1123(a)(7) and 1129(a)(5)(A)." Id. at *33.

7

16. Unlike the plan proponent in Mesa Air, the Debtor has ignored the request of the Committee, as a fiduciary for all general unsecured creditors in this case, with respect to the Debtor's postconfirmation management. This approach is inconsistent with public policy, particularly considering that (i) the Debtor is liquidating and (ii) there is no possibility that the Debtor's equity holders will have any recovery under the Debtor's Plan. Courts have stated that when equity holders will not recover anything under the plan, such holders should not have *any* input into the selection of postconfirmation management.

### B.   The Debtor's Plan Is Patently Unconfirmable

17. It is well settled that a bankruptcy court should not approve a disclosure statement if the disclosure statement relates to a plan of reorganization that is not confirmable. Simply stated, the court should not subject an estate to the delay, expense and other burdens attendant to a contested confirmation process where it is inevitable that the plan will not be confirmed. As will be demonstrated below, this is such a case. The Debtor's Plan includes improper releases and undermines the rights and interests of unsecured creditors by ignoring their requests to have control and input over, and a transparent process for, the resolution of insider claims. Instead, it effectively places the resolution of such claims in the hands of insiders themselves by allowing them to self-select and control their own Plan Administrator. It is a Plan that fails to meet the requirements of Bankruptcy Code sections 1129(a)(5) and 1123(a)(7). The creditors should not suffer the waste of time and money that will result from a confirmation process that will ultimately fail.

18. Section 1129(a)(3) of the United States Bankruptcy Code requires that a chapter 11 plan be "proposed in good faith and not by any means forbidden by law." The Fifth Circuit has stated that good faith under section 1129(a)(3) "should be evaluated 'in light of the totality of the circumstances surrounding establishment of [the] plan,' mindful of the purposes underlying the

Bankruptcy Code." *See Western Real Estate Equities, L.L.C. v. Village at Camp Bowie I, L.P. (In re Village at Camp Bowie I, L.P.)*, 710 F.3d 239, 246 (5th Cir. 2013) (quoting *In re Cajun Elec. Power Co-op., Inc.*, 150 F.3d 503, 519 (5th Cir. 1988)).  Courts have held that approval of a disclosure statement filed in support of a patently unconfirmable plan may be denied.  *See, e.g.*, *In re American Capital Equipment, LLC*, 688 F.3d 145, 148 (3d Cir. 2012) ("a bankruptcy court has the authority to [deny approval of a disclosure statement] if it is obvious that the plan is patently unconfirmable").

19.     It is well established that a disclosure statement relating to a plan that is facially not confirmable cannot be approved as containing "adequate information" within the confines of section 1125 of the Bankruptcy Code.  In other words, "[i]f the disclosure statement describes a plan that is so 'fatally flawed' that confirmation is 'impossible,' the court should exercise its discretion to refuse to consider the adequacy of disclosures." *In re E. Me. Elec. Coop.*, 125 B.R. 329, 333 (Bankr. D. Me. 1991) (citing *In re Cardinal Congregate I*, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990)); *In re Phoenix Petroleum Co.*, 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001) (citing *In re Cardinal Congregate I*, 1121 B.R. at 764; *In re Monroe Well Serv., Inc.*, 80 B.R. 324 (Bankr. E.D. Pa. 1987); In re Pecht, 57 B.R. 137 (Bankr. E.D.Va. 1986)); *see also In re Allied Gaming Mgmt., Inc.*, 209 B.R. 201, 202 (Bankr. W.D. La. 1997) ("[N]othwithstanding adequate disclosure of information required by section 1125(b), a disclosure statement should not be approved if the proposed plan, as a matter of law, cannot be confirmed."); *In re Curtis Center Ltd. P'ship*, 195 B.R. 631, 638 (Bankr. E.D. Pa. 1996) ("[A] disclosure statement should be disapproved where the plan it describes is patently unconfirmable."); *In re Felicity Assocs., Inc.*, 197 B.R. 12, 14 (Bankr. D.R.I. 1996) (analysis of such issues at this stage of the confirmation process has become a "standard Chapter 11 practice"); *In re 266 Wash. Assocs.*, 141 B.R. 275, 288 (Bankr. E.D.N.Y.)

9

("A disclosure statement will not be approved where, as here, it describes a plan which is fatally flawed and thus incapable of confirmation."), *aff'd sub nom. In re Wash. Assocs.*, 147 B.R. 827 (Bankr. E.D.N.Y. 1992).

20. The primary reason given as to the appropriateness of reviewing patent unconfirmability at the disclosure statement stage is to "avoid engaging in a wasteful and fruitless exercise of sending the disclosure statement to creditors and soliciting votes on the proposed plan when the plan is unconfirmable on its face. Such an exercise in futility only serves to further delay a debtor's attempts to reorganize." *In re Atlanta W. VI*, 91 B.R. 620, 622 (Bankr. N.D. Ga. 1988).

### *Good Faith*

21. The Plan filed by the Debtor was not filed in good faith as required by 11 U.S.C. 1129(a)(3) and is therefore unconfirmable. As alleged in the Standing Motion, and as yet undenied, "the Debtor itself—under the ownership and control of the very Insider Entities who are subject to the Claims to be pursued—intends to select the Plan Administrator." The Debtor's Plan of Liquidation Dated November 22, 2017 (the "Plan") provides that "without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Plan Administrator may compromise and settle Claims against the Debtor and Causes of Action against other Persons including Statutory Insiders."

22. This Plan attempts to provide absolute authority over the estate's post-petition assets to the Debtor's insiders. These insiders led this company into bankruptcy and ignored of the comments and suggestions of the Committee, which represents the Debtor's unsecured creditors, the primary recipients of the debtor-in-possession's duty of loyalty, regarding the Plan and Disclosure Statement. Providing the Court's approval, in advance, to any and all settlements made by the Statutory Insiders' agent is unjustifiable and inappropriate. It is a plan provision that blatantly disregards the Bankruptcy Code's good faith requirement.

10

*Third Party Releases.*

23. Nevertheless, the Debtor's Plan would grant the "Released Parties" broad, general, third-party releases without consideration, explanation, or any ability for creditors to opt-out. The Committee objects to such releases, which are widely disfavored in bankruptcy jurisprudence. For example, In in *In re SunEdison, Inc., et al.,* Case No. 16-10992 (SMB) (Bankr. S.D.N.Y. Nov. 8, 2017), Docket No. 4253, Judge Stuart Bernstein denied the Debtors' request to force non-voting creditors to release non-debtor third parties under their plan of reorganization because the Debtors had failed to demonstrate that: (a) non-voting creditors had impliedly consented to the releases set forth in the Plan, (b) the bankruptcy court had jurisdiction to release the non-voting creditors' third-party claims, or (c) approval of the requested non-consensual third-party releases were appropriate under governing Second Circuit law – *Deutsche Bank AG v. Metromedia Fiber Network, Inc.* (*In re Metromedia Fiber Network, Inc.*), 416 F.3d 136 (2d Cir. 2005) ("*Metromedia*"). .

### C.    The Debtor's Disclosure Statement Fails to Provide Adequate Information

*The Plan Administrator's Identity*

24. The Debtor has not disclosed the identity of the Plan Administrator, the individual that will be the successor in interest to the Debtor, as required by 11 U.S.C. 1129(a)(5). Moreover, to date the Debtor has not engaged in material, good faith discussions with the Committee regarding the identity or selection process of the Plan Administrator.

*Disclosure of Committee's Opposition to the Debtor's Plan*

25. The Debtor's Disclosure Statement does not disclose that the Committee strongly opposes confirmation of the Plan, the Committee's findings regarding the likely merits of the insider litigation, or the impact of the proposed general releases on these claims. Obviously, this opposition is critical information that should be included in the Debtor's Disclosure Statement. In

the event the Court eventually approves a disclosure statement (although, as demonstrated herein, the Debtor's pending disclosure statement cannot be approved), the disclosure statement should expressly, on the first page and in bold letters, state the Committee's opposition and refer creditors to materials from the Committee included in the solicitation package outlining the Committee's position on these issues, and discussing the Committees findings and conclusions with respect to the insider claims.

## RESERVATION OF RIGHTS

26.    The Committee will be seeking discovery with regard to the Debtor's Plan and Disclosure Statement and expressly reserves the right to supplement or amend this Objection and raise any additional objections following discovery.  Further, the Committee reserves the right to respond, further object, join in, or amend any objection herein with respect to any argument or objection made by any person relating to the Motion, the Disclosure Statement, the Plan, or any hearing in connection therewith.

## CONCLUSION

**WHEREFORE**, the Committee respectfully requests that the Court: i) Deny approval of the Disclosure Statement pursuant to this Objection, and ii) grant such other relief as it deems just and appropriate.

Date: March 20, 2018                             **FOX ROTHSCHILD LLP**

By: */s/ Mette H. Kurth*
Mette H. Kurth (CA #187100*)
919 North Market Street, Suite 300
Wilmington, DE 19899-2323
Telephone: (302) 622-4209
Facsimile: (302) 656-8920
E-Mail: *mkurth@foxrothschild.com*
*Admitted in California and Delaware

-and-

12

ACTIVE\54451494.v1-3/20/18

Ellie Barragry (MN #395207)
Campbell Mithun Tower, Suite 2000
222 South Ninth Street
Minneapolis, Minnesota 55402-3338
Telephone: (612) 607-7000
Fax Telephone: (612) 607-7100
E-Mail: *ebarragry@foxrothschild.com*

*Counsel to the Official Committee of Unsecured Creditors*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on March 20, 2018 by this Court's CM/ECF System on all parties receiving electronic notice in this case.

/s/ *Mette H. Kurth*
METTE H. KURTH