# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re:<br><br>Vanity Shop of Grand Forks,<br><br>Debtor. | Case No.: 17-30112<br><br>Chapter 11 |

## DEBTOR'S RESPONSE IN OPPOSITION TO
## B.E. CAPITAL'S MOTION TO CONVERT CASE

On March 14, 2018, B.E. Capital[1] filed a motion seeking to convert this case from a chapter 11 case to a chapter 7 case. *See generally B.E. Capital's Mot. to Convert Case*, Doc. #602 ("B.E. Capital's Motion"). For the reasons outlined herein, Debtor respectfully requests denial of B.E. Capital's Motion.

## LAW AND ARGUMENT

Debtor acknowledges Section 1112 of the Bankruptcy Code allows the Court to convert a chapter 11 case to a chapter 7 case "for cause." Section 1112(b)(1) reads:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1). "Cause" to convert a case is not specifically defined, but Section 1112(b)(4) states that "cause" includes "substantial or continuing loss to or diminution of the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in B.E. Capital's Motion.

estate and the absence of a reasonable likelihood of rehabilitation[.]" 11 U.S.C. § 1112(b)(4)(A).

Despite Section 1112(b)(1) requiring conversion or dismissal if cause is shown,

> [t]he court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—
>
> > (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
> >
> > (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—
> >
> > > (i) for which there exists a reasonable justification for the act or omission; and
> > >
> > > (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2).

Here, B.E. Capital alleges cause to convert the case exists because of "continuing loss to the estate" and "the absence of a reasonable likelihood of rehabilitation" in accordance with Section 1112(b)(4)(A). *See* B.E. Capital's Mot., ¶¶ 15-21. B.E. Capital only alleges cause in accordance with Section 1112(b)(4)(A). *Id.* B.E. Capital further argues the Court has no discretion in determining whether to convert because cause is shown in accordance with Section 1112(b)(4)(A). *Id.* at ¶¶ 22-24. Because B.E. Capital fails to show "continuing loss to the estate," B.E. Capital's Motion should be denied.[2]

---

[2] B.E. Capital also argues conversion, rather than dismissal, would be in the estate's best interest. *See* B.E. Capital's Mot., ¶ 25. Debtor concurs that if the Court concludes cause

2

## I.    CAUSE DOES NOT EXIST IN ACCORDANCE WITH SECTION 1112(B)(4)(A)

"Cause" exists if "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). The plain language of the statute requires both: (1) the absence of a reasonable likelihood of rehabilitation; and (2) either substantial or continuing loss to or diminution of the estate. *Id.*

### A.    Debtor has no reasonable likelihood of rehabilitation.

Section 1112(b)(4)(A) requires the "absence of a reasonable likelihood of rehabilitation[.]" 11 U.S.C. § 1112(b)(4)(A).

> This element requires a showing that the state of the debtor's financial affairs are such that it is unable to re-establish itself on a firm or sound basis. "Rehabilitation" thus means something different from the term "reorganization" as used in reference to Chapter 11. The concept of rehabilitation necessarily hinges upon establishing a cash flow from which current obligations can be satisfied. It is thus incumbent upon the court in the instant case to determine whether [the debtor] can emerge as an economically viable enterprise capable of servicing its obligation under the plan.

*In re Schriock Constr., Inc.*, 167 B.R. 569, 576 (Bankr. D.N.D. 1994) (citations omitted).

In this case, Debtor acknowledges its reorganization plan envisions the liquidation of the estate rather than the rehabilitation of the estate as a viable enterprise going forward. Accordingly, Debtor acknowledges the "absence of a reasonable likelihood of rehabilitation," within the meaning of Section 1112(b)(4)(A), is shown.

### B.    The estate is not experiencing continuing loss.

Section 1112(b)(4)(A) also requires "substantial or continuing loss to or diminution of the estate[.]" 11 U.S.C. § 1112(b)(4)(A). B.E. Capital alleges continuing loss to the estate

---

requires action is required in accordance with Section 1112(b)(1), that conversion, rather than dismissal, would be in the estate's best interest.

3

creates "cause." B.E. Capital's Mot. ¶¶ 17-21. Citing *Loop Corp v. U.S. Trustee*, 379 F.3d 511 (8th Cir. 2004), B.E. Capital argues that whenever the ongoing expenses associated with administering an estate cause a negative cash flow the estate is experiencing a continuing loss. B.E. Capital's Mot., ¶¶ 17-18. B.E. Capital argues because the December 2017 and January 2018 monthly operating reports indicate negative cash flows, Debtor is experiencing a continuing loss. *Id.* at ¶ 19. B.E. Capital overstates what constitutes "continuing loss" in accordance with Section 1112(b)(4)(A), and B.E. Capital fails to show continuing loss to the estate.

First, multiple courts have concluded that necessary professional expenses are not "losses" within the meaning of Section 1112(b)(4)(A). In *Cohen v. United States*, 191 B.R. 482 (S.D. Fla. 1995), the Southern District Court of Florida reviewed the bankruptcy court's decision to dismiss a chapter 11 case for cause. *Id.* at 483-84. The bankruptcy court found the estate continued incurring professional fees of attorneys during the pendency of bankruptcy. *Id.* at 485. Accepting this factual finding, the district court found it was clearly erroneous to hold these fees were a continuing loss because "[a]ny professional fees are administrative expenses, necessary and ordinary expenses of bankruptcy case administration." *Id.* The court reasoned that the fees were not a "loss" to the estate because if the fees were improper or harmful to the estate, the "bankruptcy court may disallow any fees that the court finds unreasonable or extraordinary." *Id.*

Similarly, in *In re Gabriel Techs. Corp.*, No. 13-30340DM, 2013 WL 2318581 (Bankr. N.D. Cal. May 28, 2013), creditors sought appointment of a trustee to administer the estate for cause in accordance with Section 1112(b). *Id.* at *1-2. The court found the estate had "no tangible assets or realizable value and no operations[.]" *Id.* at *2. Against this

4

backdrop, the court considered "whether accrual of fees of professionals employed by the Debtors and the Committee . . . amount to the type of 'continuing loss' that Congress had in mind to trigger the nearly mandatory conversion, dismissal[,] or chapter 11 trustee options § 1112(b)(1) contemplates." *Id.* While the court found from "an accounting perspective (profit and loss), such accruals would constitute such losses[,]" the court concluded these professional fees were not an estate "loss" because "the accrual of liabilities [such as professional fees is] not the same as the incurring of actual out-of-pocket losses, such as the dissipation of assets that diminish the estate." *Id.* at *3. Additionally, the court held that even if the administrative liabilities were "losses," the losses were not "continuing":

> [T]he court must consider how long a situation must persist to be said to be continuing for purposes of § 1112(b)(4)(A). These jointly administered cases are just over three months along and the Debtors have already filed the Plan that will be tested very soon. The accrual of liabilities (losses) will end soon, either with a confirmed joint plan or conversion to chapter 7, a point conceded by Debtors' counsel to be inevitable if confirmation is denied. Thus, even if there is any continuing loss at all, it will not be continuing very long at all.

*Id.*

Here, B.E. Capital complains the administrative expenses incurred by the estate are a continuing loss. However, in accordance with the reasoning of *Cohen* and *In re Gabriel Techs*, these administrative expenses are not "losses" to the estate within the meaning of Section 1112(b)(4)(A). The complained of professional fees are "necessary and ordinary expenses of bankruptcy case administration," and the Court is empowered to reduce or disallow any fees unbeneficial to the estate. Accordingly, the fees incurred are not a "loss" to the estate.

Even if professional fee expenses can be "losses," B.E. Capital fails to show a continuing loss. In *In re Vaughan Co., Realtors*, No. 11-10-10759, 2013 WL 2244285

5

(Bankr. D.N.M. May 21, 2013), a party in interest sought to convert a chapter 11 case to chapter 7 for cause in accordance with Section 1112. *Id.* at *1. The moving party argued the continued incurring of professional fees was a "continuing loss" to the estate. *Id.* at *6. The court found administrative expenses can, in certain cases, constitute a continuing loss. *Id.* at *7 (citing *Loop Corp.*, 379 F.3d at 515). However, despite over $2 million in incurred legal fees, the court found the movant failed to show a continuing loss. *Id.* at *7-8. While the court found the professional fees created a negative cash flow for certain specific months, the court reasoned:

> 1) the amount of liquid assets in the estate, net of estate payables, has increased since commencement of this Chapter 11 case; 2) the amount of funds received by the estate has exceeded the sum of total estate disbursements and unpaid estate payables; 3) the unpaid administrative expenses do not exceed the cumulative funds available in the estate to pay those expenses; 4) the Trustee has already realized more than $3 million from her settlements of various adversary proceedings, is continuing to settle claims, and substantial claims remain; 5) the Trustee has made a substantial investment in her pending claims and has already incurred a substantial portion of the cost to litigate those claims; and 6) the Trustee has taken reasonable and appropriate steps to minimize the litigation costs associated with her prosecution of her remaining claims.

*Id.* at *8.

Similarly, in *In re MSR Hotels & resorts, Inc.*, Case No. 13-11512 (SHL), 2013 WL 5716897 (Bankr. S.D.N.Y. Oct. 1, 2013), creditors sought to force conversion of a chapter 7 case to a chapter 11 case. *Id.* The court held cause did not exist to convert the bankruptcy, reasoning the case "encompasses a long history of protracted contentious litigation," and that continuation of the chapter 11 bankruptcy "is necessary[] so as to give the REIT the opportunity to implement a sale of its assets[.]" *Id.* The court found conversion to chapter 7 would not "necessarily result in lower cost to the estate, as it would take extensive time and

6

effort for such a Chapter 7 Trustee to familiarize him or herself with the complex facts and arguments in this case. . . . Moreover, the cost of running the sale process would arise whether in Chapter 11, Chapter 7, or a non-bankruptcy sale." *Id.* The court continued that "[w]hile there is a possibility that the cost of defending against Five Mile's litigation would not arise in Chapter 7, Five Mile cannot have it both ways, and cannot pin the blame for the cost of its own litigation tactics on the debtor." *Id.* Likewise, in *In re Melendez Concrete Inc.*, No. 11-0-012334 JA, 2009 WL 2997920 (Bankr. D.N.M. Sept. 15, 2009), the court held cause did not exist to convert liquidating debtor's estate, despite operating reports reflecting no post-petition income, and despite the incurment of post-petition expenses. *Id.* at *5. In other words, the courts compares whether the losses being incurred in chapter 11 would be greater than the losses that would be incurred if converted to chapter 7 when determining whether a continuing loss existed.

Despite the fact the estate continues to incur expenses, the continuation of the chapter 11 case has not caused a "loss" in this case. *Cf.* Black's Law Dictionary 1029 (Bryan A. Garner ed., 9th 2009) (defining "loss" as "the disappearance or diminution of value, usu[sually] in an unexpected or relatively unpredictable way"). Debtor's estate has been significantly enhanced while proceeding in chapter 11, including:

    i.    Drafting and approval of the following final first-day orders allowing for the orderly commencement of this chapter 11 case.

    ii.    Successfully conducted going-out-of-business store closing sales at all 137 store locations in twenty-seven (27) states. The store closing sales generated $15,726,000 [Doc. 246].

    iii.    Paid off the primary secured creditor Wells Fargo Bank, N.A. in full.

    iv.    Obtained orders rejecting leases for all of the Debtor's store locations [Docs. 220, 228, 240, 241, 269].

   v.   Prepared and filed the federal and state tax returns for the fiscal period ending 2/25/17.

   vi.   Successfully defended the adversary proceeding brought by Anfield Apparel Group, Inc. for reclamation of goods and/or an administrative expense [Docs. 392 & 461].

   vii.   Filed a motion to sell intellectual property free and clear of liens and encumbrances [Doc. 430] and conducted an auction on October 26, 2017 at which sale the intellectual property was sold to two bidders for the total of $477,500. The Court confirmed the two separate sales on October 26, 2017 [Doc. 486] and November 14, 2017 [Doc. 503].

Continuing as a chapter 11 case would not cause a continuing loss to the estate because conversion to chapter 7 would still require costs associated with liquidation, and continuing in chapter 11 will avoid additional time and monetary costs associated with a chapter 7 trustee familiarizing him or herself with this case. Indeed, the literature actually shows creditors' recoveries are generally enhanced when a debtor is allowed to see a chapter 11 liquidation plan to fruition, as compared to when chapter 11 liquidation cases are converted to chapter 7 cases. *See generally* Stephen J. Lubben, *Business Liquidation*, 81 Am. Bankr. L.J. 65, 79-81 (Winter 2007) (outlining statistics on respected returns to unsecured creditors among strait chapter 7 cases, straight chapter 11 cases, and cases converted from chapter 11 to chapter 7).

  B.E. Capital fails to show continuing loss. Debtor's counsel's efforts have greatly enhanced the estate. Additionally, the costs of which B.E. Capital complains would still exist even if converted to chapter 7, so continuing in chapter 11 does not cause "loss." Because B.E. Capital fails to show "continuing loss," B.E. Capital has not established cause to convert this case.

## CONCLUSION

For the foregoing reasons, Debtor respectfully requests the Court deny B.E. Capital's Motion.

Dated this 3rd day of April, 2018.

**VOGEL LAW FIRM**

BY: /s/  Jon R. Brakke
Jon R. Brakke (#03554)
jbrakke@vogellaw.com
Caren W. Stanley (#06100)
cstanley@vogellaw.com
Drew J. Hushka (#08230)
dhushka@vogellaw.com
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
Telephone:  701.237.6983
ATTORNEYS FOR DEBTOR

9

3209071.1

**Re:  Vanity Shop of Grand Forks**
     **Case No. 17-30112**

STATE OF NORTH DAKOTA  )
                       ) SS    **CERTIFICATE OF SERVICE**
COUNTY OF CASS         )

Jill Nona, being first duly sworn, does depose and say:  she is a resident of Fargo, North Dakota, of legal age and not a party to or interested in the above-entitled matter.

On April 4, 2018, affiant caused the following document:

**DEBTOR'S RESPONSE IN OPPOSITION TO
B.E. CAPITAL'S MOTION TO CONVERT CASE**

to be served electronically on all ECF Filing Participants.

/s/  Jill Nona
Jill Nona

Subscribed and sworn to before me this 4th day of April, 2018.

/s/ Pamela Armstrong
(SEAL)                Notary Public, Cass County, North Dakota