**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| In Re:<br><br>Vanity Shop of Grand Forks, Inc.,<br><br>Debtor. | Case No.: 17-30112<br><br>Chapter 11 |
|---|---|

**NOTICE OF FILING OF PROPOSED DISCLOSURE STATEMENT AND SECOND PLAN OF LIQUIDATION DATED APRIL 9, 2018**

PLEASE TAKE NOTICE that, on November 22, 2017, Vanity Shop of Grand Forks, Inc. (the "Debtor") in the above-captioned Chapter 11 case filed a *Disclosure Statement with Respect to the Chapter 11 Plan of Liquidation of Vanity Shop of Grand Forks, Inc. dated November 22, 2017* (the "Disclosure Statement") [Doc. 510] and Debtor's Plan of Liquidation dated November 22, 2017 (the "Plan") [Doc. 511].

PLEASE TAKE FURTHER NOTICE that a hearing to consider the approval of the Disclosure Statement is scheduled for **April 10, 2018 at 2:30 p.m. CST** before the Honorable Shon Hastings, at the United States Bankruptcy Court for the District of North Dakota, Courtroom #3, Second Floor, Quentin N. Burdick United States Courthouse, 655 First Avenue North, Fargo, North Dakota, 58102.

PLEASE TAKE FURTHER NOTICE that, attached hereto as **Exhibit A** is a proposed Disclosure Statement with Respect to the Chapter 11 Plan of Liquidation of Vanity Shop of Grand Forks, Inc. dated April 9, 2018 and attached hereto as **Exhibit B** is a proposed Debtor's Second Plan of Liquidation dated April 9, 2018 for the convenience of the Court and all interested parties.

Dated this 9th day of April, 2018.

**VOGEL LAW FIRM**

BY: */s/ Caren W. Stanley*
     Jon R. Brakke (#03554)
     jbrakke@vogellaw.com
     Caren W. Stanley (#06100)
     cstanley@vogellaw.com
     218 NP Avenue
     PO Box 1389
     Fargo, ND  58107-1389
     Telephone:  701.237.6983
     *COUNSEL TO DEBTOR IN POSSESSION*

3220470.1

# EXHIBIT A

**(Disclosure Statement with Respect to Chapter 11 Plan of Liquidation of Vanity Shop of Grand Forks, Inc. dated April 9, 2018)**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| In Re:<br><br>Vanity Shop of Grand Forks, Inc.,<br><br>**Debtor.** | Case No.: 17-30112<br>Chapter 11 |
|---|---|

**DISCLOSURE STATEMENT WITH RESPECT TO CHAPTER 11 PLAN OF LIQUIDATION OF VANITY SHOP OF GRAND FORKS, INC.**
**DATED ~~NOVEMBER 22~~APRIL 9, ~~2017~~2018**

**DISCLAIMER**

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT RELATES TO THE CHAPTER 11 PLAN OF LIQUIDATION OF VANITY SHOP OF GRAND FORKS, INC., AND IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN.

ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, OTHER EXHIBITS ANNEXED OR REFERRED TO IN THE PLAN, AND THIS DISCLOSURE STATEMENT. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016(C) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER LAWS GOVERNING DISCLOSURE OUTSIDE THE CONTEXT OF CHAPTER 11.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS

DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, THE DEBTOR.

THIS DISCLOSURE STATEMENT SUMMARIZES CERTAIN PROVISIONS OF THE PLAN, STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE PLAN, EVENTS IN THE CHAPTER 11 CASE OF THE DEBTOR, AND FINANCIAL INFORMATION. THE DEBTOR IS SOLELY RESPONSIBLE FOR ALL STATEMENTS IN THIS DISCLOSURE STATEMENT. THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTOR UNLESS OTHERWISE NOTED. ALTHOUGH THE DEBTOR BELIEVES THAT THE PLAN AND RELATED DOCUMENT SUMMARIES ARE FAIR AND ACCURATE, SUCH INFORMATION IS QUALIFIED TO THE EXTENT THAT IT DOES NOT SET FORTH THE ENTIRE TEXT OF THE PLAN, SUCH DOCUMENTS OR ANY STATUTORY PROVISIONS THAT MAY BE REFERENCED THEREIN. THE DEBTOR BELIEVES THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, BUT MAKES NO REPRESENTATION WITH RESPECT TO ITS ACCURACY OR COMPLETENESS.

## 1. INTRODUCTION

### *1.1 Purpose of Disclosure Statement.*

Vanity Shop of Grand Forks, Inc. ("***Debtor***") provides this Disclosure Statement (the "***Disclosure Statement***") to the Office of the United States Trustee and to all of the Debtor's known Claimholders and Interestholders pursuant to section 1125(b) of Title 11 of the United States Code (the ***"Bankruptcy Code"***) for the purpose of soliciting acceptances of the Chapter 11 Plan of Liquidation of Vanity Shop of Grand Forks, Inc. (the "Plan"), which has been filed with the United States Bankruptcy Court for the District of North Dakota (the ***"Bankruptcy Court"***). By Order dated __________, 2018, the Disclosure Statement was approved by the Bankruptcy Court as containing "adequate information" under section 1125 of the Bankruptcy Code.

The Debtor strongly urges you to read this Disclosure Statement because it contains a summary of the Plan and important information concerning the Debtor's history and operations. The Disclosure Statement also provides information as to alternatives to the Plan. A copy of the Plan accompanies this Disclosure Statement as a separate document.

PLEASE NOTE THAT MUCH OF THE INFORMATION CONTAINED HEREIN HAS BEEN TAKEN, IN WHOLE OR IN PART, FROM INFORMATION CONTAINED IN THE DEBTOR'S BOOKS AND RECORDS AND FROM MOTIONS AND OTHER PAPERS FILED WITH THE BANKRUPTCY COURT BY THE DEBTOR AND OTHER PARTIES-IN-INTEREST. ALTHOUGH THE DEBTOR HAS ATTEMPTED TO BE ACCURATE IN ALL MATERIAL RESPECTS, IT IS UNABLE TO WARRANT OR REPRESENT THAT ALL OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT ERROR.

Unless otherwise defined herein, capitalized terms contained in this Disclosure Statement shall have the same meanings as ascribed to them in the Plan. All capitalized terms used in this Disclosure Statement and not defined herein or in the Plan, but that are defined in the Bankruptcy Code, shall

have the respective meanings ascribed to them in the Bankruptcy Code. All capitalized terms used in this Disclosure Statement and not defined herein, in the Plan or in the Bankruptcy Code, but that are defined in the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***" or "***Bankruptcy Rule***"), shall have the respective meanings ascribed to them in the Bankruptcy Rules. Holders of Claims or Interests receiving this Disclosure Statement should carefully review the Plan in conjunction with their review of this Disclosure Statement.

**PLEASE REVIEW THE PLAN IN ITS ENTIRETY IN DETAIL.**

**NO REPRESENTATION CONCERNING THE DEBTOR OR THE VALUE OF ITS ASSETS HAS BEEN AUTHORIZED BY THE BANKRUPTCY COURT OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT OR ANY OTHER DISCLOSURE STATEMENT APPROVED BY THE BANKRUPTCY COURT. THE DEBTOR IS NOT RESPONSIBLE FOR ANY INFORMATION, REPRESENTATION OR INDUCEMENT MADE TO OBTAIN YOUR ACCEPTANCE, WHICH IS OTHER THAN, OR INCONSISTENT WITH, INFORMATION CONTAINED HEREIN AND IN THE PLAN.**

The purpose of this Disclosure Statement is to provide Claimholders and Interestholders, to the extent they are entitled to vote, with information determined by the Bankruptcy Court to be adequate to enable them to make an informed decision to vote to accept or reject the Plan.

### *1.2 Brief Summary of the Plan*

As described in more detail in this Disclosure Statement, during the course of the Debtor's bankruptcy case, the Debtor sold substantially all of its remaining Estate Assets, which included the Debtor's intellectual property and related assets and remaining inventory. The net proceeds received by the Debtor upon the sale of substantially all of its remaining Estate Assets were used to indefeasibly pay Wells Fargo Bank, NA (first position secured creditor) in full. The remaining proceeds of the sales of the Debtor's Revested Assets and the collection and liquidation of remaining Revested Assets of the Debtor will be used to make payments to holders of Allowed Claims in the order of priority under section 507 of the Bankruptcy Code, including Allowed Administrative Claims (including Professional Fee Claims and Priority Tax Claims), Allowed Claims in Class 2 *(i.e.*, 50% of the Face Value as settlement in full of the Class 2 Allowed Claims) and Pro Rata Distributions to Allowed Claims in Class 3 and Class 4.

### *1.3 Confirmation of Plan.*

1.3.1 ***Requirements.*** The requirements for Confirmation of the Plan are set forth in detail in section 1129 of the Bankruptcy Code. The following summarizes some of the pertinent requirements:

(a) **Acceptance by Impaired Classes.** Except to the extent that the cramdown provisions of section 1129(b) of the Bankruptcy Code may be invoked, each Class of Claims must either vote to accept the Plan or be deemed to accept the Plan because the Claims or Interests of such Class are not Impaired.

(b) **Feasibility.** The Bankruptcy Court is required to find that the Plan is likely to be implemented and that parties required to perform or pay monies under the Plan will be able to do so.

(c) **"Best Interest" Test.** The Bankruptcy Court must find that the Plan is in the "best interest" of all Claimholders. To satisfy this requirement, the Bankruptcy Court must determine that each holder of a Claim against the Debtor: (i) has accepted the Plan; or (ii) will receive or retain under the Plan money or other property which, as of the Effective Date, has a value not less than the amount such holder would receive if the Debtor's property was liquidated under Chapter 7 of the Bankruptcy Code on such date.

(d) **"Cramdown" Provisions.** Under the circumstances which are set forth in detail in section 1129(b) of the Bankruptcy Code, the Bankruptcy Court may confirm the Plan even though a Class of Claims or Interests has not accepted the Plan, so long as one Impaired Class of Claims has accepted the Plan, excluding the votes of Statutory Insiders (as defined in the Bankruptcy Code), if the Plan is fair and equitable and does not discriminate unfairly against such non-accepting Classes. The Debtor will invoke the "cramdown" provisions of section 1129(b) of the Bankruptcy Code as to holders of Equity Interests since under the Plan, the Class in which Equity Interests reside are deemed to have rejected the Plan. Should any voting Class fail to accept the Plan, the Debtor will also invoke the "cramdown" provision as to such Class.

1.3.2 ***Procedure.*** To confirm the Plan, the Bankruptcy Court must hold a hearing to determine whether the Plan meets the requirements of section 1129 of the Bankruptcy Code (the "***Confirmation Hearing***"). The Bankruptcy Court has set **______________, 2018 at [•] [•].m. CST**, for the Confirmation Hearing.

1.3.3 ***Objection to Confirmation.*** Any party-in-interest may object to Confirmation of the Plan and appear at the Confirmation Hearing to pursue such objection. The Bankruptcy Court has set **______________, 2018 at [•] [•].m. CST**, as the deadline for filing and serving upon Debtor's counsel, the United States Trustee's Office, and counsel to the Creditors' Committee objections to Confirmation of the Plan. Objections to Confirmation must be filed with the Bankruptcy Court at the following address:

U.S. Bankruptcy Court for the District of North Dakota
655 1st Avenue North, #210
Fargo, ND 58102

with a copy served upon counsel to the Debtor:

Jon R. Brakke
Caren W. Stanley
Vogel Law Firm
218 NP Avenue
PO Box 1389
Fargo, ND 58107-1389

and a copy served upon the Office of the United States Trustee:

United States Trustee
Suite 1015 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

and a copy served upon counsel to the Creditors' Committee:

Mette Kurth
Fox Rothschild LLP
1800 Century Park East
Suite 300
Los Angeles, CA 90067-1506

1.3.4 ***Effect of Confirmation.*** Except as otherwise provided in the Plan or in the Confirmation Order, upon the Effective Date, all right, title, and interest of the Debtor and the Estate in and to all Revested Assets shall irrevocably vest in the Liquidating Debtor for purposes of administration of the Plan by the Plan Administrator. The Plan provides for the wind down of the Debtor's affairs, continued liquidation and conversion of all of the Debtor's remaining assets to cash and the distribution of the net proceeds realized therefrom, in addition to cash on hand on the Effective Date of the Plan, to creditors holding Allowed Claims as of the Record Date in accordance with the relative priorities established in the Bankruptcy Code. The Plan does not provide for a distribution to holders of Equity Interests, and their votes are not being solicited. The Plan contemplates the appointment of a Plan Administrator to, among other things, finalize the wind down of the Debtor's affairs, resolve Disputed Claims, pursue any unreleased Causes of Action, Avoidance Actions and Preserved Claims, implement the terms of the Plan and make Distributions to holders of Allowed Claims. ~~The Plan also contemplates the appointment of a Special Counsel to, among other things, resolve Statutory Insider Claims and any Causes of Action that may be asserted against Statutory Insiders.~~ Confirmation serves to make the Plan binding upon the Debtor, all Creditors, Interestholders and other parties-in-interest, regardless of whether they cast a ballot (**"*Ballot*"**) to accept or reject the Plan.

***1.4 Voting on the Plan.***

1.4.1 ***Impaired Claims or Equity Interest.*** Pursuant to section 1126 of the Bankruptcy Code, only the holders of Claims in Classes "Impaired" by the Plan and receiving distributions or other treatment under the Plan may vote on the Plan. Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims may be "Impaired" if the Plan alters the legal, equitable or contractual rights of the holders of such Claims or Equity Interests treated in such Class. Claimholders not Impaired by the Plan are deemed to accept the Plan and do not have the right to vote on the Plan.

The Claimholders in any Class that will not receive any payment or distribution or retain any property pursuant to the Plan are deemed to reject the Plan and do not have the right to vote.

1.4.2 ***Eligibility.*** In order to vote on the Plan, a Claimholders must have timely filed or been assigned a timely filed proof of Claim, unless its Claim is scheduled by the Debtor and is not identified as disputed, unliquidated or contingent on the Debtor's Schedules of Assets and Liabilities (the **"*Schedules*"**). Claimholders having a Claim in more than one Class may vote in each Class in which they hold a separate Claim by casting a Ballot in each Class.

1.4.3 ***Binding Effect.*** Whether a Claimholder votes on the Plan or not, such Person will be bound by the terms of the Plan if the Plan is confirmed by the Bankruptcy Court. Absent some affirmative act constituting a vote, a Claimholder will not be included in the vote: (i) for purposes of accepting or rejecting the Plan; or (ii) for purposes of determining the number of Persons voting on the Plan.

1.4.4 ***Procedure.*** Members of Classes 2, 3, and 4 may vote to accept or reject the Plan. Class 1 is not Impaired by the Plan and is deemed, therefore, to accept the Plan. Class 5 is Impaired by the Plan and is deemed to have rejected the Plan because the Equity Interests in Class 5 will receive no distributions under the Plan. In order for your vote to count, you must complete, date, sign and properly mail the enclosed Ballot (please note that envelopes have been included with the Ballot) to:

Vanity Shop Ballot Processing Center
C/O KCC
2335 Alaska Ave.
El Segundo, CA 90245

Pursuant to Bankruptcy Rule 3017, the Bankruptcy Court has ordered that original Ballots for the acceptance or rejection of the Plan must be received by mail or overnight delivery by Kurtzman Carson Consultants (the "***Balloting Agent***") at the address set forth above on or before 4:00 p.m. CST on _______________, 2018 (the "***Voting Deadline***"). Once you have delivered your Ballot, you may not change your vote, except for cause shown to the Bankruptcy Court after notice and hearing.

The following types of Ballots will not be counted in determining whether the Plan has been accepted or rejected:

(i) any Ballot received after the Voting Deadline;

(ii) any Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

(iii) any Ballot cast by a person or entity that does not hold a Claim in a class that is entitled to vote to accept or reject the Plan;

(iv) any Ballot cast for a Claim identified in the Schedules as unliquidated, contingent, or disputed for which no proof of claim was timely filed;

(v) any Ballot cast for a Claim for which an objection or request for estimation has been filed on or before the Solicitation Date as set forth in the Order approving the Disclosure Statement;

(vi) any unsigned Ballot or Ballot that does not contain an original signature;

(vii) any Ballot transmitted to the Balloting Agent by facsimile or other means not specifically approved in the Order approving the Disclosure Statement; any Ballot that is otherwise properly completed, executed, and timely returned, but does not indicate a vote to accept or reject the Plan or that indicates a vote to both accept and reject the Plan.

The following types of Ballots will be counted in determining whether the Plan has been accepted or rejected: whenever a creditor casts more than one Ballot voting the same Claim(s) before the Voting Deadline, the last Ballot received before the Voting Deadline shall be deemed to reflect the voter's intent, and thus, to supersede any prior Ballots.

***1.5 Acceptance of the Plan.***

1.5.1 ***Claimholder Acceptance.*** As a Claimholder, your acceptance of the Plan is important. In order for the Plan to be accepted by an Impaired Class of Claims, a majority in number and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must vote to accept the Plan, or the Plan must qualify for "cramdown" of any non-accepting Class pursuant to section 1129(b) of the Bankruptcy Code. At least one impaired Class of Creditors, excluding the votes of Statutory Insiders, must actually vote to accept the Plan. You are urged to complete, date, sign and promptly mail the enclosed Ballot. Please be sure to complete the Ballot properly and legibly identify the exact amount of your Claim and the name of the Claimholder.

1.5.2 ***Cramdown Election.*** If all Classes do not accept the Plan, but at least one Impaired Class votes to accept the Plan, excluding the votes of Statutory Insiders, the Debtor may attempt to invoke the "cramdown" provisions of the Bankruptcy Code. Cramdown may be an available remedy, because the Debtor believes that, with respect to each Impaired Class, the Plan is fair and equitable within the meaning of section 1129(b)(2) of the Bankruptcy Code and does not discriminate unfairly.

***1.6 Sources of Information.*** The information contained in this Disclosure Statement has been obtained from the Debtor's books and records and from motions and other papers filed with the Bankruptcy Court by the Debtor and other parties-in-interest. Every reasonable effort has been made to present accurate information and such information is believed to be correct as of the date hereof. Any value given as to the Estate Assets of the Debtor is based upon an estimation of such value. You are strongly urged to consult with your financial and legal advisors to understand fully the Plan and Disclosure Statement.

The financial information contained in this Disclosure Statement is given as of the date hereof, unless otherwise specified. The delivery of this Disclosure Statement does not, under any circumstance, imply that there has been no change in the facts set forth herein since such date. This Disclosure Statement is intended, among other things, to summarize the Plan and must be read in conjunction with the Plan and its exhibits. If any conflicts exist between the Plan and Disclosure Statement, the terms of the Plan shall control.

***1.7 Additional Information.***

Should you have any questions regarding the Plan or this Disclosure Statement, or require clarification of any information presented herein, please contact:

Jon R. Brakke
Caren W. Stanley
218 NP Avenue
PO Box 1389
Fargo, ND 58107-1389
701.237.6389
jbrakke@vogellaw.com
cstanley@vogellaw.com

## 2. THE DEBTOR

### *2.1 Description of the Debtor.*

On March 1, 2017 (the "***Petition Date***"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court. The Debtor is authorized to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

Founded in 1966, Debtor is a North Dakota corporation headquartered in Fargo, North Dakota. Debtor opened its doors in 1969 and operated as a regional specialty retailer of casual apparel and accessories for fashion-conscious young women. Debtor owned and sold its own line of private-label goods, including private-label branded denim in approximately 137 mall-based stores spanning 27 states. Debtor's fashions were also available through www.vanity.com, which was launched in 2008. Debtor sourced reasonably priced fashion apparel and accessories from U.S.-based suppliers and overseas manufacturers. At least 60% of Debtor's inventory originated with U.S. suppliers. Ecommerce products were distributed from a building located one mile from Debtor's headquarters. Debtor employed 274 full-time and 1,049 part-time employees as of the Petition Date. Debtor's total sales in the year ending December 2016 were approximately $80 million.

### *2.2 The Debtor's Operations and Financial Difficulties.*

2.2.1 ***Corporate Structure.*** Shazzam! Inc., Debtor's parent holding company, owns 100% of Debtor's stock. Shazzam! Inc.'s only asset is Debtor's stock. The ownership of Shazzam!, Inc. is as follows:

47.385% Teresa Bottrell
14.184% James Bennett
14.184% Marnie Kimbrough
11.25% C. Anderson-Bottrell
8.001% Lowell Bottrell
3.745% Stephen J. Anderson
1.251% Stephen J. Anderson IRA

All administrative and management services for the Debtor including human resources administration, accounting/bookkeeping, marketing, IT support, product sourcing and design, training of store

employees, etc. were provided by Vanity, Inc., a North Dakota corporation formed in 1997. Vanity, Inc. had 88 full-time and 16 part-time employees as of the Petition Date.

2.2.2 ***The Debtor's Debt Structure.***

As of the Petition Date, Debtor had secured obligations owing to Wells Fargo Bank, N.A. ("***Wells Fargo***") in the aggregate principal amount of approximately $4,307,869 plus accrued and unpaid interest with respect thererto, fees, costs, and other expenses. The Debtor had granted security interests in, and liens on, all or substantially all of its assets to secure its obligations to Wells Fargo.

Additionally, TGC, L.P. ("***TGC, LP***"), a Montana limited partnership, which has common ownership with the owners identified above of Shazzam!, Inc. (*i.e.*, Teresa Bottrell, James Bennett, and Marnie Kimbrough), had loaned approximately $5,000,000 to Debtor since 2013 to allow the Debtor to continue operating. Debtor initially Scheduled the claim of TGC, LP as secured. However, TGC, LP has acknowledged its claim is unsecured due to the filing of its UCC-1 financing statement within the 90-days before the Petition Date. TGC, LP has filed an unsecured claim in the sum of $5,248,774 (proof of claim # 281).

2.2.3 ***Events Leading to the Filing.***

The Debtor incurred operational losses stemming from, among other things, expensive lease obligations, underperforming retail locations, and increased competition in the women's fashion retail industry on a broad scale. Moreover, the continued growth of online competitors and decline in mall traffic has consistently challenged the Debtor's ability to operate on a sustained profitable basis. The Debtor, after consultation with key constituents, determined that commencing store closing sales and liquidating all assets provided the best opportunity to maximize value of the Debtor's Estate for the benefit of its creditors and all interested parties.

***2.3 The Debtor's Bankruptcy Proceedings.***

2.3.1 ***Employment of Professionals.*** The Debtor requested and obtained the authority to employ the following professionals: i) Vogel Law Firm as attorneys for Debtor; (ii) Eide Bailly, LLP as accountant; (iii) Brady Martz and Associates, P.C. as accountant; (iv) Jill Motschenbacher, accountant; (v) Hilco IP Services d/b/a Hilco Streambank as Intellectual Property Disposition Consultant; (vi) Diamond B Technology Solutions, LLC as IT Consultant; (vii) Eide Bailly, LLP as Auditor for ERISA Plan; (viii) Bell Bank as Designated Trustee for ERISA Plan.

2.3.2 ***Debtor's Use of Cash Collateral.*** As part of the First Day Motions, Debtor and Wells Fargo entered into a stipulation governing the consensual use of cash collateral on a postpetition basis to allow the Debtor to conduct store closing sales. The Bankruptcy Court approved the stipulation allowing the Debtor to use cash collateral and Wells Fargo was paid off within the first three weeks of the Debtor's bankruptcy case. TGC, LP consented to the use of cash collateral without restriction.

2.3.3 ***The Creditors' Committee.*** On March 10, 2017, the Office of the United States Trustee appointed an official committee of the Debtor's unsecured creditors (the "***Creditors' Committee***") pursuant to section 1102(a) of the Bankruptcy Code. The Creditors' Committee consists of five of the Debtor's largest unsecured creditors: Washington Prime Group, Inc., GGP Limited Partnership, Simon Property Group, Inc., Cavalini, Inc. and Anfield Apparel Group, Inc.

The Creditors' Committee retained Fox Rothschild, LLP as lead counsel, and BGA Management, LLC d/b/a Alliance Management, Inc. as Financial Advisor.

2.3.4 ***The Sale of Substantially All of the Remaining Estate Assets.*** The Debtor determined the best method to realize value for the Estate was to conduct store closing sales at all of its locations and liquidate its remaining inventory and fixtures on an expedited basis.

On March 23, 2017, the Bankruptcy Court entered the Final Order: (I) Authorizing the Debtor to Assume the Consulting Agreement, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to be Free and Clear of All Liens, Claims and Encumbrances, and Granting Related Relief (the "***Store Closing Order***") [Doc. 172]. Pursuant to the Store Closing Order, the Debtor retained Tiger Capital Group, LLC to assist with conducting store closing sales at all 137 stores. By April 14, 2017, all of Debtor's inventory and fixtures were liquidated and the stores were closed and premises returned to the applicable landlord. Wells Fargo, the secured lender, was paid off, and the net proceeds from the store closing sales (in excess of $7M) is available for payment of administrative expenses and Claims.

The Debtor also retained Hilco Streambank as its Intellectual Property Disposition Consultant to assist with the sale of the Debtor's intellectual property assets including domain names, trademarks, and customer data (the "***IP Assets***"). An auction of the Debtor's IP Assets was conducted on October 25, 2017 and two subsets of IP Assets were purchased at the auction by Westerdal Corp., and Vanity Brands LLC for the total purchase prices of $340,000 and $137,500, respectively. The two sales of the Debtor's IP Assets closed on or about November 21, 2017.

2.3.5 ***Schedules and Bar Date***. On March 27, 2017, the Debtor filed its schedules of assets and liabilities and statement of financial affairs. The Court established July 3, 2017 as the Bar Date for prepetition creditors and governmental units to file proofs of claim.

## 3. SUMMARY OF THE PLAN OF LIQUIDATION

THIS SECTION PROVIDES A SUMMARY OF THE STRUCTURE AND MEANS FOR IMPLEMENTING THE PLAN AND OF THE CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN, AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN, WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT AND TO THE EXHIBITS ATTACHED THERETO.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT INCLUDE SUMMARIES OF THE PROVISIONS CONTAINED IN THE PLAN AND IN DOCUMENTS REFERRED TO THEREIN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT DO NOT PURPORT TO BE PRECISE OR COMPLETE STATEMENTS OF ALL THE TERMS AND PROVISIONS OF THE PLAN OR DOCUMENTS REFERRED TO THEREIN, AND REFERENCE IS MADE TO THE PLAN AND TO SUCH DOCUMENTS FOR THE FULL AND COMPLETE STATEMENTS OF SUCH TERMS AND PROVISIONS.

THE PLAN ITSELF AND THE DOCUMENTS REFERRED TO THEREIN CONTROL THE ACTUAL TREATMENT OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR UNDER THE PLAN AND WILL, UPON THE EFFECTIVE DATE, BE BINDING UPON HOLDERS OF

CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR AND OTHER PARTIES IN INTEREST.

***3.1 In General.***

The Plan is proposed by the Debtor. The Allowed Claims of Claimholders will be paid in accordance with priorities set forth in the Bankruptcy Code, a structure that the Debtor believes will produce a fundamentally equitable outcome for all creditors.

3.1.1 ***Estate Assets.*** On the Effective Date, the Debtor's Estate Assets not sold pursuant to the store closing sales or the IP Asset sales and/or not distributed pursuant to other provisions of the Plan or Orders of the Bankruptcy Court shall be deemed Revested Assets, and administered by the Plan Administrator pursuant to the Plan.

3.1.2 ***Plan Administrator.*** As of the Effective Date, the Plan Administrator shall be vested with full legal power, capacity and authority, and shall be directed to administer, collect and liquidate the Debtor's Revested Assets and to implement the Plan. The Plan Administrator will be Mr. David Velde, an attorney with Velde Moore, LTD, 1118 Broadway, Alexandria, MN 56308. Mr. Velde has served as a Chapter 7 United States Bankruptcy Trustee since 1998.

3.1.3 ***Causes of Action, Preserved Claims, and Avoidance Actions.*** Subject to the provisions of the Plan, the Plan Administrator may, but is not required to, pursue any Causes of Action, Preserved Claims, and Avoidance Actions not otherwise released under the Plan, or other order of the Bankruptcy Court by informal demand and/or by commencing litigation.

~~3.1.4 ***Statutory Insider Claims and Causes of Action.*** Subject to the provisions of the Plan, the Plan Administrator shall retain Special Counsel to analyze, object to, and/or prosecute the Claims of Statutory Insiders and possible Causes of Action against Statutory Insiders.~~

~~Statutory Insider Claims include but are not limited to the unsecured Claims of TGC, LP filed as proof of claim number 281 ($5,248,777.43), Sales Floor Live, LLC filed as proof of claim numbers 284 and 303 (totaling $12,255.70), Diamond B Technology Solutions, LLC filed as proof of claim numbers 280 and 299 (totaling $7,932.25), and Bottrell Family Investments, LP filed as proof of claim numbers 285 and 304 (totaling $193,994.57).~~

~~The Debtor anticipates that Administrative Claims will be filed by Statutory Insiders including Bottrell Family Investments, LP, Sales Floor Live, LLC, and Diamond B Technology Solutions, LLC in the approximate total amount of $223,000.~~

~~The Creditors' Committee has indicated possible Causes of Action that may be asserted against the Statutory Insiders include: i) recharacterizing the debt owed to TGC, LP as equity or alternatively that it be subordinated to all other unsecured creditors, ii) violations of fiduciary duty by Vanity, Inc. and directors, officers, and shareholders, iii) fraudulent transfers to Statutory Insiders; and iv) avoidable transfers to Statutory Insiders.~~

***3.2 Classification of Claims and Interests.***

3.2.1 ***Class 1.*** Class 1 consists of the Wells Fargo secured claim. Class 1 is deemed unimpaired by the Plan.

3.2.2 ***Class 2.*** Class 2 consists of general unsecured Claims with a Face Amount less than $1,500.00, including unsecured creditors with claims in excess of $1,500.00 that elect to reduce their Claim to $1,500.00 and be treated as a Class 2 creditor. Class 2 is impaired by the Plan.

3.2.3 ***Class 3.*** Class 3 consists of general unsecured Claims that are Allowed as of the Record Date. Class 3 is impaired by the Plan.

3.2.4 ***Class 4.*** Class 4 consists of general unsecured Claims that are Disputed as of the Record Date. Class 4 is impaired by the Plan.

3.2.5 ***Class 5.*** Class 5 consists of all Equity Interests. Class 5 is impaired by the Plan.

***3.3 Treatment of Claims and Interests.***

3.3.1 ***Class 1 (Wells Fargo Secured Claim).*** Wells Fargo was indefeasibly paid in full as of the date of the Disclosure Statement. Wells Fargo has no further Claim against the Debtor and will not receive any Distributions under the Plan.

3.3.2 ***Class 2 (Convenience – Unsecured Claims).*** This class shall consist of unsecured Allowed Claims not entitled to priority where the total of the unsecured Allowed Claim does not exceed $1,500.00. Any unsecured creditor whose claim exceeds $1,500.00 may elect by voting on the Plan to be treated as a Class 2 Convenience Class creditor by electing to reduce their Claim to $1,500.00. The holders of Class 2 Allowed Claims will be paid a total of 50% of their Allowed Claims as soon as reasonably practicable after the Effective Date. Such payments shall be in full satisfaction of each Class 2 Allowed Claim. The Debtor estimates that there are approximately $105,000 in Allowed Claims in Class 2.

3.3.3 ***Class 3 (Effective Date Unsecured Claims).*** Except to the extent that a holder of a Class 3 Allowed Claim agrees to a less favorable treatment, each holder of a Class 3 Allowed Claim shall receive its Pro Rata share of the First Interim Distribution after payment in full of (or reserve for) Plan Administration Expenses, all Allowed Administrative Claims ~~as set forth in Article IV above~~ (including Professional Fee Claims, Administrative Tax Claims, and Priority Tax Claims), Allowed Claims in Class 2, and the Claims Reserve. Subsequent Distributions on Class 3 Allowed Claims shall be made as soon as reasonably practicable after the Effective Date and after the reconciliation of all Class 4 Claims, unless the Plan Administrator, in its sole discretion, determines that an earlier Distribution is practicable consistent with the Plan. Such Distributions shall be in full satisfaction of each Class 3 Allowed Claim with the effective date of the satisfaction being the Final Distribution Date. The holders of Allowed Claims in Class 3 and Class 4 shall be paid Pro Rata based on the aggregate Face Amount of all Allowed Claims in both classes.

3.3.4 ***Class 4 (Post-Effective Date Unsecured Claims).*** Except to the extent that a holder of a Class 4 Claim agrees to a less favorable treatment, each holder of a Class 4 Claim that becomes an Allowed Claim shall receive its Pro Rata share of the Subsequent Interim Distributions after payment in full of (or reserve for) Plan Administration Expenses, all Allowed Administrative Claims ~~as set forth in Article IV above~~ (including Professional Fee Claims, Administrative Tax Claims, and

Priority Tax Claims), Allowed Claims in Class 2, and the First Interim Distribution on Class 3 Claims. Distributions on Class 4 Allowed Claims shall be made as soon as reasonably practicable after the Effective Date and after the reconciliation of all Class 4 Claims, unless the Plan Administrator, in its sole discretion, determines that an earlier Distribution is practicable consistent with the Plan. Such Distributions shall be in full satisfaction of each Class 4 Allowed Claim with the effective date of the satisfaction being the Final Distribution Date. The holders of Allowed Claims in Class 3 and Class 4 shall be paid Pro Rata based on the aggregate Face Amount of all Allowed Claims in both classes. For avoidance of doubt, all Class 4 Claims are considered Disputed Claims.

3.3.5 ***Class 5 (Equity Interests).*** The holders of Equity Interests in Class 5 shall have their Equity Interests against the Debtor extinguished as of the Effective Date and shall receive no Distributions under this Plan.

***3.4 Treatment of Unclassified Claims.***

3.4.1 ***Administrative Claims - Professional Claims.***

(a) **Final Professional Fee Applications.** All final requests for payment of Professional Fee Claims pursuant to Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b), or 1103 must be made by application filed with the Bankruptcy Court and served on counsel to the Debtor, counsel to the Creditors' Committee, counsel to the Plan Administrator, and the U.S. Trustee no later than the first Business Day that is thirty (30) calendar days after the Effective Date, unless otherwise ordered by the Bankruptcy Court (the "***Administrative Claim Bar Date***"). Objections to such applications must be filed and served on counsel to the Debtor, counsel to the Creditors' Committee, counsel to the Plan Administrator, the U.S. Trustee, and the requesting Professional on or before the date that is twenty-one (21) calendar days after the date on which the applicable application was served (or such longer period as may be allowed by order of the Bankruptcy Court or by agreement with the requesting Professional). Any Professional Fee Claim not timely filed and asserted will be forever barred and discharged.

(b) **Payment of Professional Fee Claims.** All Professional Fee Claims shall be paid by the Plan Administrator to the extent approved by order of the Bankruptcy Court within five (5) Business Days after entry of such order.

(c) **Post-Effective Date Services.** After the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate. The Plan Administrator shall pay any Professionals for Post-Effective Date services requested by the Plan Administrator.

3.4.2 ***Administrative Claims – Administrative Tax Claims under 503(b)(1)(B) and (C) of the Bankruptcy Code.*** Allowed Administrative Claims under section 503(b)(1)(B) and (C) of the Bankruptcy Code shall be paid in full by the Plan Administrator as soon as reasonably practicable after the Effective Date.

3.4.3 ***Priority Tax Claims.*** In full satisfaction, settlement, and release of and in exchange for such Claims, Allowed Priority Tax Claims shall be paid by the Plan Administrator, at the Plan Administrator's option, as follows: (a) cash funds equal to the unpaid portion of the Face Amount of such Allowed Priority Tax Claim on the later of the Effective Date or thirty (30) calendar days

following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim; or (b) such other treatment as to which the holder of an Allowed Priority Tax Claim and the Plan Administrator shall have agreed upon in writing.

3.4.4 ***All Other Administrative Claims.*** Any person or entity who requests compensation or expense reimbursement in the Chapter 11 case pursuant to section 503 of the Bankruptcy Code (other than Professional Fee Claims, Administrative Tax Claims and Priority Tax Claims) must file an application with the clerk of the Bankruptcy Court and serve such application on counsel for the Plan Administrator and the U.S. Trustee no later than the first Business Day that is thirty (30) calendar days after the Effective Date, unless otherwise ordered by the Court (the "***Administrative Claim Deadline***"), or be forever barred from seeking such compensation or expense reimbursement. For the avoidance of doubt, Section 503(b)(9) Claims are subject to section 4.4 of the Plan. Unless the Plan Administrator objects to an Administrative Claim, such Administrative Claim shall be deemed an Allowed Administrative Claim in the amount requested. Objections to such applications must be filed and served on counsel to the Plan Administrator, the U.S. Trustee, and the requesting claimant on or before the date that is twenty-one (21) calendar days after the date on which the applicable application was served (or such longer period as may be allowed by order of the Bankruptcy Court or by agreement with the requesting claimant). All Allowed Administrative Claims (other than Professional Fee Claims, Administrative Tax Claims and Priority Tax Claims) shall be paid by the Plan Administrator within thirty (30) days of allowance by the Bankruptcy Court, unless appealed by the Plan Administrator.

***3.5 Implementation of the Plan.***

3.5.1 ***In General.*** The Plan is a liquidating plan and provides for the liquidation of the Debtor's Estate Assets and the payment of the proceeds generated therefrom to holders of Allowed Claims in accordance with the priorities set forth in the Bankruptcy Code. The Plan Administrator may, but is not required to, pursue any Causes of Action, Preserved Claims, or Avoidance Actions not otherwise released under the Plan, or other Order of the Bankruptcy Court by informal demand and/or by the commencement of litigation in any court of competent jurisdiction, with the net recoveries of such Causes of Action, Preserved Claims, or Avoidance Actions to be distributed in accordance with the Plan. ~~The Plan also contemplates the Plan Administrator will retain Special Counsel to analyze, object to, and/or prosecute the Claims of Statutory Insiders and possible Causes of Action against Statutory Insiders.~~

3.5.2 ***Means of Implementing the Plan.*** The primary means by which the Debtor will implement the Plan is through the Plan Administrator~~ and the Special Counsel~~.

3.5.3 ***Transfer Taxes.*** Any transfer of the Debtor's Estate Assets and pursuant to the Plan shall constitute a "transfer under a plan" within the purview of section 1146(c) of the Bankruptcy Code and will not be subject to transfer, stamp or similar taxes.

3.5.4 ***Estimated Plan Distribution.*** The Allowed Administrative Claims (including Professional Fee Claims, Administrative Tax Claims and Priority Tax Claims) will be paid pursuant to priorities set forth in the Bankruptcy Code from the cash funds in the Debtor in Possession account and from the Revested Assets or Causes of Action, Preserved Claims, and Avoidance Actions. The amount of the Plan Distributions on account of Class 3 and Class 4 cannot be determined with certainty. The

following table provides a summary of the classification and treatment of Claims and Equity Interests and the potential distributions to Holders of Allowed Claims and Equity Interests under the Plan.

**THE PROJECTED RECOVERIES SET FORTH IN THE TABLE BELOW ARE ESTIMATES ONLY AND ARE SUBJECT TO CHANGE. FOR A COMPLETE DESCRIPTION OF THE DEBTOR'S CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS, REFERENCE SHOULD BE MADE TO ARTICLES III AND V OF THE PLAN.**

## SUMMARY OF EXPECTED RECOVERIES[1]

| Class | Claim/Equity Interest | Treatment of Claim/Interest | Estimated Amount of Unpaid Allowed Claims | Projected Recovery Under the Plan |
|---|---|---|---|---|
| N/A | Professional Fee Claims | All Professional Fee Claims shall be paid by the Plan Administrator to the extent approved by order of the Bankruptcy Court within five (5) Business Days after entry of such order. | Approximately $428,000~~266,000~~ owing but unpaid as of the Effective Date as follows:<br>$75,000 – Vogel Law Firm<br>$35,000 – Eide Bailly, LLP<br>$~~3,000~~15,000 – Brady Martz, LLP<br>$~~150,000~~300,000 - Fox Rothschild<br>$3,000 - BGA Management | Paid in full pursuant to Plan unless otherwise paid pursuant to other Bankruptcy Court Order |
| N/A | Administrative Tax Claim | Allowed Administrative Tax Claims under section 503(b)(1)(B) and (C) of the Bankruptcy Code shall be paid in full by the Plan Administrator as soon as reasonably practicable after the Effective Date. | Approximately $~~30,000~~0 | Paid in full pursuant to Plan unless otherwise paid pursuant to sale or other Bankruptcy Court Order |
| N/A | Priority Tax Claims | In full satisfaction, settlement, and release of and in exchange for such Claims, Allowed Priority Tax Claims shall be paid by the Plan Administrator, at the Plan Administrator's option, as follows: (a) cash funds equal to the unpaid portion of the Face Amount of such Allowed Priority Tax Claim on the later of the Effective Date or thirty (30) calendar days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim; or (b) such other treatment as to which the holder of an Allowed Priority Tax Claim and the Plan Administrator shall have agreed upon in writing. | Approximately $~~5,000~~30,000 | Paid in full pursuant to Plan unless otherwise paid pursuant to sale or other Bankruptcy Court Order |
| N/A | All Other Administrative Claims | Allowed Administrative Claims shall be paid in full in cash by the Plan Administrator as soon as reasonably practicable after the Effective Date | Approximately $~~700,000~~260,000 | Paid in full pursuant to Plan unless otherwise paid pursuant to sale or other Bankruptcy Court Order |
| 1 | Wells Fargo Secured Claim | Wells Fargo was paid in cash, in full, by the Debtor. Wells Fargo has no further claim against the Debtor and will not receive any Distributions under the Plan. | $0.00 | $0.00<br>Has already been indefeasibly paid in full. |
| 2 | Convenience Unsecured Claims | Unsecured Allowed Claims not entitled to priority where the total of the unsecured Allowed Claim does not exceed $~~2,000~~1,500.00. Any unsecured creditor whose claim exceeds $~~2,000~~1,500.00 may elect by voting on the Plan to be treated as a Class 2 | Approximately $105,000 | 50% |

[1] The recoveries set forth in this table may change based upon changes in the amount of Claims that are "Allowed" as well as other factors related to the Debtor's business operations and general economic conditions. "Allowed" means a Claim or any portion thereof (a) that has been allowed by a Final Order, or (b) as to which, on or by the Effective Date, (i) no proof of claim has been filed with the Bankruptcy Court and (ii) the liquidated and noncontingent amount of which is scheduled, other than a Claim that is scheduled in an unknown amount or as disputed, or (c) for which a proof of claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed within the periods of limitation fixed by the Plan, the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order, or (d) that is expressly allowed in a liquidated amount in the Plan. The amount of an Allowed Claim shall be the lesser of the amount stated in a proof of claim filed for such Claim (if less than the amount scheduled for such Claim), the amount agreed to in a written settlement, or the amount allowed by a Final Order. Except for any Claim that is expressly Allowed herein, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim has been filed, is not considered Allowed and shall be deemed expunged upon entry of the Confirmation Order.

| | | | | |
|---|---|---|---|---|
| | | Convenience Class creditor by electing to reduce their Claim to $~~2,000~~1,500.00. The holders of Class 2 Allowed Claims will be paid a total of 50% of their Allowed Claims as soon as reasonably practicable after the Effective Date. Such payments shall be in full satisfaction of each Class 2 Allowed Claim. | | |
| 3 | Effective Date Unsecured Claims | Except to the extent that a holder of a Class 3 Allowed Claim agrees to a less favorable treatment, each holder of a Class 3 Allowed Claim shall receive its Pro Rata share of the First Interim Distribution after payment in full of (or reserve for) Plan Administration Expenses, all Allowed Administrative Claims as set forth in Article IV above (including Professional Fee Claims, Administrative Tax Claims, and Priority Tax Claims), Allowed Claims in Class 2, and the Claims Reserve. Subsequent Distributions on Class 3 Allowed Claims shall be made as soon as reasonably practicable after the Effective Date and after the reconciliation of all Class 4 Claims, unless the Plan Administrator, in its sole discretion, determines that an earlier Distribution is practicable consistent with the Plan. Such Distributions shall be in full satisfaction of each Class 3 Allowed Claim. The holders of Allowed Claims in Class 3 and Class 4 shall be paid Pro Rata based on the aggregate Face Amount of all Allowed Claims in both classes. | Approximately $~~3,000,000~~4,509,000 | 314% |
| 4 | Post-Effective Date Unsecured Claims | Except to the extent that a holder of a Class 4 Claim agrees to a less favorable treatment, each holder of a Class 4 Claim that becomes an Allowed Claim shall receive its Pro Rata share of the Subsequent Interim Distributions after payment in full of (or reserve for) Plan Administration Expenses, all Allowed Administrative Claims as set forth in Article IV above (including Professional Fee Claims, Administrative Tax Claims, and Priority Tax Claims), Allowed Claims in Class 2, and the First Interim Distribution on Class 3 Claims. Distributions on Class 4 Allowed Claims shall be made as soon as reasonably practicable after the Effective Date and after the reconciliation of all Class 4 Claims, unless the Plan Administrator, in its sole discretion, determines that an earlier Distribution is practicable consistent with the Plan. Such Distributions shall be in full satisfaction of each Class 4 Allowed Claim. The holders of Allowed Claims in Class 3 and Class 4 shall be paid Pro Rata based on the aggregate Face Amount of all Allowed Claims in both classes. For avoidance of doubt, all Class 4 Claims are considered Disputed Claims. | Approximately $21~~19~~,000,000[2] | 314% |
| 5 | Equity Interests | The holders of Equity Interests in Class 5 shall have their Equity Interests against the Debtor extinguished as of the Effective Date and shall | N/A | 0% |

[2] The amount identified is total approximate amount of Class 4 Claims. At the present time, it is impossible to determine the amount of Class 4 Claims that will be Allowed. To the extent any Class 4 Claims become Disallowed Claims, the percentage Distributions on Allowed Class 3 and Class 4 Claims will increase.

| | | | | |
|---|---|---|---|---|
| | | receive no Distributions under this Plan. | | |

3.5.5 ***Time of Distributions.*** Except as otherwise provided for herein, ordered by the Bankruptcy Court, or otherwise, Distributions under the Plan shall be made as soon as is reasonably practicable on the later to occur of (a) the Effective Date, (b) the date a Claim becomes an Allowed Claim, or (c) the date that cash becomes available for Distribution to a particular Class pursuant to the treatment of such Class under the Plan.

***3.6 Funding and No Disbursing Agent.***

3.6.1 ***Plan Predicated Upon Liquidation of the Debtor's Estate Assets and Net Recoveries from Causes of Action, Preserved Claims, and Avoidance Actions.*** On the Effective Date, the Debtor and its Estate shall irrevocably vest in the Liquidating Debtor for purposes of administration, by the Plan Administrator, of all of its respective rights, title, and interest in and to all Revested Assets, and in accordance with section 1141 of the Bankruptcy Code. For the avoidance of doubt, the Revested Assets include Causes of Action, Avoidance Actions and Preserved Claims. Except as specifically provided in the Plan or the Confirmation Order, the Estate Assets shall automatically vest in the Liquidating Debtor free and clear of all Claims, Liens, encumbrances, or interests, and such vesting shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax. The Plan Administrator shall be the exclusive representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code regarding all Revested Assets.

On the Effective Date, the Plan Administrator shall establish the Claims Reserve for the benefit of holders of Class 3 and Class 4 Creditors whose Claims are Allowed. The Claims Reserve shall vest in the Plan Administrator and shall be maintained by the Plan Administrator in accordance with the Plan. Any recovery from Causes of Action, Avoidance Actions or Preserved Claims will be included in the Claims Reserve.

3.6.2 ***No Separate Disbursing Agent.*** The Plan Administrator shall serve as the disbursing agent for all Allowed Claims under the Plan.

***3.7 Executory Contracts and Unexpired Leases.***

3.7.1 ***Assumption/Rejection.*** The Debtor does not assume any executory contracts or unexpired leases still in effect on the Effective Date of the Plan. On the Effective Date, the Debtor's executory contracts and unexpired leases not previously rejected will be conclusively deemed rejected. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections, pursuant to section 365 of the Bankruptcy Code.

3.7.2 ***Rejection Damages Bar Date.*** If the rejection by the Debtor, pursuant to the Plan or otherwise, of an executory contract or unexpired lease results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtor, the Liquidating Debtor, the Plan Administrator or the properties of any of them unless a proof of claim was filed with the Claims Agent within the time allowed by the Bar Date (*i.e.*, July 3, 2017) or the Bankruptcy Court's applicable order authorizing the Debtor to reject an executory contract or unexpired lease; provided, however, that notwithstanding the foregoing, in the case of an executory contract or unexpired lease "deemed rejected"

pursuant to Section 6.2 of the Plan which results in a Claim, such Claim shall be forever barred and shall not be enforceable against the Debtor, the Liquidating Debtor, the Plan Administrator, the Estate or the properties of any of them unless a proof of claim is filed with the Claims Agent and served upon counsel to the Plan Administrator within thirty (30) days after the Effective Date.

***3.8 Modification of the Plan.***

3.8.1 ***Plan May Be Modified.*** The Debtor may alter, amend or modify the Plan or any Exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Hearing. After the Confirmation Date and prior to the Effective Date, the Debtor may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not materially adversely affect the treatment of Claimholders or Interestholders under the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court. From and after the Effective Date and prior to substantial consummation of the Plan (as defined in section 1101(2) of the Bankruptcy Code), the Plan Administrator may seek non-material modification or amendment of the Plan pursuant to Section 13.2 of the Plan.

***3.9 Plan Controls.***

3.9.1 ***Plan Provisions Control.*** In the event and to the extent that any provision of the Plan is inconsistent with the provisions of this Disclosure Statement or any other agreement or instrument required or contemplated to be executed by the Debtor or the Plan Administrator, the provisions of the Plan will control.

***3.10 Binding Effect.***

3.10.1 ***Provisions of Plan are Binding.*** The provisions of the Plan and the Confirmation Order are binding and will inure to the benefit of the holders of Claims against, and Equity Interests in, the Debtor and its respective successors, assigns, heirs and personal representatives, whether or not such persons voted to accept or reject the Plan.

***3.11 Procedures for Resolving Disputed Claims and Equity Interests.***

3.11.1 ***Objections to Claims.*** Subsequent to Confirmation, the Plan Administrator will have the right to object to the allowance of any Claim. Such objections, if any, will be filed with the Bankruptcy Court no later than the first Business Day that is 180 calendar days after the Effective Date. For the avoidance of doubt, the Claim Objection Deadline may be extended one or more times by the Bankruptcy Court.

3.11.2 ***No Distributions Pending Allowance.*** Except as otherwise set forth in the Plan, no payments or Distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim.

3.11.3 ***Compromises and Settlements.*** Pursuant to Bankruptcy Rule 9019(a), the Debtor may compromise and settle various (a) Claims against it, and (b) claims that Debtor may have against other Persons. The Debtor expressly reserves the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle, up to and including the Effective Date, Claims against the Debtor and claims that the Debtor may have against other Persons. After the Effective Date, such right will pass exclusively to the Plan Administrator to which such claims will be conveyed pursuant to the Plan.

~~3.11.3~~3.11.4 ***Post-Confirmation Advisory Committee***. Within ten (10) days after entry of the Confirmation Order, the Debtor, in consultation with the Creditors' Committee, will establish a Post-Confirmation Advisory Committee consisting of three (3) unsecured creditor representatives that are willing to serve in an advisory capacity to the Plan Administrator. The Post-Confirmation Advisory Committee members will agree to serve free of charge and may retain counsel at their own cost which shall not be passed along to the Debtor's Estate. The Plan Administrator will provide a quarterly report to the Post-Confirmation Advisory Committee and will consult and receive the majority approval of the Post-Confirmation Advisory Committee members of any compromise or settlement where the amount of such Disputed Claim or Cause of Action exceeds $250,000, subject to Bankruptcy Court approval if the compromise or settlement is not approved by a majority of the Post-Confirmation Advisory Committee.

~~3.11.4~~3.11.5 ***Payments and Distributions with Respect to Classes 3 and 4; Claims Reserve***. On the Effective Date, the Plan Administrator shall establish the Claims Reserve. The Claims Reserve shall vest in the Plan Administrator and shall be maintained by the Plan Administrator in accordance with the Plan. Any recovery from Causes of Action, Avoidance Actions or Preserved Claims will be included in the Claims Reserve.

The Plan Administrator shall hold the Claims Reserve for the benefit of holders of Class 3 and Class 4 Creditors whose Claims are Allowed and for the benefit of other parties entitled thereto under the Plan. The amount of the Claims Reserve will be equal to the funds held in the Debtor in Possession account as of the Effective Date, less the amounts on reserve for Plan Administration Expenses, Allowed Administrative Claims as set forth in Article IV of the Plan (including Professional Fee Claims, Administrative Tax Claims and Priority Tax Claims) and Allowed Class 2 Claims multiplied by the percentage that represents the Face Amount of Class 4 Claims compared to the Face Amount of Claims in Classes 3 and 4. Upon the allowance of any Class 4 Claims a Distribution on said Claims will be made from the Claims Reserve equal to the percentage Pro Rata distribution received by Class 3 Claims as a result of the First Interim Distribution. Allowed Claims in Class 3 and Class 4 shall be paid Pro Rata based on the aggregate Face Amount of all Allowed Claims in both classes.

***3.12 Retention of Claims Belonging to the Debtor.***

3.12.1 ***Causes of Action, Preserved Claims and Avoidance Actions.*** Except as previously waived or released, all Causes of Action, Preserved Claims, and Avoidance Actions are preserved and retained for enforcement exclusively by the Plan Administrator subsequent to the Effective Date.

***3.13 Tax Consequences.***

3.13.1 ***In General.*** The Federal income tax consequences of the Plan to a Creditor or Interestholder will depend upon a number of factors and can be complex. In general, a Creditor that

receives cash in satisfaction of its Allowed Claim will generally receive a gain or loss with respect to the principal amount of the Allowed Claim equal to the difference between: (i) the Creditor's basis in the Claim (other than any Claim in respect to accrued interest); and (ii) the balance of the cash received after any allocation to the accrued interest. The Debtor has not determined the character of any gain or loss to be recognized by an Interest Holder with respect to any distribution, if any, such Interestholder may receive under the Plan. FOR THE FOREGOING REASONS, HOLDERS OF CLAIMS AND HOLDERS OF EQUITY INTERESTS ARE ADVISED TO CONSULT WITH THEIR OWN TAX ADVISORS AS TO THE SPECIFIC TAX CONSEQUENCES (FOREIGN, FEDERAL, STATE AND LOCAL) OF THE PLAN. THE DEBTOR IS NOT MAKING ANY REPRESENTATION REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE CONFIRMATION AND CONSUMMATION OF THE PLAN AS TO ANY CREDITOR OR INTERESTHOLDER, NOR IS THE DEBTOR RENDERING ANY FORM OF LEGAL OPINION AS TO SUCH TAX CONSEQUENCES. CREDITORS AND INTERESTHOLDERS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS WITH RESPECT TO THE TREATMENT OF DISTRIBUTIONS MADE UNDER THE PLAN.

## 4. POST-CONFIRMATION ISSUES

***4.1 Role of Creditors' Committee.*** From and after the Effective Date, the Creditors' Committee shall not exist, except in accordance with Section ~~13.3~~14.3 of the Plan.

### *4.2 Employment of Counsel and Fees.*

4.2.1 ***Employment of Professionals After Confirmation.*** All professionals employed by the Debtor and the Creditors' Committee during the pendency of the Chapter 11 case shall continue to be employed, and will be entitled to compensation as holders of Administrative Claims for their services prior to the Effective Date. Upon the occurrence of the Effective Date, the Plan Administrator shall be deemed a judicial substitute for the Debtor and shall be empowered to retain and/or employ professionals.

### *4.3 Exculpation and Limitation of Liability; Releases; and Injunction.*

4.3.1 ***Compromise and Settlement of Claims, Interests and Controversies.*** Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute (a) a good faith compromise of all Claims, Equity Interests, and controversies relating to the contractual, legal and subordination rights that a holder of a Claim may have with respect to any Allowed Claim or any Distribution to be made on account of such Allowed Claim with the effective date of the compromise of any Claim being the date of the final Distribution on the same, and (b) a good faith compromise of all Claims and Causes of Action the Debtor, Creditors' Committee or any Person that could bring such Cause of Action on their behalf against the Released Parties. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interest of the Debtor, its Estate and holders, and is fair, equitable and reasonable. In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Plan Administrator may compromise and settle Claims against the Debtor and Causes of Action against other Persons including Statutory Insiders,

subject to the provisions of Sections 8.2 and 10.2 of the Plan requiring majority agreement of the Post-Confirmation Advisory Committee for settlement or compromise of any Disputed Claim or Cause of Action where the amount exceeds $250,000, if said committee can be formed, and subject to Bankruptcy Court approval if the compromise or settlement is not approved by a majority of the Post-Confirmation Advisory Committee.

4.3.2 ***Release of Liens.*** Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to the Plan, all liens, pledges, or other security interests against any property of the Estate shall be fully released, and all of the right, title and interest of any holder of such lien, pledges or other security interest shall revert to the Estate and its successors and assigns.

4.3.3 ***Releases by Holders.*** **OTHER THAN AS TO THE RIGHTS AND LIABILITIES PROVIDED FOR IN THE PLAN, AS OF THE EFFECTIVE DATE OF THE PLAN, EACH AND ALL OF THE RELEASING PARTIES SHALL BE DEEMED TO CONCLUSIVELY, ABSOLUTELY, EXPRESSLY, UNCONDITIONALLY, IRREVOCABLY, GENERALLY AND INDIVIDUALLY AND COLLECTIVELY, RELEASE, AND ACQUITTED EACH AND ALL OF THE RELEASED PARTIES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL ACTIONS, CLAIMS, EQUITY INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE AGAINST OR ON BEHALF OF ANY OR ALL OF THE RELEASED PARTIES, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT OR OTHERWISE, BY STATUTE OR OTHERWISE, THAT SUCH RELEASING PARTY (WHETHER INDIVIDUALLY OR COLLECTIVELY) EVER HAD, NOW HAS OR HEREAFTER CAN, SHALL OR MAY HAVE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR, THE DEBTOR'S LIQUIDATION, THE CHAPTER 11 CASE, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASE, INCLUDING THE NEGOTIATION, FORMULATION, PREPARATION OR PERFORMANCE OF THE STORE CLOSING SALES, THE IP ASSET SALES, THE PLAN, THE DISCLOSURE STATEMENT, OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE OF THE PLAN RELATING TO THE DEBTOR OR THE DEBTOR'S ESTATES, EXCEPT FOR ANY CLAIMS AND CAUSES OF ACTION FOR ACTUAL FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE. THE EFFECTIVE DATE OF SUCH RELEASE AS TO ANY CLAIM SHALL BE THE DATE OF THE FINAL DISTRIBUTION ON THE CLAIM. FOR THE AVOIDANCE OF DOUBT, THE DEBTOR IS NOT A "RELEASING PARTY" AND IS NOT RELEASING ANY CLAIMS AGAINST THIRD PARTIES OR THE STATUTORY INSIDERS.**

4.3.4 ***Liabilities to, and Rights of, Governmental Units.*** Nothing in the Plan or Confirmation Order shall release, or preclude: (1) any liability to a Governmental Unit that is not a Claim; (2) any Claim of a Governmental Unit arising on or after the Effective Date; (3) any liability to a Governmental Unit on the part of any Person or Entity other than the Debtor or Plan Administrator; (4) any valid right of setoff or recoupment by a Governmental Unit; or (5) any criminal liability. Nothing in the Plan or Confirmation Order shall enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence. The injunction provisions contained in the Plan and Confirmation Order are not intended and shall not be construed to bar any Governmental Unit from, after the Effective Date, pursuing any police or regulatory action.

4.3.5 ***Exculpation.*** **EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, NO EXCULPATED PARTY SHALL HAVE OR INCUR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM ANY EXCULPATED CLAIM, OBLIGATION, CAUSE OF ACTION OR LIABILITY FOR ANY EXCULPATED CLAIM, EXCEPT FOR FRAUD, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, BUT IN ALL RESPECTS SUCH ENTITIES SHALL BE ENTITLED TO RAISE ANY AFFIRMATIVE DEFENSES, INCLUDING REASONABLE RELIANCE UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN. THE DEBTOR (AND ITS RESPECTIVE AFFILIATES, AGENTS, DIRECTORS, OFFICERS, EMPLOYEES, ADVISORS AND ATTORNEYS) HAVE PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS AND PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION OF VOTES AND TRANSFER OF DEBTOR'S ESTATE ASSETS PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH TRANSFER SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR THE TRANSFER OF ESTATE ASSETS PURSUANT TO THE PLAN.**

4.3.6 ***Injunction.*** **FROM AND AFTER THE EFFECTIVE DATE, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR RELATED DOCUMENTS, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR RELATED DOCUMENTS, OR IN OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR EQUITY INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO SECTION 10.~~3~~ 4 OF THE PLAN, OR ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION 10.~~5~~ 6 OF THE PLAN ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3)**

**CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (4) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE EFFECTIVE DATE, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH HOLDER ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR EQUITY INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN.**

4.3.7 **FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASE AND EXCULPATION GRANTED IN ARTICLE X OF THE PLAN, THE DEBTOR AND HOLDERS OF CLAIMS OR EQUITY INTERESTS SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO ARTICLE X OF THE PLAN.**

4.3.8 **THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS OR EQUITY INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF CLAIMS OR EQUITY INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTOR OR ANY OF ITS ASSETS, OR ESTATE ASSETS. ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTOR SHALL BE FULLY RELEASED AND THE EQUITY INTERESTS SHALL BE CANCELLED. THE EFFECTIVE DATE OF SUCH SATISFACTION AS TO ANY CLAIM SHALL BE THE DATE OF THE FINAL DISTRIBUTION ON THE CLAIM**

4.3.9 **EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS SHALL BE FULLY RELEASED, AND THE INTERESTS SHALL BE CANCELLED, AND THE DEBTOR'S LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE. THE EFFECTIVE DATE OF SUCH RELEASE AS TO ANY CLAIM SHALL BE THE DATE OF THE FINAL DISTRIBUTION ON THE CLAIM**

4.3.10 **ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTOR, THE DEBTOR'S ESTATE, THE CREDITORS' COMMITTEE THE PLAN ADMINISTRATOR, EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS AND**

**EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ON OR AFTER THE EFFECTIVE DATE, EXCEPT AS OTHERWISE PROVIDED HEREIN OR IN A PRIOR ORDER OF THE BANKRUPTCY COURT, A CLAIM MAY NOT BE FILED OR AMENDED WITHOUT THE PRIOR AUTHORIZATION OF THE BANKRUPTCY COURT OR THE CONSENT OF THE PLAN ADMINISTRATOR. ABSENT SUCH AUTHORIZATION OR CONSENT, ANY NEW OR AMENDED CLAIM FILED SHALL BE DEEMED DISALLOWED IN FULL AND EXPUNGED WITHOUT FURTHER ORDER OF THE BANKRUPTCY COURT.**

4.3.11 ***Term of Injunctions or Stays.*** Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

4.3.12 ***No Liability for Solicitation or Participation.*** As specified in section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code are not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or the offer, issuance, sale or purchase of securities.

## 5. FEASIBILITY

### *5.1 Financial Feasibility Analysis.*

5.1.1 ***Bankruptcy Code Standard.*** The Bankruptcy Code requires that, in order to confirm the Plan, the Bankruptcy Court must find that Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor unless contemplated by the Plan.

5.1.2 ***No Need for Further Reorganization of Debtor.*** The Plan provides for the liquidation of all of the Debtor's Revested Assets. Accordingly, the Debtor believes that all Plan obligations will be satisfied without the need for further reorganization of the Debtor.

## 6. ALTERNATIVES TO PLAN

### *6.1 Chapter 7 Liquidation.*

6.1.1 ***Bankruptcy Code Standard.*** Notwithstanding acceptance of the Plan by the requisite number of Creditors and Interestholders of any Class, the Bankruptcy Court must still independently determine that the Plan provides each member of each Impaired Class of Claims and Equity Interests a recovery that has a value at least equal to the value of the distribution that each such Person would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date.

6.1.2 ***Plan is in Best Interest of Creditors.*** The Debtor believes that the Plan satisfies this standard because the Plan provides for an orderly liquidation of the Revested Assets. Furthermore, the Debtor believes that the Plan also provides Creditors with a degree of certainty that would not exist if the Revested Assets were subject to liquidation outside of the Plan and eliminates the risks and expenses of the marketplace and continual administration of the Debtor. In this regard, in the event of a liquidation under Chapter 7, some administrative expenses may go unpaid, general unsecured creditors would likely receive a lesser distribution, and the following is likely to occur:

1. Additional administrative expenses, including trustee's commissions, fees for trustee's accountant, attorneys and other professionals likely to be retained, would be incurred with priority over general unsecured claims under section 507(a)(1) of the Bankruptcy Code and would materially reduce Creditor recovery.

2. Distributions would likely be substantially delayed, while expenses of administration would continue to grow.

It is the Debtor's belief that in a Chapter 7 liquidation of the Debtor, the unsecured Creditors would not receive a distribution or would receive less of a distribution. Accordingly, the Debtor believes that the Plan is in the best interests of Creditors. *See* Chapter 7 Liquidation Comparison attached hereto as **Exhibit A**.

***6.2 Risk Factors.***

6.2.1 There can be no assurance by the Debtor that any remaining liquidation proceeds will be generated from the liquidation of the Debtor's Revested Assets. Even in the event of the liquidation of the Debtor's remaining Revested Assets, there can be no assurance by the Debtor that such sale or sales or prosecution of Causes of Action will generate additional proceeds for distribution to the holders of Allowed Claims.

6.2.2 There can be no assurance at this time of the number or amount of Claims that will ultimately be Allowed, and thus the projected recoveries disclosed in this Disclosure Statement are highly speculative. A large amount of Allowed Claims may materially and adversely affect, among other things, the recoveries to holders of Allowed Claims under the Plan.

6.2.3 Any valuation of any of the assets to be distributed under the Plan is necessarily speculative, and the value of such assets could potentially be zero. Accordingly, the ultimate value, if any, of these assets could materially affect, among other things, recoveries to the Debtor's creditors, including Claimholders in the voting classes.

6.2.4 Although the Debtor has made commercially reasonable efforts to disclose projected recoveries in this Disclosure Statement, it is possible that the amount of Allowed Claims will be materially higher than any range of possible Allowed Claims the Debtor has considered to date, and thus creditor recoveries could be materially reduced or eliminated. In addition, the timing of actual Distributions to holders of Allowed Claims may be affected by many factors that cannot be predicted. Therefore the Debtor cannot guarantee the timing of any recover on an Allowed Claim.

6.2.5 As discussed in this Disclosure Statement, there are material income tax considerations, risks and uncertainties associated with consummation of the Plan. Claimholders and

Equity Interest holders should carefully read the discussion set forth in Section 3.13 of this Disclosure Statement and consult with their own tax advisors to determine any tax implications of the Plan to such holders.

***6.3 Recommendations.***

6.3.1 It is the position of the Debtor that the Plan is substantially preferable to a liquidation under Chapter 7 of the Bankruptcy Code. Conversion of this Chapter 11 case would result in: (i) substantial delays in the distribution of any proceeds (if any) available under such alternative; (ii) increased uncertainty as to whether payments would be made to unsecured Creditors; and (iii) substantially increased administrative costs.

**THE DEBTOR RECOMMENDS THAT YOU VOTE IN FAVOR OF THE PLAN.**

## 7. CONCLUSION

It is important that you exercise your right to vote on the Plan. It is the Debtor's belief and recommendation that the Plan fairly and equitably provides for the treatment of all Claims against the Debtor and is substantially preferable to a liquidation under Chapter 7 of the Bankruptcy Code.

IN WITNESS WHEREOF, the Debtor has executed this Disclosure Statement this ~~22 20~~9th day of ~~November~~April, 201~~7~~8.

Vanity Shop of Grand Forks, Inc.

________________________________________
James Bennett
President

Dated this ~~22nd 20~~9th day of ~~November~~April, ~~2017~~2018.

**VOGEL LAW FIRM**

BY: ________________________________________

Jon R. Brakke (#03554)
jbrakke@vogellaw.com
Caren W. Stanley (#06100)
cstanley@vogellaw.com
218 NP Avenue
PO Box 1389
Fargo, ND 58107-1389
Telephone: (701) 237-6983
Fax: (701) 476-7676
ATTORNEYS FOR DEBTOR

# Exhibit A

## Chapter 7 Liquidation Comparison

| As of ~~10/28/17~~03/03/18 | Chapter 11 | Chapter 7 |
|---|---|---|
| ***Forecasted Cash Available for Distribution*** | | |
| Cash & Equivalents | $ ~~7,356,880.00~~7,463,225.59 | $ 7,~~356,880.00~~463.225.59 |
| ~~Refund IP Sale Deposits~~ | ~~$ (58,250.00)~~ | ~~$ (58,250.00)~~ |
| Release of BCBS Deposits | $ 85,3~~81.0~~00.60 | $ 85,300~~81~~.60~~0~~0 |
| | | |
| ***Forecasted Recovery for Causes of Action*** | $ 1,500,000.00 | $ 1,500,000.00 |
| **TOTAL CASH & RECEIPTS** | **$ ~~8,884,011.00~~9,048,526.19** | **$ ~~8,884,011.00~~9,048,526.19** |
| | | |
| ***Forecasted Administrative Expenses through Plan Effective Date*** | | |
| Administrative Expenses (non-professional - Claims Agent) | $ (70,000.00) | $ (70,000.00) |
| Administrative Expenses (professional) | $ (428~~266~~,000.00) | $ (428~~266~~,000.00) |
| Priority Tax Claims | $ (30~~5~~,000.00) | $ (30~~5~~,000.00) |
| Administrative Tax Claims | $ (~~30,00~~0.00) | $ (~~30,00~~0.00) |
| Administrative Non-Tax Claims | $ (~~70~~260,000.00) | $ (~~70~~260,000.00) |
| | | |
| ***Forecasted Outstanding from/after Plan Effective Date*** | | |
| Plan Administrator | $ (100,000.00) | |
| Attorney and other professional fees for Plan Administrator | $ (150,000.00) | |
| **SUBTOTAL** | **$ ~~7,563,011.00~~8,010,526.19** | **$ ~~7,813,011.0~~8,260,526.19~~0~~** |
| | | |
| **Incremental Chapter 7 Fees & Costs** | | |
| Trustee Fee % (3% of all Cash Distributed) | $ - | $ 2~~34,390.33~~71,455.79 |
| Attorney and Other Professional Fees | $ - | $ 150,000.00 |
| **TOTAL INCREMENTAL CHAPTER 7 FEES & COSTS** | **$ -** | **$ ~~384,390.33~~ 421,455.79** |
| **COMPARISON OF CHAPTER 11 VS. CHAPTER 7 AVAILABLE FUNDS FOR UNSECURED CREDITORS** | **$ ~~7,563,011.00~~8,010,526.19** | **$ 7,839,070.40~~428,620.67~~** |

## Exhibit A

### Chapter 7 Liquidation Comparison

| **As of 03/03/18** | **Chapter 11** | **Chapter 7** |
|---|---|---|
| ***Forecasted Cash Available for Distribution*** | | |
| Cash & Equivalents | $ 7,463,225.59 | $ 7,463,225.59 |
| Release of BCBS Deposits | $ 85,300.60 | $ 85,300.60 |
| | | |
| ***Forecasted Recovery for Causes of Action*** | $ 1,500,000.00 | $ 1,500,000.00 |
| **TOTAL CASH & RECEIPTS** | **$ 9,048,526.19** | **$ 9,048,526.19** |
| | | |
| ***Forecasted Administrative Expenses through Plan Effective Date*** | | |
| Administrative Expenses (non-professional - Claims Agent) | $ (70,000.00) | $ (70,000.00) |
| Administrative Expenses (professional) | $ (428,000.00) | $ (428,000.00) |
| Priority Tax Claims | $ (30,000.00) | $ (30,000.00) |
| Administrative Tax Claims | $ (0.00) | $ (0.00) |
| Administrative Non-Tax Claims | $ (260,000.00) | $ (260,000.00) |
| | | |
| ***Forecasted Outstanding from/after Plan Effective Date*** | | |
| Plan Administrator | $ (100,000.00) | |
| Attorney and other professional fees for Plan Administrator | $ (150,000.00) | |
| **SUBTOTAL** | **$ 8,010,526.19** | **$ 8,260,526.19** |
| | | |
| **Incremental Chapter 7 Fees & Costs** | | |
| Trustee Fee % (3% of all Cash Distributed) | $ - | $ 271,455.79 |
| Attorney and Other Professional Fees | $ - | $ 150,000.00 |
| **TOTAL INCREMENTAL CHAPTER 7 FEES & COSTS** | **$ -** | **$ 421,455.79** |
| **COMPARISON OF CHAPTER 11 VS. CHAPTER 7 AVAILABLE FUNDS FOR UNSECURED CREDITORS** | **$ 8,010,526.19** | **$ 7,839,070.40** |

# EXHIBIT B

**(Debtor's Second Plan of Liquidation dated April 9, 2018)**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| **In Re:**<br><br>Vanity Shop of Grand Forks, Inc.,<br><br>**Debtor.** | Case No.: 17-30112<br><br>Chapter 11 |
|---|---|

# DEBTOR'S SECOND PLAN OF LIQUIDATION DATED ~~NOVEMBER 22, 2017~~20APRIL 9, 2018

## ARTICLE I.
## SUMMARY

Vanity Shop of Grand Forks, Inc. ("**Debtor**"), debtor-in-possession in the above-captioned Chapter 11 case, hereby proposes the following Chapter 11 plan of liquidation pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

For a discussion of the Debtor's history, business, property, and a summary and analysis of the Plan, stakeholders of the Debtor should review the Disclosure Statement filed with the Bankruptcy Court to which the Plan is attached. ALL CLAIMHOLDERS AND INTERESTHOLDERS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

The Plan provides for the wind down of the Debtor's affairs, continued liquidation and conversion of all of the Debtor's remaining assets and the distribution of the net proceeds realized to creditors holding Allowed Claims in accordance with the relative priorities established in the Bankruptcy Code. The Plan does not provide for a distribution to holders of Equity Interests, and their votes are not being solicited. The Plan contemplates the appointment of a Plan Administrator to, among other things, finalize the wind down of the Debtor's affairs, resolve Disputed Claims, pursue any Causes of Action, implement the terms of the Plan and make Distributions to holders of Allowed Claims. ~~The Plan also contemplates the appointment of a Special Counsel to resolve Statutory Insider Claims.~~ This Plan also provides for the payment of Administrative Claims in full on the Effective Date of the Plan or pursuant to agreement with the claimant.

The Debtor expressly reserves its right to alter, amend or modify the Plan, one or more times, before its substantial consummation, subject to the restrictions on modification set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and as otherwise set forth in this Plan.

## ARTICLE II.
## DEFINITIONS

**2.1 Scope of definitions and rules of construction.** For purposes of the Plan, except as expressly provided or unless the context otherwise requires:

a. all Defined Terms shall have the meanings ascribed to them in Section 2.2 of the Plan;

b. any term used in the Plan that is not a Defined Term, but that is used in the Bankruptcy Code or Bankruptcy Rules has the meaning assigned to such term in the Bankruptcy Code or Bankruptcy Rules, as applicable, unless the context requires otherwise;

c. whenever the context requires, terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine;

d. any reference in the Plan to an existing document, instrument, or exhibit means such document, instrument, or exhibit as it may be amended, modified, or supplemented from time to time;

e. any reference to a specific Person includes any successors or assigns of such Person, and all rights, benefits, interests, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, trustee, liquidator, rehabilitator, conservator, successor, or assign of such Person;

f. unless otherwise indicated, the phrase "under the Plan" and similar words or phrases refer to the Plan in its entirety rather than to only a particular portion of the Plan;

g. whenever the Plan uses the word "including," such reference shall be deemed to mean "including, without limitation,";

h. captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan;

i. whenever the Plan provides that a document or thing must be "acceptable" or "satisfactory" to any Person, such requirement shall in each case be subject to a reasonableness qualifier;

j. the definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Disclosure Statement, on any Ballot, or in any other document; and

k. all other rules of construction set forth in Bankruptcy Code section 102 and in the Bankruptcy Rules shall apply; and

l. unless otherwise expressly provided herein, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**2.2 Definitions.** The following **Defined Terms** shall have the respective meanings specified below.

**2.201 "Administrative Claim"** means a claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code, including, but not limited to, (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the businesses of the Debtor, including wages, salaries or commissions for services rendered after the commencement of the Chapter 11 case, (b) Professional Fee Claims, and (c) all fees and charges assessed against the Estate under chapter 123 of title 28, United States Code.

**2.202 "Administrative Claim Bar Date"** means the first Business Day that is thirty (30) calendar days after the Effective Date.

**2.203 "Administrative Tax Claim"** means a claim for any tax of a kind specified in section 503(b)(1)(B) and (C) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code.

**2.204 "Allowed Claim"** means a Claim or any portion thereof (a) that has been allowed by a Final Order, or (b) as to which, on or by the Effective Date, (i) no proof of claim has been filed with the Bankruptcy Court and (ii) the liquidated and noncontingent amount of which is scheduled, other than a Claim that is scheduled in an unknown amount or as disputed, or (c) for which a proof of claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed within the periods of limitation fixed by the Plan, the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order, or (d) that is expressly allowed in a liquidated amount in the Plan. The amount of an Allowed Claim shall be the lesser of the amount stated in a proof of claim filed for such Claim (if less than the amount scheduled for such Claim), the amount agreed to in a written settlement, or the amount allowed by a Final Order. All Distributions on account of an Allowed Claim will be made to the Claimholder of record on the Record Date.

**2.205 "Avoidance Actions"** means, unless otherwise released under a prior Order of the Bankruptcy Court or under the Plan, Causes of Action against Persons arising under sections 502, 510, 541, 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced to prosecute such Avoidance Actions.

**2.206 "Ballot"** means the ballot form(s) that are distributed with the Disclosure Statement to Claimholders with Claims in Classes that are impaired under the Plan and entitled to vote under Articles III and V hereof in connection with the solicitation of acceptances of the Plan.

**2.207 "Bar Date"** means the date or dates established by the Bankruptcy Court and/or Bankruptcy Rule 3002 by which Proofs of Claim must be filed. The general bar date for proofs of claims was July 3, 2017 for most creditors and governmental entities.

**2.208 "Business Day"** means any day, excluding Saturdays, Sundays and legal holidays, on which commercial banks are open for business in Fargo, North Dakota.

**2.209 "Causes of Action"** means, unless otherwise released under a prior Order of the Bankruptcy Court or under the Plan, any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights (including rights to legal remedies, equitable remedies, and payment), claims, cross claims, third-party claims, interests, damages, debts, judgments, demands, obligations, liabilities, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known, unknown, foreseen, unforeseen, existing, hereinafter arising, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, non-contingent, matured, unmatured, suspected, unsuspected, disputed, undisputed, secured, or unsecured, and whether asserted or assertable directly or derivatively, arising before, on, or after the Petition Date, in contract, tort, law, equity, or pursuant to any other theory of law or otherwise. Causes of Action also include: (a) any rights of setoff, counterclaim, or recoupment and any claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Equity Interests; (c) claims pursuant to section 362 or Chapter 5 of the Bankruptcy Code; (d) any claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim. For the avoidance of doubt, ~~the~~ all Avoidance Actions and Preserved Claims are Causes of Action.

**2.210 "Claim**" means a claim against the Debtor, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

**2.211 "Claim Objection Deadline"** means the date that is the first Business Day that is at least 180 calendar days after the Effective Date. For the avoidance of doubt, the Claim Objection Deadline may be extended one or more times by the Bankruptcy Court.

**2.212 "Claims Agent"** means Kurtzman Carson Consultants, LLC, the claims and noticing agent of the Debtor.

**2.213 "Claimholder"** means a holder of a Claim.

**2.214 "Claims Reserve"** means remaining cash funds and Revested Assets held by the Plan Administrator after payment in full of all Plan Administration Expenses, Allowed Administrative Claims (including Professional Fee Claims and Administrative Tax Claims), Allowed Priority Tax Claims, Allowed Claims in Class 2, and the First Interim Distribution to Class 3.

**2.215 "Class"** means a category of Claimholders or Interestholders described in Article III and V of the Plan.

**2.216 "Confirmation Date"** means the date of entry of the Confirmation Order.

**2.217 "Confirmation Hearing"** means the hearing before the Bankruptcy Court on confirmation of the Plan and related matters under section 1128 of the Bankruptcy Code.

**2.218 "Confirmation Hearing Notice"** means the notice of, among other things, the time for submitting Ballots to accept or reject the Plan, the date, time and place of the Confirmation Hearing and the time for filing objections to the confirmation of the Plan.

**2.219 "Confirmation Order"** means the order entered by the Bankruptcy Court confirming in all respects all of the provisions, terms and conditions of this Plan.

**2.220 "Creditors' Committee"** means the Official Committee of Unsecured Creditors consisting of the Persons appointed to such Committee in the Chapter 11 case pursuant to section 1102(a) of the Bankruptcy Code and their appointed successors, as amended from time to time.

**2.221 "Disallowed Claim"** means a Claim, or any portion thereof, that (a) has been disallowed by a Final Order or (b) is scheduled at zero or as contingent, disputed or unliquidated and as to which a Bar Date has been established, but no proof of claim has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

**2.222 "Disclosure Statement"** means the written disclosure statement that relates to the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such disclosure statement may be amended, modified or supplemented from time to time.

**2.223 "Disclosure Statement Approval Order"** means a Final Order approving, among other things, the Disclosure Statement.

**2.224 "Disputed Claim"** means a Claim, or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, and includes, without limitation, a Claim that (a) has not been Scheduled or is scheduled by the Debtor as unknown or as contingent, unliquidated or disputed for which a proof of claim has been filed or (b) is the subject of an objection filed with the Bankruptcy Court and which objection has not been withdrawn or resolved by a Final Order of the Bankruptcy Court. For the avoidance of doubt, Statutory Insider Claims are Disputed Claims.

**2.225 "Distribution"** means any distribution provided for in this Plan to holders of Allowed Claims in full or partial satisfaction of such Allowed Claims.

**2.226 "Distribution Dates"** means collectively, the First Distribution Date, any Subsequent Distribution Date and the Final Distribution Date.

**2.227 "Effective Date"** means the first Business Day that is thirty (30) calendar days following the date of the entry of the entry of the order of confirmation. But if a stay of the confirmation order is in effect on that date, the effective date will be the first Business Day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

**2.228 "Effective Date Unsecured Claim"** means a Claim that is an unsecured Allowed Claim that is that will be subject to treatment as Class 3 under the Plan.

**2.229 "Estate Assets"** means all of the right, title and interest of the Debtor in and to property of whatever type or nature (real, personal, mixed, tangible or intangible), including property of the Debtor's Estate. For the avoidance of doubt, all Causes of Action, Preserved Claims and Avoidance Actions are included within Estate Assets.

**2.230 "Estate"** means the bankruptcy estate of the Debtor arising pursuant to section 541 of the Bankruptcy Code.

**2.231 "Exculpated Claim"** means any Claim related to any act or omission in connection with, derived from, based upon, related to or arising from the Debtor's in or out-of-court sale and restructuring

efforts, the Chapter 11 Case, including the negotiation and performance of the IP Asset Sales, the sale and liquidation of assets, formulation, preparation, dissemination, negotiation, filing, confirmation, approval, implementation or administration of the Disclosure Statement, the Plan, the filing of the Chapter 11 case, the pursuit of confirmation and consummation and the administration and implementation of the Plan, or the Distribution of property under the Plan or any other related agreement.

**2.232 "Exculpated Party"** means each of: (a) the Debtor and (b) Creditors' Committee and its members in their capacity as such and with respect to clauses (a) through (b) such entities' predecessors, participants, successors and assigns, subsidiaries, affiliates, beneficial owners, managed accounts or funds, current and former officers, directors, managers, principals, shareholders, direct and indirect equity holders, members, partners (general and limited), employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other Professionals.

**2.233 "Face Amount"** means (a) when used in reference to a Disputed or Disallowed Claim, the full stated amount claimed by the Claimholder in any proof of claim filed with the Bankruptcy Court, and (b) when used in reference to an Allowed Claim, the allowed amount of such Claim.

**2.234 "Final Decree"** means the order entered pursuant to section 350, of the Bankruptcy Code and Bankruptcy Rule 3022 closing the Chapter 11 case.

**2.235 "Final Distribution Date"** means the date(s) on which a final Distribution is made to holders of Allowed Claims entitled to Distributions. The Final Distribution Date(s) shall be one or more dates, as determined by the Plan Administrator, which is after the liquidation of all Estate Assets (other than those assets abandoned by the Debtor, Liquidating Debtor or the Plan Administrator, as applicable) and the collection of other sums due or otherwise remitted or returned to the Estate.

**2.236 "Final Order"** means an order or judgment, the operation or effect of which has not been stayed, reversed or amended and as to which order or judgment (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

**2.237 "First Interim Distribution"** means the initial Distribution to be made to holders of Class 3 Allowed Claims.

**2.238 "First Distribution Date"** means with respect to a Claim that is Allowed as of the Effective Date (*i.e.*, Class 3 - Effective Date Unsecured Claims), the Effective Date or the date that is as soon as reasonably practicable after the Effective Date.

**2.239 "Impaired"** refers to any Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**2.240 "Equity Interest"** means the rights of any current or former holder or owner of any shares of common stock, preferred stock or any other equity securities of the Debtor authorized and issued prior to the Confirmation Date, exclusive of any such interests held in treasury by the Debtor.

**2.241 "Interestholder"** means a holder of an Equity Interest.

**2.242 "Internal Revenue Code"** means the Internal Revenue Code of 1986, as amended.

**2.243 "Liquidating Debtor"** means the Debtor on and after the Effective Date.

**2.244 "Person"** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization or other entity.

**2.245 "Petition Date"** means March 1, 2017, which is the date Debtor filed its petition commencing its Chapter 11 case.

**2.246 "Plan"** means the plan which is proposed by the Debtor for the resolution of outstanding Claims and Equity Interests in the Chapter 11 case, as such plan may be amended or modified from time to time in accordance with the Bankruptcy Code.

**2.247 "Plan Administration Expenses"** means any and all reasonable and documented fees, costs, and expenses incurred by the Plan Administrator (or any Person engaged by the Plan Administrator to effect Distributions or otherwise assist the Plan Administrator with its duties under the Plan) in connection with any of its duties under the Plan, including (i) any administrative fees; (ii) attorneys' or other professionals' fees and expenses of the Plan Administrator; (iii) insurance fees; (iv) taxes; (v) fees payable under 28 U.S.C. § 1930; (vi) costs associated with any maintenance, liquidation, and administration of any going concern as part of the wind down of the Debtor's business operations; (vii) costs to maintain any Revested Assets while they are held for sale or otherwise liquidated; (viii) fees incurred in connection with the making of Distributions; and (ix) fees, costs, and expenses incurred in prosecution of Causes of Action, Preserved Claims and Avoidance Actions.

**2.248 "Plan Administrator"** means the Person designated for such position in the Plan Supplement or such other Person appointed in accordance with Section 7.2(a) of the Plan, acting pursuant to the authority granted under Section 7.2(c) of the Plan.

**2.249 "Plan Supplement"** means the compilation of documents and forms of documents, schedules and Exhibits to the Plan to be filed no later than seven (7) days before the Confirmation Hearing, on notice to parties in interest, and additional documents filed before the Effective Date as supplements or amendments to the Plan Supplement. The Debtor shall have the right to amend the documents contained in, and Exhibits to, the Plan Supplement through the Effective Date.

**2.250 "Preserved Claims"** means all Causes of Action (including Avoidance Actions) of the Debtor or the Estate, but excluding all Causes of Action that are expressly waived, relinquished, released, compromised, or settled in the Plan, pursuant to the Confirmation Order, or pursuant to any other order of the Bankruptcy Court. The failure to specifically identify in the Disclosure Statement or the Plan any potential or existing Causes of Action as a Preserved Claim is not intended to and shall not limit the rights of the Plan Administrator to pursue any such Causes of Action. The Debtor expressly reserves all Causes of Action, other than those Causes of Action that are expressly waived, relinquished, released, compromised, or settled in the Plan, pursuant to the Confirmation Order, or pursuant to any other order of the Bankruptcy Court, as Preserved Claims for later adjudication, and no preclusion doctrine (including the doctrines of *res judicata*, collateral estoppel, judicial estoppel, equitable estoppel, issue preclusion, claim preclusion, and laches) shall apply to such Causes of Action as Preserved Claims on or after the Effective Date.

**2.251 "Post-Effective Date Unsecured Claim"** means a Claim that is an unsecured Disputed Claim that is that will be subject to treatment as Class 4 under the Plan.

**2.252 "Priority Claim"** means an unsecured Claim that is entitled to payment before other unsecured creditors in accordance with section 507 of the Bankruptcy Code.

**2.253 "Priority Non-Tax Claim"** means any Claim of a kind specified in section 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code.

**2.254 "Priority Tax Claim"** means any Claim of a governmental unit of the kind specified in sections 502(i) or 507(a)(8) of the Bankruptcy Code.

**2.255 "Pro Rata"** means, at any time, the proportion that the Face Amount of a Claim in a particular Class bears to the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class, unless the Plan provides otherwise.

**2.256 "Professional"** means a professional retained in the Chapter 11 case pursuant to sections 327, 328 and 1103 of the Bankruptcy Code, or otherwise.

**2.257 "Professional Fee Claim"** means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services rendered after the Petition Date and prior to and including the Effective Date.

**2.258 "Record Date"** means the date that is two (2) Business Days after the entry of an order by the Bankruptcy Court approving the Disclosure Statement.

**2.259 "Released Party"** means each of: (a) the Debtor; (b) the Creditors' Committee and its members in their capacity as such; and (c) with respect to each of the foregoing entities in clauses (a) through (b), each and all of such entities' direct and indirect current and former: equity holders, affiliates, predecessors, participants, successors and assigns, parents, subsidiaries, partners (including general partners and limited partners), managed accounts or funds, management companies, fund advisors, investors, beneficial owners, managing members, directors, managers, officers, principals, advisory board members, controlling persons, employees, agents, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives and other professionals, advisors, and representatives, and each and all of their respective heirs, successors, and legal representatives.

**2.260 "Releasing Parties"** means each of (a) Wells Fargo, (b) the Interestholders, (c) all holders of Claims or Equity Interests; and (c) with respect to each of the foregoing entities in clauses (a) through (b), each and all of such entities' direct and indirect current and former: equity holders, affiliates, predecessors, participants, successors and assigns, parents, subsidiaries, partners (including general partners and limited partners), managed accounts or funds, management companies, fund advisors, investors, beneficial owners, managing members, directors, managers, officers, principals, advisory board members, controlling persons, employees, agents, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives and other professionals, advisors, and representatives, and each and all of their respective heirs, successors, and legal representatives.

**2.261 "Revested Assets"** means all Estate Assets and includes Causes of Action, Preserved Claims and Avoidance Actions.

**2.262 "Statutory Insider"** means any individual or entity within the meaning of Section 101(31) of the Bankruptcy Code and includes but is not limited to the following for purposes of this Plan: Anderson, Bottrell, Sanden, & Thompson Law firm, Barrier Lake Investments, LLC Diamond B Technology Solutions, LLC, Sales Floor Live, LLC, TGC, LP, and Vanity, Inc.

**2.263 "Statutory Insider Claim"** means a Claim by a Statutory Insider, including but not limited to for purposes of this Plan the Claims of TGC, LP filed as proof of claim number 281, Sales Floor Live, LLC filed as proof of claim numbers 284 and 303, Diamond B Technology Solutions, LLC filed as proof of claim numbers 280 and 299, Bottrell Family Investments, LP filed as proof of claim numbers 285 and 304.

**2.264 "Subsequent Interim Distribution"** means a Distribution made by the Plan Administrator subsequent to the First Interim Distribution.

**2.265 "Subsequent Distribution Date"** means any date, as determined by the Plan Administrator which is after the First Distribution Date and prior to the Final Distribution Date, on which the Plan Administrator commences a Distribution to Holders of Allowed Claims pursuant to the Plan.

**2.266 "Tax Refunds"** means the Claim of the Debtor for a refund of state or federal income taxes other than any refund of state income taxes received by a Debtor prior to the Petition Date.

**2.267 "Unimpaired"** refers to any Claim which is not Impaired.

**2.268 "U.S. Trustee"** means the Office of the United States Trustee for the District of North Dakota.

**2.269 "Wind Down End Date"** means the date on which (a) the Plan Administrator determines that the pursuit of additional Preserved Claims is not likely to yield sufficient additional proceeds to justify further pursuit of such Preserved Claims or determines to abandon any remaining Revested Assets, (b) all objections to Disputed Administrative Claims, Post-Effective Date Unsecured Claims, and Disputed Priority Claims are fully resolved, (c) all Distributions required to be made by the Plan Administrator have been made, (d) the Revested Assets have been liquidated, abandoned, or otherwise administered under the Plan, and (e) the Plan Administrator either has obtained authority from the Bankruptcy Court for the entry of the Final Decree or has been relieved of further duties pursuant to the Plan.

**2.3    Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of North Dakota, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

**2.4    Exhibits.** All exhibits are incorporated into and are a part of the Plan as if set forth in full herein and as may be filed with the Plan Supplement.

## ARTICLE III.
## CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Equity Interests in the Debtor. A Claim or Equity Interest is placed in a particular Class for the purposes of voting on the Plan and receiving Distributions pursuant to the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim in that Class and such Claim or Equity Interest has not been paid, released or otherwise settled prior to the Effective Date. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and their treatment is set forth in Article IV below.

All Allowed Claims and Equity Interests are consolidated into the Classes set forth below.

| Class | Description | Impairment | Voting Status |
|---|---|---|---|
| Unclassified | Administrative Claims | Unimpaired | Not entitled to vote |
| Unclassified | Professional Fee Claims | Unimpaired | Not entitled to vote |
| Unclassified | Priority Tax Claims | Unimpaired | Not entitled to vote |
| Class 1 | Wells Fargo Bank | Unimpaired | Not entitled to vote (deemed to accept) |
| Class 2 | Convenience Class – General Unsecured Claims | Impaired | Entitled to Vote |
| Class 3 | Effective Date Allowed Unsecured Claims | Impaired | Entitled to Vote |
| Class 4 | Post-Effective Date Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Equity Interests | Impaired | Not Entitled to Vote (deemed to reject) |

## ARTICLE IV.
## TREATMENT OF UNCLASSIFIED ADMINISTRATIVE, PROFESSIONAL, AND PRIORITY TAX CLAIMS

### 4.1 Administrative Claims -- Professional Claims.

a. Final Professional Fee Claim Applications. All final requests for payment of Professional Fee Claims pursuant to Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b), or 1103 must be made by application filed with the Bankruptcy Court and served on counsel to the Plan Administrator, counsel to the Creditors' Committee, and the U.S. Trustee no later than the first Business Day that is thirty (30) calendar days after the Effective Date, unless otherwise

ordered by the Bankruptcy Court (the "**Administrative Claim Bar Date**"). Objections to such applications must be filed and served on counsel to the Plan Administrator, counsel to the Creditors' Committee, the U.S. Trustee, and the requesting Professional on or before the date that is twenty-one (21) calendar days after the date on which the applicable application was served (or such longer period as may be allowed by order of the Bankruptcy Court or by agreement with the requesting Professional). Any Professional Fee Claim not timely filed and asserted will be forever barred and discharged.

b. Payment of Professional Fee Claims. All Professional Fee Claims shall be paid by the Plan Administrator to the extent approved by order of the Bankruptcy Court within five (5) Business Days after entry of such order.

c. Post-Effective Date Services. After the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate. The Plan Administrator shall pay any Professionals for Post-Effective Date services requested by the Plan Administrator.

**4.2 Administrative Claims –Administrative Tax Claims under section 503(b)(1)(B) and (C) of the Bankruptcy Code.** Allowed Administrative Claims under section 503(b)(1)(B) and (C) of the Bankruptcy Code shall be paid in full by the Plan Administrator as soon as reasonably practicable after the Effective Date. Creditors with Allowed Administrative Claims as of the Record Date are identified on **Exhibit A**.

**4.3 Priority Tax Claims.** In full satisfaction, settlement, and release of and in exchange for such Claims, Allowed Priority Tax Claims shall be paid by the Plan Administrator, at the Plan Administrator's option, as follows: (a) cash funds equal to the unpaid portion of the Face Amount of such Allowed Priority Tax Claim on the later of the Effective Date or thirty (30) calendar days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim; or (b) such other treatment as to which the holder of an Allowed Priority Tax Claim and the Plan Administrator shall have agreed upon in writing. Creditors with Allowed Administrative Claims as of the Record Date are identified on **Exhibit A.**

**4.4 All Other Administrative Claims.** Any person or entity who requests compensation or expense reimbursement in the Chapter 11 case pursuant to section 503 of the Bankruptcy Code (other than Professional Fee Claims, Administrative Tax Claims and Priority Tax Claims) must file an application with the clerk of the Bankruptcy Court and serve such application on counsel for the Plan Administrator and the U.S. Trustee no later than the first Business Day that is thirty (30) calendar days after the Effective Date, unless otherwise ordered by the Court (the "**Administrative Claim Deadline**"), or be forever barred from seeking such compensation or expense reimbursement. For the avoidance of doubt, Section 503(b)(9) Claims are subject to this section 4.4 of the Plan and requesting claimants must file an application unless its treatment is Allowed as of the Record Date as identified on **Exhibit A**. Unless the Plan Administrator objects to an Administrative Claim, such Administrative Claim shall be deemed an Allowed Administrative Claim in the amount requested. Objections to such applications must be filed and served on counsel to the Plan Administrator, the U.S. Trustee, and the requesting claimant on or before the date that is twenty-one (21) calendar days after the date on which the applicable application was served (or such longer period as may be allowed by order of the Bankruptcy Court or by agreement with the requesting claimant). All Allowed Administrative Claims (other than Professional

Fee Claims, Administrative Tax Claims and Priority Tax Claims) shall be paid by the Plan Administrator within thirty (30) days of allowance by the Bankruptcy Court, unless appealed by the Plan Administrator. Creditors with Allowed Administrative Claims as of the Record Date are identified on **Exhibit A**

**ARTICLE V.**
**TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**5.1 Class 1 (Wells Fargo Bank, N.A.)**. Wells Fargo Bank, N.A. was paid in full during the pendency of the Chapter 11 case. Wells Fargo has no further claim against the Debtor and will not receive a Distribution under the Plan.

**5.2 Class 2 (Convenience Unsecured Claims).** This class shall consist of unsecured Allowed Claims not entitled to priority where the total of the unsecured Allowed Claim does not exceed $1,500.00. Any unsecured creditor whose claim exceeds $1,500.00 may elect by voting on the Plan to be treated as a Class 2 Convenience Class creditor by electing to reduce their Claim to $1,500.00. The holders of Class 2 Allowed Claims will be paid a total of 50% of their Allowed Claims as soon as reasonably practicable after the Effective Date. Such payments shall be in full satisfaction of each Class 2 Allowed Claim. The Debtor estimates that there are approximately $105,000 in Allowed Claims in Class 2. Creditors with Class 2 Allowed Claims as of the Record Date are identified on **Exhibit B**.

**5.3 Class 3 (Effective Date Unsecured Claims)**. Except to the extent that a holder of a Class 3 Allowed Claim agrees to a less favorable treatment, each holder of a Class 3 Allowed Claim shall receive its Pro Rata share of the First Interim Distribution after payment in full of (or reserve for) Plan Administration Expenses, all Allowed Administrative Claims as set forth in Article IV above (including Professional Fee Claims, Administrative Tax Claims, and Priority Tax Claims), Allowed Claims in Class 2, and the Claims Reserve. Subsequent Distributions on Class 3 Allowed Claims shall be made as soon as reasonably practicable after the Effective Date and after the reconciliation of all Class 4 Claims, unless the Plan Administrator, in its sole discretion, determines that an earlier Distribution is practicable consistent with the Plan. Such Distributions shall be in full satisfaction of each Class 3 Allowed Claim with the effective date of the satisfaction being the Final Distribution Date. The holders of Allowed Claims in Class 3 and Class 4 shall be paid Pro Rata based on the aggregate Face Amount of all Allowed Claims in both classes. Creditors with Class 3 Allowed Claims as of the Record Date are identified on **Exhibit C**.

**5.4 Class 4 (Post-Effective Date Unsecured Claims)**. Except to the extent that a holder of a Class 4 Claim agrees to a less favorable treatment, each holder of a Class 4 Claim that becomes an Allowed Claim shall receive its Pro Rata share of the Subsequent Interim Distributions after payment in full of (or reserve for) Plan Administration Expenses, all Allowed Administrative Claims as set forth in Article IV above (including Professional Fee Claims, Administrative Tax Claims, and Priority Tax Claims), Allowed Claims in Class 2, and the First Interim Distribution on Class 3 Claims. Distributions on Class 4 Allowed Claims shall be made as soon as reasonably practicable after the Effective Date and after the reconciliation of all Class 4 Claims, unless the Plan Administrator, in its sole discretion, determines that an earlier Distribution is practicable consistent with the Plan. Such Distributions shall be in full satisfaction of each Class 4 Allowed Claim with the effective date of the satisfaction being the Final Distribution Date. The holders of Allowed Claims in Class 3 and Class 4 shall be paid Pro Rata based on the aggregate Face Amount of all Allowed Claims in both classes. For avoidance of doubt, all

Class 4 Claims and Statutory Insider Claims are considered Disputed Claims. Creditors with Class 4 Claims as of the Record Date are identified on **Exhibit D**.

**5.5 Class 5 (Equity Interests).** The holders of Equity Interests in Class 5 shall have their Equity Interests against the Debtor extinguished as of the Effective Date and shall receive no Distributions under this Plan.

## ARTICLE VI.
## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

**6.1 Assumed Executory Contracts and Unexpired Leases.** The Debtor assumes the following executory contracts and/or unexpired leases still in effect upon the Effective Date of the Plan:

NONE

**6.2 Deemed Rejection on the Effective Date.** On the Effective Date, the Debtor's executory contracts and unexpired leases will be conclusively deemed rejected. Section 6.2 does not apply to executory contracts or unexpired leases that (a) were previously assumed or rejected by the Debtor or are the subject of a pending assumption or rejection motion; (b) expired or terminated pursuant to their own terms; or (c) are identified in Section 6.1 above as an executory contract to be assumed. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections, pursuant to section 365 of the Bankruptcy Code.

**6.3 Rejection Bar Date**. If the rejection by the Debtor, pursuant to the Plan or otherwise, of an executory contract or unexpired lease results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtor, the Liquidating Debtor, the Plan Administrator or the properties of any of them unless a proof of claim was filed with the Claims Agent within the time allowed by the Bar Date or the Bankruptcy Court's applicable order authorizing the Debtor to reject an executory contract or unexpired lease; *provided, however*, that notwithstanding the foregoing, in the case of an executory contract or unexpired lease "deemed rejected" pursuant to Section 6.2 of this Plan which results in a Claim, such Claim shall be forever barred and shall not be enforceable against the Debtor, the Liquidating Debtor, the Plan Administrator, the Estate or the properties of any of them unless a proof of claim is filed with the Claims Agent and served upon counsel to the Plan Administrator within thirty (30) days after the Effective Date.

## ARTICLE VII.
## MEANS FOR IMPLEMENTATION OF THE PLAN

After the Effective Date, the Plan will be implemented by, among other things, the establishment of the Plan Administrator, ~~the retention of the Special Counsel,~~ and the making of Distributions by the Plan Administrator, as applicable, in accordance with the Plan.

**7.1 The Debtor's Post-Effective Date Corporate Affairs.**

a. Debtor's Existing Directors, Officers, and Managers. On the Effective Date, the Debtor's existing directors, officers, and managers shall be terminated automatically without the need for any corporate action or approval and without the need for any corporate filings, and shall have

no continuing obligations to the Debtor or the Estate following the occurrence of the Effective Date.

b. Wind Down and Dissolution of the Debtor.

(i) On the Effective Date, ~~one new share of common stock will be issued to the Plan Administrator to hold in its capacity as Plan Administrator and as the sole shareholder of Debtor~~all Equity Interests shall be cancelled and one new share of Debtor's common stock shall be issued to the Plan Administrator which will hold such share for the benefit of the holders of such former Equity Interests consistent with their former economic entitlements. Each holder of an Equity Interest shall neither receive nor retain any property or interest in property on account of such Equity Interests; provided however, that in the event that all Allowed Claims in Classes 2 through 4 have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest may receive a pro rata equity share of any remaining assets of the Debtor consistent with such holder's rights of priority of payment existing immediately prior to the Petition Date. The rights of the holders of former Equity interests in Debtor shall be nontransferable. Unless otherwise determined by the Plan Administrator, on the date that Debtor's Chapter 11 case is closed, all such former Equity Interests in Debtor shall be deemed cancelled and of no force and effect provided that such cancellation does not adversely impact the Debtor's Estate.

(ii) After the Effective Date, the Plan Administrator may decide to (i) maintain the Debtor as a corporation in good standing until such time as all aspects of the Plan pertaining to Debtor have been completed, or (ii) at such time as the Plan Administrator considers appropriate and consistent with the implementation of the Plan, merge, dissolve, or otherwise terminate the existence of the Debtor and complete the winding down of the Debtor without the necessity for any other or further actions to be taken by or on behalf of the dissolving Debtor or any other Person or any payments to be made in connection therewith.

(iii) On and after the Effective Date, pursuant to the Plan, the Plan Administrator shall have the right, but not the obligation, to wind down, sell, and otherwise liquidate all Revested Assets, including the Causes of Action, Preserved Claims and Avoidance Actions.

c. Corporate Documents and Corporate Authority.

(i) As of the Effective Date, the certificate of incorporation, bylaws, or articles of organization, as applicable, of the Debtor and the Liquidating Debtor shall be deemed amended to the extent necessary to carry out the provisions of the Plan.

(ii) The entry of the Confirmation Order shall constitute authorization for the Debtor, the Liquidating Debtor, and the Plan Administrator to take or cause to be taken all actions (including, if applicable, corporate actions) necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on, and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have

been authorized and approved by the Bankruptcy Court without further approval, act, or action under any applicable law, order, rule, or regulation.

**7.2 The Plan Administrator.**

a. Appointment. On and after the Effective Date, the initial Plan Administrator ~~identified in the Plan Supplement~~identified in the Disclosure Statement shall become and serve as Plan Administrator. Mr. David Velde, an attorney with Velde Moore, LTD, 1118 Broadway, Alexandria, MN 56308 has been selected as the initial Plan Administrator.

b. Vesting of Revested Assets. On the Effective Date, the Debtor and its Estate shall irrevocably vest in the Liquidating Debtor for purposes of administration, by the Plan Administrator, of all of its respective rights, title, and interest in and to all Revested Assets, and in accordance with section 1141 of the Bankruptcy Code. For the avoidance of doubt, the Revested Assets include Causes of Action, Avoidance Actions and Preserved Claims. Except as specifically provided in the Plan or the Confirmation Order, the Revested Assets shall automatically vest in the Liquidating Debtor free and clear of all Claims, Liens, encumbrances, or interests, and such vesting shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax. The Plan Administrator shall be the exclusive representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code regarding all Revested Assets.

c. Authority. The Plan Administrator shall have the sole authority and right on behalf of the Debtor, the Liquidating Debtor, and its Estate, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Plan, including to:

i. proceed to liquidate the Debtor's estate for the best interests of the creditors;

~~i.~~ii. review, reconcile, compromise, settle, or object to Administrative Claims (including Professional Fee Claims, Administrative Tax Claims, and Priority Tax Claims) and Claims in Class 2, Class 3, and Class 4 and resolve such objections as set forth in the Plan;

~~ii.~~iii. calculate the amount of Distributions to be made to holders of Allowed Administrative Claims (including Professional Claims, Administrative Tax Claims, and Priority Tax Claims) and Allowed Claims in Class 2, Class 3, Class 4, and Class 5 Claims in accordance with the Plan, and use cash funds to make Distributions in accordance with the Plan;

iv. review, reconcile, enforce, collect, compromise, settle, or elect not to pursue any or all Causes of Action, Avoidance Actions and Preserved Claims or similar actions;

~~iii.~~v. provide a quarterly report to a three (3) person consultative committee of unsecured creditors as established in section 10.2, identifying Causes of

Action, Avoidance Actions and Preserved Claims or similar actions that were pursued, settled and/or compromised;

~~iv.~~vi. retain, compensate, and employ Professionals and other Persons to represent the Plan Administrator with respect to and in connection with its rights and responsibilities;

~~v.~~vii. establish, maintain, and administer all documents and accounts of the Liquidating Debtor as appropriate, which shall be segregated to the extent appropriate in accordance with the Plan;

~~vi.~~viii. maintain, conserve, supervise, prosecute, collect, settle, and protect the Revested Assets (subject to the limitations described herein);

~~vii.~~ix. sell, liquidate, transfer, assign, distribute, abandon, or otherwise dispose of the Revested Assets or any part thereof upon such terms as the Plan Administrator determines to be necessary, appropriate, or desirable in its sole discretion;

~~viii.~~x. invest cash funds of the Liquidating Debtor and the Estate, including any cash realized from the liquidation of the Revested Assets;

~~ix.~~xi. pay the Plan Administration Expenses;

~~x.~~xii. the winding down of the remaining affairs of the Debtor (including, to the extent not already terminated, the 401K and other employee health and benefit plans of the Debtor);

~~xi.~~xiii. prepare and file any and all informational returns, reports, statements, returns, and other documents or disclosures relating to the Debtor or the Liquidating Debtor that are required under the Plan, by any governmental unit, or by applicable law;

~~xii.~~xiv. take such actions as are necessary or appropriate to close or dismiss the Chapter 11 case;

~~xiii.~~xv. comply with the Plan, exercise the Plan Administrator's rights, and perform the Plan Administrator's obligations;

~~xiv.~~xvi. exercise such other powers as deemed by the Plan Administrator to be necessary and proper to implement the provisions of the Plan;

~~xv.~~xvii. execute any and all documents and instruments necessary to effectuate the provisions of the Plan;

~~xvi.~~xviii. amendment of any Liquidating Debtor's organizational documents and dissolution of the Liquidating Debtor under applicable state law; and

~~xvii.~~xix. To the extent necessary to give full effect to its exclusive administrative rights and duties under the Plan, the Plan Administrator shall be deemed to be vested with all rights, powers, privileges, and authorities of (i) a board of directors or an appropriate corporate officer of the Liquidating Debtor under any applicable non-bankruptcy law and (ii) a "trustee" of the Liquidating Debtor under sections 704 and 1106 of the Bankruptcy Code.

d. Tax Reporting.

i. The Plan Administrator shall file any and all tax returns for the Liquidating Debtor and the Estate, as applicable, provided however, the Plan Administrator shall have no personal liability for the signing or accuracy of the Debtor's or Liquidating Debtor's tax returns that are due to be filed after the Effective Date or for any tax liability related thereto.

ii. The Plan Administrator shall be responsible for payment, out of the Revested Assets, of any taxes imposed on the Liquidating Debtor or the Revested Assets.

iii. The Plan Administrator shall distribute such tax-related notices to the applicable holders of Allowed Claims as the Plan Administrator determines are necessary or desirable.

e. Disbursing Agent. The Plan Administrator shall serve as the disbursing agent for all Allowed Claims under the Plan.

f. Preservation of All Causes of Action, Avoidance Actions, and Preserved Claims. The Plan Administrator shall have the exclusive right, on behalf of the Estate, to institute, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw any and all Causes of Action, Avoidance Actions and Preserved Claims without any further order of the Bankruptcy Court~~, except as otherwise provided herein~~. From and after the Effective Date, the Plan Administrator, in accordance with section 1123(b)(3) of the Bankruptcy Code, shall serve as a representative of the Estate with respect to any and all Causes of Action, Avoidance Actions, and Preserved Claims and shall retain and possess the right to commence, pursue, settle, compromise, or abandon, as appropriate, any and all Causes of Acton, Avoidance Actions, and Preserved Claims in any court or other tribunal.

g. Removal of the Plan Administrator. The Plan Administrator may be removed for cause, as determined by an order of the Bankruptcy Court pursuant to a regularly-noticed motion by a party in interest in the Chapter 11 case.

h. Resignation of the Plan Administrator. The Plan Administrator may resign by giving not less than thirty (30) calendar days' prior notice thereof in a notice filed in the Chapter 11 case.

i. Successor Plan Administrator. In the event the Plan Administrator is removed or resigns, or if the Plan Administrator otherwise vacates the position, a successor Plan

Administrator shall be nominated by the Liquidating Debtor, with the appointment of such nominee as successor Plan Administrator effective upon filing a notice with the Bankruptcy Court. Any successor Plan Administrator appointed hereunder shall execute an instrument accepting such appointment and shall deliver such acceptance to the Bankruptcy Court. Thereupon, such successor Plan Administrator shall, without any further act, become vested with all the estates, properties, rights, powers, trusts, and duties of the predecessor Plan Administrator with like effect as if originally named herein; *provided*, *however*, that a removed or resigning Plan Administrator shall, nevertheless, when requested in writing by the successor Plan Administrator, execute and deliver any reasonable instrument or instruments conveying and transferring to such successor Plan Administrator all the estates, properties, rights, powers, trusts, and duties of such removed or resigning Plan Administrator.

j. Termination of the Plan Administrator. The Plan Administrator's role as Plan Administrator shall be terminated on the Wind Down End Date.

## ARTICLE VIII.
## PROVISIONS GOVERNING OBJECTIONS TO CLAIMS AND DISTRIBUTIONS

**8.1 Claims Administration Responsibility.** The Plan Administrator shall retain sole responsibility for administering, disputing, objecting to, compromising or otherwise resolving issues related to Distributions to holders of all Claims.

**8.2 Resolution of Disputed ~~Administrative Claims and Disputed~~ Claims ~~Less than~~Exceeding ~~$5,000~~ $250,000.~~.~~** On and after the Effective Date, the Plan Administrator shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Administrative Claims or Claims and to compromise, settle, or otherwise resolve any disputed Administrative Claims and Disputed Claims without approval of the Bankruptcy Court, other than with respect to Administrative Claims relating to compensation of Professionals. Notwithstanding the foregoing, the Plan Administrator shall not have the authority to compromise, settle, or otherwise resolve any Disputed Claims where the Face Amount of such Disputed Claim exceeds $250,000 without the majority agreement of the Post-Confirmation Advisory Committee, if said committee can be formed, and subject to Bankruptcy Court approval ~~asserted by any insider of the Debtor or where the settled amount of such Claim exceeds $5,000~~ if the compromise or settlement is not approved by a majority of the Post-Confirmation Advisory Committee.

**8.3 Interest on Claims.** Unless otherwise specifically provided for in the Plan or Confirmation Order, or as required by section 506 of the Bankruptcy Code, post-Petition Date interest shall not accrue or be paid on Claims, and no Claimholder shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

**8.4 Withholding, Payment and Reporting Requirements Regarding Distributions.** All Distributions under the Plan shall, to the extent applicable, comply with all tax withholding, payment and reporting requirements imposed by any federal, state, provincial, local or foreign taxing authority, and all Distributions shall be subject to any such withholding, payment and reporting requirements. The Plan Administrator shall be authorized to take any and all actions that may be necessary or appropriate

to comply with such withholding, payment and reporting requirements including requiring each Claimholder to provide a completed Form W-9 (or, if applicable, Form W-8) as set forth in Section 8.4 of this Plan. Notwithstanding any other provision of the Plan, (i) each Claimholder of an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by a governmental unit, including income, withholding and other tax obligations on account of such Distribution, and including, in the case of a holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed on the Revested Assets or Liquidating Debtor, as applicable, in connection with such Distribution, and (ii) no Distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements reasonably satisfactory to the Plan Administrator, as applicable, for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed in connection with such Distribution.

**8.5    Payments and Distributions With Respect to Classes 3 and 4; Claims Reserve.** On the Effective Date, the Plan Administrator shall establish the Claims Reserve. The Claims Reserve shall vest in the Plan Administrator and shall be maintained by the Plan Administrator in accordance with the Plan. Any recovery from Causes of Action, Avoidance Actions or Preserved Claims will be included in the Claims Reserve.

The Plan Administrator shall hold the Claims Reserve for the benefit of holders of Class 3 and Class 4 Creditors whose Claims are Allowed and for the benefit of other parties entitled thereto under the Plan. The amount of the Claims Reserve will be equal to the funds held in the Debtor in Possession account as of the Effective Date, less the amounts on reserve for Plan Administration Expenses, Allowed Administrative Claims as set forth in Article IV above (including Professional Fee Claims, Administrative Tax Claims and Priority Tax Claims) and Allowed Class 2 Claims multiplied by the percentage that represents the Face Amount of Class 4 Claims compared to the Face Amount of Claims in Classes 3 and 4. Upon the allowance of any Class 4 Claims a Distribution on said Claims will be made from the Claims Reserve equal to the percentage Pro Rata distribution received by Class 3 Claims as a result of the First Interim Distribution. Allowed Claims in Class 3 and Class 4 shall be paid Pro Rata based on the aggregate Face Amount of all Allowed Claims in both classes.

Notwithstanding anything in the Plan to the contrary, if any portion of a Claim is a Disputed Claim, no payment or distribution provided under the Plan shall be made on that portion of the Claim that is Disputed unless and until such portion is Allowed.

**8.6    Delivery of Distributions.** Distributions to holders of Allowed Claims, other than Professional Fee Claims, shall be delivered by the Plan Administrator, (a) to the addresses set forth on the proofs of claim filed by such Claimholders (or the address reflected in the Schedules if no proof of claim is filed), (b) to the addresses set forth in any written notices of address changes delivered to the Plan Administrator and filed with the Bankruptcy Court after the date of any related proof of claim, or (c) in the case of a Claimholder whose Claim is governed by an agreement and is administered by an agent or servicer, to the agent or servicer which shall then be responsible for making delivery of the Distribution to such Claimholder.

**8.7    Uncashed Checks.** Cash payments in the form of checks shall be null and void if not cashed within sixty (60) calendar days after the date of issuance. Distributions in respect of such voided checks shall be treated as unclaimed or undeliverable Distributions as provided in Section 8.8 of the

Plan. Requests for reissuance of any check must be made in writing to the Plan Administrator by the Claimholder that originally was issued such check, which request shall be made within sixty (60) calendar days after the date of issuance thereof.

**8.8 Unclaimed or Undeliverable Distributions.** If the Distribution of any Claimholder, other than Professional Fee Claims, is returned as undeliverable, no further Distributions to such Claimholder shall be made unless and until the Plan Administrator is notified of such Claimholder's then-current address, *provided*, *however*, that unless a Claimholder asserts a claim for an undeliverable Distribution within 60 days after such Distribution is returned as undeliverable, such Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and all title to and beneficial interest in such undeliverable Distribution shall revert to and/or remain in either the Revested Assets automatically and without any need for further order by the Bankruptcy Court for all purposes, including for redistribution to other holders of Allowed Claims, notwithstanding any federal, provincial or state escheat, abandoned or unclaimed property laws to the contrary. If a Claimholder timely provides the Plan Administrator the necessary information within the period specified herein, all missed Distributions shall be made to the Claimholder as soon as is practicable, without interest.

**8.9 Minimum Distribution**. Notwithstanding any other provision of the Plan, the Plan Administrator or other disbursing agent will not be required to make Distributions of Cash less than $50.00 in value with the exception of Claimholders in Class 2 – Convenience General Unsecured Claims.

**8.10 Manner of Payment Under this Plan**. The Distributions made pursuant to this Plan shall be made by checks drawn on domestic banks selected by the Plan Administrator or in the Plan Administrator's sole discretion, by wire transfer from a domestic bank selected by the Plan Administrator.

**8.11 Post-Final Distribution Assets**. Any assets received by the Plan Administrator after the final Distribution is made shall be distributed Pro Rata to the holders of Class 3 and Class 4 Allowed Claims unless the Plan Administrator determines, in his, her or its sole discretion, that the remaining Revested Assets are insufficient or it is otherwise impracticable to make any further or supplemental Distribution.

## ARTICLE IX.
## ~~STATUTORY INSIDER CLAIMS AND CAUSES OF ACTION~~RETENTION OF COUNSEL BY PLAN ADMINISTRATOR

**9.1 Retention of ~~Special~~ Counsel.** On and after the Effective Date, the Plan Administrator shall retain the ~~Special Counsel~~counsel as necessary and appropriate to analyze, object to, and/or prosecute the Claims, ~~of Statutory Insiders and possible~~ Causes of Action, ~~against Statutory Insiders~~and to take such other actions as are required to permit the Plan Administrator to fulfill his or her duties under the Plan.

~~**9.2 Claims by Statutory Insiders.** The Special Counsel will analyze and/or object to any Administrative Claim filed by a Statutory Insider, including but not limited to, an Administrative Claim filed by Bottrell Family Investments, LP, Sales Floor Live, LLC, and Diamond B Technology Solutions, LLC. Claims of Statutory Insiders of the Debtor are included in Class 4 and shall also be analyzed~~

~~and/or objected to by the Special Counsel. Statutory Insider Claims include the unsecured claims of TGC, LP, Bottrell Family Investments, LP, Sales Floor Live, LLC and Diamond B Technology Solutions, LLC.~~

~~**9.3 Causes of Action Against Statutory Insiders**. The Special Counsel will analyze and determine if prosecution of any Causes of Action, including Preserved Claims and Avoidance Actions, are appropriate.~~

**ARTICLE X.**
**SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS**

**10.1 Compromise and Settlement of Claims, Interests and Controversies.** Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute (a) a good faith compromise of all Claims, Equity Interest, and controversies relating to the contractual, legal and subordination rights that a holder of a Claim may have with respect to any Allowed Claim or any Distribution to be made on account of such Allowed Claim with the effective date of the compromise of any Claim being the date of the final Distribution on the same, and (b) a good faith compromise of all Claims and Causes of Action the Debtor, Creditors' Committee or any Person that could bring such Cause of Action on their behalf against the Released Parties. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interest of the Debtor, its Estate and holders, and is fair, equitable and reasonable. In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Plan Administrator may compromise and settle Claims against the Debtor and Causes of Action against other Persons including Statutory Insiders, subject to the provisions of Sections 8.2 and 10.2.

**10.2 Post-Confirmation Advisory Committee**. Within ten (10) days after entry of the Confirmation Order, the Debtor, in consultation with the Creditors' Committee, will establish a Post-Confirmation Advisory Committee consisting of three (3) unsecured creditor representatives that are willing to serve in an advisory capacity to the Plan Administrator. The Post-Confirmation Advisory Committee members will agree to serve free of charge and may retain counsel at their own cost which shall not be passed along to the Debtor's Estate. The Plan Administrator will provide a quarterly report to the Post-Confirmation Advisory Committee and will consult and receive the majority approval of the Post-Confirmation Advisory Committee members of any compromise or settlement where the amount of such Disputed Claim or Cause of Action exceeds $250,000, subject to Bankruptcy Court approval if the compromise or settlement is not approved by a majority of the Post-Confirmation Advisory Committee.

**~~10.2~~10.3 Release of Liens.** Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to the Plan, all liens, pledges, or other security interests against any property of the Estate shall be fully released, and all of the right, title and interest of any holder of such lien, pledges or other security interest shall revert to the Estate and its successors and assigns.

~~10.3~~10.4 **Releases by Holders. OTHER THAN AS TO THE RIGHTS AND LIABILITIES PROVIDED FOR IN THE PLAN, AS OF THE EFFECTIVE DATE OF THE PLAN, EACH AND ALL OF THE RELEASING PARTIES SHALL BE DEEMED TO CONCLUSIVELY, ABSOLUTELY, EXPRESSLY, UNCONDITIONALLY, IRREVOCABLY, GENERALLY AND INDIVIDUALLY AND COLLECTIVELY, RELEASE, AND ACQUITTED EACH AND ALL OF THE RELEASED PARTIES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL ACTIONS, CLAIMS, EQUITY INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE AGAINST OR ON BEHALF OF ANY OR ALL OF THE RELEASED PARTIES, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT OR OTHERWISE, BY STATUTE OR OTHERWISE, THAT SUCH RELEASING PARTY (WHETHER INDIVIDUALLY OR COLLECTIVELY) EVER HAD, NOW HAS OR HEREAFTER CAN, SHALL OR MAY HAVE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR, THE DEBTOR'S LIQUIDATION, THE CHAPTER 11 CASE, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASE, INCLUDING THE NEGOTIATION, FORMULATION, PREPARATION OR PERFORMANCE OF THE STORE CLOSING SALES, THE IP ASSET SALES, THE PLAN, THE DISCLOSURE STATEMENT, OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE OF THE PLAN RELATING TO THE DEBTOR OR THE DEBTOR'S ESTATES, EXCEPT FOR ANY CLAIMS AND CAUSES OF ACTION FOR ACTUAL FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE. THE EFFECTIVE DATE OF SUCH RELEASE AS TO ANY CLAIM SHALL BE THE DATE OF THE FINAL DISTRIBUTION ON THE CLAIM. FOR THE AVOIDANCE OF DOUBT, THE DEBTOR IS NOT A "RELEASING PARTY" AND IS NOT RELEASING ANY CLAIMS AGAINST THIRD PARTIES OR THE STATUTORY INSIDERS.**

~~10.4~~10.5 **Liabilities to, and Rights of, Governmental Units.** Nothing in the Plan or Confirmation Order shall release, or preclude: (1) any liability to a Governmental Unit that is not a Claim; (2) any Claim of a Governmental Unit arising on or after the Effective Date; (3) any liability to a Governmental Unit on the part of any Person or Entity other than the Debtor or Plan Administrator; (4) any valid right of setoff or recoupment by a Governmental Unit; or (5) any criminal liability. Nothing in the Plan or Confirmation Order shall enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence. The injunction provisions contained in the Plan and Confirmation Order are not intended and shall not be construed to bar any Governmental Unit from, after the Effective Date, pursuing any police or regulatory action.

~~10.5~~10.6 **Exculpation. EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, NO EXCULPATED PARTY SHALL HAVE OR INCUR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM ANY**

**EXCULPATED CLAIM, OBLIGATION, CAUSE OF ACTION OR LIABILITY FOR ANY EXCULPATED CLAIM, EXCEPT FOR FRAUD, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, BUT IN ALL RESPECTS SUCH ENTITIES SHALL BE ENTITLED TO RAISE ANY AFFIRMATIVE DEFENSES, INCLUDING REASONABLE RELIANCE UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN. THE DEBTOR (AND ITS RESPECTIVE AFFILIATES, AGENTS, DIRECTORS, OFFICERS, EMPLOYEES, ADVISORS AND ATTORNEYS) HAVE PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS AND PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION OF VOTES AND TRANSFER OF DEBTOR'S ESTATE ASSETS PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH TRANSFER SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR THE TRANSFER OF ESTATE ASSETS PURSUANT TO THE PLAN.**

**~~10.6~~10.7 Injunction. FROM AND AFTER THE EFFECTIVE DATE, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR RELATED DOCUMENTS, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR RELATED DOCUMENTS, OR IN OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR EQUITY INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO SECTION 10.~~3~~ 4 OF THE PLAN, OR ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION 10.~~5~~ 6 OF THE PLAN ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (4) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE EFFECTIVE DATE, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH HOLDER ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY**

**KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR EQUITY INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN.**

**~~10.7~~10.8 FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASE AND EXCULPATION GRANTED IN ARTICLE X OF THE PLAN, THE DEBTOR AND HOLDERS OF CLAIMS OR EQUITY INTERESTS SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO ARTICLE X OF THE PLAN.**

**~~10.8~~10.9 THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS OR EQUITY INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF CLAIMS OR EQUITY INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTOR OR ANY OF ITS ASSETS, OR ESTATE ASSETS. ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTOR SHALL BE FULLY RELEASED AND THE EQUITY INTERESTS SHALL BE CANCELLED. THE EFFECTIVE DATE OF SUCH SATISFACTION AS TO ANY CLAIM SHALL BE THE DATE OF THE FINAL DISTRIBUTION ON THE CLAIM.**

**~~10.9~~10.10 EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS SHALL BE FULLY RELEASED, AND THE INTERESTS SHALL BE CANCELLED, AND THE DEBTOR'S LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE. THE EFFECTIVE DATE OF SUCH RELEASE AS TO ANY CLAIM SHALL BE THE DATE OF THE FINAL DISTRIBUTION ON THE CLAIM.**

**~~10.10~~10.11 ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTOR, THE DEBTOR'S ESTATE, THE CREDITORS' COMMITTEE THE PLAN ADMINISTRATOR, EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS AND EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ON OR AFTER THE EFFECTIVE DATE, EXCEPT AS OTHERWISE PROVIDED HEREIN OR IN A PRIOR ORDER OF THE BANKRUPTCY COURT, A CLAIM MAY NOT BE FILED OR AMENDED WITHOUT THE PRIOR AUTHORIZATION OF THE BANKRUPTCY COURT OR THE CONSENT OF THE PLAN ADMINISTRATOR. ABSENT SUCH AUTHORIZATION OR CONSENT, ANY NEW OR AMENDED CLAIM FILED SHALL BE DEEMED DISALLOWED IN FULL AND EXPUNGED WITHOUT FURTHER ORDER OF THE BANKRUPTCY COURT.**

~~10.11~~**10.12** **Term of Injunctions or Stays.** Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

~~10.12~~**10.13** **Compromises and Settlements.** Pursuant to Bankruptcy Rule 9019(a), the Debtor may compromise and settle various (a) Claims against it, and (b) Causes of Action that it may have against other Persons. The Debtor expressly reserves the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle up to and including the Effective Date, Claims against it and Causes of Action that it may have against other Persons. After the Effective Date, such right shall pass exclusively to the Plan Administrator to which such claims shall be conveyed pursuant to the Plan.

~~10.13~~**10.14** **Cancellation of Agreements.** On the Effective Date, except to the extent of a right to receive a Distribution under this Plan and as otherwise provided herein, any note, bond, indenture or other instrument or document evidencing or creating any indebtedness or obligation of the Debtor shall be deemed automatically cancelled; provided, however, that each agreement that governs the rights of the Claimholder and that is administered by an agent or a servicer, shall continue in effect solely for the purposes of allowing such agent or servicer to make the Distributions to be made on account of such Claims or Equity Interests under the Plan.

~~10.14~~**10.15** **Objections to Claims.** The failure by the Debtor, Liquidating Debtor or the Plan Administrator to object to, or examine, any Claim or Equity Interest for purposes of voting shall not be deemed a waiver of any such entities' right to object to (to the extent of any Claim that is not expressly Allowed in the Plan) or reexamine the Claim or Equity Interest in whole or in part for any other purpose, including but not limited to, distribution of property.

~~10.15~~**10.16** **Setoff.** Notwithstanding anything herein, in no event shall any Claimholder be entitled to setoff any Claim against any claim, right, or cause of action of the Debtor, unless such Claimholder preserves its right to set off by (i) including in a timely-filed proof of claim that it intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise or (ii) filing a motion for authority to effect such setoff on or before the Confirmation Date (regardless of whether such motion is heard prior to or after the Confirmation Date).

## ARTICLE XI.
## CONDITIONS PRECEDENT

**11.1** **Conditions to Confirmation**. The following are conditions precedent to confirmation of the Plan that may be satisfied or waived in accordance with Section 11.3 of the Plan:

a. The Plan and Confirmation Order shall be in form and substance reasonably acceptable to the Debtor;

b. The Plan Supplement shall have been filed;

c. The Plan Administrator shall have been selected and shall have indicated his or her agreement to serve under the terms of the Plan; and

~~d. The Special Counsel shall have been selected and shall have indicated his or her agreement to serve under the terms of the Plan.~~

**11.2 Conditions to Effective Date**. The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Section 11.3 of the Plan:

a. The Confirmation Order shall have been entered by the Bankruptcy Court and such Confirmation Order and have become a Final Order (unless the Final Order requirement is waived by the Debtor); and

b. No stay shall be in effect with respect to the Confirmation Order.

**11.3 Waiver of Conditions to Confirmation and Effective Date.** The conditions set forth in Sections 11.1 and 11.2 of the Plan may be waived by the Debtor, without any notice to any other parties in interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by the Debtor regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtor). The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## ARTICLE XII.
## RETENTION OF JURISDICTION

**12.1** Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 case and the Plan, including, among other things, the following matters:

a. to hear and determine pending motions for the assumption and assignment of or rejection of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine the allowance of Claims resulting therefrom;

b. to adjudicate any and all adversary proceedings, applications and contested matters that may be commenced or maintained pursuant to the Chapter 11 case or the Plan, including, without limitation, any actions to recover any transfers, assets, properties or damages to which the Debtor may be entitled under applicable contract provisions, the provisions of this Plan or under applicable provisions of the Bankruptcy Code or any other federal, state or local laws;

c. to ensure that Distributions to Allowed Claimholders are accomplished as provided herein;

d.      to hear and determine any and all objections to the allowance or estimation of Claims filed both before and after the Confirmation Date, including any objections to the classification of any Claim or Equity Interest, and to allow or disallow any Claim in whole or in part;

e.      to determine requests for the payment of Claims entitled to priority under section 507(a)(2) of the Bankruptcy Code, including compensation of and reimbursement of expenses of parties entitled thereto;

f.      to enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified or vacated;

g.      to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan or regarding the rights of the Plan Administrator;

h.      to issue orders in aid of execution, implementation or consummation of the Plan;

i.      to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

j.      to hear and determine all applications for compensation and reimbursement of Professional Claims under the Plan or under sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code;

k.      to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

l.      to hear any other matter not inconsistent with the Bankruptcy Code;

m.      to hear and determine all disputes involving the existence, nature or scope of the releases provided for in the Plan;

n.      to hear and determine any Claims of or against the Debtor;

o.      to enforce all orders previously entered by the Bankruptcy Court; and

p.      to enter a final decree closing the Chapter 11 case.

Notwithstanding anything contained herein to the contrary, the Bankruptcy Court retains exclusive jurisdiction to hear and determine disputes concerning Claims, Equity Interests, Causes of Action, Avoidance Actions, Preserved Claims and any motions to compromise or settle such disputes. Despite the foregoing, if the Bankruptcy Court is determined not to have jurisdiction with respect to the foregoing, or if the Plan Administrator chooses to pursue any Causes of Action, Avoidance Action, or Preserved Claim in another court of competent jurisdiction, the Plan Administrator will have authority to bring such action in any other court of competent jurisdiction.

## ARTICLE XIII.
## ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE IMPAIRED CLASSES OF CLAIMS OR INTERESTS

**13.1 Impaired Classes of Claims and Interests Entitled to Vote**. Claimholders in each Impaired Class of Claims are entitled to vote as a class to accept or reject the Plan. The Claims Agent will tabulate votes on the Plan.

**13.2 Acceptance by an Impaired Class**. In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

**13.3 Presumed Acceptances by Unimpaired Classes**. Class 1 Wells Fargo is Unimpaired by the Plan. Under section 1126(f) of the Bankruptcy Code, Wells Fargo is conclusively presumed to accept the Plan, and Wells Fargo's vote will not be solicited.

**13.4 Class Deemed to Reject Plan**. Holders of Class 5 Equity Interests will not receive any Distribution, are not entitled to vote on the Plan and are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

**13.5 Non-Consensual Confirmation**. In the event that less than all Classes entitled to vote to accept the Plan, the Debtor will seek Confirmation of the Plan under section 1129(b) of the Bankruptcy Code.

**13.6 Confirmability and Severability of the Plan**. The confirmation requirements of section 1129 of the Bankruptcy Code must be satisfied. A determination by the Bankruptcy Court that the Plan is not confirmable pursuant to section 1129 of the Bankruptcy Code shall not limit or affect the Debtor's ability to modify the Plan to satisfy the confirmation requirements of section 1129 of the Bankruptcy Code.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

**14.1 Binding Effect**. The Plan shall be binding upon and inure to the benefit of the Debtor, the Plan Administrator, all present and former Claimholders, all present Interestholders, other parties in interest and their respective successors and assigns to the fullest extent permitted by section 1141(a) of the Bankruptcy Code.

**14.2 Modification and Amendments**. The Debtor may alter, amend or modify the Plan or any Exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Hearing. After the Confirmation Date and prior to the Effective Date, the Debtor, may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not materially adversely affect the treatment of Claimholders or Interestholders under the Plan; *provided, however*, that prior notice of such proceedings shall be served in accordance

with the Bankruptcy Rules or order of the Bankruptcy Court. From and after the Effective Date and prior to substantial consummation of the Plan (as defined in section 1101(2) of the Bankruptcy Code), the Plan Administrator may seek non-material modification or amendment of the Plan pursuant to this paragraph.

**14.3    Creditors' Committee**. The Creditors' Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code, and shall perform such other duties as it may have been assigned by the Bankruptcy Court prior to the Effective Date. From and after the Effective Date, the Creditors' Committee shall exist for the sole purposes of: (a) matters relating to any appeals or other challenges or matters with respect to the Confirmation Order; (b) pursuing the Creditors' Committee's Professional Fee Claims; and (c) appearing before and being heard by the Bankruptcy Court and other courts of competent jurisdiction in connection with the above duties. Upon the conclusion of the foregoing duties, the Creditors' Committee shall automatically dissolve and its members, Professionals and agents shall be deemed released of all their duties, responsibilities and obligations in connection with the Chapter 11 case or the Plan and its implementation, and the retention or employment of the Creditors' Committee's attorneys and other agents shall terminate. All expenses of Creditors' Committee members and the fees and expenses of their Professionals through the Effective Date shall be paid in accordance with the terms and conditions of this Plan and any order of the Bankruptcy Court.

**14.4    Causes of Action, Preserved Claims and Avoidance Actions**. Unless otherwise released under a prior Order of the Bankruptcy Court or under the Plan, all Causes of Action, Preserved Claims and Avoidance Actions are hereby preserved for prosecution and enforcement by the Plan Administrator. The Plan Administrator shall have no obligation to pursue any Causes of Action, Preserved Claims or Avoidance Actions.

**14.5    Substantial Consummation.** The Plan shall be deemed to be substantially consummated on the first date Distributions are made in accordance with the terms of this Plan to any holders of Allowed Claims of any Class**.**

**14.6    Revocation, Withdrawal or Non-Consummation Right to Revoke or Withdraw**. The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Effective Date.

**14.7    Severability of Plan Provisions**. If prior to Confirmation any term or provision of this Plan which does not govern the treatment of Claims or Equity Interests or the conditions to the Effective Date is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid and enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**14.8    U.S. Trustee's Fees.** All fees due and owing under 28 U.S.C. §1930 shall be paid on the Effective Date and thereafter, as due, until the cases are closed, converted or dismissed and final

decreed, from the Revested Assets. After confirmation, the Liquidating Debtor through the Plan Administrator will file quarterly reports in the prescribed format for each quarter or part thereof that the Chapter 11 case remains open.

**14.9   Notices**. Pursuant to Bankruptcy Rule 2002 and any applicable local Bankruptcy Rules, notice of all Post-Effective Date matters for which notice is required to be given shall be deemed sufficient if served upon the U.S. Trustee's Office, the Plan Administrator, counsel to the Plan Administrator, and all persons on the Debtor's Bankruptcy Rule 2002 service list. Any notice required or permitted to be provided to the Debtor or the Plan Administrator under the Plan shall be in writing and served by (a) certified mail, return receipt requested, (b) hand delivery, or (c) overnight delivery service, to be addressed as follows:

If to the Plan Administrator:

David Velde
Velde Moore, LTD
1118 Broadway
Alexandria, MN 56308
dave@veldemoore.com

*with a copy to:*

Jon Brakke
Caren Stanley
Vogel Law Firm
218 NP Ave.
Fargo, ND 58107
jbrakke@vogellaw.com
cstanley@vogellaw.com

**14.10   Waiver and Estoppel**. Each Claimholder and Interestholder shall be deemed to have waived any right to assert that, by virtue of an agreement made with the Debtor and/or its counsel, the Creditors' Committee and/or its counsel, or any other party, its Claim or Equity Interest should be allowed in a certain amount, in a certain priority, secured or not subordinated if such agreement was not disclosed in the Plan, the Disclosure Statement or other papers filed with, or orders entered by, the Bankruptcy Court.

Dated this ~~22nd 20~~9th day of ~~November~~April, ~~2017~~2018.

Vanity Shop of Grand Forks, Inc.

________________________________________

James Bennett, President

Dated this ~~22nd 20~~9th day of ~~November~~April, ~~2017~~2018.

**VOGEL LAW FIRM**

BY: ________________________________________

Jon R. Brakke (#03554)
jbrakke@vogellaw.com
Caren W. Stanley (#06100)
cstanley@vogellaw.com
218 NP Avenue
PO Box 1389
Fargo, ND 58107-1389
Telephone: (701) 237-6983
Fax: (701) 476-7676
ATTORNEYS FOR DEBTOR

3069627.5

# EXHIBIT A

**(Administrative Claims)**

*[To be supplied prior to Disclosure Statement Hearing]*

# EXHIBIT B

**Class 2 (Convenience Class – General Unsecured Claims)**

*[To be supplied prior to Disclosure Statement Hearing]*

# EXHIBIT C

**(Class 3 - Effective Date Unsecured Claims)**

*[To be supplied prior to Disclosure Statement Hearing]*

# EXHIBIT D

**(Class 4 - Post-Effective Date Unsecured Claims)**

*[To be supplied prior to Disclosure Statement Hearing]*