## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re:<br><br>Vanity Shop of Grand Forks, Inc.,<br><br>**Debtor.** | Case No.:  17-30112<br>Chapter 11 |

## DISCLOSURE STATEMENT WITH RESPECT TO CHAPTER 11 PLAN OF LIQUIDATION OF VANITY SHOP OF GRAND FORKS, INC.
## DATED APRIL 9, 2018

### DISCLAIMER

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT RELATES TO THE CHAPTER 11 PLAN OF LIQUIDATION OF VANITY SHOP OF GRAND FORKS, INC., AND IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN.

ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, OTHER EXHIBITS ANNEXED OR REFERRED TO IN THE PLAN, AND THIS DISCLOSURE STATEMENT. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016(C) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER LAWS GOVERNING DISCLOSURE OUTSIDE THE CONTEXT OF CHAPTER 11.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS

DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, THE DEBTOR.

THIS DISCLOSURE STATEMENT SUMMARIZES CERTAIN PROVISIONS OF THE PLAN, STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE PLAN, EVENTS IN THE CHAPTER 11 CASE OF THE DEBTOR, AND FINANCIAL INFORMATION. THE DEBTOR IS SOLELY RESPONSIBLE FOR ALL STATEMENTS IN THIS DISCLOSURE STATEMENT. THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTOR UNLESS OTHERWISE NOTED. ALTHOUGH THE DEBTOR BELIEVES THAT THE PLAN AND RELATED DOCUMENT SUMMARIES ARE FAIR AND ACCURATE, SUCH INFORMATION IS QUALIFIED TO THE EXTENT THAT IT DOES NOT SET FORTH THE ENTIRE TEXT OF THE PLAN, SUCH DOCUMENTS OR ANY STATUTORY PROVISIONS THAT MAY BE REFERENCED THEREIN. THE DEBTOR BELIEVES THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, BUT MAKES NO REPRESENTATION WITH RESPECT TO ITS ACCURACY OR COMPLETENESS.

1.    **INTRODUCTION**

   *1.1    Purpose of Disclosure Statement.*

   Vanity Shop of Grand Forks, Inc. ("***Debtor***") provides this Disclosure Statement (the "***Disclosure Statement***") to the Office of the United States Trustee and to all of the Debtor's known Claimholders and Interestholders pursuant to section 1125(b) of Title 11 of the United States Code (the "***Bankruptcy Code***") for the purpose of soliciting acceptances of the Chapter 11 Plan of Liquidation of Vanity Shop of Grand Forks, Inc. (the "Plan"), which has been filed with the United States Bankruptcy Court for the District of North Dakota (the "***Bankruptcy Court***"). By Order dated April 11, 2018, the Disclosure Statement was approved by the Bankruptcy Court as containing "adequate information" under section 1125 of the Bankruptcy Code.

   The Debtor strongly urges you to read this Disclosure Statement because it contains a summary of the Plan and important information concerning the Debtor's history and operations. The Disclosure Statement also provides information as to alternatives to the Plan. A copy of the Plan accompanies this Disclosure Statement as a separate document.

   PLEASE NOTE THAT MUCH OF THE INFORMATION CONTAINED HEREIN HAS BEEN TAKEN, IN WHOLE OR IN PART, FROM INFORMATION CONTAINED IN THE DEBTOR'S BOOKS AND RECORDS AND FROM MOTIONS AND OTHER PAPERS FILED WITH THE BANKRUPTCY COURT BY THE DEBTOR AND OTHER PARTIES-IN-INTEREST. ALTHOUGH THE DEBTOR HAS ATTEMPTED TO BE ACCURATE IN ALL MATERIAL RESPECTS, IT IS UNABLE TO WARRANT OR REPRESENT THAT ALL OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT ERROR.

   Unless otherwise defined herein, capitalized terms contained in this Disclosure Statement shall have the same meanings as ascribed to them in the Plan. All capitalized terms used in this Disclosure Statement and not defined herein or in the Plan, but that are defined in the Bankruptcy Code, shall

have the respective meanings ascribed to them in the Bankruptcy Code.  All capitalized terms used in this Disclosure Statement and not defined herein, in the Plan or in  the Bankruptcy Code, but that are defined in the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***" or "***Bankruptcy Rule***"), shall have the respective meanings ascribed to  them in the Bankruptcy Rules. Holders of Claims or Interests receiving this Disclosure  Statement should carefully review the Plan in conjunction with their review of this Disclosure  Statement.

**PLEASE REVIEW THE PLAN IN ITS ENTIRETY IN DETAIL.**

**NO REPRESENTATION CONCERNING THE DEBTOR OR THE VALUE OF ITS ASSETS HAS BEEN AUTHORIZED BY THE BANKRUPTCY COURT OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT OR ANY OTHER DISCLOSURE STATEMENT APPROVED BY THE BANKRUPTCY COURT. THE DEBTOR IS NOT RESPONSIBLE FOR ANY INFORMATION, REPRESENTATION OR INDUCEMENT MADE TO OBTAIN YOUR ACCEPTANCE, WHICH IS OTHER THAN, OR INCONSISTENT WITH, INFORMATION CONTAINED HEREIN AND IN THE PLAN.**

The purpose of this Disclosure Statement is to provide Claimholders and Interestsholders,  to the extent they are entitled to vote, with information determined by the Bankruptcy Court to  be adequate to enable them to make an informed decision to vote to accept or reject the Plan.

### 1.2    *Brief Summary of the Plan*

As described in more detail in this Disclosure Statement, during the course of the  Debtor's bankruptcy case, the Debtor sold substantially all of its remaining E s t a t e  Assets, which  included the Debtor's intellectual property and related assets and remaining inventory. The net  proceeds received by the Debtor upon the sale of substantially all of its remaining E s t a t e  Assets  were used to indefeasibly pay Wells Fargo Bank, NA (first position secured creditor) in full. The remaining proceeds of the sales of the Debtor's Revested Assets and the collection and liquidation  of remaining R e v e s t e d  Assets of the Debtor will be used to make payments to holders of Allowed Claims in the order of priority under section 507 of the Bankruptcy  Code, including Allowed Administrative Claims (including Professional Fee Claims and Priority Tax Claims), Allowed Claims in Class 2 (*i.e.*, 50% of the Face Value as settlement in full of the Class 2 Allowed Claims) and Pro Rata Distributions to Allowed Claims in Class 3 and Class 4.

### 1.3    *Confirmation of Plan.*

1.3.1    ***Requirements.*** The requirements for Confirmation of the Plan are set forth in detail in section 1129 of the Bankruptcy Code. The following summarizes some of the pertinent requirements:

(a)    **Acceptance by Impaired Classes.** Except to the extent that the cramdown provisions of section 1129(b) of the Bankruptcy Code may be invoked, each Class of Claims must either vote to accept the Plan or be deemed to accept the Plan because the Claims or Interests of such Class are not Impaired.

(b)   **Feasibility.** The Bankruptcy Court is required to find that the Plan is likely to be implemented and that parties required to perform or pay monies under the Plan will be able to do so.

(c)   **"Best Interest" Test.** The Bankruptcy Court must find that the Plan is in the "best interest" of all Claimholders. To satisfy this requirement, the Bankruptcy Court must determine that each holder of a Claim against the Debtor: (i) has accepted the Plan; or (ii) will receive or retain under the Plan money or other property which, as of the Effective Date, has a value not less than the amount such holder would receive if the Debtor's property was liquidated under Chapter 7 of the Bankruptcy Code on such date.

(d)   **"Cramdown" Provisions.** Under the circumstances which are set forth in detail in section 1129(b) of the Bankruptcy Code, the Bankruptcy Court may confirm the Plan even though a Class of Claims or Interests has not accepted the Plan, so long as one Impaired Class of Claims has accepted the Plan, excluding the votes of Statutory Insiders (as defined in the Bankruptcy Code), if the Plan is fair and equitable and does not discriminate unfairly against such non-accepting Classes. The Debtor will invoke the "cramdown" provisions of section 1129(b) of the Bankruptcy Code as to holders of Equity Interests since under the Plan, the Class in which Equity Interests reside are deemed to have rejected the Plan. Should any voting Class fail to accept the Plan, the Debtor will also invoke the "cramdown" provision as to such Class.

1.3.2   *Procedure.* To confirm the Plan, the Bankruptcy Court must hold a hearing to determine whether the Plan meets the requirements of section 1129 of the Bankruptcy Code (the "*Confirmation Hearing*"). The Bankruptcy Court has set **May 22, 2018 at 9:30 a.m. CST**, for the Confirmation Hearing.

1.3.3   *Objection to Confirmation.* Any party-in-interest may object to Confirmation of the Plan and appear at the Confirmation Hearing to pursue such objection. The Bankruptcy Court has set **May 14, 2018 at 4:00 p.m. CST**, as the deadline for filing and serving upon Debtor's counsel, the United States Trustee's Office, and counsel to the Creditors' Committee objections to Confirmation of the Plan. Objections to Confirmation must be filed with the Bankruptcy Court at the following address:

U.S. Bankruptcy Court for the District of North Dakota
655 1st Avenue North, #210
Fargo, ND  58102

with a copy served upon counsel to the Debtor:

Jon R. Brakke
Caren W. Stanley
Vogel Law Firm
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389

and a copy served upon the Office of the United States Trustee:

United States Trustee

Suite 1015 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

and a copy served upon counsel to the Creditors' Committee:

Mette Kurth
Fox Rothschild LLP
1800 Century Park East
Suite 300
Los Angeles, CA 90067-1506

      1.3.4   ***Effect of Confirmation.*** Except as otherwise provided in the Plan or in the Confirmation Order, upon the Effective Date, all right, title, and interest of the Debtor and the Estate in and to all Revested Assets shall irrevocably vest in the Liquidating Debtor for purposes of administration of the Plan by the Plan Administrator.  The Plan provides for the wind down of the Debtor's affairs, continued liquidation and  conversion of all of  the Debtor's remaining assets to cash and the distribution of the  net  proceeds realized therefrom, in addition to cash on hand on the Effective Date of the Plan, to  creditors holding Allowed Claims as of the Record Date in accordance with the relative priorities  established in the Bankruptcy Code. The Plan does not provide for a distribution to holders of  Equity Interests, and their votes are not being solicited. The Plan contemplates  the appointment of a Plan Administrator to, among other things, finalize the wind down of the  Debtor's affairs, resolve Disputed Claims,  pursue any unreleased Causes of Action, Avoidance Actions  and  Preserved  Claims,  implement  the  terms  of  the  Plan  and  make Distributions to holders of Allowed  Claims. Confirmation serves to make the Plan  binding upon the Debtor, all Creditors, Interestholders and other parties-in-interest, regardless  of whether they cast a ballot ("***Ballot***") to accept or reject the Plan.

      ***1.4***      ***Voting on the Plan.***

      1.4.1   ***Impaired Claims or Equity Interest.*** Pursuant to section 1126 of the Bankruptcy Code, only the holders of Claims in Classes "Impaired" by the Plan and receiving distributions or  other treatment under the Plan may vote on the Plan. Pursuant to section 1124 of the Bankruptcy  Code, a Class of Claims may be "Impaired" if the Plan alters the legal, equitable or contractual  rights of the holders of such Claims or Equity Interests treated in such Class. Claimholders not  Impaired by the Plan are deemed to accept the Plan and do not have the right to vote on the Plan.

The  Claimholders  in  any  Class  that  will  not  receive  any  payment  or  distribution  or  retain  any property pursuant to the Plan are deemed to reject the Plan and do not have the right to vote.

      1.4.2   ***Eligibility.*** In order to vote on the Plan, a Claimholders must have timely  filed or been assigned a timely filed proof of Claim, unless its Claim is scheduled by the Debtor and is not identified as disputed, unliquidated or contingent on the Debtor's Schedules of Assets  and Liabilities (the **"*Schedules*"**). Claimholders having a Claim in more than one Class may  vote in each Class in which they hold a separate Claim by casting a Ballot in each Class.

1.4.3   **Binding Effect.** Whether a Claimholder votes on the Plan or not, such Person will be bound by the terms of the Plan if the Plan is confirmed by the Bankruptcy Court. Absent some affirmative act constituting a vote, a Claimholder will not be included in the vote:  (i) for purposes of accepting or rejecting the Plan; or (ii) for purposes of determining the number of Persons voting on the Plan.

1.4.4   **Procedure.** Members of Classes 2, 3, and 4 may vote to accept or reject the Plan. Class 1 is not Impaired by the Plan and is deemed, therefore, to accept the Plan. Class 5 is Impaired by the Plan and is deemed to have rejected the Plan because the Equity Interests in Class 5 will receive no distributions under the Plan. In order for your vote to count, you must complete, date, sign and properly mail the enclosed Ballot (please note that envelopes have been included with the Ballot) to:

> Vanity Shop Ballot Processing Center
> C/O KCC
> 2335 Alaska Ave.
> El Segundo, CA 90245

Pursuant to Bankruptcy Rule 3017, the Bankruptcy Court has ordered that original Ballots for the acceptance or rejection of the Plan must be received by mail or overnight delivery by Kurtzman Carson Consultants (the "**Balloting Agent**") at the address set forth above **on or before 4:00 p.m. CST on May 14, 2018** (the "**Voting Deadline**"). Once you have delivered your Ballot, you may not change your vote, except for cause shown to the Bankruptcy Court after notice and hearing.

The following types of Ballots will <u>not</u> be counted in determining whether the Plan has been accepted or rejected:

(i)     any Ballot received after the Voting Deadline;

(ii)     any Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

(iii)     any Ballot cast by a person or entity that does not hold a Claim in a class that is entitled to vote to accept or reject the Plan;

(iv)     any Ballot cast for a Claim identified in the Schedules as unliquidated, contingent, or disputed for which no proof of claim was timely filed;

(v)     any Ballot cast for a Claim for which an objection or request for estimation has been filed on or before the Solicitation Date as set forth in the Order approving the Disclosure Statement;

(vi)     any unsigned Ballot or Ballot that does not contain an original signature;

(vii)     any Ballot transmitted to the Balloting Agent by facsimile or other means not specifically approved in the Order approving the Disclosure Statement; any Ballot that is otherwise properly completed, executed, and timely returned, but does not indicate a vote to accept or reject the Plan or that indicates a vote to both accept and reject the Plan.

The following types of Ballots will be counted in determining whether the Plan has been accepted or rejected: whenever a creditor casts more than one Ballot voting the same Claim(s) before the Voting Deadline, the last Ballot received before the Voting Deadline shall be deemed to reflect the voter's intent, and thus, to supersede any prior Ballots.

### 1.5   Acceptance of the Plan.

1.5.1   **Claimholder Acceptance.** As a Claimholder, your acceptance of the Plan is important. In order for the Plan to be accepted by an Impaired Class of Claims, a majority in number and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must vote to accept the Plan, or the Plan must qualify for "cramdown" of any non-accepting Class pursuant to section 1129(b) of the Bankruptcy Code. At least one impaired Class of Creditors, excluding the votes of Statutory Insiders, must actually vote to accept the Plan. You are urged to complete, date, sign and promptly mail the enclosed Ballot. Please be sure to complete the Ballot properly and legibly identify the exact amount of your Claim and the name of the Claimholder.

1.5.2   **Cramdown Election.** If all Classes do not accept the Plan, but at least one Impaired Class votes to accept the Plan, excluding the votes of Statutory Insiders, the Debtor may attempt to invoke the "cramdown" provisions of the Bankruptcy Code. Cramdown may be an available remedy, because the Debtor believes that, with respect to each Impaired Class, the Plan is fair and equitable within the meaning of section 1129(b)(2) of the Bankruptcy Code and does not discriminate unfairly.

### 1.6   Sources of Information.
The information contained in this Disclosure Statement has been obtained from the Debtor's books and records and from motions and other papers filed with the Bankruptcy Court by the Debtor and other parties-in-interest. Every reasonable effort has been made to present accurate information and such information is believed to be correct as of the date hereof. Any value given as to the Estate Assets of the Debtor is based upon an estimation of such value. You are strongly urged to consult with your financial and legal advisors to understand fully the Plan and Disclosure Statement.

The financial information contained in this Disclosure Statement is given as of the date hereof, unless otherwise specified. The delivery of this Disclosure Statement does not, under any circumstance, imply that there has been no change in the facts set forth herein since such date. This Disclosure Statement is intended, among other things, to summarize the Plan and  must be read in conjunction with the Plan and its exhibits. If any conflicts exist between the Plan  and Disclosure Statement, the terms of the Plan shall control.

### 1.7   Additional Information.

Should you have any questions regarding the Plan or this Disclosure Statement, or require clarification of any information presented herein, please contact:

Jon R. Brakke
Caren W. Stanley
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389

701.237.6389
jbrakke@vogellaw.com
cstanley@vogellaw.com

## 2.    THE DEBTOR

### 2.1    Description of the Debtor.

On March 1, 2017 (the "***Petition Date***"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court. The Debtor is authorized to operate its business and manage its properties as a debtor-in-possession pursuant to  sections 1107(a) and 1108 of the Bankruptcy Code.

Founded in 1966, Debtor is a North Dakota corporation headquartered in Fargo, North Dakota. Debtor opened its doors in 1969 and operated as a regional specialty retailer of casual apparel and accessories for fashion-conscious young women. Debtor owned and sold its own line of private-label goods, including private-label branded denim in approximately 137 mall-based stores spanning 27 states. Debtor's fashions were also available through www.vanity.com, which was launched in 2008. Debtor sourced reasonably priced fashion apparel and accessories from U.S.-based suppliers and overseas manufacturers. At least 60% of Debtor's inventory originated with U.S. suppliers. Ecommerce products were distributed from a building located one mile from Debtor's headquarters. Debtor employed 274 full-time and 1,049 part-time employees as of the Petition Date. Debtor's total sales in the year ending December 2016 were approximately $80 million.

### 2.2    The Debtor's Operations and Financial Difficulties.

2.2.1    ***Corporate Structure.*** Shazzam! Inc., Debtor's parent holding company, owns 100% of Debtor's stock. Shazzam! Inc.'s only asset is Debtor's stock. The ownership of Shazzam!, Inc. is as follows:

47.385% Teresa Bottrell
14.184% James Bennett
14.184% Marnie Kimbrough
11.25% C. Anderson-Bottrell
8.001% Lowell Bottrell
3.745% Stephen J. Anderson
1.251% Stephen J. Anderson IRA

All administrative and management services for the Debtor including human resources administration, accounting/bookkeeping, marketing, IT support, product sourcing and design, training of store employees, etc. were provided by Vanity, Inc., a North Dakota corporation formed in 1997. Vanity, Inc. had 88 full-time and 16 part-time employees as of the Petition Date.

2.2.2    ***The Debtor's Debt Structure.***

As of the Petition Date, Debtor had secured obligations owing to Wells Fargo Bank, N.A. ("***Wells Fargo***") in the aggregate principal amount of approximately $4,307,869 plus accrued and

unpaid interest with respect thererto, fees, costs, and other expenses. The Debtor had granted security interests in, and liens on, all or substantially all of its assets to secure its obligations to Wells Fargo.

Additionally, TGC, L.P. ("*TGC, LP*"), a Montana limited partnership, which has common ownership with the owners identified above of Shazzam!, Inc. (*i.e.*, Teresa Bottrell, James Bennett, and Marnie Kimbrough), had loaned approximately $5,000,000 to Debtor since 2013 to allow the Debtor to continue operating. Debtor initially Scheduled the claim of TGC, LP as secured. However, TGC, LP has acknowledged its claim is unsecured due to the filing of its UCC-1 financing statement within the 90-days before the Petition Date. TGC, LP has filed an unsecured claim in the sum of $5,248,774 (proof of claim # 281).

### 2.2.3  *Events Leading to the Filing.*

The Debtor incurred operational losses stemming from, among other things, expensive lease obligations, underperforming retail locations, and increased competition in the women's fashion retail industry on a broad scale. Moreover, the continued growth of online competitors and decline in mall traffic has consistently challenged the Debtor's ability to operate on a sustained profitable basis. The Debtor, after consultation with key constituents, determined that commencing store closing sales and liquidating all assets provided the best opportunity to maximize value of the Debtor's Estate for the benefit of its creditors and all interested parties.

### *2.3*   *The Debtor's Bankruptcy Proceedings.*

2.3.1   *Employment of Professionals.* The Debtor requested and obtained the authority to employ the following professionals: i) Vogel Law Firm as attorneys for Debtor; (ii) Eide Bailly, LLP as accountant; (iii) Brady Martz and Associates, P.C. as accountant; (iv) Jill Motschenbacher, accountant; (v) Hilco IP Services d/b/a Hilco Streambank as Intellectual Property Disposition Consultant; (vi) Diamond B Technology Solutions, LLC as IT Consultant; (vii) Eide Bailly, LLP as Auditor for ERISA Plan; (viii) Bell Bank as Designated Trustee for ERISA Plan.

2.3.2   *Debtor's Use of Cash Collateral.* As part of the First Day Motions, Debtor and Wells Fargo entered into a stipulation governing the consensual use of cash collateral on a postpetition basis to allow the Debtor to conduct store closing sales. The Bankruptcy Court approved the stipulation allowing the Debtor to use cash collateral and Wells Fargo was paid off within the first three weeks of the Debtor's bankruptcy case. TGC, LP consented to the use of cash collateral without restriction.

2.3.3   *The Creditors' Committee.* On March 10, 2017, the Office of the United States Trustee appointed an official committee of the Debtor's unsecured creditors (the "*Creditors' Committee*") pursuant to section 1102(a) of the Bankruptcy Code. The Creditors' Committee consists of five of the Debtor's largest unsecured creditors: Washington Prime Group, Inc., GGP Limited Partnership, Simon Property Group, Inc., Cavalini, Inc. and Anfield Apparel Group, Inc.

The Creditors' Committee retained Fox Rothschild, LLP as lead counsel, and BGA Management, LLC d/b/a Alliance Management, Inc. as Financial Advisor.

2.3.4   *The Sale of Substantially All of the Remaining Estate Assets.* The Debtor determined the best method to realize value for the Estate was to conduct store closing sales at all of its locations and liquidate its remaining inventory and fixtures on an expedited basis.

On March 23, 2017, the Bankruptcy Court entered the Final Order: (I) Authorizing the Debtor to Assume the Consulting Agreement, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to be Free and Clear of All Liens, Claims and Encumbrances, and Granting Related Relief (the "**Store Closing Order**") [Doc. 172]. Pursuant to the Store Closing Order, the Debtor retained Tiger Capital Group, LLC to assist with conducting store closing sales at all 137 stores. By April 14, 2017, all of Debtor's inventory and fixtures were liquidated and the stores were closed and premises returned to the applicable landlord. Wells Fargo, the secured lender, was paid off, and the net proceeds from the store closing sales (in excess of $7M) is available for payment of administrative expenses and Claims.

The Debtor also retained Hilco Streambank as its Intellectual Property Disposition Consultant to assist with the sale of the Debtor's intellectual property assets including domain names, trademarks, and customer data (the "**IP Assets**"). An auction of the Debtor's IP Assets was conducted on October 25, 2017 and two subsets of IP Assets were purchased at the auction by Westerdal Corp., and Vanity Brands LLC for the total purchase prices of $340,000 and $137,500, respectively. The two sales of the Debtor's IP Assets closed on or about November 21, 2017.

2.3.5   **Schedules and Bar Date**. On March 27, 2017, the Debtor filed its schedules of assets and liabilities and statement of financial affairs. The Court established July 3, 2017 as the Bar Date for prepetition creditors and governmental units to file proofs of claim.

# 3.   SUMMARY OF THE PLAN OF LIQUIDATION

THIS SECTION PROVIDES A SUMMARY OF THE STRUCTURE AND MEANS FOR IMPLEMENTING THE PLAN AND OF THE CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN, AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN, WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT AND TO THE EXHIBITS ATTACHED THERETO.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT INCLUDE SUMMARIES OF THE PROVISIONS CONTAINED IN THE PLAN AND IN DOCUMENTS REFERRED TO THEREIN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT DO NOT PURPORT TO BE PRECISE OR COMPLETE STATEMENTS OF ALL THE TERMS AND PROVISIONS OF THE PLAN OR DOCUMENTS REFERRED TO THEREIN, AND REFERENCE IS MADE TO THE PLAN AND TO SUCH DOCUMENTS FOR THE FULL AND COMPLETE STATEMENTS OF SUCH TERMS AND PROVISIONS.

THE PLAN ITSELF AND THE DOCUMENTS REFERRED TO THEREIN CONTROL THE ACTUAL TREATMENT OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR UNDER THE PLAN AND WILL, UPON THE EFFECTIVE DATE, BE BINDING UPON HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR AND OTHER PARTIES IN INTEREST.

## 3.1   *In General.*

The Plan is proposed by the Debtor. The Allowed Claims of Claimholders will be paid in accordance with priorities set forth in the Bankruptcy Code, a structure that the Debtor believes will produce a fundamentally equitable outcome for all creditors.

3.1.1   ***Estate Assets.*** On the Effective Date, the Debtor's Estate Assets not sold pursuant to the store closing sales or the IP Asset sales and/or not distributed pursuant to other provisions of the Plan or Orders of the Bankruptcy Court shall be deemed Revested Assets, and administered by the Plan Administrator pursuant to the Plan.

3.1.2   ***Plan Administrator.*** As of the Effective Date, the Plan Administrator shall be vested with full legal power, capacity and authority, and shall be directed to administer, collect and liquidate the Debtor's Revested Assets and to implement the Plan. The Plan Administrator will be Mr. David Velde, an attorney with Velde Moore, LTD, 1118 Broadway, Alexandria, MN 56308. Mr. Velde has served as a Chapter 7 United States Bankruptcy Trustee since 1998.

3.1.3   ***Causes of Action, Preserved Claims, and Avoidance Actions.*** Subject to the provisions of the Plan, the Plan Administrator may, but is not required to, pursue any Causes of Action, Preserved Claims, and Avoidance Actions not otherwise released under the Plan, or other order of the Bankruptcy Court by informal demand and/or by commencing litigation.

**3.2**   **Classification of Claims and Interests.**

3.2.1   ***Class 1.*** Class 1 consists of the Wells Fargo secured claim. Class 1 is deemed unimpaired by the Plan.

3.2.2   ***Class 2.*** Class 2 consists of general unsecured Claims with a Face Amount less than $1,500.00, including unsecured creditors with claims in excess of $1,500.00 that elect to reduce their Claim to $1,500.00 and be treated as a Class 2 creditor. Class 2 is impaired by the Plan.

3.2.3   ***Class 3.*** Class 3 consists of general unsecured Claims that are Allowed as of the Record Date. Class 3 is impaired by the Plan.

3.2.4   ***Class 4.*** Class 4 consists of general unsecured Claims that are Disputed as of the Record Date. Class 4 is impaired by the Plan.

3.2.5   ***Class 5.*** Class 5 consists of all Equity Interests. Class 5 is impaired by the Plan.

**3.3**   **Treatment of Claims and Interests.**

3.3.1   ***Class 1 (Wells Fargo Secured Claim).*** Wells Fargo was indefeasibly paid in full as of the date of the Disclosure Statement. Wells Fargo has no further Claim against the Debtor and will not receive any Distributions under the Plan.

3.3.2   ***Class 2 (Convenience – Unsecured Claims).*** This class shall consist of unsecured Allowed Claims not entitled to priority where the total of the unsecured Allowed Claim does not exceed $1,500.00. Any unsecured creditor whose claim exceeds $1,500.00 may elect by voting on the Plan to be treated as a Class 2 Convenience Class creditor by electing to reduce their Claim to $1,500.00. The holders of Class 2 Allowed Claims will be paid a total of 50% of their Allowed Claims as soon as reasonably practicable after the Effective Date. Such payments shall be in full satisfaction of each Class 2 Allowed Claim. The Debtor estimates that there are approximately $105,000 in Allowed Claims in Class 2.

3.3.3 *Class 3 (Effective Date Unsecured Claims).* Except to the extent that a holder of a Class 3 Allowed Claim agrees to a less favorable treatment, each holder of a Class 3 Allowed Claim shall receive its Pro Rata share of the First Interim Distribution after payment in full of (or reserve for) Plan Administration Expenses, all Allowed Administrative Claims (including Professional Fee Claims, Administrative Tax Claims, and Priority Tax Claims), Allowed Claims in Class 2, and the Claims Reserve. Subsequent Distributions on Class 3 Allowed Claims shall be made as soon as reasonably practicable after the Effective Date and after the reconciliation of all Class 4 Claims, unless the Plan Administrator, in its sole discretion, determines that an earlier Distribution is practicable consistent with the Plan. Such Distributions shall be in full satisfaction of each Class 3 Allowed Claim with the effective date of the satisfaction being the Final Distribution Date. The holders of Allowed Claims in Class 3 and Class 4 shall be paid Pro Rata based on the aggregate Face Amount of all Allowed Claims in both classes.

3.3.4 *Class 4 (Post-Effective Date Unsecured Claims).* Except to the extent that a holder of a Class 4 Claim agrees to a less favorable treatment, each holder of a Class 4 Claim that becomes an Allowed Claim shall receive its Pro Rata share of the Subsequent Interim Distributions after payment in full of (or reserve for) Plan Administration Expenses, all Allowed Administrative Claims (including Professional Fee Claims, Administrative Tax Claims, and Priority Tax Claims), Allowed Claims in Class 2, and the First Interim Distribution on Class 3 Claims. Distributions on Class 4 Allowed Claims shall be made as soon as reasonably practicable after the Effective Date and after the reconciliation of all Class 4 Claims, unless the Plan Administrator, in its sole discretion, determines that an earlier Distribution is practicable consistent with the Plan. Such Distributions shall be in full satisfaction of each Class 4 Allowed Claim with the effective date of the satisfaction being the Final Distribution Date. The holders of Allowed Claims in Class 3 and Class 4 shall be paid Pro Rata based on the aggregate Face Amount of all Allowed Claims in both classes. For avoidance of doubt, all Class 4 Claims are considered Disputed Claims.

3.3.5 *Class 5 (Equity Interests).* The holders of Equity Interests in Class 5 shall have their Equity Interests against the Debtor extinguished as of the Effective Date and shall receive no Distributions under this Plan.

**3.4 Treatment of Unclassified Claims.**

3.4.1 *Administrative Claims - Professional Claims.*

(a) **Final Professional Fee Applications.** All final requests for payment of Professional Fee Claims pursuant to Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b), or 1103 must be made by application filed with the Bankruptcy Court and served on counsel to the Debtor, counsel to the Creditors' Committee, counsel to the Plan Administrator, and the U.S. Trustee no later than the first Business Day that is thirty (30) calendar days after the Effective Date, unless otherwise ordered by the Bankruptcy Court (the "*Administrative Claim Bar Date*"). Objections to such applications must be filed and served on counsel to the Debtor, counsel to the Creditors' Committee, counsel to the Plan Administrator, the U.S. Trustee, and the requesting Professional on or before the date that is twenty-one (21) calendar days after the date on which the applicable application was served (or such longer period as may be allowed by order of the Bankruptcy Court or by agreement with the requesting Professional). Any Professional Fee Claim not timely filed and asserted will be forever barred and discharged.

(b)    **Payment of Professional Fee Claims.** All Professional Fee Claims shall be paid by the Plan Administrator to the extent approved by order of the Bankruptcy Court within five (5) Business Days after entry of such order.

(c)    **Post-Effective Date Services.** After the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate. The Plan Administrator shall pay any Professionals for Post-Effective Date services requested by the Plan Administrator.

3.4.2    ***Administrative Claims – Administrative Tax Claims under 503(b)(1)(B) and (C) of the Bankruptcy Code.*** Allowed Administrative Claims under section 503(b)(1)(B) and (C) of the Bankruptcy Code shall be paid in full by the Plan Administrator as soon as reasonably practicable after the Effective Date.

3.4.3    ***Priority Tax Claims.*** In full satisfaction, settlement, and release of and in exchange for such Claims, Allowed Priority Tax Claims shall be paid by the Plan Administrator, at the Plan Administrator's option, as follows: (a) cash funds equal to the unpaid portion of the Face Amount of such Allowed Priority Tax Claim on the later of the Effective Date or thirty (30) calendar days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim; or (b) such other treatment as to which the holder of an Allowed Priority Tax Claim and the Plan Administrator shall have agreed upon in writing.

3.4.4    ***All Other Administrative Claims.*** Any person or entity who requests compensation or expense reimbursement in the Chapter 11 case pursuant to section 503 of the Bankruptcy Code (other than Professional Fee Claims, Administrative Tax Claims and Priority Tax Claims) must file an application with the clerk of the Bankruptcy Court and serve such application on counsel for the Plan Administrator and the U.S. Trustee no later than the first Business Day that is thirty (30) calendar days after the Effective Date, unless otherwise ordered by the Court (the "***Administrative Claim Deadline***"), or be forever barred from seeking such compensation or expense reimbursement. For the avoidance of doubt, Section 503(b)(9) Claims are subject to section 4.4 of the Plan. Unless the Plan Administrator objects to an Administrative Claim, such Administrative Claim shall be deemed an Allowed Administrative Claim in the amount requested. Objections to such applications must be filed and served on counsel to the Plan Administrator, the U.S. Trustee, and the requesting claimant on or before the date that is twenty-one (21) calendar days after the date on which the applicable application was served (or such longer period as may be allowed by order of the Bankruptcy Court or by agreement with the requesting claimant). All Allowed Administrative Claims (other than Professional Fee Claims, Administrative Tax Claims and Priority Tax Claims) shall be paid by the Plan Administrator within thirty (30) days of allowance by the Bankruptcy Court, unless appealed by the Plan Administrator.

**3.5    *Implementation of the Plan.***

3.5.1    ***In General.*** The Plan is a liquidating plan and provides for the liquidation of the Debtor's Estate Assets and the payment of the proceeds generated therefrom to holders of Allowed Claims in accordance with the priorities set forth in the Bankruptcy Code. The Plan Administrator may, but is not required to, pursue any Causes of Action, Preserved Claims, or Avoidance Actions not

otherwise released under the Plan, or other Order of the Bankruptcy Court by informal demand and/or by the commencement of litigation in any court of competent jurisdiction, with the net recoveries of such Causes of Action, Preserved Claims, or Avoidance Actions to be distributed in accordance with the Plan.

       3.5.2 ***Means of Implementing the Plan.*** The primary means by which the Debtor will implement the Plan is through the Plan Administrator.

       3.5.3 ***Transfer Taxes.*** Any transfer of the Debtor's Estate Assets and pursuant to the Plan shall constitute a "transfer under a plan" within the purview of section 1146(c) of the Bankruptcy Code and will not be subject to transfer, stamp or similar taxes.

       3.5.4 ***Estimated Plan Distribution.*** The Allowed Administrative Claims (including Professional Fee Claims, Administrative Tax Claims and Priority Tax Claims) will be paid pursuant to priorities set forth in the Bankruptcy Code from the cash funds in the Debtor in Possession account and from the Revested Assets or Causes of Action, Preserved Claims, and Avoidance Actions. The amount of the Plan Distributions on account of Class 3 and Class 4 cannot be determined with certainty. The following table provides a summary of the classification and treatment of Claims and Equity Interests and the potential distributions to Holders of Allowed Claims and Equity Interests under the Plan.

       **THE PROJECTED RECOVERIES SET FORTH IN THE TABLE BELOW ARE ESTIMATES ONLY AND ARE SUBJECT TO CHANGE. FOR A COMPLETE DESCRIPTION OF THE DEBTOR'S CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS, REFERENCE SHOULD BE MADE TO ARTICLES III AND V OF THE PLAN.**

# SUMMARY OF EXPECTED RECOVERIES[1]

| Class | Claim/Equity Interest | Treatment of Claim/Interest | Estimated Amount of Unpaid Allowed Claims | Projected Recovery Under the Plan |
|---|---|---|---|---|
| N/A | Professional Fee Claims | All Professional Fee Claims shall be paid by the Plan Administrator to the extent approved by order of the Bankruptcy Court within five (5) Business Days after entry of such order. | Approximately $428,000 owing but unpaid as of the Effective Date as follows: $75,000 – Vogel Law Firm $35,000 – Eide Bailly, LLP $15,000 – Brady Martz, LLP $300,000 - Fox Rothschild $3,000 - BGA Management | Paid in full pursuant to Plan unless otherwise paid pursuant to other Bankruptcy Court Order |
| N/A | Administrative Tax Claim | Allowed Administrative Tax Claims under section 503(b)(1)(B) and (C) of the Bankruptcy Code shall be paid in full by the Plan Administrator as soon as reasonably practicable after the Effective Date. | Approximately $0 | Paid in full pursuant to Plan unless otherwise paid pursuant to sale or other Bankruptcy Court Order |
| N/A | Priority Tax Claims | In full satisfaction, settlement, and release of and in exchange for such Claims, Allowed Priority Tax Claims shall be paid by the Plan Administrator, at the Plan Administrator's option, as follows: (a) cash funds equal to the unpaid portion of the Face Amount of such Allowed Priority Tax Claim on the later of the Effective Date or thirty (30) calendar days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim; or (b) such other treatment as to which the holder of an Allowed Priority Tax Claim and the Plan Administrator shall have agreed upon in writing. | Approximately $30,000 | Paid in full pursuant to Plan unless otherwise paid pursuant to sale or other Bankruptcy Court Order |
| N/A | All Other Administrative Claims | Allowed Administrative Claims shall be paid in full in cash by the Plan Administrator as soon as reasonably practicable after the Effective Date | Approximately $260,000 | Paid in full pursuant to Plan unless otherwise paid pursuant to sale or other Bankruptcy Court Order |
| 1 | Wells Fargo Secured Claim | Wells Fargo was paid in cash, in full, by the Debtor. Wells Fargo has no further claim against the Debtor and will not receive any Distributions under the Plan. | $0.00 | $0.00 Has already been indefeasibly paid in full. |
| 2 | Convenience Unsecured Claims | Unsecured Allowed Claims not entitled to priority where the total of the unsecured Allowed Claim does not exceed $1,500.00. Any unsecured creditor whose claim exceeds $1,500.00 may elect by voting on the Plan to be treated as a Class 2 Convenience Class creditor by electing to reduce | Approximately $105,000 | 50% |

---

[1] The recoveries set forth in this table may change based upon changes in the amount of Claims that are "Allowed" as well as other factors related to the Debtor's business operations and general economic conditions. "Allowed" means a Claim or any portion thereof (a) that has been allowed by a Final Order, or (b) as to which, on or by the Effective Date, (i) no proof of claim has been filed with the Bankruptcy Court and (ii) the liquidated and noncontingent amount of which is scheduled, other than a Claim that is scheduled in an unknown amount or as disputed, or (c) for which a proof of claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed within the periods of limitation fixed by the Plan, the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order, or (d) that is expressly allowed in a liquidated amount in the Plan. The amount of an Allowed Claim shall be the lesser of the amount stated in a proof of claim filed for such Claim (if less than the amount scheduled for such Claim), the amount agreed to in a written settlement, or the amount allowed by a Final Order. Except for any Claim that is expressly Allowed herein, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim has been filed, is not considered Allowed and shall be deemed expunged upon entry of the Confirmation Order.

| | | | | |
|---|---|---|---|---|
| | | their Claim to $1,500.00. The holders of Class 2 Allowed Claims will be paid a total of 50% of their Allowed Claims as soon as reasonably practicable after the Effective Date. Such payments shall be in full satisfaction of each Class 2 Allowed Claim. | | |
| 3 | Effective Date Unsecured Claims | Except to the extent that a holder of a Class 3 Allowed Claim agrees to a less favorable treatment, each holder of a Class 3 Allowed Claim shall receive its Pro Rata share of the First Interim Distribution after payment in full of (or reserve for) Plan Administration Expenses, all Allowed Administrative Claims as set forth in Article IV above (including Professional Fee Claims, Administrative Tax Claims, and Priority Tax Claims), Allowed Claims in Class 2, and the Claims Reserve. Subsequent Distributions on Class 3 Allowed Claims shall be made as soon as reasonably practicable after the Effective Date and after the reconciliation of all Class 4 Claims, unless the Plan Administrator, in its sole discretion, determines that an earlier Distribution is practicable consistent with the Plan. Such Distributions shall be in full satisfaction of each Class 3 Allowed Claim. The holders of Allowed Claims in Class 3 and Class 4 shall be paid Pro Rata based on the aggregate Face Amount of all Allowed Claims in both classes. | Approximately $4,509,000 | 31% |
| 4 | Post-Effective Date Unsecured Claims | Except to the extent that a holder of a Class 4 Claim agrees to a less favorable treatment, each holder of a Class 4 Claim that becomes an Allowed Claim shall receive its Pro Rata share of the Subsequent Interim Distributions after payment in full of (or reserve for) Plan Administration Expenses, all Allowed Administrative Claims as set forth in Article IV above (including Professional Fee Claims, Administrative Tax Claims, and Priority Tax Claims), Allowed Claims in Class 2, and the First Interim Distribution on Class 3 Claims. Distributions on Class 4 Allowed Claims shall be made as soon as reasonably practicable after the Effective Date and after the reconciliation of all Class 4 Claims, unless the Plan Administrator, in its sole discretion, determines that an earlier Distribution is practicable consistent with the Plan. Such Distributions shall be in full satisfaction of each Class 4 Allowed Claim. The holders of Allowed Claims in Class 3 and Class 4 shall be paid Pro Rata based on the aggregate Face Amount of all Allowed Claims in both classes. For avoidance of doubt, all Class 4 Claims are considered Disputed Claims. | Approximately $21,000,000[2] | 31% |
| 5 | Equity Interests | The holders of Equity Interests in Class 5 shall have their Equity Interests against the Debtor extinguished as of the Effective Date and shall receive no Distributions under this Plan. | N/A | 0% |

---

[2] The amount identified is total approximate amount of Class 4 Claims. At the present time, it is impossible to determine the amount of Class 4 Claims that will be Allowed. To the extent any Class 4 Claims become Disallowed Claims, the percentage Distributions on Allowed Class 3 and Class 4 Claims will increase.

3.5.5   *Time of Distributions.* Except as otherwise provided for herein, ordered by the Bankruptcy Court, or otherwise, Distributions under the Plan shall be made as soon as is reasonably practicable on the later to occur of (a) the Effective Date, (b) the date a Claim becomes an Allowed Claim, or (c) the date that cash becomes available for Distribution to a particular Class pursuant to the treatment of such Class under the Plan.

### 3.6   *Funding and No Disbursing Agent.*

3.6.1   *Plan Predicated Upon Liquidation of the Debtor's Estate Assets and Net Recoveries from Causes of Action, Preserved Claims, and Avoidance Actions.* On the Effective Date, the Debtor and its Estate shall irrevocably vest in the Liquidating Debtor for purposes of administration, by the Plan Administrator, of all of its respective rights, title, and interest in and to all Revested Assets, and in accordance with section 1141 of the Bankruptcy Code. For the avoidance of doubt, the Revested Assets include Causes of Action, Avoidance Actions and Preserved Claims. Except as specifically provided in the Plan or the Confirmation Order, the Estate Assets shall automatically vest in the Liquidating Debtor free and clear of all Claims, Liens, encumbrances, or interests, and such vesting shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax. The Plan Administrator shall be the exclusive representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code regarding all Revested Assets.

On the Effective Date, the Plan Administrator shall establish the Claims Reserve for the benefit of holders of Class 3 and Class 4 Creditors whose Claims are Allowed. The Claims Reserve shall vest in the Plan Administrator and shall be maintained by the Plan Administrator in accordance with the Plan. Any recovery from Causes of Action, Avoidance Actions or Preserved Claims will be included in the Claims Reserve.

3.6.2   *No Separate Disbursing Agent.* The Plan Administrator shall serve as the disbursing agent for all Allowed Claims under the Plan.

### 3.7   *Executory Contracts and Unexpired Leases.*

3.7.1   *Assumption/Rejection.* The Debtor does not assume any executory contracts or unexpired leases still in effect on the Effective Date of the Plan. On the Effective Date, the Debtor's executory contracts and unexpired leases not previously rejected will be conclusively deemed rejected. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections, pursuant to section 365 of the Bankruptcy Code.

3.7.2   *Rejection Damages Bar Date.* If the rejection by the Debtor, pursuant to the Plan or otherwise, of an executory contract or unexpired lease results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtor, the Liquidating Debtor, the Plan Administrator or the properties of any of them unless a proof of claim was filed with the Claims Agent within the time allowed by the Bar Date (*i.e.*, July 3, 2017) or the Bankruptcy Court's applicable order authorizing the Debtor to reject an executory contract or unexpired lease; provided, however, that notwithstanding the foregoing, in the case of an executory contract or unexpired lease "deemed rejected" pursuant to Section 6.2 of the Plan which results in a Claim, such Claim shall be forever barred and shall not be enforceable against the Debtor, the Liquidating Debtor, the Plan Administrator, the Estate or the properties of any of them unless a proof of claim is filed with the Claims Agent and served upon counsel to the Plan Administrator within thirty (30) days after the Effective Date.

17

### 3.8 *Modification of the Plan.*

3.8.1 ***Plan May Be Modified.*** The Debtor may alter, amend or modify the Plan or any Exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Hearing. After the Confirmation Date and prior to the Effective Date, the Debtor may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not materially adversely affect the treatment of Claimholders or Interestholders under the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court. From and after the Effective Date and prior to substantial consummation of the Plan (as defined in section 1101(2) of the Bankruptcy Code), the Plan Administrator may seek non-material modification or amendment of the Plan pursuant to Section 13.2 of the Plan.

### 3.9 *Plan Controls.*

3.9.1 ***Plan Provisions Control.*** In the event and to the extent that any provision of the Plan is inconsistent with the provisions of this Disclosure Statement or any other agreement or instrument required or contemplated to be executed by the Debtor or the Plan Administrator, the provisions of the Plan will control.

### 3.10 *Binding Effect.*

3.10.1 ***Provisions of Plan are Binding.*** The provisions of the Plan and the Confirmation Order are binding and will inure to the benefit of the holders of Claims against, and Equity Interests in, the Debtor and its respective successors, assigns, heirs and personal representatives, whether or not such persons voted to accept or reject the Plan.

### 3.11 *Procedures for Resolving Disputed Claims and Equity Interests.*

3.11.1 ***Objections to Claims.*** Subsequent to Confirmation, the Plan Administrator will have the right to object to the allowance of any Claim. Such objections, if any, will be filed with the Bankruptcy Court no later than the first Business Day that is 180 calendar days after the Effective Date. For the avoidance of doubt, the Claim Objection Deadline may be extended one or more times by the Bankruptcy Court.

3.11.2 ***No Distributions Pending Allowance.*** Except as otherwise set forth in the Plan, no payments or Distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim.

3.11.3 ***Compromises and Settlements.*** Pursuant to Bankruptcy Rule 9019(a), the Debtor may compromise and settle various (a) Claims against it, and (b) claims that Debtor may have against other Persons. The Debtor expressly reserves the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle, up to and including the Effective Date, Claims against the Debtor and claims that the Debtor may have against other Persons.

After the Effective Date, such right will pass exclusively to the Plan Administrator to which such claims will be conveyed pursuant to the Plan.

3.11.4 **Post-Confirmation Advisory Committee**. Within ten (10) days after entry of the Confirmation Order, the Debtor, in consultation with the Creditors' Committee, will establish a Post-Confirmation Advisory Committee consisting of three (3) unsecured creditor representatives that are willing to serve in an advisory capacity to the Plan Administrator. The Post-Confirmation Advisory Committee members will agree to serve free of charge and may retain counsel at their own cost which shall not be passed along to the Debtor's Estate. The Plan Administrator will provide a quarterly report to the Post-Confirmation Advisory Committee and will consult and receive the majority approval of the Post-Confirmation Advisory Committee members of any compromise or settlement where the amount of such Disputed Claim or Cause of Action exceeds $250,000, subject to Bankruptcy Court approval if the compromise or settlement is not approved by a majority of the Post-Confirmation Advisory Committee.

3.11.5 **Payments and Distributions with Respect to Classes 3 and 4; Claims Reserve**. On the Effective Date, the Plan Administrator shall establish the Claims Reserve. The Claims Reserve shall vest in the Plan Administrator and shall be maintained by the Plan Administrator in accordance with the Plan. Any recovery from Causes of Action, Avoidance Actions or Preserved Claims will be included in the Claims Reserve.

The Plan Administrator shall hold the Claims Reserve for the benefit of holders of Class 3 and Class 4 Creditors whose Claims are Allowed and for the benefit of other parties entitled thereto under the Plan. The amount of the Claims Reserve will be equal to the funds held in the Debtor in Possession account as of the Effective Date, less the amounts on reserve for Plan Administration Expenses, Allowed Administrative Claims as set forth in Article IV of the Plan (including Professional Fee Claims, Administrative Tax Claims and Priority Tax Claims) and Allowed Class 2 Claims multiplied by the percentage that represents the Face Amount of Class 4 Claims compared to the Face Amount of Claims in Classes 3 and 4. Upon the allowance of any Class 4 Claims a Distribution on said Claims will be made from the Claims Reserve equal to the percentage Pro Rata distribution received by Class 3 Claims as a result of the First Interim Distribution. Allowed Claims in Class 3 and Class 4 shall be paid Pro Rata based on the aggregate Face Amount of all Allowed Claims in both classes.

### 3.12    Retention of Claims Belonging to the Debtor.

3.12.1 **Causes of Action, Preserved Claims and Avoidance Actions.** Except as previously waived or released, all Causes of Action, Preserved Claims, and Avoidance Actions are preserved and retained for enforcement exclusively by the Plan Administrator subsequent to the Effective Date.

### 3.13    Tax Consequences.

3.13.1 **In General.** The Federal income tax consequences of the Plan to a Creditor or Interestholder will depend upon a number of factors and can be complex. In general, a Creditor that receives cash in satisfaction of its Allowed Claim will generally receive a gain or loss with respect to the principal amount of the Allowed Claim equal to the difference between: (i) the Creditor's basis in the Claim (other than any Claim in respect to accrued interest); and (ii) the balance of the cash received after any allocation to the accrued interest. The Debtor has not determined the character of any gain or loss to be recognized by an Interest Holder with respect to any distribution, if any, such Interestholder may

receive under the Plan. FOR THE FOREGOING REASONS, HOLDERS OF CLAIMS AND HOLDERS OF EQUITY INTERESTS ARE ADVISED TO CONSULT WITH THEIR OWN TAX ADVISORS AS TO THE SPECIFIC TAX CONSEQUENCES (FOREIGN, FEDERAL, STATE AND LOCAL) OF THE PLAN. THE DEBTOR IS NOT MAKING ANY REPRESENTATION REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE CONFIRMATION AND CONSUMMATION OF THE PLAN AS TO ANY CREDITOR OR INTERESTHOLDER, NOR IS THE DEBTOR RENDERING ANY FORM OF LEGAL OPINION AS TO SUCH TAX CONSEQUENCES. CREDITORS AND INTERESTHOLDERS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS WITH RESPECT TO THE TREATMENT OF DISTRIBUTIONS MADE UNDER THE PLAN.

## 4.    POST-CONFIRMATION ISSUES

**4.1    Role of Creditors' Committee.** From and after the Effective Date, the Creditors' Committee shall not exist, except in accordance with Section 14.3 of the Plan.

**4.2    Employment of Counsel and Fees.**

**4.2.1    Employment of Professionals After Confirmation.** All professionals employed by the Debtor and the Creditors' Committee during the pendency of the Chapter 11 case shall continue to be employed, and will be entitled to compensation as holders of Administrative Claims for their services prior to the Effective Date. Upon the occurrence of the Effective Date, the Plan Administrator shall be deemed a judicial substitute for the Debtor and shall be empowered to retain and/or employ professionals.

**4.3    Exculpation and Limitation of Liability; Releases; and Injunction.**

**4.3.1    Compromise and Settlement of Claims, Interests and Controversies.** Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute (a) a good faith compromise of all Claims, Equity Interests, and controversies relating to the contractual, legal and subordination rights that a holder of a Claim may have with respect to any Allowed Claim or any Distribution to be made on account of such Allowed Claim with the effective date of the compromise of any Claim being the date of the final Distribution on the same, and (b) a good faith compromise of all Claims and Causes of Action the Debtor, Creditors' Committee or any Person that could bring such Cause of Action on their behalf against the Released Parties. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interest of the Debtor, its Estate and holders, and is fair, equitable and reasonable. In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Plan Administrator may compromise and settle Claims against the Debtor and Causes of Action against other Persons including Statutory Insiders, subject to the provisions of Sections 8.2 and 10.2 of the Plan requiring majority agreement of the Post-Confirmation Advisory Committee for settlement or compromise of any Disputed Claim or Cause of Action where the amount exceeds $250,000, if said committee can be formed, and subject to Bankruptcy Court approval if the compromise or settlement is not approved by a majority of the Post-Confirmation Advisory Committee.

4.3.2   ***Release of Liens.*** Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to the Plan, all liens, pledges, or other security interests against any property of the Estate shall be fully released, and all of the right, title and interest of any holder of such lien, pledges or other security interest shall revert to the Estate and its successors and assigns.

4.3.3   ***Releases by Holders.*** **OTHER THAN AS TO THE RIGHTS AND LIABILITIES PROVIDED FOR IN THE PLAN, AS OF THE EFFECTIVE DATE OF THE PLAN, EACH AND ALL OF THE RELEASING PARTIES SHALL BE DEEMED TO CONCLUSIVELY, ABSOLUTELY, EXPRESSLY, UNCONDITIONALLY, IRREVOCABLY, GENERALLY AND INDIVIDUALLY AND COLLECTIVELY, RELEASE, AND ACQUITTED EACH AND ALL OF THE RELEASED PARTIES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL ACTIONS, CLAIMS, EQUITY INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE AGAINST OR ON BEHALF OF ANY OR ALL OF THE RELEASED PARTIES, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT OR OTHERWISE, BY STATUTE OR OTHERWISE, THAT SUCH RELEASING PARTY (WHETHER INDIVIDUALLY OR COLLECTIVELY) EVER HAD, NOW HAS OR HEREAFTER CAN, SHALL OR MAY HAVE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR, THE DEBTOR'S LIQUIDATION, THE CHAPTER 11 CASE, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASE, INCLUDING THE NEGOTIATION, FORMULATION, PREPARATION OR PERFORMANCE OF THE STORE CLOSING SALES, THE IP ASSET SALES, THE PLAN, THE DISCLOSURE STATEMENT, OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE OF THE PLAN RELATING TO THE DEBTOR OR THE DEBTOR'S ESTATES, EXCEPT FOR ANY CLAIMS AND CAUSES OF ACTION FOR ACTUAL FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE. THE EFFECTIVE DATE OF SUCH RELEASE AS TO ANY CLAIM SHALL BE THE DATE OF THE FINAL DISTRIBUTION ON THE CLAIM. FOR THE AVOIDANCE OF DOUBT, THE DEBTOR IS NOT A "RELEASING PARTY" AND IS NOT RELEASING ANY CLAIMS AGAINST THIRD PARTIES OR THE STATUTORY INSIDERS.**

4.3.4   ***Liabilities to, and Rights of, Governmental Units.*** Nothing in the Plan or Confirmation Order shall release, or preclude: (1) any liability to a Governmental Unit that is not a Claim; (2) any Claim of a Governmental Unit arising on or after the Effective Date; (3) any liability to a Governmental Unit on the part of any Person or Entity other than the Debtor or Plan Administrator; (4) any valid right of setoff or recoupment by a Governmental Unit; or (5) any criminal liability. Nothing in the Plan or Confirmation Order shall enjoin or otherwise bar any Governmental Unit

from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence. The injunction provisions contained in the Plan and Confirmation Order are not intended and shall not be construed to bar any Governmental Unit from, after the Effective Date, pursuing any police or regulatory action.

4.3.5 *Exculpation.* EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, NO EXCULPATED PARTY SHALL HAVE OR INCUR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM ANY EXCULPATED CLAIM, OBLIGATION, CAUSE OF ACTION OR LIABILITY FOR ANY EXCULPATED CLAIM, EXCEPT FOR FRAUD, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, BUT IN ALL RESPECTS SUCH ENTITIES SHALL BE ENTITLED TO RAISE ANY AFFIRMATIVE DEFENSES, INCLUDING REASONABLE RELIANCE UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN. THE DEBTOR (AND ITS RESPECTIVE AFFILIATES, AGENTS, DIRECTORS, OFFICERS, EMPLOYEES, ADVISORS AND ATTORNEYS) HAVE PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS AND PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION OF VOTES AND TRANSFER OF DEBTOR'S ESTATE ASSETS PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH TRANSFER SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR THE TRANSFER OF ESTATE ASSETS PURSUANT TO THE PLAN.

4.3.6 *Injunction.* FROM AND AFTER THE EFFECTIVE DATE, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR RELATED DOCUMENTS, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR RELATED DOCUMENTS, OR IN OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR EQUITY INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO SECTION 10.4 OF THE PLAN, OR ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION 10.6 OF THE PLAN ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (4) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN

CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE EFFECTIVE DATE, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH HOLDER ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR EQUITY INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN.

4.3.7   FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASE AND EXCULPATION GRANTED IN ARTICLE X OF THE PLAN, THE DEBTOR AND HOLDERS OF CLAIMS OR EQUITY INTERESTS SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO ARTICLE X OF THE PLAN.

4.3.8   THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS OR EQUITY INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF CLAIMS OR EQUITY INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTOR OR ANY OF ITS ASSETS, OR ESTATE ASSETS. ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTOR SHALL BE FULLY RELEASED AND THE EQUITY INTERESTS SHALL BE CANCELLED. THE EFFECTIVE DATE OF SUCH SATISFACTION AS TO ANY CLAIM SHALL BE THE DATE OF THE FINAL DISTRIBUTION ON THE CLAIM

4.3.9   EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS SHALL BE FULLY RELEASED, AND THE INTERESTS SHALL BE CANCELLED, AND THE DEBTOR'S LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE. THE EFFECTIVE DATE OF SUCH RELEASE AS TO ANY CLAIM SHALL BE THE DATE OF THE FINAL DISTRIBUTION ON THE CLAIM

4.3.10   ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTOR, THE DEBTOR'S ESTATE, THE CREDITORS' COMMITTEE THE PLAN ADMINISTRATOR, EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS AND EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ON OR AFTER THE EFFECTIVE DATE, EXCEPT AS OTHERWISE PROVIDED HEREIN OR IN A PRIOR ORDER OF THE BANKRUPTCY COURT, A CLAIM

**MAY NOT BE FILED OR AMENDED WITHOUT THE PRIOR AUTHORIZATION OF THE BANKRUPTCY COURT OR THE CONSENT OF THE PLAN ADMINISTRATOR. ABSENT SUCH AUTHORIZATION OR CONSENT, ANY NEW OR AMENDED CLAIM FILED SHALL BE DEEMED DISALLOWED IN FULL AND EXPUNGED WITHOUT FURTHER ORDER OF THE BANKRUPTCY COURT.**

4.3.11 *Term of Injunctions or Stays.* Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

4.3.12 *No Liability for Solicitation or Participation.* As specified in section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code are not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or the offer, issuance, sale or purchase of securities.

## 5. FEASIBILITY

### 5.1 *Financial Feasibility Analysis.*

5.1.1 *Bankruptcy Code Standard.* The Bankruptcy Code requires that, in order to confirm the Plan, the Bankruptcy Court must find that Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor unless contemplated by the Plan.

5.1.2 *No Need for Further Reorganization of Debtor.* The Plan provides for the liquidation of all of the Debtor's Revested Assets. Accordingly, the Debtor believes that all Plan obligations will be satisfied without the need for further reorganization of the Debtor.

## 6. ALTERNATIVES TO PLAN

### 6.1 *Chapter 7 Liquidation.*

6.1.1 *Bankruptcy Code Standard.* Notwithstanding acceptance of the Plan by the requisite number of Creditors and Interestholders of any Class, the Bankruptcy Court must still independently determine that the Plan provides each member of each Impaired Class of Claims and Equity Interests a recovery that has a value at least equal to the value of the distribution that each such Person would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date.

6.1.2 *Plan is in Best Interest of Creditors.* The Debtor believes that the Plan satisfies this standard because the Plan provides for an orderly liquidation of the Revested Assets. Furthermore, the Debtor believes that the Plan also provides Creditors with a degree of certainty that would not exist if the Revested Assets were subject to liquidation outside of the Plan and eliminates the risks and expenses of the marketplace and continual administration of the Debtor. In this regard, in the event of a

liquidation under Chapter 7, some administrative expenses may go unpaid, general unsecured creditors would likely receive a lesser distribution, and the following is likely to occur:

    1. Additional administrative expenses, including trustee's commissions, fees for trustee's accountant, attorneys and other professionals likely to be retained, would be incurred with priority over general unsecured claims under section 507(a)(1) of the Bankruptcy Code and would materially reduce Creditor recovery.

    2. Distributions would likely be substantially delayed, while expenses of administration would continue to grow.

  It is the Debtor's belief that in a Chapter 7 liquidation of the Debtor, the unsecured Creditors would not receive a distribution or would receive less of a distribution. Accordingly, the Debtor believes that the Plan is in the best interests of Creditors. *See* Chapter 7 Liquidation Comparison attached hereto as **<u>Exhibit A</u>**.

  *6.2* *Risk Factors.*

  6.2.1 There can be no assurance by the Debtor that any remaining liquidation proceeds will be generated from the liquidation of the Debtor's Revested Assets. Even in the event of the liquidation of the Debtor's remaining Revested Assets, there can be no assurance by the Debtor that such sale or sales or prosecution of Causes of Action will generate additional proceeds for distribution to the holders of Allowed Claims.

  6.2.2 There can be no assurance at this time of the number or amount of Claims that will ultimately be Allowed, and thus the projected recoveries disclosed in this Disclosure Statement are highly speculative. A large amount of Allowed Claims may materially and adversely affect, among other things, the recoveries to holders of Allowed Claims under the Plan.

  6.2.3 Any valuation of any of the assets to be distributed under the Plan is necessarily speculative, and the value of such assets could potentially be zero. Accordingly, the ultimate value, if any, of these assets could materially affect, among other things, recoveries to the Debtor's creditors, including Claimholders in the voting classes.

  6.2.4 Although the Debtor has made commercially reasonable efforts to disclose projected recoveries in this Disclosure Statement, it is possible that the amount of Allowed Claims will be materially higher than any range of possible Allowed Claims the Debtor has considered to date, and thus creditor recoveries could be materially reduced or eliminated. In addition, the timing of actual Distributions to holders of Allowed Claims may be affected by many factors that cannot be predicted. Therefore the Debtor cannot guarantee the timing of any recover on an Allowed Claim.

  6.2.5 As discussed in this Disclosure Statement, there are material income tax considerations, risks and uncertainties associated with consummation of the Plan. Claimholders and Equity Interest holders should carefully read the discussion set forth in Section 3.13 of this Disclosure Statement and consult with their own tax advisors to determine any tax implications of the Plan to such holders.

### 6.3    Recommendations.

6.3.1   It is the position of the Debtor that the Plan is substantially preferable to a liquidation under Chapter 7 of the Bankruptcy Code. Conversion of this Chapter 11 case would result in: (i) substantial delays in the distribution of any proceeds (if any) available under such alternative; (ii) increased uncertainty as to whether payments would be made to unsecured Creditors; and (iii) substantially increased administrative costs.

**THE DEBTOR RECOMMENDS THAT YOU VOTE IN FAVOR OF THE PLAN.**

## 7.    CONCLUSION

It is important that you exercise your right to vote on the Plan. It is the Debtor's belief and recommendation that the Plan fairly and equitably provides for the treatment of all Claims against the Debtor and is substantially preferable to a liquidation under Chapter 7 of the Bankruptcy Code.

IN WITNESS WHEREOF, the Debtor has executed this Disclosure Statement this 9th day of April, 2018.

Vanity Shop of Grand Forks, Inc.

_____
James Bennett
President

Dated this 9th day of April, 2018.

**VOGEL LAW FIRM**

BY: _____
Jon R. Brakke (#03554)
jbrakke@vogellaw.com
Caren W. Stanley (#06100)
cstanley@vogellaw.com
218 NP Avenue
PO Box 1389
Fargo, ND 58107-1389
Telephone: (701) 237-6983
Fax: (701) 476-7676
ATTORNEYS FOR DEBTOR

## Exhibit A

### Chapter 7 Liquidation Comparison

| As of 03/03/18 | Chapter 11 | | Chapter 7 | |
|---|---|---|---|---|
| *Forecasted Cash Available for Distribution* | | | | |
| Cash & Equivalents | $ | 7,463,225.59 | $ | 7,463,225.59 |
| Release of BCBS Deposits | $ | 85,300.60 | $ | 85,300.60 |
| | | | | |
| *Forecasted Recovery for Causes of Action* | $ | 1,500,000.00 | $ | 1,500,000.00 |
| **TOTAL CASH & RECEIPTS** | **$** | **9,048,526.19** | **$** | **9,048,526.19** |
| | | | | |
| *Forecasted Administrative Expenses through Plan Effective Date* | | | | |
| Administrative Expenses (non-professional - Claims Agent) | $ | (70,000.00) | $ | (70,000.00) |
| Administrative Expenses (professional) | $ | (428,000.00) | $ | (428,000.00) |
| Priority Tax Claims | $ | (30,000.00) | $ | (30,000.00) |
| Administrative Tax Claims | $ | (0.00) | $ | (0.00) |
| Administrative Non-Tax Claims | $ | (260,000.00) | $ | (260,000.00) |
| | | | | |
| *Forecasted Outstanding from/after Plan Effective Date* | | | | |
| Plan Administrator | $ | (100,000.00) | | |
| Attorney and other professional fees for Plan Administrator | $ | (150,000.00) | | |
| **SUBTOTAL** | **$** | **8,010,526.19** | **$** | **8,260,526.19** |
| | | | | |
| **Incremental Chapter 7 Fees & Costs** | | | | |
| Trustee Fee % (3% of all Cash Distributed) | $ | - | $ | 271,455.79 |
| Attorney and Other Professional Fees | $ | - | $ | 150,000.00 |
| **TOTAL INCREMENTAL CHAPTER 7 FEES & COSTS** | **$** | **-** | **$** | **421,455.79** |
| **COMPARISON OF CHAPTER 11 VS. CHAPTER 7 AVAILABLE FUNDS FOR UNSECURED CREDITORS** | **$** | **8,010,526.19** | **$** | **7,839,070.40** |