**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In re:<br><br>**VANITY SHOP OF GRAND FORKS, INC.,**<br><br>Debtor. | Chapter 11<br><br>Case No. 17-30112 (SH)<br><br>Honorable Shon Hastings |

**OBJECTION AND RESERVATION OF RIGHTS OF WASHINGTON PRIME GROUP INC. TO DEBTOR'S SECOND PLAN OF LIQUIDATION DATED APRIL 9, 2018**

Washington Prime Group Inc. ("WPG"), as managing agent for the owners of the properties identified herein, by its counsel, Frost Brown Todd LLC, files this objection (this "Objection") to the *Debtor's Second Plan of Liquidation Dated April 9, 2018* (Docket No. 646) (as may be amended, the "Plan").[1] In support of this Objection, WPG respectfully states:

**BACKGROUND**

1. On March 1, 2017 (the "Petition Date"), the above-captioned debtor (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of North Dakota (this "Court").

2. WPG is the managing agent for the owners of eighteen (18) locations in which the Debtor formerly leased retail space (the "Leased Premises") from WPG pursuant to written lease agreements (collectively, the "WPG Leases"). The Leased Premises are set forth on Exhibit A, which is attached hereto and incorporated herein.

3. Pursuant to various orders of this Court (Docket Nos. 214, 220, 240, 241, and 269),

---

[1] Capitalized terms used herein but undefined shall have the meanings ascribed to them in the Plan.

each of the WPG Leases were rejected by the Debtors. As a result of the rejection of the WPG Leases by the Debtors, WPG timely and properly filed eighteen (18) separate claims for amounts due and owing under each of the WPG Leases (collectively, the "WPG Claims"). The WPG Claims are identified and set forth in the column labeled "Claim No." on Exhibit A, which is attached hereto and incorporated herein.[2]

4.     The Debtor filed the Plan on April 11, 2018. Pursuant to this Court's *Order Approving Disclosure Statement and Setting Deadline for Return of Ballots and Objections to Confirmation and Scheduling Confirmation Hearing* (Docket No. 655), objections to the Plan are due on or before May 15, 2018, and a hearing to confirm the Debtor's Plan is scheduled for May 22, 2018 at 9:30 a.m. (the "Confirmation Hearing").

**OBJECTION**

**A.     Legal standard.**

5.     Section 1129 of the Bankruptcy Code provides two means by which a plan can be confirmed. 11 U.S.C. § 1129; *see In re J & J Oilfield Servs., Inc.*, No. BR 13-30607, 2015 WL 3750143, at *9 (Bankr. D.N.D. June 12, 2015) ("Section 1129 of the Bankruptcy Code controls confirmation of Chapter 11 plans."). If a plan proponent meets all of the requirements contained in subsection (a) of section 1129, a plan may be confirmed.  If, however, a plan proponent does not have the consent of all impaired classes of claims or interests as required by section 1129(a)(8) of the Bankruptcy Code, the plan may still be confirmed if the plan meets all other requirements under subsection (a) in addition to the requirements contained in subsection (b).  *See* 11 U.S.C. § 1129(b). Because confirmation of a plan under subsection (b) permits reorganization over the

---

[2] As of the date of the filing of this Objection, the Debtors have not filed with this Court formal objections to any of the WPG Claims in accordance with Rule 3007 of the Federal Rules of Bankruptcy Procedure. On January 17, 2018, counsel for WPG provided counsel for the Debtor with supporting documentation for each of the WPG Claims.

2

objections of impaired classes of creditors, such confirmation is commonly referred to as a "cram down." *In re U.S. Truck Co., Inc.*, 800 F.2d 581, 583 (6th Cir. 1986).

6. The Debtor bears the burden of persuading this Court by at least a preponderance of the evidence that the Plan satisfies all the requirements of section 1129 of the Bankruptcy Code. *In re Reuter*, 427 B.R. 727, 769 (Bankr. W.D. Mo. 2010), *aff'd*, 443 B.R. 427 (B.A.P. 8th Cir. 2011), *aff'd*, 686 F.3d 511 (8th Cir. 2012); *see J & J Oilfield Servs.*, 2015 WL 3750143, at *9.

7. Further, in examining the requirements of the Bankruptcy Code for confirmation, this Court has an independent duty to determine if the Plan satisfies the confirmation requirements set forth in section 1129 of the Bankruptcy Code. *See Matter of Williams*, 850 F.2d 250, 253 (5th Cir. 1988) (quoting *In re Holthoff*, 58 B.R. 216, 218 (Bankr. E.D. Ark. 1985)). ("the [c]ourt has a mandatory independent duty to determine whether the plan has met all of the requirements necessary for confirmation.").

8. While WPG is not opposed to confirmation of a plan in this chapter 11 case, unfortunately, WPG respectfully submits that the Debtor cannot satisfy its burden under section 1129 of the Bankruptcy Code with respect to the Plan and consequently, the Plan cannot be confirmed as a matter of law. Specifically, Section 5 of the Plan fails to comply with section 1122 of the Bankruptcy Code and unfairly discriminates against similarly situated general unsecured creditors. Because the Plan does not comply with section 1129(a) of the Bankruptcy Code and cannot be crammed down under section 1129(b) of the Bankruptcy Code, the Plan cannot be confirmed without amendments by the Debtor.

B. **The Plan unfairly discriminates among general unsecured creditors.**

9. The Plan improperly classifies general unsecured creditors into three separate classes: (i) Class 2 Convenience Unsecured Claims, which are deemed Allowed Claims and

3

entitled to a 50% distribution (the "Class 2 Claims"); (ii) Class 3 Effective Date Unsecured Claims, which are deemed Allowed Claims and entitled to an approximate 31% distribution (the "Class 3 Claims"); and (iii) Class 4 Post-Effective Date Unsecured Claims, which are deemed Disputed and entitled to an approximate 31% distribution, but only if such claims become Allowed Claims (the "Class 4 Claims").

10. The Plan's stratification of general unsecured creditors into three separate classes is unexplainable, impermissible under the Bankruptcy Code, and is not adequately explained or discussed in the Plan. Section 1122 of the Bankruptcy Code addresses the classification of claims, stating that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). Classification of claims in compliance with section 1122 of the Bankruptcy Code "is a prerequisite to confirmation of a plan…" *Collier on Bankruptcy* ¶. 1122.02 (2011) (stating that "Section 1129(a)(1) provides that the court may confirm a plan only if the plan complies with the applicable provisions of chapter 11."); *see In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 223 (Bankr. D.N.J. 2000) (The phrase "applicable provisions" in section 1129(a)(1) of the Bankruptcy Code includes compliance with section 1122 of the Bankruptcy Code).

11. It is well-settled that section 1122 of the Bankruptcy Code prohibits separate classification of similar claims to manipulate voting. *See In re Bryson Properties, XVIII*, 961 F.2d 496, 502 (4th Cir. 1992) (classification for the purpose of manipulating voting is not permissible); In re Holywell Corp., 913 F.2d 873, 880 (11th Cir. 1990) ("If the plan unfairly creates too many or too few classes, if the classifications are designed to manipulate class voting, or if the classification scheme violates basic priority rights, the plan cannot be confirmed."). Specifically, a plan proponent cannot gerrymander classes in order to neutralize a large, potentially dissenting

4

vote and artificially create an accepting class of impaired claims. *See In re New Bride Missionary Baptist Church*, 509 B.R. 85, 88 (Bankr. E.D. Mich. 2014) (rejecting debtor's attempt to separately classify general unsecured claims to create an accepting impaired claims); *John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assoc.*, 987 F.2d 154, 159–60 (3d Cir. 1993) (holding that a debtor's power to separately classify claims is limited); *Bryson Properties*, 961 F.2d at 502 (holding that separate classification of similar claims is allowed, but only for reasons independent of the debtor's motivation to secure the vote of an impaired, assenting class of claims); *Matter of Greystone III Joint Venture*, 995 F.2d 1274, 1279 (5th Cir. 1991), on reh'g (Feb. 27, 1992) (stating that the "one clear rule" on the subject is "thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan").

12. To prevent abuse of the process through gerrymandering, the Eighth Circuit Court of Appeals has held that:

> [the] debtor's discretion to place similar claims in different classes is not unlimited, however. Classifications designed to manipulate class voting must be carefully scrutinized. There is potential for abuse when the debtor has the power to classify creditors in a manner to assure that at least one class of impaired creditors will vote for the plan, thereby making it eligible for the cram down provisions.

*Hanson v. First Bank of South Dakota, N.A.*, 828 F.2d 1310 at 1312 (8th Cir. 1987) (citing *U.S. Truck Co.*, 800 F.2d at 586).

13. To limit gerrymandering, courts have held that the proponent of a plan must demonstrate a legitimate justification for its classification scheme. Furthermore, the plan proponent (in this case, the Debtor) must demonstrate to this Court that the classification is not motivated by the purpose of gerrymandering an affirmative vote of an impaired class. *In re Griswold Bldg., LLC,* 420 B.R. 666, 707 (Bankr. E.D. Mich. 2009) (citing *In re Porcelli,* 319 B.R.

5

8, 10 (Bankr. M.D. Fla. 2004)); *see also In re Boston Post Rd. Ltd. P'ship,* 21 F.3d 477, 482-83 (2d Cir. 1994) (finding that the FDIC's unsecured deficiency claim could not be separately classified from claims of trade creditors and stating that "Chapter 11 is far better served by allowing those creditors with the largest unsecured claims to have a significant degree of input and participation in the reorganization process, since they stand to gain or lose the most from the reorganization of the debtor").

14. For the reasons set forth below, the Plan impermissibly classifies Class 2 Claims and Class 3 Claims separately from Class 4 Claims. Confirmation of the Plan should therefore be denied by this Court until the Debtor amends the Plan to conform with the Bankruptcy Code.

**(i)        Class 3 Claims and Class 4 Claims must be combined into one class of claims.**

15. Recognizing the claims asserted by the Debtor's landlords dominate the general unsecured claims pool, the Debtor appears to have arbitrarily divided the general unsecured claims into three separate classes. While the Class 3 Claims and the Class 4 Claims are separately classified, the claims correspond to the same proofs of claim filed by each creditor and are substantially similar in nature (*i.e.*, amounts due and owing under certain unexpired leases). In fact, a closer look at the claims in both classes establishes that holders of Class 3 Claims and Class 4 Claims do not have significantly different legal rights or interests. Indeed, the WPG Claims are split between Class 3 Claims and Class 4 Claims simply on the basis that a portion of the WPG Claims are allegedly Disputed by the Debtors.[3] *See* Exhibit C to the Plan, a schedule of Class 3

---

[3] The Plan does not provide any substantiation for the Debtor's treatment of Class 4 Claims as allegedly Disputed and no formal objection to the Class 4 Claims of WPG has been filed by the Debtors in accordance with Rule 3007 of the Federal Rules of Bankruptcy Procedure. Rule 3007 of the Federal Rules of Bankruptcy Procedure provides, in relevant part, that "an objection to the allowance of a claim and notice of objection that substantially conforms to the appropriate Official Form shall be filed and served at least 30 days before any scheduled hearing on the objection or any deadline for the claimant to request a hearing." Fed. R. Bankr. P. 3007(a)(1).

6

Claims and corresponding proofs of claim; *see also* Exhibit D to the Plan, a schedule of Class 4 Claims and corresponding proofs of claim.

16. Class 4 Claims cannot be separately classified from Class 3 Claims as their treatment is the same under the Plan. The Plan provides that "the holders of Allowed Claims in Class 3 and Class 4 shall be paid Pro Rata based on the aggregate Face Amount of all Allowed Claims in both Classes." *See* Plan, Section 5.4. It is well established that separate classification may not be created with the sole intent to achieve cramdown and, in most cases, classification must be accompanied by differential treatment. *In re Somerset Properties SPE, LLC*, No. 10-09210-8-SWH, 2012 WL 3644737, at *2 (Bankr. E.D.N.C. Aug. 23, 2012) (citing *Bryson Props., XVIII,* 961 F.2d at 502) (Where separate classes were created but all unsecured claims received the same treatment in terms of the plan distribution, such separate classification on the basis of natural and unnatural recourse claims was, at a minimum, highly suspect. The debtor failed to offer any reason for separate classification of the unsecured claims which withstood scrutiny, and the court found the classification was impermissible.)*; In re Trimm, Inc.*, No. B-97-16637-C-11D, 2000 WL 33673795, at *2 (Bankr. M.D.N.C. Feb. 17, 2000) (noting that the Second, Third, Fourth, Fifth, Sixth, Eighth and Ninth Circuits have held that "classification schemes designed solely to engineer compliance with the cramdown provision" shall not be allowed); *In re Elmwood, Inc.*, 182 B.R. 845, 849 (D. Nev. 1995) (holding that a creditor's unsecured deficiency claim could permissibly be classified separately from other unsecured claims when each class was assigned a different repayment method); *In re Lumber Exchange Building Ltd. Partnership*, 968 F.2d 647 (8th Cir. 1992) (debtor unable to proffer legitimate reason for separately classifying deficiency claim, and therefore could not propose confirmable plan); *In re Orchards Vill. Investments, LLC*, No. 09-30893-RLDLL, 2010 WL 143706, at *7 (Bankr. D. Or. Jan. 8, 2010) ("Similar claims generally

are placed in the same class unless there are legitimate business or other reasons for separate classification.").

17. Here, the Debtor can neither justify nor provide a legitimate basis for providing *three* separate classes of general unsecured creditors, particularly when the treatment of Class 3 Claims and Class 4 Claims is virtually identical under the Plan. WPG believes that the classification scheme by the Debtors is an impermissible attempt by the Debtor to obtain at least one voting class in favor of the Plan and then potentially cram down all remaining classes of claims.

18. Furthermore, the Debtor's treatment of Class 4 Claims—all of which are allegedly Disputed by the Debtor—acts as a *de facto* objection to those claims without following the requirements of the Bankruptcy Code and allowing holders of Class 4 Claims an opportunity for hearing before this Court. Once a proof of claim is executed and filed, the proof of claim "shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. Pro. 3001(f). "Thus, if a procedurally proper claim is filed, an objecting party carries the burden of going forward with evidence contesting the validity or amount of the claim." *In re Lepley*, 2007 WL 2669128 at *2 (Bankr. W.D. Mo. 2007), *citing In re Dove-Nation*, 318 B.R. 147 (8th Cir. B.A.P. 2004). Treating all Class 4 Claims as Disputed is not procedurally proper under the Federal Rules of Bankruptcy Procedure and, to the extent such claims are Disputed, the Debtor must file formal objections to each claim in accordance with Rules 3001 and 3007 of the Federal Rules of Bankruptcy Procedure.

19. Moreover, to the extent the Debtor's classification of the WPG Claims as Disputed is considered an objection to those claims, such objection is legally deficient and must be overruled as a matter of law. Under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, a

properly filed proof of claim is *prima facie* evidence of the validity and amount of the claim. *See* 11 U.S.C. § 502(a); Bankr. R. 3001(f); *In re Dove-Nation*, 318 B.R. 147, 152 (B.A.P. 8th Cir. 2004) (a proof of claim filed in compliance with Bankruptcy Rule 3001 is entitled to *prima facie* validity). This evidentiary presumption remains in force even though a party in interest files an objection to the claim. To overcome this presumption of validity, the objecting party must produce evidence equal in probative force to the underlying proof of claim. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). Specifically, the objecting party must produce evidence as to the invalidity of the claim or the excessiveness of its amount. *See In re Hemingway Transp., Inc.*, 993 F.2d 915 (1st Cir. 1993); *Dove-Nation*, 318 B.R. at 152.

20.     Here, the Debtor has failed to rebut the prima facie validity of the WPG Claims. As evidenced by the documentation attached to the WPG Claims, the amounts asserted represent the amounts due and owing under the Leases as a result of the Debtor's prepetition breach and subsequent rejection of the Leases. The Debtor offers no basis for objecting to the WPG Claims and the Plan is devoid of any factual evidence or legal authority to support the Debtor's assertion that the WPG Claims are not valid. As such, the Debtor has not sustained its heavy burden as to the WPG Claims and *all* of the WPG Claims should be considered "Allowed" Class 3 Claims. Any attempt by the Debtor to treat the Plan as a *de facto* objection to the WPG Claims should be overruled with prejudice.

21.     The Plan provides no explanation for the Debtor's treatment of Class 4 Claims, and the treatment of Class 4 Claims has forced WPG to file this Objection in an abundance of caution to protect its rights with respect to the WPG Claims that are included in the Class 4 Claims, and to ensure that the Debtor is not seeking an order of this Court disallowing the WPG Claims that are included in the Class 4 Claims. All rights of WPG with respect to the WPG Claims are preserved

and to the extent necessary, this Objection should be considered a response and reservation of rights to the Plan with respect to the improper attempt by the Debtor to object to the WPG Claims.

### (ii) Class 2 Claims is an improper convenience class and should be combined with Class 3 Claims and Class 4 Claims.

22. The Plan provides for a separate class of convenience unsecured claims consisting of general unsecured claims that do not exceed $1,500; however, the classification goes against the true purpose of an administrative convenience class and is not "reasonable and necessary" as required by section 1122(b) of the Bankruptcy Code.

23. Administrative convenience classes are necessary "where claims are so small in amount and large in number as to make dealing with them burdensome." *In re Tucson Self-Storage, Inc.*, 166 B.R. 892, 898 (B.A.P. 9th Cir. 1994). However, here, there is no reasonable justification for treating Class 2 Claims as an administrative convenience class. The Class 2 Claims do not present an administrative burden which would necessitate separate classification, as the Class 2 Claims only represent an aggregate amount of $105,425.31. *See* Exhibit B to the Plan. Nor is there any reason to afford Class 2 Claims substantially better treatment than the remaining classes of general unsecured creditors.[4]

24. The separate classification of Class 2 Claims is not out of administrative convenience and, rather, WPG believes it is an attempt to obtain acceptance of the Plan by at least one class of impaired creditors by affording that class significantly better treatment than all other impaired and voting classes. *See New Bride Missionary Baptist Church*, 509 B.R. at 88 (debtor did not satisfy its burden of demonstrating that classifying certain unsecured claims as "convenience claims" with its largest unsecured claim was burdensome); *In re Rocky Mountain Land Co. LLC*,

---

[4] Class 2 Claims are projected to receive a 50% dividend as compared to a projected 31% dividend for Class 3 Claims and Class 4 Claims.

No. 12-21643 HRT, 2014 WL 1338292, at *15 (Bankr. D. Colo. Apr. 3, 2014) (The bankruptcy court determined administrative convenience class was unnecessary and contrived to artificially impair those claims and gerrymander the vote to obtain an accepting class). Therefore, confirmation of the Plan should be denied.

## RESERVATION OF RIGHTS

25. WPG reserves any and all rights to supplement and/or amend this Objection and expressly reserves the right to raise any additional objections with respect to the Plan. WPG further reserves all of its rights with respect to the WPG Claims including, but not limited to, its right to be heard with respect to any objection to the WPG Claims and to present all defenses thereto to the extent that a formal objection is filed that complies with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

## JOINDER IN OTHER LANDLORD OBJECTIONS

26. WPG joins in any objections to the Plan filed by other landlords, to the extent that such objections are not inconsistent with this Objection.

**WHEREFORE**, WPG respectfully requests that this Court enter an order: (a) sustaining this Objection; (b) denying confirmation of the Plan; and (c) granting WPG such other and further relief as this Court deems just and appropriate under the circumstances.

[*Signature page follows*.]

Dated: May 15, 2018          Respectfully submitted,

*/s/ Ronald E. Gold*
Ronald E. Gold, Esq.
Ohio Bar No. 0061351 (admitted *pro hac vice*)
FROST BROWN TODD LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
513-651-6800 Telephone
513-651-6981 Facsimile
rgold@fbtlaw.com E-mail

**COUNSEL FOR
WASHINGTON PRIME GROUP INC.**

## CERTIFICATE OF SERVICE

Ronald E. Gold, Esquire hereby certifies that on this 15th day of May, 2018, a true and correct copy of the foregoing *Objection and Reservation of Rights of Washington Prime Group Inc. to Debtor's Second Plan of Liquidation Dated April 9, 2018* was served upon all parties receiving ECF notice in this case and by regular U.S. mail to:

Vogel Law Firm
Attn: Jon R. Brakke, Esq.
     Caren W. Stanley, Esq.
218 NP Avenue
PO Box 1389
Fargo, ND 58107-1389
*Counsel for the Debtor*

Office of the United States Trustee
Region 12
Attn: James L. Snyder
314 S. Main Avenue, Suite 303
Sioux Falls, SD 57104
*United States Trustee*

Fox Rothschild LLP
Mette H. Kurth, Esq.
919 North Market Street, Suite 300
Wilmington, DE 19899-2323

Fox Rothschild LLP
Ellie Barragry, Esq.
Campbell Mithun Tower, Suite 2000
222 South Ninth Street
Minneapolis, Minnesota 55402-3338

*Counsel to the Official Committee of Unsecured Creditors*

                                             /s/ Ronald E. Gold
                                             Ronald E. Gold

## Exhibit A

### (Leased Premises and WPG Claims)

| Landlord | Store No. | Location | Claim No. |
|---|---|---|---|
| Dayton Mall | 115 | Dayton, Ohio | 255 |
| Grand Central Mall | 183 | Vienna, West Virginia | 252 |
| Great Lakes Mall | 90 | Mentor, Ohio | 248 |
| Lima Mall | 116 | Lima, Ohio | 249 |
| Lindale Mall | 137 | Cedar Rapids, Iowa | 261 |
| Longview Mall | 179 | Longview, Texas | 110 |
| Mall at Fairfield Commons | 114 | Beavercreek, Ohio | 251 |
| Mall at Johnson City | 81 | Johnson City, Tennessee | 254 |
| Maplewood Mall | 226 | St. Paul, Minnesota | 250 |
| Mesa Mall | 167 | Grand Junction, Colorado | 257 |
| Morgantown Mall | 184 | Morgantown, West Virginia | 260 |
| Muncie Mall | 110 | Muncie, Indiana | 259 |
| Northtown Mall | 212 | Blaine, Minnesota | 253 |
| Northwoods Mall | 203 | Peoria, Illinois | 256 |
| Rushmore Mall | 18 | Rapid City, South Dakota | 258 |
| Southern Park Mall | 117 | Youngstown, Ohio | 265 |
| West Ridge Mall | 255 | Topeka, Kansas | 115 |
| Bloomingdale Court | 146 | Bloomingdale, Illinois | 295 |

0028924.0645592  4841-7290-6854v1